**No. 1:20-cv-00193-CM**
**No. 1:20-cv-01420-CM**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEAN M. DUNN,<br><br>               Debtor. | On appeal from the United States Bankruptcy Court for the Southern District of New York |
| LAK3, LLC,<br>             Appellant, | Chapter 7<br><br>Case No. 4:18-bk-36566-CGM |
|    - against - | Adv. Pro. No. 4:18-ap-09038-CGM |
| SEAN M. DUNN,<br>             Appellee. | **APPENDIX TO APPELLANT'S BRIEF—VOLUME 2 OF 2** |

Dated: April 2, 2020

Avery Samet
John W. Brewer
AMINI LLC
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
asamet@aminillc.com
jbrewer@aminillc.com
*Attorneys for Appellant LAK3, LLC*

## **TABLE OF CONTENTS**

| Document Description | Filing Date | ECF No. | Appendix Page |
|---|---|---|---|
| Volume 1—Bankruptcy Case | | | |
| Docket Sheet | | | A-1 |
| Motion for Relief from the Automatic Stay to Conclude State Court Action | 2019-02-14 | No. 34 | A-10 |
| Exhibit A—Proposed Order | 2019-02-14 | No. 34-1 | A-22 |
| Exhibit B—Complaint in State Court Action | 2019-02-14 | No. 34-2 | A-25 |
| Exhibit C—Plaintiff's Motion for Summary Judgement in State Court Action | 2019-02-14 | No. 34-3 | A-44 |
| Exhibit D—Plaintiff's Reply Affirmation in State Court Action | 2019-02-14 | No. 34-4 | A-214 |
| Exhibit E—Amended Complaint in Adversary Proceeding | 2019-02-14 | No. 34-5 | A-218 |
| Exhibit F—Summons and Third-Party Complaint in State Court Action | 2019-02-14 | No. 34-6 | A-239 |
| Exhibit G—Letter Third-Party Defendants to Justice Wolf, dated January 23, 2019 | 2019-02-14 | No. 34-7 | A-253 |
| Order Granting Limited Relief from the Automatic Stay | 2019-03-22 | No. 45 | A-256 |
| Volume 2—Adversary Proceeding | | | |
| Docket Sheet | | | A-258 |
| Amended Complaint | 2018-12-17 | No. 4 | A-264 |
| Exhibit A—Complaint in State Court Action | 2018-12-17 | No. 4-1 | A-284 |
| Exhibit B—Plaintiff's Motion for Summary Judgment in State Court Action | 2018-12-17 | No. 4-2 | A-303 |
| Exhibit C—Field Report, Kleinschmidt Residence | 2018-12-17 | No. 4-2 | A-473 |
| Exhibit D—Referee Report & Order | 2018-12-17 | No. 4-3 | A-490 |
| Answer | 2019-01-03 | No. 6 | A-492 |
| Order Dismissing Adversary Proceeding | 2019-12-10 | No. 21 | A-506 |
| Notice of Motion of LAK3, LLC to Vacate Order Dismissing Adversary Proceeding | 2019-12-20 | No. 23 | A-507 |

| | | | |
|---|---|---|---|
| Motion of LAK3, LLC to Vacate Order Dismissing Adversary Proceeding | 2019-12-20 | No. 23 | A-509 |
| Exhibit A—CourtSolutions Reservation Request Received | 2019-12-20 | No. 23-1 | A-515 |
| Exhibit B—CourtSolutions Appearance Reminder | 2019-12-20 | No. 23-2 | A-517 |
| Exhibit C—CourtSolutions List of Reservations | 2019-12-20 | No. 23-3 | A-519 |
| Exhibit D—Declaration of Michael R. Gordon | 2019-12-20 | No 23-4 | A-521 |
| Notice of Appeal of Order Dismissing Adversary Proceeding | 2019-12-25 | No. 24 | A-553 |
| Objection of Sean M. Dunn to the Motion to Vacate Order Dismissing Adversary Proceeding | 2020-01-20 | No. 29 | A-557 |
| Exhibit A—Order Dismissing Adversary Proceeding | 2020-01-20 | No. 29-1 | A-572 |
| Exhibit B—2019-09-17 Hearing Transcript | 2020-01-20 | No. 29-2 | A-574 |
| Exhibit C—2019-11-19 Hearing Transcript | 2020-01-20 | No. 29-3 | A-579 |
| Order Denying Motion of LAK3, LLC to Vacate Order Dismissing Adversary Proceeding | 2020-01-29 | No. 34 | A-584 |
| Notice of Appeal of Order Denying Motion of LAK3, LLC to Vacate Order Dismissing Adversary Proceeding | 2020-02-04 | No. 39 | A-586 |
| 2020-01-28 Hearing Transcript | 2020-02-11 | No. 43 | A-587 |

# A-258

## U.S. Bankruptcy Court
## Southern District of New York (Poughkeepsie)
## Adversary Proceeding #: 18-09038-cgm

*Assigned to:* Judge Cecelia G. Morris
*Lead BK Case:* <u>18-36566</u>
*Lead BK Title:* Sean M. Dunn
*Lead BK Chapter:* 7
*Demand:*

*Date Filed:* 11/21/18
*Date Terminated:* 12/10/19
*Date Dismissed:* 12/10/19

*Nature[s] of Suit:* 62 Dischargeability - 523(a)(2), false pretenses, false representation, actual fraud
67 Dischargeability - 523(a)(4), fraud as fiduciary, embezzlement, larceny
68 Dischargeability - 523(a)(6), willful and malicious injury
41 Objection / revocation of discharge - 727(c),(d),(e)

### Plaintiff
-----------------------
**LAK3, LLC**

represented by **Avery Samet**
Amini LLC
131 West 35th Street
Ste 12th Floor
Ste 25th Floor
New York, NY 10001
212-490-4700
Email: <u>asamet@aminillc.com</u>

V.

### Defendant
-----------------------
**Sean M. Dunn**
314 Vista on the Lake
Carmel, NY 10512
SSN / ITIN: xxx-xx-7074

represented by **Carlos J. Cuevas**
1250 Central Park Avenue
Yonkers, NY 10704
(914)964-7060
Fax : (914)964-7064
Email: <u>ccuevas576@aol.com</u>

| Filing Date | # | Docket Text |
|---|---|---|
| 11/21/2018 | <u>1</u><br>(225 pgs; 5 docs) | Adversary case 18-09038. Complaint against Sean M. Dunn *Seeking Determination of Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2),(4) and (6); and Denial of Debtor's Discharge Pursuant to 11 U.S.C. § 727(a)(3)* (Fee Amount $ 350.). Nature(s) of Suit: (62 (Dischargeability - 523(a)(2), false pretenses, false representation, actual fraud)), (67 (Dischargeability - 523(a)(4), fraud as fiduciary, embezzlement, larceny)), (68 (Dischargeability - 523(a)(6), willful and malicious injury)), (41 (Objection / revocation of discharge - 727(c),(d), (e))) Filed by Sanford Philip Rosen on behalf of LAK3, LLC. |

| | | |
|---|---|---|
| | | (Attachments: # <u>1</u> Exhibit A # <u>2</u> Exhibit B # <u>3</u> Exhibit C # <u>4</u> Exhibit D) (Rosen, Sanford) (Entered: 11/21/2018) |

**A-259**

| | | |
|---|---|---|
| 11/21/2018 | | Receipt of Complaint( <u>18-09038-cgm</u>) [cmp,cmp] ( 350.00) Filing Fee. Receipt number A12886567. Fee amount 350.00. (Re: Doc # <u>1</u>) (U.S. Treasury) (Entered: 11/21/2018) |
| 11/27/2018 | <u>2</u><br>(1 pg) | Summons with Notice of Pre-Trial Conference issued by Clerk's Office with Pre-Trial Conference set for 1/15/2019 at 10:15 AM at Poughkeepsie Courthouse - 355 Main Street. Answer due by 12/27/2018. (Kinchen, Gwen) (Entered: 11/27/2018) |
| 11/29/2018 | <u>3</u><br>(2 pgs) | Certificate of Service (related document(s)<u>2</u>, <u>1</u>) filed by Sanford Philip Rosen on behalf of LAK3, LLC. (Rosen, Sanford) (Entered: 11/29/2018) |
| 12/17/2018 | <u>4</u><br>(228 pgs; 5 docs) | Amended Complaint against Sean M. Dunn *Seeking Determination of Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523 (a)(2),(4) and (6); and Denial of Debtor's Discharge Pursuant to 11 U.S.C. §§ 727(a)(2),(3) and (4)* (related document(s)<u>1</u>) Filed by Sanford Philip Rosen on behalf of LAK3, LLC. (Attachments: # <u>1</u> Exhibit A # <u>2</u> Exhibit B # <u>3</u> Exhibit C # <u>4</u> Exhibit D) (Rosen, Sanford) (Entered: 12/17/2018) |
| 12/17/2018 | <u>5</u><br>(2 pgs) | Certificate of Service (related document(s)<u>4</u>) filed by Sanford Philip Rosen on behalf of LAK3, LLC. (Rosen, Sanford) (Entered: 12/17/2018) |
| 01/03/2019 | <u>6</u><br>(14 pgs) | Answer to Amended Complaint (Related Doc # <u>4</u>) filed by Francis J. O'Reilly on behalf of Sean M. Dunn. (O'Reilly, Francis) (Entered: 01/03/2019) |
| 01/04/2019 | <u>7</u><br>(1 pg) | Certificate of Service *of Answer to Amended Complaint of LAK3, LLC,* (related document(s)<u>6</u>) filed by Francis J. O'Reilly on behalf of Sean M. Dunn. (O'Reilly, Francis) (Entered: 01/04/2019) |
| 01/14/2019 | <u>8</u><br>(2 pgs) | Notice of Adjournment of Hearing *Notice of Adjournment of Pretrial Conference* filed by Sanford Philip Rosen on behalf of LAK3, LLC. with hearing to be held on 1/15/2019 (check with court for location) (Rosen, Sanford) (Entered: 01/14/2019) |
| 01/15/2019 | 9 | Notice of Adjournment of Hearing Re: Pre Trial Conference; Hearing Held and Adjourned to 1/29/2019 at 10:15 AM at Poughkeepsie Courthouse - 355 Main Street (DeCicco, Vincent). (Entered: 01/22/2019) |
| 01/29/2019 | 10 | Notice of Adjournment of Hearing Re: Pre Trial Conference; Hearing Held and Adjourned to 4/30/2019 at 10:15 AM at Poughkeepsie Courthouse - 355 Main Street (DeCicco, Vincent). (Entered: 02/04/2019) |
| 04/26/2019 | <u>11</u><br>(2 pgs) | Notice of Adjournment of Hearing */ Notice of Adjournment of Pretrial Conference* filed by Sanford Philip Rosen on behalf of LAK3, LLC. with hearing to be held on 6/4/2019 at 10:15 AM at Poughkeepsie Courthouse - 355 Main Street (Rosen, Sanford) (Entered: 04/26/2019) |
| 04/30/2019 | 12 | Notice of Adjournment of Hearing Re: Pre Trial Conference; Hearing Not Held and Adjourned to 6/4/2019 at 10:15 AM at Poughkeepsie Courthouse - 355 Main Street (Ashmeade, Vanessa). (Entered: 04/30/2019) |

**A-260**

| | | |
|---|---|---|
| 06/04/2019 | 13 | Notice of Adjournment of Hearing Re: Pre Trial Conference; Hearing Held and Adjourned to 6/18/2019 at 10:15 AM at Poughkeepsie Courthouse - 355 Main Street (Ashmeade, Vanessa). (Entered: 06/04/2019) |
| 06/04/2019 | 14<br>(1 pg) | Letter *to the Honorable Cecelia G. Morris regarding the Pretrial Conference* (related document(s)11 , 12 , 13 ) Filed by Sanford Philip Rosen on behalf of LAK3, LLC. (Rosen, Sanford) (Entered: 06/04/2019) |
| 06/17/2019 | 15<br>(2 pgs) | Notice of Adjournment of Hearing */ Notice of Adjournment of Pretrial Conference* filed by Sanford Philip Rosen on behalf of LAK3, LLC. with hearing to be held on 7/18/2019 at 10:15 AM at Poughkeepsie Courthouse - 355 Main Street (Rosen, Sanford) (Entered: 06/17/2019) |
| 06/18/2019 | 16 | Notice of Adjournment of Hearing Re: Pre Trial Conference; Hearing Not Held and Adjourned to 7/18/2019 at 10:15 AM at Poughkeepsie Courthouse - 355 Main Street (Ashmeade, Vanessa). (Entered: 06/18/2019) |
| 06/24/2019 | 17 | Please take notice that the Pre-trial Conference currently scheduled for 7/18/19 at 10:15 am will be heard at 9:40 am. (Ashmeade, Vanessa). (Entered: 06/24/2019) |
| 07/12/2019 | 18<br>(1 pg) | Notice of Adjournment of Hearing */ Notice of Adjournment of Pretrial Conference* filed by Paris Gyparakis on behalf of LAK3, LLC. with hearing to be held on 9/17/2019 at 10:15 AM at Poughkeepsie Courthouse - 355 Main Street (Gyparakis, Paris) (Entered: 07/12/2019) |
| 07/18/2019 | 19 | Notice of Adjournment of Hearing re: Pre Trial Conference; Hearing not held and adjourned to 9/17/2019 at 10:15 AM at Poughkeepsie Courthouse - 355 Main Street (DuBois, Linda). (Entered: 07/18/2019) |
| 09/17/2019 | 20 | Notice of Adjournment of Hearing Re: Pre Trial Conference; Hearing Held and Adjourned to 11/19/2019 at 10:15 AM at Poughkeepsie Courthouse - 355 Main Street (Ashmeade, Vanessa). (Entered: 09/17/2019) |
| 11/19/2019 | | Pending Deadlines Terminated RE: Pre Trial Conference; Hearing Held, Dismissed for Failure to Prosecute; Submit Order. (Ashmeade, Vanessa). (Entered: 11/19/2019) |
| 12/10/2019 | 21<br>(1 pg) | Order Dismissing Adversary Proceeding for Failure to Prosecute signed on 12/10/2019. (Kinchen, Gwen) (Entered: 12/10/2019) |
| 12/10/2019 | | Adversary Case 4:18-ap-9038 Closed. This Adversary Proceeding is Closed Subject to the Filing of a Notice of Appeal Within Fourteen (14) Days of the Entry of the Order Terminating this Adversary Proceeding. (Kinchen, Gwen) (Entered: 12/10/2019) |
| 12/13/2019 | 22<br>(5 pgs) | Letter *to the Honorable Cecelia G. Morris* Filed by Sanford Philip Rosen on behalf of LAK3, LLC. (Rosen, Sanford) (Entered: 12/13/2019) |
| 12/20/2019 | 23<br>(46 pgs; 5 docs) | Motion to Vacate *Order Dismissing Case For Failure to Prosecute* (related document(s)21 ) filed by Sanford Philip Rosen on behalf of LAK3, LLC with hearing to be held on 1/28/2020 at 09:30 AM at Poughkeepsie Courthouse - 355 Main Street Responses due by |

**A-261**

| | | |
|---|---|---|
| | | 1/21/2020,. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D) (Rosen, Sanford) (Entered: 12/20/2019) |
| 12/25/2019 | 24 (4 pgs) | Notice of Appeal (related document(s)21) filed by Paris Gyparakis on behalf of LAK3, LLC. Appellant Designation due by 1/3/2020, (Gyparakis, Paris) (Entered: 12/25/2019) |
| 12/25/2019 | | Receipt of Notice of Appeal( 18-09038-cgm) [appeal,97] ( 298.00) Filing Fee. Receipt number A13616956. Fee amount 298.00. (Re: Doc # 24) (U.S. Treasury) (Entered: 12/25/2019) |
| 01/03/2020 | 25 (2 pgs) | Designation of Contents (appellant). (related document(s)24) filed by Sanford Philip Rosen on behalf of LAK3, LLC. (Rosen, Sanford) (Entered: 01/03/2020) |
| 01/08/2020 | 26 (15 pgs; 5 docs) | Motion to Strike *Items 10 and 11 from Appellants Designation of the Record on Appeal and Statement of the Issue Presented on Appeal* filed by Carlos J. Cuevas on behalf of Sean M. Dunn with hearing to be held on 1/28/2020 at 10:00 AM at Poughkeepsie Courthouse - 355 Main Street Responses due by 1/21/2020,. (Attachments: # 1 Exhibit A # 2 Notice of Motion # 3 Proposed Order # 4 Certificate of Service) (Cuevas, Carlos) (Entered: 01/08/2020) |
| 01/08/2020 | 27 (1 pg) | Letter (related document(s)26) Filed by Carlos J. Cuevas on behalf of Sean M. Dunn. (Cuevas, Carlos) (Entered: 01/08/2020) |
| 01/15/2020 | 28 (4 pgs; 2 docs) | Counter Designation (appellee) filed by Carlos J. Cuevas on behalf of Sean M. Dunn. (Attachments: # 1 Certificate of Service)(Cuevas, Carlos) (Entered: 01/15/2020) |
| 01/20/2020 | 29 (27 pgs; 5 docs) | Objection to Motion (related document(s)23) filed by Carlos J. Cuevas on behalf of Sean M. Dunn. with hearing to be held on 1/28/2020 at 09:30 AM at Poughkeepsie Courthouse - 355 Main Street (Attachments: # 1 Exhibit A-Dismissal Order # 2 Exhibit B-Transcript # 3 Exhibit C-Transcript # 4 Certificate of Service) (Cuevas, Carlos) (Entered: 01/20/2020) |
| 01/21/2020 | 30 (2 pgs; 2 docs) | Notice of Transmittal of Record of Appeal. All documents have been filed with the United States District Court for the Southern District of New York. Record of Appeal is Complete and Available Electronically under Civil Case Number 20-cv-00193 assigned to the Honorable Colleen McMahon. Check the District Court Docket Sheet for the Briefing Schedule. (related document(s)24) (Kinchen, Gwen). (Entered: 01/21/2020) |
| 01/23/2020 | 31 (2 pgs) | Certificate of Mailing Re: Notice Of Transmittal Of Record Of Appeal To USDC SDNY (related document(s) (Related Doc # 30)) . Notice Date 01/23/2020. (Admin.) (Entered: 01/24/2020) |
| 01/27/2020 | 32 (11 pgs; 2 docs) | Reply to Motion / *Reply of LAK3, LLC to Debtor's Objection to Motion to Vacate Order Dismissing Case For Failure to Prosecute* (related document(s)23) filed by Sanford Philip Rosen on behalf of LAK3, LLC. (Attachments: # 1 Exhibit A) (Rosen, Sanford) (Entered: 01/27/2020) |
| 01/27/2020 | 33 (3 pgs) | Certificate of Service (related document(s)23) Filed by Paris Gyparakis on behalf of LAK3, LLC. (Gyparakis, Paris) (Entered: 01/27/2020) |

| | | |
|---|---|---|
| 01/28/2020 | | Pending Deadlines Terminated re: Motion to Vacate Order Dismissing Case For Failure to Prosecute (related document(s)21) filed by Sanford Philip Rosen on behalf of LAK3, LLC; Hearing held, motion **denied**, submit order. (DuBois, Linda). (Entered: 01/29/2020) |
| 01/28/2020 | | Pending Deadlines Terminated re: Motion to Strike Items 10 and 11 from Appellants Designation of the Record on Appeal and Statement of the Issue Presented on Appeal filed by Carlos J. Cuevas on behalf of Sean M. Dunn; Hearing held and concluded, MOOT. (DuBois, Linda). (Entered: 01/29/2020) |
| 01/28/2020 | 36 | Notice of Adjournment of Hearing re: Motion to Strike Items 10 and 11 from Appellants Designation of the Record on Appeal and Statement of the Issue Presented on Appeal filed by Carlos J. Cuevas on behalf of Sean M. Dunn (related document(s)26); Hearing held and adjourned to 2/11/2020 at 10:15 AM at Poughkeepsie Courthouse - 355 Main Street (DuBois, Linda). (Entered: 02/04/2020) |
| 01/29/2020 | 34 (2 pgs) | Order Denying Motion to Vacate Order Dismissing Case For Failure to Prosecute (Related Doc # 23) signed on 1/29/2020. (Kinchen, Gwen) (Entered: 01/29/2020) |
| 02/03/2020 | 35 (1 pg) | Notice of Substitution of Attorney for LAK3, LLC from Rosen & Associates, P.C. to Amini LLC filed by Avery Samet on behalf of LAK3, LLC. (Samet, Avery) (Entered: 02/03/2020) |
| 02/04/2020 | 37 (2 pgs) | Letter *Requesting Conference* Filed by Avery Samet on behalf of LAK3, LLC. (Samet, Avery) (Entered: 02/04/2020) |
| 02/04/2020 | 38 (1 pg) | Letter *to the Hon. Cecelia G. Morris* Filed by Carlos J. Cuevas on behalf of Sean M. Dunn. (Cuevas, Carlos) (Entered: 02/04/2020) |
| 02/04/2020 | 39 (8 pgs; 3 docs) | Notice of Appeal (related document(s)34) filed by Avery Samet on behalf of LAK3, LLC. (Attachments: # 1 Exhibit 1 - Order # 2 Civil Cover Sheet with Statement of Relatedness)(Samet, Avery) (Entered: 02/04/2020) |
| 02/04/2020 | | Receipt of Notice of Appeal( 18-09038-cgm) [appeal,97] ( 298.00) Filing Fee. Receipt number A13729283. Fee amount 298.00. (Re: Doc # 39) (U.S. Treasury) (Entered: 02/04/2020) |
| 02/05/2020 | 40 (2 pgs) | Stipulation signed on 2/5/2020 approving substitution of counsel. (Kinchen, Gwen) (Entered: 02/05/2020) |
| 02/05/2020 | 41 (3 pgs) | Designation of Contents (appellant). (related document(s)39) filed by Avery Samet on behalf of LAK3, LLC. (Samet, Avery) (Entered: 02/05/2020) |
| 02/11/2020 | 42 | Notice of Adjournment of Hearing RE: Motion to Strike Items 10 and 11 from Appellants Designation of the Record on Appeal and Statement of the Issue Presented on Appeal filed by Carlos J. Cuevas on behalf of Sean M. Dunn(related document(s)26); Hearing not held; settled and adjourned for record purposes only to 3/24/2020 at 08:30 AM at Poughkeepsie Courthouse - 355 Main Street (Ashmeade, Vanessa). (Entered: 02/11/2020) |

| 02/11/2020 | 43 | Transcript regarding Hearing Held on 01/28/20 at 10:23 A.M. RE: Doc #32 Reply To Motion/Reply Of Lak3, Llc To Debtor's Objection To Motion to Vacate Order Dismissing Case For Failure To Prosecute (Related Doc #23) Filed By Sanford Philip Rosen On Behalf Of Lak3, Llc; Doc #23 Motion To Vacate Order Dismissing Case For Failure To Prosecute (Related Doc #21) Filed By Sanford Philip Rosen On Behalf Of Lak3, Llc; Responses Due By 1/21/2020; Attachments: #1 Exhibit A, #2 Exhibit B, #3 Exhibit C, #4 Exhibit D) Etc. Remote electronic access to the transcript is restricted until 5/11/2020. The transcript may be viewed at the Bankruptcy Court Clerks Office. [Transcription Service Agency: AA EXPRESS TRANSCRIPTS.]. (See the Courts Website for contact information for the Transcription Service Agency.) (RE: related document(s) 26, 32, 29, 23). Notice of Intent to Request Redaction Deadline Due By 2/18/2020. Statement of Redaction Request Due By 3/3/2020. Redacted Transcript Submission Due By 3/13/2020. Transcript access will be restricted through 5/11/2020. (Su, Kevin) (Entered: 02/12/2020) |
|---|---|---|
| 02/13/2020 | 44 (2 pgs) | Stipulation and Order Concerning Motion to Strike (Related Doc # 26) signed on 2/13/2020. (Kinchen, Gwen) (Entered: 02/13/2020) |
| 02/18/2020 | 45 (4 pgs; 2 docs) | Counter Designation (appellee) filed by Carlos J. Cuevas on behalf of Sean M. Dunn. (Attachments: # 1 Certificate of Service)(Cuevas, Carlos) (Entered: 02/18/2020) |
| 02/19/2020 | 46 (2 pgs; 2 docs) | Notice of Transmittal of Record of Appeal. All documents have been filed with the United States District Court for the Southern District of New York. Record of Appeal is Complete and Available Electronically under Civil Case Number 20-cv-01420, Unassigned. Check the District Court Docket Sheet for the Briefing Schedule. (related document(s)39) (Kinchen, Gwen) (Entered: 02/19/2020) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/20/2020 13:18:41 | | | |
| **PACER Login:** | asamet1623 | **Client Code:** | 76700220 |
| **Description:** | Docket Report | **Search Criteria:** | 18-09038-cgm Fil or Ent: filed From: 5/10/2018 To: 2/20/2020 Doc From: 0 Doc To: 99999999 Format: html Page counts for documents: included |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

## A-264

ROSEN & ASSOCIATES, P.C.
*Attorneys for LAK3, LLC*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen

**UNITED STATES BANKRPUTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**POUGHKEEPSIE DIVISION**

| | |
|---|---|
| In re:<br><br>SEAN M. DUNN,<br><br>           Debtor. | Chapter 7<br><br>Case No. 18-36566 (CGM) |
| LAK3, LLC,<br><br>           Plaintiff,<br><br>v.<br><br>SEAN M. DUNN,<br><br>           Defendant. | Adv. Proc. No. 18-09038 (CGM) |

**AMENDED COMPLAINT SEEKING DETERMINATION OF (I)**
**DISCHARGABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2), (4) and (6);**
**and (II) DENIAL OF DEBTOR'S DISCHARGE PURSUANT TO 11 U.S.C. §§**
**727(a)(2), (3) and (4)**

       LAK3, LLC ("**Plaintiff**"), a creditor of Sean M. Dunn, the above-captioned debtor (the

"**Debtor**"), by its counsel, Rosen & Associates, P.C., hereby files this *Amended Complaint*

*Seeking Determination of Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2), (4) and*

*(6); and Denial of Debtor's Discharge Pursuant to 11 U.S.C. §§ 727(a)(2), (3) and (4)* (the

"**Complaint**"), and respectfully represents as follows:

A-265

## JURISDICTION, STATUTORY PREDICATE AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.      The statutory predicate for the relief requested herein are Rules 4004 and 4007 *et seq.* of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §§ 523(a)(2), (4) and (6) and 727(a)(2), (3) and (4).

3.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      This adversary proceeding is a "core" proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (H) and (O).

## PROCEDURAL HISTORY AND GENERAL ALLEGATIONS

5.      On September 17, 2018 (the "**Petition Date**"), the Debtor filed a voluntary petition (the "**Petition**") under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**").

6.      The Debtor listed Plaintiff as an unsecured creditor holding a non-contingent, disputed, unliquidated claim on *Schedule E/F: Creditors Who Have Unsecured Claims* of his Schedules of Liabilities filed with this Court.

7.      As set forth more fully herein, Plaintiff's claim arises (1) primarily from the Debtor's breach of his fiduciary duty as New York statutory Lien Law trustee; and (2) secondarily from the fraudulent representations the Debtor made in obtaining and purporting to carry out the role of general contractor, for the construction of a single-family residence for Plaintiff on its real property (the "**Property**") located at 41 Averill Drive, Mahopac, New York (the "**Construction Project**").

**A-266**

8.      At all relevant times, the Debtor conducted business as a general contractor along with his brother Gerald Dunn ("**Gerald**"), under the name Well Dunn Maintenance & Contracting ("**Well Dunn**").

9.      Plaintiff hired Well Dunn based on the representations the Debtor and Gerald made that they were properly licensed, insured, competent, highly skilled and experienced general contractors, all of which the Debtor and Gerald knew to be false at the times they were made.

10.      As set forth more fully herein, the Debtor knowingly and intentionally diverted for his personal use funds received from Plaintiff (the "**Project Payments**") that were to be and were, as a matter of New York law, required to be expended solely for the Construction Project in the manner set forth by Article 3-A of the New York Lien Law.

11.      On August 4, 2017, Plaintiff filed suit against the Debtor, his brother Gerald and Well Dunn (the "**State Court Defendants**") in the Supreme Court of the State of New York, County of Westchester, in an action styled, *LAK3, LLC v. Sean Dunn, Gerald Dunn, and Well Dunn Maintenance & Contracting* (the "**State Court Action**"), for fraud, breach of contract, breach of fiduciary duty, and lien law trust fund diversion.

12.      A copy of the complaint in the State Court Action is annexed hereto as Exhibit "A."

13.      On September 29, 2017, the State Court Defendants filed an Answer with Counterclaims, and on November 20, 2017, Plaintiff moved to dismiss the counterclaims for lack of standing, as the State Court Defendants were unlicensed home improvement contractors that and who could not bring such claims against Plaintiff.

**A-267**

14.     On December 8, 2017, the State Court Defendants agreed to withdraw the counterclaims with prejudice.

15.     On July 26, 2018, Plaintiff moved for partial summary judgment against the State Court Defendants on its claims for breach of fiduciary duty and diversion of lien law trust funds, based on admissions by the State Court Defendants, including the Debtor, in discovery in the State Court Action.

16.     A copy of the papers submitted in support for the Plaintiff's motion for partial summary judgment is annexed hereto as Exhibit "B."

17.     The motion was fully submitted but undecided when the State Court Action was stayed in part, with respect to the Debtor, as a result of the Debtor's bankruptcy filing.

## THE PARTIES

18.     Plaintiff is a limited liability company organized under the laws of New York, with a principal place of business in Yorktown Heights, New York.

19.     At all relevant times, Ned Kleinschmidt ("**Kleinschmidt**") has been the managing member of Plaintiff.

20.     Upon information and belief, the Debtor is an individual residing in the state of New York.

## COUNT I – OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 523(a)(2) FOR FALSE PRETENSES, REPRESENTATIONS OR ACTUAL FRAUD

21.     Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 20 of this Complaint as if fully re-alleged herein.

22.     On or about January 13, 2016, Kleinschmidt and his wife, Lesley, both acting on Plaintiff's behalf, met with the Debtor at the offices of Plaintiff's architect, Michael A.

**A-268**

Picicirillo ("**Picicirillo**"), in Yorktown Heights, New York, to discuss the details of the Construction Project.

23.     The Kleinschmidts read the contents of Well Dunn's website before meeting with the Debtor.

24.     On its website, Well Dunn touted itself as an experienced home improvement contractor for all types of home improvement projects, licensed in Westchester County, Putnam County, the City of Yonkers and "all of Connecticut." *See* Ex. B, at Ex. 12.

25.     At the January 13, 2016 meeting, the Debtor, like Well Dunn's website, stated that Well Dunn is an experienced home improvement contractor, licensed in Putnam County and that he knew how to build the house for the Construction Project.

26.     On or about March 16, 2016, the Debtor submitted a bid to Plaintiff for the Construction Project in the amount of $1,150,000 plus approved change orders, based on construction plans and specifications that had been prepared by Picicirillo.

27.     On or about March 18, 2016, based on the statements that the Debtor made at the January 13, 2016 meeting and the representations on the Well Dunn website, Plaintiff agreed to accept the Debtor's bid and engage the Debtor and Gerald as general contractors, doing business as Well Dunn, for the Construction Project.

28.     The Debtor knew his statements and representations to Plaintiff were false at the time he made them, and he made them with the intent to fraudulently induce Plaintiff to engage him and pay him for services to be rendered.

29.     Plaintiff reasonably relied on such statements and representations.

**A-269**

30.     But for such statements and representations, Plaintiff would not have engaged the Debtor.

31.     After construction commenced, Plaintiff learned that many aspects of the Debtor's work, labor, services and materials that the Debtor represented to Plaintiff as having furnished was either not furnished, furnished improperly, or was not in compliance with Picirillo's approved plans and specifications.

32.     Most of the work performed by the Debtor was of poor quality, defective and failed to meet basic construction standards and the applicable building code.

33.     Plaintiff repeatedly demanded that the Debtor cure defective construction conditions; however, the Debtor failed and refused to do so.

34.     On or about June 19, 2017, Plaintiff terminated the Debtor as general contractor, for cause.

35.     Upon information and belief, the Debtor failed to pay at least two subcontractors, M.S. Iron Works, Inc. d/b/a M&S Iron Works ("M&S") and Hauptman Enterprises, despite having told Plaintiff on or about May 4, 2017, that all subcontractors and suppliers for the Construction Project had been paid in full.

36.     Consequently, M&S filed a mechanic's lien on the Property on or about July 17, 2017, and, as set forth more fully below, M&S has filed an action against the Debtor, Gerald and Well Dunn for, among other things, Lien Law Trust Fund diversion and breach of fiduciary duty.

37.     On or about June 28, 2018, Plaintiff retained Thorton Tomasetti ("**Tomasetti**"), an engineering consulting firm, to perform a visual observation of the Construction

**A-270**

Project and to report an approximation of the value of construction that was then in-place on the

Property. A copy of Tomasetti's report (the "**Field Report**") is annexed hereto as Exhibit "C".

38.     According to the Field Report, Tomasetti calculated the total amount of

work completed to be approximately $369,799.95. However, Tomasetti noted that, despite the

limited purpose of its observation to determine the value of the construction in place, "*it must be*

*stated* that much of the construction observed was inadequate, meaning, that in order to properly

complete this house, some of the in-place construction would require significant repairs in order

to meet codes and standard [sic] and to pass municipal inspection." Tomassetti further cautioned

that, "[t]he Owner should anticipate significant costs to remedy these … [which] should be

deducted from the estimate provided." *See* Ex. C at 3 (emphasis added).

39.     The Field Report cites specific examples of such inadequacies, including,

"steel girders improperly supported on conventional wood plates seriously exceeding the bearing

capacity of those plates; steel columns insufficiently supported on undersized concrete footings

with improper anchor bolt edge distances; steel columns with improper nailed connection to wood

beams; improper installation of windows; steel girders left exposed at exterior wall; [and]

dissimilar metals in contact that will ultimately deteriorate due to galvanic action, just to name a

few." *See* Ex. C at 3.

40.     Due to the poor quality of the Debtor's work and the Debtor's failure to

correct it, Plaintiff was required to remediate the construction conditions by removing much of the

Debtor's work product and re-constructing it properly.

41.     To date, Plaintiff has expended over $500,000 (the "**Remediation**

**Expenses**") to correct the Debtor's construction errors, including, without limitation, costs related

**A-271**

to (a) removing and replacing one-hundred (100) windows that were installed incorrectly; (b) replacing subflooring wherever possible that had been installed with incorrect specification; (c) replacing joists that were incorrectly cut and installed; (d) replacing unsafe and uninspected concrete footing supporting the house; (e) replacing dozens of wooden beams and columns supporting the structure that were unsafe and incorrectly installed; (f) adding structural steel that was omitted; (g) retaining multiple structural engineers to consult, retrofit and correct errors; and (h) repairing and replacing damaged and incorrectly sized exterior sheathing.

42. Plaintiff was unable to fully rectify certain construction errors made by the Debtor with respect to walls, floors, framing and roof slope because certain conditions rendered it cost prohibitive to do so.

43. Upon information and belief, the laws of the State of New York and Putnam County require a home improvement contractor to be registered and licensed to do business as a home improvement contractor.

44. According to New York Law, a "home improvement contractor" is one who operates a home improvement business or who undertakes, offers to undertake or agrees to perform any home improvement for a fee. *See* N.Y. Gen. Bus. Law § 770 (McKinney 2018).

45. Upon information and belief, at all relevant times, the Debtor was a home improvement contractor under New York Law.

46. During discovery in the State Court Action, the Debtor admitted under oath, that when he first met the Kleinschmidts, he told them that he was a licensed home improvement contractor in Putnam County. *See* Ex. B at Ex.2 120: 8-10.

**A-272**

47.      The Debtor admitted in discovery in the State Court Action that he did not have a valid Putnam County contractor's license during his employment by Plaintiff. *See* Ex. B at Ex. 3 ¶ 17.

48.      Upon information and belief, the Department of Consumer Protection of Westchester County revoked the Debtor's home improvement contractor license in May 2015. *See* Ex. B at Ex. 13.

49.      Upon information and belief at all relevant times through the time the State Court Action was commenced, based upon public records of the State of New York and the Counties of Putnam and Westchester, Well Dunn was not a corporation, limited liability company, partnership, or any other business association, and was not registered as any such entity with the Secretary of State of the State of New York.

50.      Upon information and belief at all relevant times through the time the State Court Action was commenced, based upon public records of the State of New York and the Counties of Putnam and Westchester, Well Dunn was not licensed or registered to do business in the state of New York or the Counties of Putnam or Westchester, and did not maintain workers' compensation insurance.

51.      Pursuant to section 523(a)(2)(A) of the Bankruptcy Code, a debtor is not discharged of a debt for money, property or services, to the extent obtained by false pretenses, a false representation, or actual fraud.

52.      The Debtor obtained his engagement and procured the Project Payments through false pretenses, false representations, or actual fraud.

A-273

53.     Plaintiff has sustained damages in the amount in excess of $1,400,000.00, consisting of Remediation Expenses and Project Payments.

54.     Plaintiff has a total claim in the amount of approximately $2,000,000.00, consisting of Remediation Expenses, Project Payments, and other remediation costs to be incurred.

55.     Accordingly, Plaintiff has filed a proof of claim in the amount of approximately $2,000,000.00.

56.     Plaintiff's claim is non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

**COUNT II – OBJECTION TO DISCHARGE UNDER
11 U.S.C. § 523(a)(4) FOR DEFALCATION BY A FIDUCIARY**

57.     Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 56 of this Complaint as if fully re-alleged herein.

58.     Pursuant to section 523(a)(4) of the Bankruptcy Code, a debtor is not discharged of a debt for fraud or defalcation while acting in a fiduciary capacity.

59.     Article 3-A of the New York Lien Law imposes on a contractor a fiduciary duty over funds received for the improvement of real property. *See* N.Y. Lien Law, §§ 70, 71 and 71-a.

60.     Funds received for the improvement of real property create an express statutory trust within the meaning section 523(a)(4) of the Bankruptcy Code.

61.     For purposes of Article 3-A, owners are considered beneficiaries of the trust and the Project Payments were trust funds within the statutory definition.

62.     Upon information and belief, the Debtor knew at all relevant times that the Project Payments were trust funds within the meaning of the Lien Law of the State of New York.

**A-274**

63.  Under sections 71 and 72 of the New York Lien Law, the statutory trustee may not divert funds received for construction or improvement of real property for nontrust uses, which include any use of trust assets other than for payment of claims of the trust. *See* N.Y. Lien Law §§ 70 and 72.

64.  The Debtor admitted in discovery in the State Court Action that he co-mingled the Project Payments with other monies, and used certain of the Project Payments to pay personal expenses and expenses related to other projects. *See* Ex. B at Ex.2, 78:6-15.

65.  Moreover, the Debtor admitted that besides himself and Gerald, his former fiancé (who had no role with Well Dunn and was not involved in the Construction Project) had access to the Project Payments. *See* Ex. B at Ex.2 136:5-23.

66.  Discovery in the State Court Action disclosed that the account in which the Debtor had deposited the Project Payments was accessed to pay for, among other things, lease payments on a Mercedes Benz, a trip to the Maritime Aquarium in Norwalk, Connecticut, purchases from Abercrombie & Fitch and Gucci, airline tickets, Six Flags amusement park tickets, dinner at Tao Restaurant in Manhattan, and a trip to Capt'N Jacks Island Grill in Wildwood, New Jersey. *See* Ex. B at Ex.2 136:5-23, Ex. 17.

67.  Section 75(4) of the Lien Law imposes a duty to maintain a proper accounting of trust assets; and any failure to do so creates a presumption of diversion of assets to non-trust purposes.  *See* N.Y. Lien Law § 75.4.5.

68.  The Debtor admitted in discovery in the State Court Action that he did not maintain full, complete and accurate records for the Construction Project, paid all subcontractors and suppliers on the Construction Project in cash, did not report any paid wages to

## A-275

the IRS or the State of New York, and filed no tax returns for the relevant time period. *See* Ex. B, Ex. 2 13:5-23, 14:4-7, 36:8-16, 54:3-21, 201:2-6, 209:23-25, 210:3-6, 211:8-18.

69.     The Debtor admitted in discovery in the State Court Action that the only records that he had relating to the Construction Project were purportedly contained in QuickBooks. *Id.* 54:3-21.

70.     The Debtor testified in discovery in the State Court Action that his failure to keep Project records was because, "[he had] no idea what [he was] doing when it [came] to bookkeeping," and that it was just something he had "always been bad at." *Id.* 50:6-9, 64:24-25.

71.     The Debtor breached his fiduciary duty by diverting Project Payments for nontrust uses.

72.     Plaintiff is not the only party to have been directly harmed by the Debtor's defalcations.  As noted above in paragraph 35, in April 2018, M&S commenced an action in the Supreme Court of the State of New York, Westchester County (Index No. 54816/2018), claiming, among other things, that even though Plaintiff paid the Debtor the $43,788.00 due and owing to M&S, the Debtor illegally diverted that payment for its own purposes in violation of the New York Lien Law.

73.     Accordingly, Plaintiff has a claim in excess of $460,000 plus interest and reasonable attorneys' fees.

74.     Plaintiff's claim is non-dischargeable under 11 U.S.C. § 523(a)(4).

### COUNT III – OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 523(a)(4) FOR EMBEZZLEMENT

75.     Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 74 of this Complaint as if fully re-alleged herein.

A-276

76.     Pursuant to section 523(a)(4) of the Bankruptcy Code, a debtor is not discharged of a debt obtained by embezzlement.

77.     For purposes of section 523(a)(4), embezzlement requires a showing that (a) the debtor rightfully possessed another's property; (b) the debtor appropriated the property for use other than the use for which the property was entrusted; and (c) the circumstances implied a fraudulent intent.

78.     Absent an intent to defraud, the use of trust funds for any other purpose creates a strong inference of deceit or fraudulent intent.

79.     Between June 27, 2016 and March 11, 2017, Plaintiff made several Project Payments to the Debtor, aggregating $840,828.22.

80.     Before making each Project Payment, the Debtor told Plaintiff that each payment would be applied to the cost of work, labor, services and materials for the Construction Project.

81.     On or about May 4, 2017, the Debtor represented to Plaintiff that he had furnished $840,828.00 of work, labor, services and materials for the Construction Project.

82.     However, the Debtor admitted in discovery in the State Court Action that out of the Project Payments of $840,828.22, only $379,793.50 was paid on account of work and materials furnished for the Construction Project. *See* Ex. B at Ex.11 pp. 3-4.

83.     The Debtor was in rightful possession of the Project Payments and embezzled over $460,000 of the Project Payments.

84.     Accordingly, Plaintiff has a claim in the amount in excess of $460,000, plus interest and reasonable attorneys' fees.

**A-277**

85.      Plaintiff's claim is non-dischargeable under 11 U.S.C. § 523(a)(4).

## COUNT IV – OBJECTION TO DISCHARGE UNDER
## 11 U.S.C. § 523(a)(6) FOR WILLFUL AND MALICIOUS INJURY

86.      Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 85 of this Complaint as if fully re-alleged herein.

87.      Pursuant to section 523(a)(6) of the Bankruptcy Code, a debtor is not discharged of any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.

88.      At all relevant times, despite Plaintiff's repeated demands of the Debtor for a written agreement memorializing the terms of their contract, the Debtor knowingly, intentionally and wrongfully refused to prepare an agreement for the Construction Project.

89.      Upon information and belief, the Debtor violated section 771 of New York's General Business Law and section 135-5 of the Putnam County Administrative Code, which require that for work such as the Construction Project, the general contractor prepare a written contract between the general contractor and owner.

90.      The Debtor willfully and maliciously caused injury to Plaintiff by intentionally refusing to prepare a written agreement and misrepresenting, among other things, his qualifications and licensure to conduct business as a home improvement contractor, the amount of trust monies paid to subcontractors and suppliers and which subcontractors and suppliers had been paid.

91.      The Debtor's willful and malicious actions caused damages to Plaintiff in the amount in excess of $2,000,000.00, plus interest and reasonable attorneys' fees.

92.      Such claim is non-dischargeable under 11 U.S.C. § 523(a)(6).

14

**A-278**

## COUNT V – DENIAL OF DISCHARGE UNDER 11 U.S.C. §727(a)(2)
### FOR FRAUDULENT PRE-PETITION TRANSFERS

93.     Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 92 of this Complaint as if fully re-alleged herein.

94.     Pursuant to section 727(a)(2) of the Bankruptcy Code, a debtor is not entitled to a discharge if he or she – with intent to hinder, delay or defraud a creditor – transferred, removed, destroyed, mutilated, or concealed property of the debtor within one year before the date of the filing of the petition, or transferred, removed, destroyed, mutilated, or concealed property of the estate after the date of the filing of the petition.

95.     Upon information and belief, the Debtor owned several vehicles and items of machinery and equipment within a year prior to the Petition Date that he did not list in his schedule of assets, including, without limitation, two (2) white commercial vans, a Kubota excavator, a commercial trailer, a 2010 Mercedes S55, two (2) Harley-Davidson motorcycles, a white Mustang Cobra and at least one boat (collectively, the "**Unscheduled Property**").

96.     An intent to hinder, delay, or defraud a creditor is implied if a debtor fails to make full disclosure of assets of substantial value in the bankruptcy schedules.

97.     Upon information and belief, within one year prior to the Petition Date, the Debtor transferred or concealed the Unscheduled Property with intent to hinder, delay or defraud his creditors including, without limitation, Plaintiff.

98.     Accordingly, the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2).

## A-279

### COUNT VI – DENIAL OF DISCHARGE UNDER
### 11 U.S.C. §727(a)(3) FOR FAILURE TO KEEP RECORDS

99.　　Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 98 of this Complaint as if fully re-alleged herein.

100.　　Pursuant to section 727(a)(3) of the Bankruptcy Code, a debtor is not entitled to a discharge if he or she concealed, destroyed, mutilated, falsified or failed to keep or preserve recorded information, including books, documents, records, and papers from which his financial condition or business transactions might be ascertained, unless such act or failure to act was justified.

101.　　For purposes of section 727(a)(3), the debtor must have failed to keep or preserve books or records under such circumstances that the debtor's financial condition or business transactions might have been ascertained from such books or records.

102.　　If the nature and extent of the debtor's transactions are such that others in like circumstances would ordinarily keep financial records, the debtor has a duty to preserve books and records that would be material to a proper understanding of his business condition.

103.　　As set forth above, the Debtor admitted that he did not maintain nearly any books and records related to the Construction Project, with the exception of certain QuickBooks entries.

104.　　On August 27, 2018, court Attorney-Referee Jeannette M. Millner, of the Supreme Court of the State of New York, County of Westchester – Compliance Part, directed the Debtor to allow Plaintiff to inspect his QuickBooks files on or before September 5, 2018.

105.　　A copy of the Compliance Conference Referee Report & Order is annexed hereto as Exhibit "D."

## A-280

106.     As of the Petition Date, the Debtor had failed to comply with the Compliance Conference Referee Report & Order.

107.     As a business person and statutory trustee, the Debtor was under an affirmative duty to preserve books and records related to the Construction Project because such books and records are material to a proper understanding of the Debtor's financial condition.

108.     As set forth above, the Debtor's failure to maintain fundamental records relating to the Construction Project precludes Plaintiff's from assessing his financial affairs with respect to the Construction Project.

109.     As set forth above, the Debtor, without justification, has concealed, destroyed, or failed to keep or preserve recorded information from which his business transactions may be ascertained.

110.     Accordingly, the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(3).

### COUNT VII – DENIAL OF DISCHARGE UNDER 11 U.S.C. §727(a)(4) FOR FALSE OATH IN CONNECTION WITH THE BANKRUPTCY CASE

111.     Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 110 of this Complaint as if fully re-alleged herein.

112.     Pursuant to section 727(a)(4) of the Bankruptcy Code, a debtor is not entitled to a discharge if he or she knowingly and fraudulently made a false oath or account in connection with the bankruptcy case.

113.     For purposes of section 727(a)(4), fraud may be established by showing that the debtor acted with reckless and cavalier disregard for the truth. The cumulative effect of a

**A-281**

number of serious allegations of nondisclosure adequately establishes a pattern of reckless disregard for the truth.

114.     During discovery in the State Court Action, the Debtor testified that he failed to file certain tax returns. *See* Ex. B, Ex. 2 13:5-23, 14:4-7, 36:8-16, 211:8-18.

115.     Upon information and belief, the Internal Revenue Service and the New York State Department of Taxation and Finance are creditors of the Debtor on account of taxes with respect to which the Debtor failed to file returns.

116.     Upon information and belief, the Debtor, knowingly and fraudulently, made a false oath with respect to his schedules, as amended, by failing to list the Internal Revenue Service and the New York State Department of Finance and Taxation as creditors.

117.     Upon information and belief, the Debtor, knowingly and fraudulently, made a false oath with respect to his schedules, as amended, by failing to list as property of his bankruptcy estate his interests in the Unscheduled Property.

118.     Upon information and belief, the Debtor, knowingly and fraudulently, made a false oath with respect to his schedules and statement of financial affairs, as amended, by failing to account for his transfers of the Unscheduled Property.

119.     Upon information and belief, the Debtor, knowingly and fraudulently, made a false oath with respect to his schedules and statement of financial affairs, as amended, by grossly understating his income by failing to include commissions from a number of construction and real estate investment projects he was directly or indirectly engaged in.

**A-282**

120.  The sheer volume of omissions and misstatements in the Debtor's schedules and statement of financial affairs conclusively establishes that the Debtor filed his schedules and statement of financial affairs with reckless and cavalier disregard for the truth.

121.  Accordingly, the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4).

*       *       *


*[REMAINDER OF PAGE INTENTIONALLY BLANK]*

## A-283

**WHEREFORE**, Plaintiff requests that this Court determine:

    a. With respect to count I, that the debt owed by the Debtor to Plaintiff in the amount of $2,000,000.00 constitutes a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(2)(A);

    b. With respect to count II, that the debt owed by the Debtor to Plaintiff in the amount of $460,000.00 constitutes a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(4);

    c. With respect to count III, that the debt owed by the Debtor to Plaintiff in the amount of $460,000.00 constitutes a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(4);

    d. With respect to count IV, that the debt owed by the Debtor to Plaintiff in the amount of $2,000,000.00 constitutes a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(4);

    e. With respect to count V, that the Debtor is not entitled to a discharge under 11 U.S.C. § 727(a)(2);

    f. With respect to count VI, that the Debtor is not entitled to a discharge under 11 U.S.C. § 727(a)(3);

    g. With respect to count VII, that the Debtor is not entitled to a discharge under 11 U.S.C. § 727(a)(4);

    h. With respect to all counts, that Plaintiff is entitled to reasonable attorneys fees and expenses incurred in bringing this adversary proceeding;

    i. With respect to all counts, that Plaintiff shall recover all costs incurred in prosecuting this adversary proceeding; and

    j. Awarding Plaintiff such other and further relief to which it may be entitled.

Dated: New York, New York
      December 14, 2018

            ROSEN & ASSOCIATES, P.C.
            *Counsel to LAK3, LLC*

            By: /s/ Sanford P. Rosen
                Sanford P. Rosen

            747 Third Avenue
            New York, NY 10017-2803
            (212) 223-1100

# EXHIBIT A

**A-285**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

| | |
|---|---|
| LAK3, LLC, | **INDEX NO.** |
| Plaintiff, | |
| | **IAS PART** |
| -against- | **JUSTICE** |
| | **COMPLAINT** |
| SEAN DUNN, GERALD DUNN, AND WELL DUNN MAINTENANCE & CONTRACTING | |
| Defendants. | |

Plaintiff LAK3, LLC ("Plaintiff"), by and through its counsel, GordonLaw LLP, as and

for its Complaint in this action, hereby alleges as follows:

### NATURE OF THE ACTION

1.     Plaintiff owns the real property known as and located at 41 Averill Drive,

Mahopac, New York (the "Property").

2.     In May 2016, Plaintiff engaged Defendants Sean Dunn ("Sean") and Gerald Dunn

("Gerald"), acting for themselves but using what Plaintiff now knows is a pseudonym, "Well

Dunn Maintenance & Contracting" ("Well Dunn") to demolish an existing single-family

residence at the Property and to build a new single-family residence there (the "Project").

3.     Plaintiff engaged Defendants based on the many representations that Sean and

Gerald made as to their alleged competence, skill, experience, licensure, and organizational

structure – all of which were important to Plaintiff and all of which turned out to be false.

FILED: WESTCHESTER COUNTY CLERK 08/04/2017 04:56 PM INDEX NO. 61510/2017
NYSCEF DOC. NO. 1 RECEIVED NYSCEF: 08/04/2017
3 of 19

A-286

4.     Upon information and belief, based upon public records of the State of New York and the Counties of Putnam and Westchester, Well Dunn is not a corporation, limited liability company, partnership, or any other business association, it is not registered as any such entity with the Secretary of State of the State of New York, it is not licensed or registered to do business in the State of New York or the Counties of Putnam or Westchester, and it does not maintain workers' compensation insurance.

5.     Upon information and belief, Well Dunn is a misleading pseudonym that Sean Dunn and Gerald Dunn have been using – and used to secure the position of general contractor for the Project – to create the false impression that they operate a residential home improvement construction company with the resources and organizational structure that a reasonable person would expect from a company so advertised.

6.     Upon information, neither Sean Dunn nor Gerald Dunn had or have anything close to the level of competence, skill, or experience they told Plaintiff's representatives they had when they persuaded Plaintiff to retain Defendants as the general contractor on the Project.

7.     As a direct and proximate result of (a) the gross incompetence of Defendants Sean, Gerald, and Well Dunn (together, the "Defendants"), and (b) the knowing and intentional fraud, deception, defalcation and larceny that Defendants perpetrated on Plaintiff, as set forth more fully below, Plaintiff has been damaged in amount to be proved at trial but believed to be at least $1 million, and the construction of the Project has been delayed by almost one year.

8.     As a further direct and proximate result of the gross incompetence of Defendants, and the knowing and intentional fraud, deception, defalcation and larceny that Defendants perpetrated on Plaintiff, (a) trust fund monies that Plaintiff had earmarked for the Project by Plaintiff and entrusted to Defendants were, upon information and belief, knowingly and

2

intentionally diverted by Defendants for their own personal, non-Project related purposes, (b)
false financial statements, upon which Plaintiff relied to its detriment, were knowingly and
intentionally created by Defendants so as to conceal from Plaintiff Defendants' defalcations,
embezzlement, and larcenies, and (c) subcontractors and suppliers, who, upon information and
belief, were entitled to trust fund dollars that Plaintiff paid to and put into the care and custody of
Defendants, were not paid by Defendants, even though Defendants falsely represented to
Plaintiff that all subcontractors and suppliers had been paid in full.

9.      Accordingly, Plaintiff brings this action because Defendants, in whom Plaintiff
placed its trust and confidence and in whom Plaintiff entrusted Project monies, knowingly,
intentionally, recklessly, wrongfully, and in bad faith embezzled from Plaintiff, deprived
Plaintiff of property that Defendants knew belonged to Plaintiff, defrauded Plaintiff, and failed
and refused to complete the Project properly and timely.

10.     More specifically, Plaintiff brings this action because Defendant, acting at all
relevant times as Plaintiff's fiduciaries, knowingly, intentionally, wrongfully, and in bad faith:

(a)     failed to complete the Project properly and on time,

(b)     deviated from the Project design,

(c)     failed to follow proper construction means and methods,

(d)     violated manufacturer installation guidelines,

(e)     violated applicable construction-related laws and building codes,

(f)     refused to enter into a written agreement with Plaintiff despite Plaintiff's repeated
demands for a written agreement,

(g)     failed to maintain licenses and registrations required by governmental regulation,

3

## A-288

(h)     falsely represented to Plaintiff and the New York State Compensation Board that Well Dunn is a corporation, even though Defendants knew at the time of such submission that Well Dunn was not a corporation;

(i)     falsely represented to Plaintiff and state and local governmental agencies that Defendants had maintained all required licenses and registrations,

(j)     falsely represented to Plaintiff that Defendants maintained required Workers' Compensation Insurance,

(k)     failed to pay subcontractors and suppliers, causing, among other things, at least one Notice of Mechanic's Lien to be filed against the Property by a subcontractor,

(l)     diverted Lien Law trust fund monies in violation of the New York Lien Law, and

(m)    submitted to Plaintiff a so-called "Partial Release and Waiver of Lien Right" falsely stating, among other things, that "all persons or entities who have furnished labor or materials to [Defendants] in connection with the [Project] performed through the date hereof have been paid all amounts to which they have become entitled, excepting agree retainage not yet payable and due."

11.     As a direct and proximate result of the misconduct set forth above in Paragraph 4, the single-family residence that is the subject of the Project has not been constructed properly, the Project has been substantially and unreasonably delayed, Lien Law trust fund monies have been diverted from the Project and from Project subcontractors and suppliers, Project-related construction work must be re-done, and a swath of laws and regulations enacted and promulgated by New York State, Putnam County, Westchester County, and the Town of Carmel have been violated, to the detriment of Plaintiff and the public.

4

## A-289

12.     Plaintiff seeks fair compensation for the damage Defendants have caused as well as the imposition of punitive damages, which will serve to dissuade Defendants from perpetrating such misdeeds in the future

### JURISDICTION AND VENUE

13.     This Court has jurisdiction over this matter and the parties because the events that give rise to this action occurred within the State of New York, and, upon information and belief, all parties are residents of the State of New York.

14.     Venue is proper in this Court because Plaintiff is a resident of Westchester County, New York, and, upon information and belief, Defendants are all residents of Westchester County, New York.

### THE PARTIES

15.     Plaintiff is a limited liability company that has its principal place of business in Yorktown Heights, New York, which is located in Westchester County, New York.

16.     Defendant Sean Dunn is an individual who, upon information and belief, resides in Yorktown Heights, New York, which is located in Westchester County, New York.

17.     Defendant Gerald Dunn is an individual who, upon information and belief, resides in Yorktown Heights, New York, which is located in Westchester County, New York.

18.     Upon information and belief, Defendant Well Dunn Maintenance & Contracting is a pseudonym or trade name under which Sean Dunn and/or Gerald Dunn, together and/or separately, do business.

19.     Alternatively, upon information and belief, Well Dunn is an unlicensed, unregulated, improperly formed, and improperly functioning business association with an office in Yorktown Heights, New York, which is located in Westchester County, New York.

5

## A-290

### THE FACTUAL BACKGROUND

### A.  The Background Facts regarding the Project

20.  Plaintiff purchased the Property in or about August 2015.

21.  On or about January 13, 2016, Ned Kleinschmidt and Lesley Kleinschmidt (together, the "Kleinschmidts"), on behalf of Plaintiff, met with Defendants at the offices of Michael A. Piccirillo in Yorktown Heights, Westchester County, to discuss the Project.[1]

22.  Before meeting with Sean and Gerald, the Kleinschmidts read the contents of the Well Dunn website.

23.  The Kleinschmidts saw on the Well Dunn web site that, among other things, Well Dunn touted itself as experienced home improvement contract, that it was located in Yorktown Heights, where the Kleinschmidts resided, that it was experienced in all types of home improvement projects and had many clients that would give it positive reviews, and that it was licensed in Westchester County, Putnam County, the City of Yonkers and "all of Connecticut."

24.  The Kleinschmidts relied on what they had read on the Well Dunn web site and had no reason to doubt any of the information set forth on that web site.

25.  Indeed, upon information and belief, Defendants knowingly and intentionally submitted a false Putnam County contractor's license number when they applied for a building permit for the Project.

26.  When the Kleinschmidts met with Defendants, Defendants repeated and expanded upon what the Kleinschmidts had read on the Well Dunn web site; that is, Defendants touted

---

[1] At all relevant times, Ned Kleinschmidt has been the Managing Member of Plaintiff, and Lesley Kleinschmidt has been an agent of Plaintiff, and the Kleinschmidt have been authorized to act on Plaintiff's behalf.

6

## A-291

themselves as experienced home improvement contractors who were licensed in Putnam County
and who knew how to build the house that Plaintiff wanted to build.

27.     The Kleinschmidts had no reason to doubt, and did not doubt, anything that

Defendants said at the January 13, 2016 meeting; in fact, the Kleinschmidts relied upon what

Defendants had said at the January 13, 2016 meeting and concluded, based upon what

Defendants had said, that Defendants were qualified in all respects to serve as Project General

Contractor.

28.     Based upon the representations that Defendants made to the Kleinschmidts and

therefore Plaintiff at the January 13, 2016 meeting, the statements that the Kleinschmidts saw on

the Well Dunn web site, the Kleinschmidts agreed to accept a bid from Defendants for the

Project.

29.     After a meeting among the Kleinschmidts and Defendants that took place on

March 9, 2016, Defendants submitted a bid to Plaintiff for the Project in the amount of

$1,150,000 plus approved changed orders.

30.     The bid that Defendants submitted on March 16, 2016 was based on construction

plans and specifications that were prepared for the Project by Michael A. Picicirillo, AIA (the

"Plans and Specifications"), which were delivered to Defendants.

31.     Defendants reviewed the Plans and Specifications before submitting their bid on

the Project and agreed to construct the Project according to the Plans and Specifications.

32.     On or about March 18, 2016, Plaintiff awarded the role of Project General

Contractor to Defendants.

7

**FILED: WESTCHESTER COUNTY CLERK 08/04/2017 04:56 PM**    INDEX NO. 61510/2017
NYSCEF DOC. NO. 38    RECEIVED NYSCEF: 08/04/2017

9 of 19

## A-292

33.    On or about March 18, 2016, Defendants accepted the role of Project General Contractor, knowing that in so doing it would be entering into a position of trust and confidence with Plaintiff.

34.    Despite repeated demands from Plaintiff throughout the Project for a written agreement to document the terms of the contract between Plaintiff and Defendants, Defendants knowingly, intentionally, and wrongfully refused to prepare such a written agreement for the Project.

35.    The laws of the State of New York and Putnam County require that for construction projects such as the Project, the general contractor must prepare a written contract between the general contractor and owner.

36.    The laws of the State of New York and Putnam County require that for construction projects such as the Project, a general contractor must be registered and licensed to do business as a general contractor.

37.    Upon information and belief, Defendants violated the laws described in Paragraphs 35 and 36.

38.    In or about June 2016. Defendants requested an initial payment of $165,000.00 for what Defendants represented would be applied to the cost of construction work, labor, services, and materials.

39.    On or about June 27, 2016, Plaintiff, at the request of Defendants, as aforesaid, made an initial payment of $ 165,000.00 for Project construction work, labor, services and materials.

40.    On or about June 26, 2016, the Project began.

8

## A-293

41. Between June 27, 2016 and March 11, 2017, Plaintiff paid Defendants, in total, the sum of $840,828.22 for what Defendants told Plaintiff was being applied to the cost of Project construction work, labor, services and materials.

42. Upon information and belief, Defendants engaged a number of subcontractors and purchased materials from a number of suppliers for the Project.

43. Upon information and belief, Defendants represented to the subcontractors and suppliers on the Project that they would be paid for the work, labor, services and materials they furnished to and for the benefit of the Project from funds specifically provided for the Project by Plaintiff, the owner of the Project.

44. The monies that Plaintiff paid to Defendants for the Project were trust funds within the meaning of the Lien Law of the State of New York.

45. Upon information and belief, Defendants knew at all relevant times that the monies that Plaintiff paid to Defendants for the Project were trust funds within the meaning of the Lien Law of the State of New York.

46. During the course of construction, Defendants made repeated representations to Plaintiffs, orally and in writing, as to the value of work, labor, services, and materials that had been furnished to and for the benefit of the Project.

47. Upon information and belief, all of Defendants' representations about the value of Project-related construction work, labor, services, and materials that Defendants supposedly furnished to and for the benefit of the Project were false; for example, on or about May 4, 2017, Defendants represented to Plaintiff that (a) Defendants had furnished $840,828.00 of work, labor, services, and materials in, at, and for the benefit of the Project and (b) all subcontractors and suppliers who were responsible for furnishing such work, labor, services and materials had

9

FILED: WESTCHESTER COUNTY CLERK 08/04/2017 04:56 PM    INDEX NO. 61510/2017
NYSCEF DOC. NO. 90  Case 20-Doc 4193-Filed 02/17/18  Entered 02/17/18 11:57:48  Exhibit A  Pg 08/04/2017
11 of 19

A-294

been paid in full, even though Plaintiff has determined that not more than $370,000 in work, labor, services, and materials have been furnished in, at, and for the benefit of the Project and that not all subcontractors and suppliers have been paid in full.

48.     Upon information and belief, Defendants knew at the time they made their representations about the value of the Project-related construction work, labor, services, and materials that Defendants supposedly furnished to and for the benefit that those representations were false.

49.     Upon information and belief, Defendants intended for Plaintiff to rely upon the knowingly false representations that Defendants actively and deceptively made to Plaintiff about the value of the Project-related construction work, labor, services, and materials and the payment of subcontractors and suppliers so that Plaintiff would continue to provide funding to and for the benefit of the Project.

50.     Until approximately mid-March 2017, Plaintiff relied in good faith upon the representations that Defendants made about the value of the Project-related construction work, labor, services, and materials that Defendants supposedly furnished to and for the benefit of the Project.

51.     Upon information and belief, Defendants failed to pay at least two subcontractors, M&S Steel and Hauptman Enterprises, both of which have claimed to have furnished work, labor, services and materials to and for the benefit of the Project even though (a) Defendants requested that Plaintiff pay such amounts, (b) Defendants told Plaintiff that these two subcontractors were entitled to the payments requested, and (c) Plaintiff did pay such amounts at Defendants' request to Defendants.

10

**FILED: WESTCHESTER COUNTY CLERK 08/04/2017 04:56 PM** INDEX NO. 61510/2017
NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 08/04/2017
12 of 19

## A-295

52.     On or about July 17, 2017, M&S filed a Notice of Mechanic's Lien against the Property alleging that M&S furnished work, labor, services, and materials in the amount of $43,788 but was not paid any portion of that, even though Defendants represented in writing to Plaintiff that M&S, among other subcontractors and suppliers, had been paid in full.

53.     Plaintiff has discovered that many aspects of the Project-related construction work, labor, services and materials that Defendants allegedly furnished to and for the benefit of the Project either were not furnished or were furnished improperly or not in compliance with the Plans and Specifications.

54.     For example, Plaintiff has learned that all of the Sierra Pacific windows that Plaintiff purchased for the Project and that Defendants, directly or through a subcontractor, were tasked to install (and were paid to install) were installed by Defendants (directly or through a subcontractor) incorrectly, in violation of the manufacturer's installation instructions, and out of compliance with the Plans and Specifications, and will need to be removed and re-installed, at great financial and temporal expense.

55.     Also by way of example, Defendants failed to install the ZIP sheathing system that serves to weatherize the house properly, causing that system to remain exposed to the elements longer than appropriate, in violation of the manufacturer's installation instructions and out of compliance with the Plans and Specifications.

56.     Despite Plaintiffs' repeated demands to Defendants to cure the defective construction conditions that Defendants caused, Defendants refused to do so.

57.     In light of the defective construction conditions caused by Defendants, and in light of Defendants' refusal to cure those defective conditions, Plaintiff terminated Defendants as Project General Contractor for cause on or about June 19, 2017.

11

## A-296

58.     Defendants did not dispute that there were ample grounds for Plaintiff to terminate Defendants for cause.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

59.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-58 above as if fully set forth herein.

60.     A contract (the "Oral Contract") was formed between Plaintiff and Defendants when Defendants agreed to serve as Project General Contractor pursuant to the Plans and Specifications and Plaintiff agreed to pay Defendants $1,150,000 plus the amount of approved change orders to serve in that capacity.

61.     Plaintiff upheld all of its obligations under the Oral Contract by making all required payments, making the Project site available to Defendants, cooperating with Defendants, and taking all steps that owners of residential construction projects ordinarily and reasonably take on projects such as this.

62.     Under the Oral Contract, Defendants had a duty to, among other things, (a) complete the Project properly and on time, (b) follow and adhere to the Plans and Specs, proper construction means and methods, manufacturer installation guidelines, and applicable laws and building codes, (c) and pay subcontractors and suppliers.

63.     Defendants failed to meet their obligations under the Oral Contract by failing to complete the Project properly and on time, deviating materially from the Plans and Specs, not following proper construction means and methods, violating manufacturer installation guidelines, violating applicable laws and building codes by, among other things, failing and refusing to enter into a written agreement with Plaintiff and not maintaining appropriate licenses and registrations, failing to pay subcontractors and suppliers, causing at least one Notice of

12

## A-297

Mechanic's Lien to be filed against the Property, and diverting Lien Law trust fund monies in violation of the New York Lien Law.

64.    As a direct and proximate result of Defendants' breach of the Oral Contract, as aforesaid, the single-family residence that is the subject of the Project has not been constructed properly, the Project has been substantially and unreasonably delayed, Lien Law trust fund monies have been diverted from the Project and from Project subcontractors and suppliers, and Project-related construction work must be re-done.

65.    As a direct and proximate result of Defendants' breach of the Oral Contract, as aforesaid, Plaintiff has been damaged in an amount to be proven at trial but believed to be in excess of $1,000,000.00.

66.    As a direct and proximate result of Defendants breach of fiduciary duty, Plaintiff has been damaged in an amount to be proven at trial but believed to be in excess of $1,000,000.00.

67.    Defendants are estopped from raising the Statute of Frauds with respect to the Oral Contract because despite Plaintiffs' repeated demands for a written contract, Defendants, in violation of the law, knowingly, intentionally, wrongfully, and in an effort to further their scheme to perpetrate defalcations, embezzlements, and larcenies against Plaintiff, refused to enter into such a written agreement.

### AS AND FOR A SECOND CAUSE OF ACTION
### (For *quantum meruit* and unjust enrichment)

68.    Plaintiff repeats and realleges the allegations set forth above in Paragraphs 1-67 as if fully set forth herein.

69.    To the extent the Oral Contract is found to be invalid, violative of the Statute of Frauds, or otherwise unenforceable, Defendants will have been unjustly enriched by its

13

FILED: WESTCHESTER COUNTY CLERK 08/04/2017 04:56 PM          INDEX NO. 61510/2017
NYSCEF DOC. NO. 90          15 of 19          RECEIVED NYSCEF: 08/04/2017

A-298

misconduct, as aforesaid, and Plaintiff will be entitled to pursue and recover all amounts sought
in the First Cause of Action in quasi-contract based on the principles of *quantum meruit* and
unjust enrichment.

70.    By reason of the foregoing, Defendants have been unjustly enriched at the
expense of Plaintiff.

71.    By reason of the foregoing, Defendants unjustly received valuable property and
were unjustly enriched at the expense of Plaintiff, as aforesaid.

72.    The circumstances are such that equity and good conscience require Defendants
to make restitution or otherwise compensate Plaintiff for the unjust enrichment it has enjoyed at
the expense of Plaintiff, in an amount to be proven at trial but believed to be in excess of
$1,000.000.00.

### AS AND FOR A THIRD CAUSE OF ACTION
### (For fraud)

73.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-72 above as
if fully set forth herein.

74.    Defendants made repeated representations about their competence, skill,
experience, licensure, and organizational structure to the Kleinschmidts, who at all relevant
times acted for and on behalf of Plaintiff, at a number of meetings that were attended by, among
others, Sean, Gerald, and the Kleinschmidts, as more fully and specifically described above.

75.    The representations that Defendants to Plaintiff made were material to Plaintiffs'
decision to engage Defendants as Project General Contractor and to make payments to
Defendants during the Project.

76.    Upon information and belief, the material representations that Defendants made
as to their competence, skill, experience, licensure, and organizational structure were false.

14

## A-299

77. Upon information and belief, Defendants knew that material representations that Defendants made as to their competence, skill, experience, licensure, and organizational structure were false.

78. Upon information and belief, Defendants intended for Plaintiff to rely upon the false, material representations that Defendants made as to their competence, skill, experience, licensure, and organizational structure.

79. Plaintiff relied to its detriment upon the false, material representations that Defendants made as to their competence, skill, experience, licensure, and organizational structure were false.

80. As a direct and proximate result of the knowingly false, material representations that Defendants made to Plaintiff, Plaintiff retained Defendants to serve as Project General Contractor.

81. But for the false, material representations that Defendants made as to their competence, skill, experience, licensure, and organizational structure, Plaintiff would not have offered the job of Project General Contractor to Defendants and would not have retained Defendants as Project General Contractor.

82. As a direct and proximate result of the knowingly false, material representations that Defendants made to Plaintiff, upon which Plaintiff relied to its detriment, as aforesaid, Plaintiff has been damaged in an amount to be proven at trial but believed to be in excess of $1,000,000.00.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (For breach of fiduciary duty)

83. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-82 above as if fully set forth herein.

15

## A-300

84.    As Project General Contractor, Defendants owed a fiduciary duty to Plaintiff.

85.    When Defendants agreed to become, and became, Project General Contractor,

they entered into a relationship of trust and confidence with Plaintiff.

86.    Based upon the knowing, intentional, and wrongful misconduct, as aforesaid,

Defendants knowingly and intentionally and with a culpable state of mind breached their

fiduciary duty to Plaintiff.

87.    Based upon the knowing, intentional, and wrongful misconduct, as aforesaid,

Defendants knowingly and intentionally and with a culpable state of mind violated the

relationship of trust and confidence with Plaintiff.

88.    As a direct and proximate result of Defendants' breach of fiduciary duty, as

aforesaid, Plaintiff has been damaged in an amount to be proven at trial but believed to be in

excess of $1,000,000.00.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (Lien Law Trust Fund Diversion)

89.    Plaintiff repeats and realleges Paragraphs 1-88 above as if fully set forth herein.

90.    During the Project, Plaintiff paid to Defendants a total of at least $840,828.22 for

what Plaintiff reasonably believed was the cost of the work, labor, services, and materials that

had been furnished to and for the benefit of the Project.

91.    Plaintiff made the payments described in Paragraph 90 above based upon

Defendants' demand for same.

92.    Plaintiff made the payments described in Paragraph 90 above based upon

Defendants' repeated representations that all payments that were due to subcontractors and

suppliers on the Project had been made and no subcontractors or suppliers were due any money

for work, labor, services or materials they had furnished to and for the benefit of the Project.

16

## A-301

93.     Plaintiff reasonably relied upon the representations described in Paragraph 92

above.

94.     The representations by Defendants described in Paragraph 92 above were false.

95.     Upon information and belief, Defendants knew that the representations they had

made, as described in Paragraph 92 above, were false, and Defendants intended to deceive

Plaintiff by making such misrepresentations, all of which were material.

96.     The monies that Plaintiff paid to Defendants for the Project were and are trust

funds within the meaning of the New York Lien Law.

97.     Upon information and belief, Defendants diverted a substantial portion of the

aforesaid trust funds, the exact amount of which is unknown but which will be proved at trial,

for personal, non-Project related purposes, in violation of the New York Lien Law.

98.     As a direct and proximate result of Defendants' diversion of Lien Law Trust

funds, a Notice of Mechanic's Lien has been filed against the Property.

99.     As a direct and proximate result of Defendants' division of Lien Law Trust funds,

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.      On the First Cause of Action, judgment for damages in an amount to be proven at

the time of trial, but believed to be in excess of $1,000,000.00, plus pre-judgment interest;

B.      On the Second Cause of Action, judgment for damages in an amount to be proven

at the time of trial, but believed to be in excess of $1,000,000.00, plus pre-judgment interest;

C.      On the Third Cause of Action, judgment for damages in an amount to be proven

at the time of trial, but believed to be in excess of $1,000,000.00, plus pre-judgment interest;

17

**A-302**

D.    On the Fourth Cause of Action, judgment for damages in an amount to be proven

at the time of trial, but believed to be in excess of $1,000,000.00, plus pre-judgment interest;

E.    On the Fifth Cause of Action, judgment requiring Defendants to disgorge all

diverted Lien Law Trust Funds, the amount of which will be proven at trial.

F.    For such other and further relief as is just and proper, including without limitation

awarding Plaintiff its reasonable attorneys' fees and court costs.

Dated: Katonah, New York
       August 4, 2017

GORDONLAW LLP

By:    Michael R. Gordon

*Attorneys for Plaintiff LAK3, LLC*

51 Bedford Road, Suite 10
Katonah, New York 10536
914.232.9500
mgordon@gordonlawllp.com

18

A-303

# EXHIBIT B

A-304

**WORKING COPY**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

|  |  |
|---|---|
| LAK3, LLC,<br><br>　　　　　Plaintiff,<br><br><br>　　-against-<br><br><br>SEAN DUNN, GERALD DUNN, AND WELL<br>DUNN MAINTENANCE & CONTRACTING,<br><br>　　　Defendants. | **INDEX NO. 61510/2017**<br><br><br>**IAS PART**<br><br><br>**JUSTICE**<br><br>**PLAINTIFF'S NOTICE OF MOTION<br>FOR PARTIAL SUMMARY<br>JUDGMENT** |
| SEAN DUNN, GERALD DUNN, AND WELL<br>DUNN MAINTENANCE & CONTRACTING,<br><br>　　　Third-Party Plaintiffs,<br><br><br>　　-against-<br><br><br>MICHAEL PICCIRILLO ARCHITECTURE PLLC,<br>MICHAEL PICCIRILLO, and VLADIMIR LEVIN,<br><br>　　　Third-Party Defendants. |  |

**PLEASE TAKE NOTICE** that upon the annexed affirmation of Michael R.

Gordon, dated July 26, 2018, the exhibits annexed thereto, and the accompanying memorandum

of law, Plaintiff LAK3, LLC ("Plaintiff") will move this Court, at the Courthouse, 111 Dr.

Martin Luther King Jr. Blvd, White Plains, New York 10601, on August 20, 2018 at 9:30 a.m.,

1

**A-305**

or as soon thereafter as counsel can be heard, for an Order, pursuant to CPLR Rule 3212(e),

granting Plaintiff partial summary judgment in on liability on Plaintiff's Fourth and Fifth Causes

of Action in the Complaint in the captioned action, and for such other and further relief as is just

and proper.

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to CPLR Rule 2214(b),

answering papers and any cross-motion must be served at least seven days before the return date

of this motion.

Dated: Katonah, New York
July 26, 2018

GordonLaw LLP

By: _____
        Michael R. Gordon

*Attorneys for Plaintiff LAK3, LLC*

51 Bedford Road, Suite 10
Katonah, New York 10536
Telephone    914.232.9500
Email          mgordon@gordonlawllp.com

TO:    WILLIAM A. SHILLING, JR., P.C.
        122 Old Route 6
        Carmel, New York 10512

        *Attorneys for Defendants*

        Michael Piccirillo Architecture, PLLC
        Michael Piccirillo
        Vladimir Levin
        345 Kear Street, Suite 203
        Yorktown Heights, New York 10598

        *Third-Party Defendants*

A-306

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

LAK3, LLC,

        Plaintiff,

-against-

SEAN DUNN, GERALD DUNN, AND WELL
DUNN MAINTENANCE & CONTRACTING,

    Defendants.

---

SEAN DUNN, GERALD DUNN, AND WELL
DUNN MAINTENANCE & CONTRACTING,

    Third-Party Plaintiffs,

-against-

MICHAEL PICCIRILLO ARCHITECTURE PLLC,
MICHAEL PICCIRILLO, and VLADIMIR LEVIN,

    Third-Party Defendants.

**INDEX NO. 61510/2017**

**IAS PART**

**JUSTICE**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**GORDONLAW LLP**
**51 Bedford Road, Suite 2**
**Katonah, New York 10536**
**914.232.9500**
**mgordon@gordonlawllp.com**

## A-307

### Table of Contents

Preliminary Statement.................................................................................1

Statement of Undisputed Facts.....................................................................3

   A.   Defendants knowingly furnished home improvement contracting work for
      Plaintiff without a written contract......................................................3

   B.   Defendants Sean Dunn and Gerald Dunn used Well Dunn as their trade name; as of
      August 2016, Well Dunn was not an entity of any kind.........................5

   C.   Although Plaintiff paid Defendants $840,828.22 for the Project, Defendants stated that
      they only paid subcontractors and suppliers $379,793.50.......................6

   D.   Defendants are not licensed home improvement contractors, although they held
      themselves out as such when they secured the Project from Plaintiff.......................7

   E.   Defendants did not carry workers' compensation insurance for the Project.................8

   F.   Defendants comingled Project-related monies with other monies and used Plaintiff's
      money to pay for non-Project related expenses.....................................8

   G.   Defendants kept almost no records regarding the Project and kept absolutely no records
      as to cash paid to their laborers, who were all paid "off the books"........................10

Procedural History....................................................................................12

Argument................................................................................................13

      PLAINTIFF IS ENTITLED TO PARTIAL SUMMARY JUDGMENET.................13

   A. The legal standard applicable to this motion.........................................13

   B. Plaintiff is entitled to partial summary judgment on the Fourth and Fifth Causes of Action
      for Breach of Fiduciary Duty and Lien Law Trust Fund Diversions.......................15

      1.   The Fourth Cause of Action: breach of fiduciary duty..........................15

         a.   Defendants owe Plaintiff a fiduciary duty with respect to the funds that
            Plaintiff paid to Defendants......................................................16

i

**A-308**

    b.  Defendants breached their fiduciary duty to Plaintiff with respect to the monies paid to them by Plaintiff.................................................18

    c.  Plaintiff has been damaged by Defendants' breach of fiduciary duty......19

  2.  Fifth Cause of Action: Lien Law Trust Fund Diversion..........................19

Conclusion...........................................................................................22

A-309

## Table of Authorities

*Cases*                                                                                          *Page*

*AABCO Sheet Metal Co. v. Lincoln Ctr. For the Performing Arts,*
      174 Misc.2d 232, 663 N.Y.S.2d 490 (Sup. Ct. N.Y. Co. 1997)............................16, 19

*Armentano v. Paraco Gas Corp.,*
      90 A.D.683, 935 N.Y.S.2d 304 (2d Dep't. 2011)..........................................15-16

*Atlas Bldg. Sys. v. Rende,*
      236 A.D.2d 494, 653 N.Y.S.2d 694 (1997)................................................18

*Breslin Realty Dev. Corp. v. Lituchy,*
      269 A.D.2d 554, 703 N.Y.S.2d 746 (2d Dep't. 2000).......................................4

*Cohen Fashion Opt., Inc. v. V & M Opt., Inc.,*
      51 A.D.3d 619, 858 N.Y.S.2d 260 (2d Dep't. 2008).......................................13

*Fleck v. Perla,*
      40 A.D.2d 1069, 339 N.Y.S.2d 246 (4th Dep't. 1972).....................................18

*Golden Eagle/Satellite Archery v. Epling,*
      244 A.D.2d 959, 665 N.Y.S.2d 169 (4th Dep't. 1997).....................................16

*Holt Constr. Corp. v. Grand Palais, LLC,*
      108 A.D.3d 593, 969 N.Y.S.2d 499 (2d Dep't. 2013)......................................18

*Hulse v. Summerlin, LLC,*
      17 A.D.3d 317, 792 N.Y.S.2d 577 (2d Dep't 2005)........................................14

*Ideal Supply Co., Inc. v. Interstate Fire Protection, Inc.,*
      2016 N.Y. Misc. LEXIS 4242, 2016 NY Slip Op 32273(U) (Sup. Ct. N.Y. CO. 2016)
      ......................................................................................18

*Ippolito v. TJC Dev., LLC,*
      83 A.D.3d 57, 920 N.Y.S.2d 108 (2d Dep't. 2011)........................17, 18, 19, 20, 21

*Jorge v. Piola Prop. Mgt. LLC,*
      2017 N.Y. Misc. LEXIS 2428, 2017 NY Slip Op 50837(U) (Sup. Ct. Nassau Co. 2017)
      ......................................................................................17

*JSignal LLC v. Artisan Constr. Partners LLC,*
      2017 N.Y. Misc. LEXIS 2436, 2017 NY Slip Op 31348(U) (Sup. Ct. N.Y. Co. 2017)
      ......................................................................................17

*Landow & Landow Architects, P.C. v. Shorefront Jewish Geriatric Ctr.,*
      289 A.D.2d 492, 734 N.Y.S.2d 645 (2d Dep't. 2001).......................................4

iii

**A-310**

*LG Capital Funding, LLC v. Sanomedics Intl. Holdings, Inc.,*
    2015 N.Y. Misc. LEXIS 4294, 2015 NY Slip Op 32232(U) (Sup. Ct. Kings Co. 2015)
    .......................................................................................................14-15

*Nichols v. Hartford Fire Ins. Co.,*
    61 A.D.2d 555, 403 N.Y.S.2d 335 (3d Dep't. 1978)..........................................14

*NY Professional Drywall of OC, Inc. v. Rivergate Dev., LLC,*
    100 A.D.3d 216, 952 N.Y.S.2d 852 (3d Dep't. 2012)........................................16

*Pacheco v. City of New York,*
    2010 N.Y. Misc. LEXIS 2426, 2010 NY Slip Op 31400(U) (Sup. Ct. N.Y. Co. 2010)...15

*People v. Valenza,*
    60 N.Y.2d 363, 469 N.Y.S.2d 642 (1983)....................................................16

*Prestige Plumbing & Heating, Inc. v. B&B Constr., Inc.,*
    2013 N.Y. Misc. LEXIS 4279, 2013 NY Slip Op 32262(U) (Sup. Ct. N.Y. Co. 2013)...18

*Quilliams v. Half Hollow Hills School Dist. (Candlewood School),*
    67 A.D.3d 763, 892 N.Y.S.2d 397 (2d Dep't. 2009)..........................................14

*RLI Ins. Co., Sur. Div. v. New York State Dept. of Labor,*
    97 N.Y.2d 262, 740 N.Y.S.2d 276..........................................................20, 21

*SantiEsteban v. Crowder,*
    92 A.D.3d 544, 939 N.Y.S.2d 28 (1st Dep't. 2012)..........................................16

*Serge Dore 'Selections Ltd. v. Universal Wines & Spirits,*
    20 Misc.3d 1121(A), 867 N.Y.S.2d 378 (Sup. Ct. Westchester Co. 2008)..................13

*Smallwood v. Lupoli,*
    107 A.D. 3d 782, 968 N.Y.S.2d 515 (2d Dep't. 2013)........................................15

*South Carolina Steel Corp. v. Miller,*
    170 A.D.2d 592, 566 N.Y.S.2d 368 (1991)...................................................18

*Zuckerman v. New York,*
    49 N.Y.2d 557, 427 N.Y.S.2d 595 (1980)....................................................13

**_Statutes_**

CPLR 3212(b)..............................................................................................13

CPLR 3212(e)..............................................................................................14

Labor Law §240 (1)....................................................................................14, 15

Lien Law §70...........................................................................................16, 20

Lien Law §70(3)..........................................................................................20

## A-311

Lien Law §71..............................................................................16, 21

Lien Law §71-a.............................................................................16

Lien Law §71-a(4).........................................................................17

Lien Law §71-a(4)(a).....................................................................20

Lien Law §72................................................................................20

Lien Law §72(1)............................................................................20

## A-312

### Preliminary Statement

Plaintiff hereby moves pursuant to CPLR Rule 3212(e) for Partial Summary Judgment on

its Fourth and Fifth Causes of Action for, respectively, breach of fiduciary duty and Lien Law

Trust Fund diversion. The bases for this motion are (a) the deposition testimony of Defendants

Sean Dunn and Gerald Dunn and (b) clear and unambiguous documentation either produced by

Defendants, obtained from public sources, or substantively indisputable. This motion does not

rest on or require any statements by any Plaintiff's representatives.

This is a construction case.

In or about January 2016, Plaintiff, a limited liability company owned by Westchester

County residents Ned and Leslie Kleinschmidt and managed by Ned Kleinschmidt, entrusted

Westchester County residents Sean and Gerald Dunn and what they were led to believe was a

stand-alone business entity known as Well Dunn Maintenance and Contracting ("Well Dunn") to

build a single-family residence for the Kleinschmidts on Lake Mahopac (the "Project"). As it

turned out, none of the Defendants was (or is today) a licensed home improvement contractor in

Putnam County, Westchester County, or anywhere else for that matter.[1]

Things only got worse for Plaintiff once the Project began: among other things, (*a*) in

violation of General Business Law § 771 and § 135-5 of the Putnam County Administrative

Code, Defendants refused to, and never did, enter into a signed, written contract with Plaintiff,

and (*b*) in violation of the Lien Law, Defendants (and Sean Dunn's then fiancé) repeatedly and

---

[1]     The extent of Defendants' blatant disregard for the law is evident from the no doubt unusual
decision by the Department of Consumer Protection of Westchester County, which revoked Sean Dunn's
home improvement contractor license (apparently issued in the name of Sean Dunn doing business as
Well Dunn) in May 2015 because (a) he was operating an unlicensed home improvement contractor
business and (b) failed to pay the $10,000 in penalties that Westchester County assessed against him. *See*
Gordon Aff., Exh. 13.

1

**A-313**

with no hesitation whatsoever, dipped into the $840,828.22 Defendants extracted from Plaintiff

(and deposited into two personal bank accounts[3] ) for things such as car payments, exotic

vacations, fancy Manhattan restaurants, high end clothing sprees, the payment of personal credit

card bills, and other expenses having nothing to do with the construction of Plaintiff's house on

Lake Mahopac.[2] Lest there be any doubt about the extent of Defendants' gross misuse of monies

that Plaintiff paid for the construction of their house and Defendants' consequent violation of the

New York Lien Law, Sean Dunn gave the following astonishing testimony:

> Q.  So in other words, you use the bank account into which you put client money to pay your personal expenses, and that's how you compensate yourself?
>
> A.  Yeah.
>
> Q.  How long have you been doing that?
>
> A.  Since I've started my business.

Gordon Aff., Exh. 2 (Transcript of deposition testimony of Sean Dunn) at 55:2-8.

Put simply, Defendants took unfair advantage of the position of trust and confidence

Plaintiffs gave them, diverted for their own self-interest what were plainly Lien Law Trust funds,

misused hundreds of thousands of dollars that did not belong to them, obtained money from

Plaintiff under false pretenses, and repeatedly committed defalcations while acting as fiduciaries.

---

[2]    As noted below, Plaintiff is not challenging at this time, on this motion, the construction errors and omissions by Defendants that plagued the Project. Those issues will be raised separately at trial.

[3]    Sean Dunn first opened a personal bank account at Chase Bank and then transferred those funds to a personal account at Putnam County Savings Bank (Gordon Aff., Exhs. 15). These accounts were not business accounts for an entity that presented appropriate entity formation documentation; they were personal accounts opened in the name of Sean Dunn that he, his girlfriend, and his brother Gerald all tapped on a regular basis to satisfy their own personal and non-Project needs.

2

**A-314**

To be sure, aside from the numerous, material defalcations set forth in this motion, Plaintiff was severely damaged by the atrocious lack of quality and the exasperating delays and poor or non-existent construction management that Defendants inflicted on Plaintiff. Plaintiff will prove the extent of, and quantify the damage Plaintiff suffered as a result of, Defendants' construction deficiencies at trial. For now, Plaintiff seeks partial summary judgment only as to Defendants' liability under the Fourth and Fifth Causes of Action based on the following undisputed facts, each of which, alone or together, constitutes a basis for partial summary judgment in favor of Plaintiff on those claims:

- Defendants never entered into a written contract with Plaintiff for the Project;

- Defendants failed to maintain required home improvement contractor licenses;

- Defendants falsely represented that Well Dunn is a real business entity (it is not);

- Defendants falsely represented that they were properly insured (they were not);

- Defendants failed to keep required financial records (they did not); and

- Defendants improperly applied Lien Law trust funds for inappropriate purposes.

**Statement of Undisputed Facts**

The following statement of undisputed facts is drawn from the accompanying affirmation of Michael R. Gordon, dated July 26, 2018 (the "Gordon Aff."), and the exhibits thereto. The Gordon Aff., in turn, is based on statements made by Defendants Sean Dunn and Gerald Dunn at their respective depositions, together with indisputable and unambiguous documentation.

**A.    Defendants knowingly furnished home improvement contracting work for Plaintiff without a written contract**

Defendants admit that in or about January 2016, "Well Dunn" entered into an "oral" contract with Plaintiff to construct a single-family residence at the property known as 41 Averill Road, Mahopac, Putnam County, New York (the "Project"). Gordon Aff., Exh. 1 (Defendants'

3

**A-315**

Verified Answer and Counterclaim (the "Answer")), ¶¶ 109, 111; *see also* Gordon Aff., Exh. 2 (Deposition Transcript of Sean Dunn, ("SD Dep. T'Script")) at 146:4-6. There was no written contract between the parties; it was oral. *See* Gordon Aff., Exhs. 1 (Answer), ¶ 111; 2 (SD Dep. T'Script) at 170:2-5; 3 (Plaintiff's Notice to Admit ("Notice to Admit")), ¶¶ 2 and 5; and 4 (Defendants' Responses to Plaintiff's Notice to Admit ("Response to Notice to Admit")), ¶¶ 2 and 5. Defendants admit they began working on the Project in or about February 2016, were awarded the role of Project General Contractor on or about March 18, 2016, and continued working on the Project, without a written contract, until they were terminated on June 19, 2017. Gordon Aff., Exhs. 1 (Answer), ¶¶ 32, 109, 111; and 5 (Deposition Exhibit P-24, Termination Notice dated June 19, 2017). According to Defendants, their Project work consisted of "site work, excavation, partial demolition, and construction." *Id.*, ¶ 113.

Sean Dunn admitted that when Defendants were terminated, the exterior finish had not been applied to the house, the roof was not substantially complete, the mechanical work was not substantially complete, the electrical work was not substantially complete, and, most critically, the house was not suitable for human occupancy, rendering it substantially incomplete. *See generally* Gordon Aff., Exh. 2 (SD Dep. T'Script) at 165-67).[3]

---

[3] Since the purpose of the Project was to build a single family residence, and since it was not habitable, substantial completion had not been achieved. *See Landow & Landow Architects, P.C. v. Shorefront Jewish Geriatric Ctr.*, 289 A.D.2d 492, 493, 734 N.Y.S.2d 645, 646 (2d Dep't, 2001) ("substantial completion of the project occurred no later than May 1994, when the premises was occupied for its intended use"); *Breslin Realty Dev. Corp. v. Lituchy*, 269 A.D.2d 554, 554, 703 N.Y.S.2d 746 (2d Dep't 2000) ("substantial completion, as that term is defined in the agreement, occurred no later than November 7, 1994, when the premises was occupied for its intended use.").

**4**

**A-316**

**B.    Defendants Sean Dunn and Gerald Dunn used Well Dunn as their trade name; as of August 2016, Well Dunn was not an entity of any kind**

Although Defendants state that "*Well Dunn* issued invoices for all work and change orders required under the Contract, and Plaintiffs [sic], in fact, paid the value of these invoices to *Well Dunn*," Well Dunn is actually just a trade name for Sean and Gerald Dunn. Gordon Aff., Exh. 4 (Response to Notice to Admit), No. 7. Defendant Sean Dunn admitted at his deposition that Well Dunn is a trade name under which he operates. Gordon Aff., Exhs. 2 (SD Dep. T'Script) at 35:7-11 ("I just kept operating as a d/b/a.") and 4 (Response to Notice to Admit), ¶¶ 7, 11. Throughout the Project, Well Dunn was not a corporation, partnership, limited liability company or any other form of stand-alone business association. Gordon Aff., Exhs. 6 (Dep. Exh. P-12, NYS Department of State Entity Information Page); and 4 (Response to Notice to Admit), ¶¶ 13-15. Sean Dunn also admitted that he never told the Kleinschmidts that Well Dunn was not a real company. (SD Dep. T'Script at 146:7-10). Indeed, despite the fact that it is nothing more than a trade name or pseudonym, it has been Sean Dunn's "habit," as he explained at his deposition, to refer to Well Dunn as a "separate entity." Gordon Aff., Exh. 2 (SD Dep. T'Script) at 66:18-22. Both Sean and Gerald Dunn admitted that they always knew Well Dunn was not a corporation, partnership or limited liability company during the time that they worked on the Project. Gordon Aff., Exh. 4 (Response to Notice to Admit), ¶¶ 15-16.

Sean Dunn and Gerald Dunn both admitted that they furnished work, labor, services, and/or materials to or for the benefit of the Project. Gordon Aff., Exh. 2 (Response to Notice to Admit), ¶¶ 9, 10. Gerald Dunn admitted that he has worked on approximately 100 project "in the name of Well Dunn," (Gordon Aff., Exh. 7 (Deposition transcript of Gerald Dunn ("GD Dep. T'Script")), at 117:8-12. He also admitted that he works in a supervisory capacity for Well Dunn (*id.* at 119:3-6), is a signatory on a Well Dunn Putnam County Savings Bank account allowing

5

## A-317

him to deposit and withdraw funds from Well Dunn's bank account (*id.* at 78:18 – 79:7, 13-20;

*see also* Gordon Aff., Exhs. 2 (SD Dep't T'Script) at 284:4-14; 8 (Dep. Exh. P-19, "Well Dunn"

check signed by Gerald Dunn), has deposited money into and withdrawn money from the Well

Dunn bank account (Gordon Aff., Exh. 7 (GD Dep. T'Script) at 79:13-2), has written checks on

the Well Dunn bank account (*id.* at 79:21 – 80:6 and Gordon Aff., Exh. 8), has earned income

from "projects done in the name of Well Dunn," (Gordon Aff., Exh. 7 (GD Dep. T'Script) at

117:4-7), has a business card identifying himself as Vice-President of Well Dunn (id. at 69:8-

16), carries a Well Dunn Mastercard bearing the name, "Gerald J. Dunn, Well Dunn Maint &

Contract," (*id.* at 74:10 – 75:12), and furnished work and supervisory services for the Project (*id.*

at 145-46).

C.   **Although Plaintiff paid Defendants $840,828.22 for the Project, Defendants stated
     that they only paid subcontractors and suppliers $379,793.50**

Defendants admit that Plaintiff paid them $840,828.22 in respect of the Project. Gordon

Aff., Exhs. 2 (SD Dep. T'Script) at 149:5-7; 4 (Response to Notice to Admit), ¶ 32; 9 (Dep. Exh.

P-22, Partial Release and Waiver of Lien Rights signed by Sean Dunn stating, in pertinent part,

that Well Dunn, by Sean Dunn, acknowledges receipt of $820,828.22 from Plaintiff, representing

"full payment" as of May 4, 2017); and 10 (Dep. Exh. 56, checks paid by Plaintiff to Well

Dunn). According to Defendants, of the $840,828.22 they admit receiving from Plaintiff, they

paid $379,793.50 to the persons and businesses who and that submitted requests for payment to

Defendants for work and materials they furnished on the Project. Gordon Aff., Exh. 10

(Defendants' Interrogatory Answers) at pp. 3-4.

## A-318

**D.    Defendants are not licensed home improvement contractors, although they held themselves out as such when they secured the Project from Plaintiff**

Before and during they were the Project general contractors, Defendants held themselves out to be licensed home improvement contractors. Gordon Aff., Exh. 4 (Response to Notice to Admit), ¶¶ 26, 27, 29. Sean Dunn admitted that when he first met the Kleinschmidts, he told them he was a licensed home improvement contractor in Putnam County. Gordon Aff., Exh. 2 (SD T'Script) at 120:8-10. At the time Plaintiff hired Defendants, the Well Dunn website stated that it was licensed in Putnam County. Gordon Aff., Exh. 11 (Dep. Exh. P-16, Well Dunn's website pages stating that "we are licensed contractors in all of Westchester County, Yonkers, Putnam, and all of Connecticut"). It is undisputed that neither Sean Dunn nor Gerald Dunn nor Well Dunn was a licensed home improvement contractor at any time while Defendants were working on the Project. Gordon Aff., Exhs. 4 (Response to Notice to Admit), ¶¶ 18, 21 (as to Gerald Dunn) and 2 (SD Dep. T'Script) at 30:23 – 31:4. Sean Dunn's testimony on the subject of his not being licensed from at least 2014 to the present was crystal clear on the subject:

A.    So I built two homes under that license from 2014 till the present from start to finish.

Q.    Do you now understand that when you did that work, you were unlicensed?

A.    I understand that now, yes.

Moreover, Sean Dunn admitted that not only was he not a licensed home improvement contractor in Westchester County, he actually did home improvement contract work in that county after his license was revoked and after he was fined $10,000 for operating an unlicensed home improvement contracting business. Gordon Aff., Exhs. 2 (SD Dep. T'Script) at 125:3-22; and 12 (Dep. Exh. 52-54, Westchester County records). Sean Dunn admitted he does not have a home improvement contractor's license. Gordon Aff., Exh. 2 (SD Dep. T'Script) at 23:10-13.

7

## A-319

**E.      Defendants did not carry workers' compensation insurance for the Project**

Although he did not recall when he last carried workers' compensation insurance, Sean

Dunn admitted that he does not currently carry such insurance.  Gordon Aff., Exh. 2 (SD Dep.

T'Script) at 78:16-19, 78:24 – 79:8.  And pertinent government records confirm that none of the

Defendants carried the required workers' compensation insurance.  Gordon Aff., Exh. 13 (Dep.

Exh. P-62, New York State insurance records).

**F.      Defendants comingled Project-related monies with other monies and used Plaintiff's money to pay for non-Project related expenses**

During his deposition, Sean Dunn testified as follows:

Q.      Was there ever a time where you had subaccounts within either Chase or PCSB to separate business from personal?

A.      No.

Q.      So the whole time, personal money and business money and business expenses and personal expenses were all commingled?

A.      Yes.

Q.      Throughout the whole time, right?

A.      Since I started my business, yes.

Gordon Aff., Exh. 2 (SD Dep. T'Script) at 78:6-15.  Along the same lines, Sean Dunn admitted

that he used Project monies paid by Plaintiff to pay the expenses for other projects:

Q.      So do you end up using client funds from one customer to cover another project's expense when that customer is late?

A.      It is all in one account.  It is all one big pool.

Q.      So there could be times where let's say you are working three jobs, Job A, the client is on time, Job B, the client is on time, Job C, the client is late.  You would end up using the money from Client A and B to cover the expenses on Project C, right?

A.      Inadvertently, yes.

8

## A-320

Q.  And that would happen periodically?

A.  From time to time.

Gordon Aff., Exh. 2 (SD Dep. T'Script) at 133:25 – 134:14.

Thus, it is undisputed that all of the $820,844.22 that Plaintiff paid to Defendants was

deposited into two general purpose bank accounts, first, an account at JPMorgan Chase and,

second, an account at Putnam County Savings Bank. *Id., see also* Gordon Aff., Exh. 14

(collectively, Dep. Exhs. 29-42, 46, 49-51, bank statements). From those accounts, Defendants

Sean Dunn and Gerald Dunn, as well as Sean Dunn's former fiancé (who had no role with WD

and was not involved in the Project) had access to the funds paid by Plaintiff. Gordon Aff., Exh.

2 (SD Dep. T'Script at 87:12-25). Both Sean Dunn and Gerald Dunn accessed the account to

pay for expenses that had nothing to do with the Project. Gordon Aff, Exh. 2 (SD Dep. T'Script)

at 284:4-17, 285:4-8. The critical testimony is as follows:

Q.  So during what period of time did Vika [Sean Dunn's former fiancé] have a debit card for this bank account roughly?

A.  I'd say from when I opened it till a year ago.

Q.  So roughly September 2016 to September of 2017?

A.  Till July of '17.

Q.  And during that time, did she regularly use the card?

A.  Yes.

Q.  And during that time that she was using this card, you were putting Well Dunn client money into that account, right?

A.  Yes, that's the only account I had.

Thus, by way of example, in the month immediately following Plaintiff's initial payment

of $165,000 to Defendants, Defendants (and Sean Dunn's former fiancé) dipped into the Well

9

**A-321**

Dunn account (which held Trust Fund monies advanced by Plaintiff) to pay for a trip to the

Maritime Aquarium in Norwalk, Connecticut ($86.75), purchases from Abercrombie & Fitch

($115.84) and Gucci ($1,029.56), six airline tickets totaling $1,723.53, purchases from Putnam

Wine & Liquors ($58.63), a trip to the Six Flags amusement park in Agawam, Massachusetts

($209.99), a night at the upscale Tao Restaurant in Manhattan ($357.98), and a trip to Capt'N

Jacks Island Grill in Wildwood, New Jersey ($50.88). Thereafter, Plaintiffs repeatedly spent

money from the account in which Plaintiff's monies were deposited on a wide variety of

personal expenses having absolutely nothing to do with the Project including the lease payment

on his then fiancé's Mercedes Benz. *See* Gordon Aff., Exh. 2 (SD Dep. T'Script) at 136:5-23.

*See also* Gordon Aff., Exh. 17, a compilation of further examples of personal expenses that Sean

Dunn and Gerald Dunn and Sean Dunn's former fiancé paid from the bank accounts holding

Plaintiff's Lien Law Trust funds.

**G.     Defendants kept almost no records regarding the Project and kept absolutely no records as to cash paid to their laborers, who were all paid "off the books"**

Along the same lines, Defendants admitted they did not maintain full, complete and

accurate records for the Project. *See* Gordon Aff., Exh. 2 (SD Dep. T'Script), at 54:3-21. The

only records that Defendants kept regarding the Project were the incomplete QuickBooks entries.

*Id.* at 63:10-15. According to Sean Dunn, whatever is not recorded on QuickBooks, which

apparently was the majority of Project-related transactions, was simply thrown out. See id. at

63:10-24, which consists of the following remarkable testimony:

Q.     What records relating to 41 Averill did you have in your possession when you received the request to produce documents in this case?

A.     Just what I had on QuickBooks.

Q.     That's it?

10

## A-322

A.    Yeah.

Q.    Where did all the other records go?

A.    I don't keep them.

Q.    You just throw them in the garbage?

A.    Well, I never -- for instance, when I make an order, I get a delivery ticket; I never keep them.

Q.    What do you do with them?

A.    They get thrown out.

Sean Dunn's explanation for his failure to keep Project records is that, as he put it, "just I have no idea what I'm doing when it comes to bookkeeping." *Id.* at 64:24; *see also id.* at 50:6-9 ("I am absolutely atrocious with bookkeeping, payroll, all that stuff, paying my bills. I've just always been bad at." There was a point, apparently prior to 2015 (and thus before the commencement of the Project), when Sean Dunn hired a bookkeeper named "Barbie" (Sean Dunn could not remember her last name at his deposition), but he "ran out of money to pay her" and thus let her go. *Id.*, 36:17-21, 38:11-14.

Of particular concern is that Defendants kept no records of what they paid to laborers working for them on the Project; incredibly, Sean Dunn admitted that all of those individuals were paid in cash, with no taxes withheld and no tax returns filed. *Id.* at 13:5-23, 14:4-7, 54:17-21; 209:23-25, 201:2-6, 211:8-18. As one example of what appears to be a crystal clear case not only of Lien Law Trust Fund diversion but outright tax fraud, Sean Dunn admitted the following: "Q. During that time period, you did not report any wages to the IRS or the State of New York, right? A. I don't think so." *Id.* at 210:3-6. Confirming the foregoing, Defendants' counsel confirmed by email on December 29, 2017 that the "recordkeeping with respect to his payments is not ideal because [Sean Dunn] paid many people in cash, off the books." Dkt. No. 43.

11

## A-323

### Procedural History

This action was commenced in August 2017. Gordon Aff., Exh. 16 (Complaint); *see also* Dkt. No.2. Issue was joined in September 2017, when Defendants filed an Answer with Counterclaims. Exh. 1; *see also* Dkt. No. 6. On November 20, 2017, Plaintiff moved to dismiss the Counterclaim because, as unlicensed home improvement contractors, Defendants had no standing to bring any claims, including counterclaims, against Plaintiff. Dkt. No. 8. On December 8, 2017, after Plaintiff moved to dismiss the Counterclaim but before Defendants' time to respond to the motion expired, Defendants agreed to withdraw, with prejudice, the Counterclaim. Dkt. No. 21.

After issue joined, Plaintiff served written discovery demands and deposition notices on Defendants. Dkt. Nos. 35-39. Defendants have not yet complied with all of their On January 23, 2018, the Court entered a Preliminary Conference Order that confirmed that the priority of discovery in its entirety would be reversed and that Plaintiff would have no obligation to respond to Defendants' discovery demands until Defendants first complied with their own discovery obligations. Dkt. No. 47. Because Defendants have not yet complied with their discovery obligations – QuickBooks files still have not been made available to Plaintiff, as Defendants had agreed to do, Defendants have not produced text messages that they admitted existed and agreed to produce, and no Project photographs or videos have been produced – Plaintiffs' time to produce discovery has not yet been triggered. Gordon Aff., ¶ 21.

On May 31, 2018, Defendants filed a third-party complaint against the Project architects, Michael Piccirillo Architecture PLLC, Michael Piccirillo, and Vladimir Levin. Dkt. Nos. 49-54. No response to the third-party complaint has been filed.

12

## A-324

### Argument

### PLAINTIFF IS ENTITLED TO PARTIAL SUMMARY JUDGMENT

Plaintiff seeks partial summary judgment on liability as to the First, Fourth and Fifth

Causes of Action, for breach of fiduciary duty and for diversion of Lien Law Trust funds.

Plaintiff seeks such a judgment as against Defendants Sean Dunn and Gerald Dunn and, to the

extent Defendant Well Dunn exists in some capacity, against Well Dunn.

**A.     The legal standard applicable to this motion**

Pursuant to CPLR Rule 3212(b), a plaintiff is entitled to summary judgment when it

establishes through admissible proof that there are no genuine issues of material fact regarding a

valid cause of action. *See Zuckerman v. New York*, 49 N.Y.2d 557, 562, 427 N.Y.S.2d 595, 597

(1980) ("To obtain summary judgment it is necessary that the movant establish his cause of

action or defense 'sufficiently to warrant the court as a matter of law in directing judgment' in

his favor (CPLR 3212, subd [b]), and he must do so by tender of evidentiary proof in admissible

form."); *Cohen Fashion Opt., Inc. v. V & M Opt., Inc.*, 51 A.D.3d 619, 619, 858 N.Y.S.2d 260,

261 (2d Dep't 2008) ("the defendants failed to raise a genuine material issue of fact in opposition

to the plaintiffs' prima facie showing of entitlement to judgment as a matter of law ... ."). In

*Serge Dore' Selections Ltd. v. Universal Wines & Spirits*, 20 Misc. 3d 1121(A), 1121A, 867

N.Y.S.2d 378, 378 (Sup. Ct. Westchester Co. 2008), this Court summarized the summary

judgment standard: "The proponent of a motion for summary judgment ... must tender sufficient

evidence to demonstrate as a matter of law the absence of a material issue of fact. ... Once the

moving party has made a prima facie showing of entitlement of summary judgment, the burden

of production shifts to the opponent, who must now go forward and produce sufficient evidence

13

## A-325

in admissible form to establish the existence of a triable issue of fact or demonstrate an
acceptable excuse for failing to do so."

A motion for summary judgment may be granted as to one cause of action among many
pled or even a single part of a single cause of action. *See* CPLR Rule 3212(e) ("In any [action
other than a matrimonial action] summary judgment may be granted as to one or more causes of
action, or part thereof, in favor of any one or more parties, to the extent warranted, on such terms
as may be just." *See also Quilliams v. Half Hollow Hills School Dist. (Candlewood School)*, 67
A.D.3d 763, 766, 892 N.Y.S.2d 397, 399 (2d Dep't 2009 ("the subcontractor violated the
insurance procurement clause by failing to secure primary liability insurance in the stated
amount, so that the Supreme Court properly granted partial summary judgment against it as the
third-party cause of action to recover damages for breach of contract."); *Hulse v. Summerlin,
LLC*, 17 A.D.3d 317, 318, 792 N.Y.S.2d 577, 578 (2d Dep't 2005) ("plaintiffs established their
prima facie entitlement to judgment as a matter of law. The defendants failed to raise a triable
issue of fact sufficient to defeat the motion for partial summary judgment. Therefore, the
Supreme Court erred in denying the plaintiffs' motion for partial summary judgment on the issue
of liability on the cause of action alleging a violation of Labor Law § 240 (1), and in granting
that branch of the defendants' cross motion which was for summary judgment dismissing the
complaint."); *Nichols v. Hartford Fire Ins. Co.*, 61 A.D.2d 555, 556, 403 N.Y.S.2d 335, 336 (3d
Dep't 1978) ("Partial summary judgment, where warranted, may be granted as to a part of a
cause of action ( CPLR 3212, subd [e]).").

As can be inferred from the Second Department's decision in *Hulse, supra*, the standard
is the same whether the relief sought is summary judgment on an entire Complaint, a single
cause of action, or a single part of a single cause of action. *See LG Capital Funding, LLC v.*

<div align="center">14</div>

**A-326**

*Sanomedics Intl. Holdings, Inc.*, 2015 N.Y. Misc. LEXIS 4294, *18, 2015 NY Slip Op

32232(U), 15 (Sup. Ct. Kings Co. 2015) ("With respect to plaintiff's motion for partial summary

judgment on its breach of contract claims, on a motion for summary judgment, the movant must

make a prima facie showing, by tendering evidentiary proof in admissible form, of its entitlement

to judgment as a matter of law"); *Pacheco v. City of New York*, 2010 N.Y. Misc. LEXIS 2426,

*11, 2010 NY Slip Op 31400(U), 10 (Sup. Ct. N.Y. Co. 2010) ("the branch of plaintiffs' motion

for partial summary judgment as to liability on the third cause of action for violation of Labor

Law § 240 (1) is granted. Summary judgment may be granted where no genuine triable issue of

material fact exists.").

Thus, where, as at bar, Plaintiff establishes through admissible evidence that Defendants

are liable as a matter of law in respect of a cause of action or a part thereof, partial summary

judgment should be granted in favor of Plaintiff.

**B.     Plaintiff is entitled to partial summary judgment on the Fourth and Fifth Causes of
         Action for Breach of Fiduciary Duty and Lien Law Trust Fund Diversions**

**1.     The Fourth Cause of Action:  breach of fiduciary duty**

Plaintiff is entitled to partial summary judgment on the Fourth Cause of Action, for

breach of fiduciary duty, as there are no genuine issues of material fact regarding Defendants'

liability for that cause of action.  The elements of a claim for breach of fiduciary duty are "(1) the

existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly

caused by the defendant's misconduct." *Smallwood v. Lupoli*, 107 A.D.3d 782, 784, 968

N.Y.S.2d 515, 517 (2d Dep't 2013); *Armentano v. Paraco Gas Corp.*, 90 A.D.3d 683, 684, 935

N.Y.S.2d 304, 306 (2d Dep't 2011) (same).  A plaintiff pleading multiple causes of action,

including one for breach of fiduciary duty, is entitled to partial summary judgment as to the

breach of fiduciary duty claim when it proves the absence of any genuine issues of material fact

15

## A-327

as to that claim. *See SantiEsteban v. Crowder*, 92 A.D.3d 544, 546, 939 N.Y.S.2d 28, 29-30 (1st

Dep't 2012), affirming partial summary judgment to the plaintiff on its claim for breach of

fiduciary duty, holding that, "[s]ince defendants' payments to themselves were unauthorized, as a

matter of law, they are liable for breach of fiduciary duty … ." *See also Golden Eagle/Satellite*

*Archery v. Epling*, 244 A.D.2d 959, 665 N.Y.S.2d 169 (4th Dep't 1997), granting the plaintiff's

motion for partial summary judgment on its claim for breach of fiduciary duty.

At bar, Plaintiff is entitled to partial summary judgment on the Fourth Cause of Action,

for breach of fiduciary duty, because Plaintiff has established each element of that claim as to

each Defendant with sufficient, admissible evidence.

   **a.      Defendants owed Plaintiff a fiduciary duty with respect to the funds**

**that Plaintiff paid to Defendants.**  Defendants owed Plaintiff a fiduciary duty as to the funds

paid Plaintiff paid to them.  Lien Law Article 3-A imposed on Defendants a fiduciary duty to

Plaintiff once Defendants undertook to accept from Plaintiff over $800,000 in Project dollars.

*See People v. Valenza*, 60 N.Y.2d 363, 371, 469 N.Y.S.2d 642, 645 (1983) ("article 3-A of the

Lien Law imposes on a contractor a fiduciary duty over funds received for the improvement of

real property (see Lien Law, §§ 70, 71, 71-a)"; *NY Professional Drywall of OC, Inc. v. Rivergate*

*Dev., LLC*, 100 A.D.3d 216, 218, 952 N.Y.S.2d 852, 854 (3d Dep't 2012) ("The owner or

general contractor becomes a fiduciary over the accounts received to complete the construction

project … ."); *AABCO Sheet Metal Co. v. Lincoln Ctr. for the Performing Arts*, 174 Misc. 2d

232, 234, 663 N.Y.S.2d 490, 491 (Sup. Ct. N.Y. Co. 1997) (Lien Law "provides that funds

received by a general contractor in the course of a construction project constitute assets of a trust,

that a person in a trust position shall be held to a fiduciary standard of care and duty and shall be

16

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM INDEX NO. 61510/2017
NYSCEF DOC. NO. 1 18-09028 gm 20-Doc 4123-filed 02/17/18 nt Entered 12/04/18 21:57 ago 7 Exhibit B NYSCEF: 07/26/2018

26 of 170

## A-328

accountable for trust assets."); *Prestige Plumbing & Heating, Inc. v. B&B Constr., Inc.*, 2013

N.Y. Misc. LEXIS 4279, *14-15, 2013 NY Slip Op 32262(U), 11 (Sup. Ct. N.Y. Co. 2013).

Further, because the Project was the subject of a home improvement contract, Defendants

owed their fiduciary duty to Plaintiff, as owner. *See* Lien Law 71-a(4); *see also Ippolito v. TJC*

*Dev., LLC*, 83 A.D.3d 57, 64, 920 N.Y.S.2d 108, 113-114 (2d Dep't 2011) (plaintiffs, as owners,

were held to be "beneficiaries of the trust funds created by operation of Lien Law § 70 ... .");

*Jorge v. Piola Prop. Mgt. LLC*, 2017 N.Y. Misc. LEXIS 2428, *7, 2017 NY Slip Op 50837(U),

3, 56 Misc. 3d 1202(A), 63 N.Y.S.3d 305 (Sup. Ct. Nassau Co. 2017) ("The plaintiff correctly

cites to authority of the Appellate Division, Second Department, which holds that a homeowner

has the standing to sue as a trust beneficiary under this statute. Ippolito v. TJC Dev. LLC, 83

AD3d 57, 920 N.Y.S.2d 108 (2d Dept. 2011)."),[4]

Since it is undisputed that Plaintiff paid to Defendants $840,828.22 for the Project, there

can be no doubt that Defendants were fiduciaries with respect to those funds. Defendants Sean

Dunn and Gerald Dunn should be deemed to be fiduciaries because they were the contractors

who did the Project Work and received Project payments from Plaintiff. Indeed, it is undisputed

that Plaintiff issued its checks to Defendant Well Dunn, but Defendant Well Dunn was nothing

---

[4]     In cases *not* involving home improvement contracts, the owner might not be deemed to be a trust
fund beneficiary. *See, e.g., JSignal LLC v. Artisan Constr. Partners LLC*, 2017 N.Y. Misc. LEXIS 2436,
*8, 2017 NY Slip Op 31348(U), 7 (Sup. Ct. N.Y. Co. 2017) ("In a distinguishable case, the Second
Department held that a homeowner may assert a cause of action pursuant to Lien Law Article 3-A against
a defendant contractor hired to perform home improvements. See Ippolito v. TJC Dev., LLC, 83 AD3d
57, 67-71, 920 N.Y.S.2d 108 (2011). In Ippolito, the Second Department relied on Lien Law § 71—a[4]
for that holding, which solely concerns 'a home improvement contract,' and describes that the relevant
funds 'remained the property of the owners, ... until the proper payment of such funds by the contractor to
the purposes of the home improvement contract.' 83 AD3d at 67. The present action involves the
improvement of retail space rather than a home."). It is undisputed that the contract at issue involves a
home improvement project, therefore *Ippolito, supra*, governs.

## A-329

more than a trade name or pseudonym under which Defendants Sean Dunn and Gerald Dunn did business. And even if Defendant Well Dunn were deemed to be some sort of entity, Messrs. Sean and Gerald Dunn should still be deemed to be fiduciaries as they were the officers and agents of Well Dunn. *See Ippolito*, 83 A.D.3d at 70, 920 N.Y.S.2d at 118 (adopting the position of the Fourth Department in *Fleck v. Perla*, 40 A.D.2d 1069, 339 N.Y.S.2d 246 (4th Dep't 1972) that "the individual officers or agents of a corporation ... may be liable in a civil action pursuant to Lien Law article 3-A for the improper diversion of trust funds ... "). *See also Holt Constr. Corp. v. Grand Palais, LLC*, 108 A.D.3d 593, 597, 969 N.Y.S.2d 499, 503 (2d Dep't 2013) ("This Court has held that the individual officers of a corporate trustee may be held personally liable pursuant to Lien Law article 3-A for knowingly participating in a diversion of trust assets (see Ippolito v. TJC Dev., LLC, 83 AD3d 57, 70-71, 920 NYS2d 108 [2011]; Atlas Bldg. Sys. v. Rende, 236 AD2d 494, 495, 653 NYS2d 694 [1997]; South Carolina Steel Corp. v. Miller, 170 AD2d 592, 566 NYS2d 368 [1991])."); *Ideal Supply Co., Inc. v. Interstate Fire Protection, Inc.*, 2016 N.Y. Misc. LEXIS 4242, 2016 NY Slip Op 32273(U) (Sup. Ct. N.Y. Co. 2016), adopting the position of *Ippolito, supra,* and *Fleck, supra,* and denying motion to dismiss Lien Law Trust Fund diversion claim against corporate officers.

**b.      Defendants breached their fiduciary duty to Plaintiff with respect to the monies paid to them by Plaintiff.** Defendants admitted that they deposited all of the money into checking accounts that were accessible not only by Defendants but also by Defendant Sean Dunn's former fiancé, no records were kept, the funds that Plaintiff paid to Defendants for the Project were used for non-Project purposes such as shoe shopping sprees, lavish vacations, car and motorcycle payments, and other construction projects. *See supra*, p. ___. All of these expenses constituted a direct violation of Defendants' fiduciary duty to Plaintiff, as Plaintiffs'

**A-330**

funds were not applied for the purpose for which they were intended: the construction of

Plaintiff's house.[5] They also constitute substantial defalcations by Defendants that took place

while Defendants, as a matter of law, pursuant to the New York Lien Law, were acting in a

fiduciary capacity.

      **c.**    **Plaintiff has been damaged by Defendants' breach of fiduciary duty.**

There can be no doubt that Plaintiff has been damaged by Defendants' breach of their fiduciary

duty. Monies that Plaintiff paid to Defendants were diverted for purposes other than the

construction of Plaintiff's house, which remained incomplete at the time Defendants were

terminated. Further, according to Defendants, they paid only $379,793.50 to subcontractors and

suppliers, even though Plaintiff paid them more than $800,000. That means that Defendants

pocketed almost $500,000 of money (which, as discussed below, was protected Lien Law Trust

Fund monies) that had been earmarked for the Project. While the amount of the damage will be

proven at trial, there can be no genuine issue that Plaintiff was damaged by Defendants'

defalcations.

    **2.**    **Fifth Cause of Action: Lien Law Trust Fund Diversion**

"Lien Law article 3-A mandates that once a trust comes into existence, its funds may not

be diverted for non-trust purposes." *Ippolito*, 83 A.D.3d at 66-67, 920 N.Y.S.2d at 115. *Ippolito*

further explains that Lien Law § 70 defines Lien Law Trusts as funds "received by a contractor

under or in connection with a contract for an improvement of real property, or home

---

[5]    As noted, what makes this breach of fiduciary duty particularly odious is that Defendants
committed their defalcations – unlawfully diverting Lien Law Trust Funds – while acting in a fiduciary
capacity. In *AABCO Sheet Metal Co. v. Lincoln Ctr. for the Performing Arts*, 174 Misc. 2d 232, 234, 663
N.Y.S.2d 490, 491-492 (Sup. Ct. N.Y. Co. 1974), the Court made clear the severity of such malfeasance:
"[t]he failure to turn over trust funds within a specified period of time constitutes larceny ... . A debtor's
defalcation while acting in a fiduciary capacity makes the debt nondischargeable in bankruptcy ... .").

## A-331

improvement ... ." 83 A.D.3d at 64-65, 920 N.Y.S.2d at 114. The Lien Law is very specific as

to the requirements for the deposit of Trust Funds received by a contractor in respect of a home

improvement project. As *Ippolito* notes, Lien Law § 71-a(4)(a) provides that:

> [u]nder a home improvement contract, payments received from an owner by a home
> improvement contractor prior to the substantial completion of work under the contract shall
> be deposited within five business days thereafter by the recipient in an escrow account in
> a bank, trust company, savings bank, or state or federal savings and loan association,
> located in this state.... *Such deposit or deposits shall remain the property of such owner
> except as otherwise provided herein.*

*Ippolito*, 83 A.D.3d at 65, 920 N.Y.S.2d at 114. Emphasis supplied. The trust, once established

by virtue of the Lien Law, continues "'until all trust claims have been paid or discharged, or all

assets have been applied for trust purposes" (Matter of RLI Ins. Co., Sur. Div. v New York State

Dept. of Labor, 97 NY2d at 262, quoting Lien Law § 70 [3])." *Ippolito*, 83 A.D.3d at 65, 920

N.Y.S.2d at 114.

*Ippolito* synthesized the Lien Law's trust fund requirements with respect to home

improvement contracts in pertinent part as follows:

> "contractors who receive money in advance for the construction of home improvements
> are required to place the money in a bank account and hold the money as the property of
> the owner until the money is paid for purposes of the home improvement. The funds
> deposited remain the property of the owner until: (1) the proper payment by the
> contractor for the purposes of the home improvement project; or (2) default or breach by
> the owner which excuses the contractor's performance, but only to the extent of any
> reasonable liquidated damage amount and only after 7 days prior written notice to the
> owner; or (3) substantial performance of the contract'. ... Any transaction by which any
> trust asset is paid, transferred or applied for any purpose other than a purpose of the trust
> as stated in subdivision one or subdivision two of section seventy-one, before payment or
> discharge of all trust claims with respect to the trust, is a diversion of trust assets, whether
> or not there are trust claims in existence at the time of the transaction, and if the diversion
> occurs by the voluntary act of the trustee or by his consent such act or consent is a breach
> of trust" (Lien Law § 72 [1])."

Ippolito, 83 A.D.3d at 66, 920 N.Y.S.2d at 114-115. *See also* Lien Law § 72 ("[a]ny transaction

by which any trust asset is paid, transferred or applied for any purpose other than a purpose of

## A-332

the trust as stated in subdivision one or subdivision two of section seventy-one, before payment

or discharge of all trust claims with respect to the trust, is a diversion of trust assets, whether or

not there are trust claims in existence at the time of the transaction, and if the diversion occurs by

the voluntary act of the trustee or by his consent such act or consent is a breach of trust."[6]

Here, as discussed above, a Lien Law Trust Fund came into existence when Plaintiff first

paid to Defendants $165,000 as an advance payment against work done on the Project. *See*

*supra*, p. 6. Over the course of the Project, Plaintiff paid Defendants an additional $675,828.22

for a total of $840,828.22. *See supra*, p. 6. From that total amount, Defendants allegedly paid

subcontractors and suppliers on the Project $379,793.50, leaving a balance of $461,034.72.[7] *See*

*supra*, p. 6. At a minimum, then, pursuant to Lien Law § 71, $461,034.72 remains the property

of Plaintiff but has not been returned to Plaintiff. *See supra*, pp. 6. As Defendants were

terminated from the Project (because of innumerable problems with their work) before

completing their work and before the application of those funds, Defendants' retention of those

funds constitutes a *per se* diversion of Lien Law Trust funds.

While Defendants' retention of those funds is problematic enough, what is even worse is

the extent to which Defendants blatantly comingled and misapplied the trust fund monies that

Plaintiff paid to Defendants for the Project. As discussed above, Defendants readily admit they

---

[6]    We anticipate that Defendants might argue that they did not intend to divert Lien Law Trust Fund
assets. If made, that argument should be rejected, as a Lien Law Trustee's intent is entirely irrelevant; if
trust funds are applied to a non-trust purpose, there is a Lien Law Trust Fund diversion. *See RLI Ins. Co.
v. N.Y. State DOL*, 97 N.Y.2d at 263, 740 N.Y.S.2d at 276 ("Use of trust assets for any purpose other than
the expenditures authorized in Lien Law § 71 before all trust claims have been paid or discharged
constitutes an improper diversion of trust assets, *regardless of the propriety of the trustee's intentions*.").
Emphasis supplied.

[7]    Plaintiff by no means agrees that Defendants paid $379,793.50 to subcontractors and suppliers on
the Project but will accept that amount for the limited purposes of this motion only.

## A-333

deposited all of Plaintiff's $840,828.22 into two bank accounts, first at JPMorgan Chase and second, when the first account was closed, at Putnam County Savings Bank, that were used to pay Project, non-Project business (other construction project), and personal expenses. *See supra*, pp. 8-10. Defendants also admit that there was absolutely no segregation of the funds that Plaintiff paid for the Project, which, as noted above, are Lien Law Trust Funds. *See supra*, p. 21. In fact, as noted on pages 8-9 above, Sean Dunn was quite clear that he knowingly used Project funds to pay his personal expenses, the expenses associated with other projects, and the expenses of his girlfriend. Such conduct might very well one of the clearest and most brazen examples of Lien Law Trust Fund diversions this Court will ever see.

Accordingly, Plaintiff is entitled to partial summary judgment on its Fifth Cause of Action for Lien Law Trust Fund diversion.

### Conclusion

As discussed above, while this case is technically a construction case, it is even more so a case about rampant abuse and misappropriation of Trust Funds monies. Literally plundering two bank accounts holding those Trust Fund monies, and lying about their corporate and licensure status, Defendants committed defalcations while acting in a fiduciary capacity and took money that belonged to Plaintiff under false pretenses. There being no genuine issues of material fact regarding these claims, Plaintiff is entitled to partial summary judgment as to its Fourth and Fifth Causes of Action.

22

A-334

Dated: Katonah, New York
July 26, 2018

GordonLaw LLP

By: _____
        Michael R. Gordon

Attorneys for Plaintiff LAK3, LLC

51 Bedford Road, Suite 2
Katonah, New York 10536
Telephone      914.232.9500
Fax               914.992.6634
Email          mgordon@gordonlawllp.com

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM INDEX NO. 61510/2017
NYSCEF DOC. NO. 958

**A-335**

WORKING COPY

# Gordon Aff. Exhibit 2

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM
NYSCEF DOC. NO. 168 INDEX NO. 61510/2017
RECEIVED NYSCEF: 07/26/2018



ORIGINAL                          Page 1

1              SUPREME COURT OF THE STATE OF NEW YORK

2                    COUNTY OF WESTCHESTER

3   _____x

4   LAK3, LLC,

5                            Plaintiff,

6           -against-

7   SEAN DUNN, GERALD DUNN,

    and WELL DUNN MAINTENANCE

8   & CONTRACTING,

9                            Defendants.

    _____x

10

11

12                     April 26, 2018

                       9:07 a.m.

13

14

15

16          Deposition of SEAN DUNN, taken by Plaintiff,

17   pursuant to Notice, at the offices of Gordon Law

18   LLP, 51 Bedford Road, Katonah, New York,

19   before Nancy R. Sullivan, a Shorthand Reporter

20   and Notary Public within and for the State of

21   New York.

22

23

24

25

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM  INDEX NO. 61510/2017
NYSCEF DOC. NO. 1099  RECEIVED NYSCEF: 07/26/2018

35 of 170

A-337

                                                           Page 13

1                         SEAN DUNN

2          A.    From what time period?

3          Q.    Well, let's start with the present.

4          A.    Cash.

5          Q.    Do you withhold taxes of any kind?

6          A.    No, I do not.

7          Q.    Are there any withholdings?

8          A.    Not when they are paid cash, no.

9          Q.    Going back into last year, 2017, how

10   did you pay Jerry?

11         A.    Cash.

12         Q.    How about 2016?

13         A.    I don't recall when I stopped the

14   payroll, to be honest.  I'd have to look.  I

15   believe all cash that year.  I think the payroll

16   was like 2013 to maybe '15.

17         Q.    So would it be fair to say that when

18   you were using ADP, you were using it for all

19   your employees?

20         A.    Yes.

21         Q.    When you stopped using ADP, you

22   stopped it for all your employees?

23         A.    Yes.

24         Q.    Would it be fair to say that at that

25   point, you began to pay your employees in cash?

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM INDEX NO. 61510/2017
NYSCEF DOC. NO. 1099 RECEIVED NYSCEF: 07/26/2018
36 of 170

A-338

1                     SEAN DUNN

2          A.    When I used them, yes, because they

3     weren't full-time anymore.

4          Q.    So after you stopped using ADP and

5     when these individuals were working for you, you

6     would pay them cash?

7          A.    Yes.

8          Q.    Now, what records would you look at to

9     determine when you stopped using ADP?

10         A.    I would look up my ADP files and see

11    when I stopped using their service.

12         Q.    When you say look up the ADP files,

13    what do you mean by that?

14         A.    There was a representative that I

15    dealt with there that I honestly, the easiest

16    way I would call her and have her send me the

17    information.  I don't think I have anything like

18    that on file.

19         Q.    Did you ever keep ADP files?

20         A.    I would keep copies of -- so ADP would

21    send me a weekly envelope with stubs so it would

22    be their checks and then stubs for myself.  I

23    did keep most of those but I'm, as you will

24    learn, terrible at the bookkeeping end of the

25    business.

Page 23

1           SEAN DUNN

2       Q.    Have you ever testified either in

3   court or at a deposition such as this before

4   today?

5       A.    No.

6       Q.    Have you ever been involved in any

7   other legal process or proceedings before today?

8       A.    Divorce and child support but that's

9   it.

10      Q.    Do you have any professional licenses

11  other than your driver's license, any licenses

12  other than your driver's license?

13      A.    No.

14      Q.    Have you ever had any licenses other

15  than a driver's license?

16      A.    Yes.

17      Q.    What licenses have you had?

18      A.    Home improvement, I've had Westchester

19  County, Putnam County, Yonkers and all of

20  Connecticut.

21      Q.    During what period of time did you

22  have a Westchester County license?

23      A.    I don't know off the top of my head.

24      Q.    Do you remember when you first got the

25  license in Westchester roughly?

A-340

1              SEAN DUNN

2        Q.    And that you submitted requests for

3    permits using that license number?

4        A.    Yes.

5        Q.    What is that license number?

6        A.    I don't know off the top of my head.

7        Q.    PC6282?

8        A.    I don't know.  It starts with PC, but

9    I don't know the number.

10       Q.    How did you find out that you don't

11   have a current Putnam County home improvement

12   contractor's license?

13       A.    Well, Mike called me.

14       Q.    I assume that conversation was

15   sometime within the last six months?

16       A.    Yes.

17       Q.    Before that, you were unaware that

18   your Putnam County home improvement contractor's

19   license had expired?

20       A.    Yes, and I pulled permits.

21       Q.    When you say "pulled permits," explain

22   what you mean by that?

23       A.    So I built two homes under that

24   license from 2014 till the present from start to

25   finish.

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM    INDEX NO. 61510/2017
NYSCEF DOC. NO. 938                                RECEIVED NYSCEF: 07/26/2018

39 of 170

A-341

Page 31

1              SEAN DUNN

2         Q.    Do you now understand that when you

3    did that work, you were unlicensed?

4         A.    I understand that now, yes.

5         Q.    That was my question.

6              Have you submitted any kind of form to

7    renew your application, your license?

8         A.    Not recently because the last time --

9    so you get a letter in the mail saying it is up

10   for renewal, you cut a check, you mail it in,

11   and that's it.  So I just wait for it to come.

12   So I did that last time.  The check was made out

13   to consumer affairs, and unbeknownst to me, they

14   never renewed my license.

15        Q.    Was the check cashed?

16        A.    I don't know.  Mike just pulled my

17   Chase records, which is my old bank, so that's

18   the only way I would be able to tell is to go

19   and check that check number, but I operated my

20   business under the assumption that it was

21   renewed because again, multiple visits to the

22   Building Department, I was getting stamped

23   permits.

24        Q.    Did they ever ask you whether you had

25   an active license?

A-342

Page 36

2    Corp.

3          Q.    How about, Inc.?  Have you ever used

4    Well Dunn Maintenance & Contracting, Inc.?

5          A.    I don't think so.

6          Q.    What is the last tax return that you

7    know you submitted for what year for sure?

8          A.    I don't know, to be honest, because

9    like I said, this woman that I hired started

10   putting everything together, she gave me piles.

11   I would sign it, send it in, and then I would

12   start getting phone calls from like the State

13   Department making payment schedules for back to

14   like state taxes and stuff like that.  I

15   actually had a meeting down in White Plains at

16   one point 2013 or 2014 possibly.

17         Q.    What was the name of this woman, the

18   bookkeeper that was helping you?

19         A.    Barbie.

20         Q.    Do you know her last name?

21         A.    I do not.

22         Q.    How did you get ahold of her?

23         A.    She worked for a friend of mine, and

24   she had offered to help when I told her how bad

25   my record-keeping was.

A-343

Page 38

1              SEAN DUNN

2         Q.    How about a form 1099, did you ever

3    issue yourself a 1099?

4         A.    I don't think so.

5         Q.    Did you ever issue yourself a form

6    K-1?

7         A.    No, I don't even know what that is.

8         Q.    It is a form that indicates being a

9    partner in a partnership or a member in an LLC?

10        A.    Oh, no.

11        Q.    Do you have an accountant today?

12        A.    No, I do not.

13        Q.    Or a bookkeeper?

14        A.    No.

15        Q.    Do you know what QuickBooks is?

16        A.    More or less.

17        Q.    QuickBooks is a way of keeping

18   accounting records, right?

19        A.    I use it for estimating and invoices.

20   I know what it is capable of.  I never learned

21   how to use it for that.

22        Q.    So explain to me in your own words how

23   you keep records for Well Dunn?

24        A.    I am a terrible bookkeeper.  I do my

25   estimates and my invoices through QuickBooks,

SEAN DUNN

1
2    clients told you from day one when I introduced
3    myself, I told them I am terrible at paperwork
4    but I am an excellent builder, so I build a
5    beautiful home for a fair price, the quality is
6    always top notch and I am absolutely atrocious
7    with bookkeeping, payroll, all that stuff,
8    paying my bills.  I've just always been bad at
9    that.
10       Q.    You said you always build a top notch
11   home?
12       A.    Yes.
13       Q.    How many complaints have you gotten
14   over the quality of the work that you have done
15   in the ten years or so that you have had a home
16   improvement license?
17       A.    Aside from the Kleinschmidt?
18       Q.    Yes.
19       A.    I had a problem with a customer in
20   Mamaroneck a few years back where it was a cash
21   job, and he started talking directly to the
22   electrician, and we had a huge blowout, fallout
23   because the electrician did $10,000 worth of
24   work that he was told to do but the owner didn't
25   know that it was 10,000, and it got very ugly

A-345

Page 54

SEAN DUNN

1

2    at Averill.

3        Q.   So if I want to get the complete

4    picture, all of the expenditures, I would have

5    to go to bank records and other vendor and

6    supplier and subcontractor records?

7        A.   Yes.

8        Q.   Your records, the Well Dunn records, a

9    hundred percent are what's right here on this

10   P25, right?

11       A.   Well, I would consider the copies of

12   all the vendor records that I have as Well Dunn

13   records and I submitted those.

14       Q.   Okay, but those aren't recorded

15   anywhere on Well Dunn's QuickBooks?

16       A.   Not on QuickBooks, no.

17       Q.   And if I wanted to know how much cash

18   was paid to your employees on any given day, how

19   would I know that, is there any way to know

20   that?

21       A.   No.

22       Q.   How were you compensated for the work

23   that you did?

24       A.   I paid my bills out of the Well Dunn

25   account.  That's my only checking account.

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM
INDEX NO. 61510/2017
NYSCEF DOC. NO. 928
RECEIVED NYSCEF: 07/26/2018

44 of 170

## A-346

1               SEAN DUNN

2     Q.   So in other words, you use the bank

3  account into which you put client money to pay

4  your personal expenses, and that's how you

5  compensate yourself?

6     A.   Yeah.

7     Q.   How long have you been doing that?

8     A.   Since I've started my business.

9     Q.   You know that that's not right, I

10  assume?

11         MR. CARUSO:  I object to the form.

12  You can answer, go ahead.

13     Q.   I only ask because you are giving me

14  the face that looks like --

15     A.   I am learning now obviously sitting in

16  a lawyer's office that I should have

17  incorporated.  I should have had a bookkeeper.

18  I am learning this all now the hard way.  I have

19  no way of assuring you that there is no crime,

20  that I never stole money from the clients, that

21  everything that they paid me is in that house,

22  you know, you could ask anybody that knows me or

23  I have done business with, I'm not that guy.  It

24  is just -- it was a bad situation that

25  snowballed, and you know, I hope in the end, it

A-347

Page 64

SEAN DUNN

1

2      A.    It depends.  Sometimes me, it depends

3  who takes the delivery, the subcontractor.

4      Q.    What steps do you take to make sure

5  the delivery tickets that are received from

6  subcontractors are maintained by you?

7      A.    The only thing we do is check in the

8  order to make sure it is accurate.

9      Q.    And then what steps do you personally

10  take to make sure those records are not

11  destroyed?

12      A.    None.

13      Q.    So all those records are gone?

14      A.    No, I have them now.

15      Q.    Yes, you received copies from the

16  supplier?

17      A.    Yes.

18      Q.    But other than that, if those weren't

19  available from the supplier, you would have

20  nothing, correct?

21      A.    Correct.

22      Q.    Is there any particular reason that

23  you do that?

24      A.    Again, just I have no idea what I'm

25  doing when it comes to bookkeeping.  I never

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM  INDEX NO. 61510/2017
NYSCEF DOC. NO. 958  RECEIVED NYSCEF: 07/26/2018

46 of 170

A-348

Page 66

1              SEAN DUNN

2     house?

3          A.    The Change house?

4          Q.    Yes.

5          A.    2,000, 2500.

6          Q.    And the other Putnam County house that

7     you built?

8          A.    Twelve thousand.

9          Q.    Where is that?

10         A.    It is on North Lake Boulevard.  Then

11    there is another one on Mahopac Point that we

12    built that is about 8,000 square feet.

13         Q.    Any way to estimate the number of

14    projects that you had in, say, the last five

15    years?

16         A.    No.  We do a lot of small work, you

17    know, just to pay the bills.

18         Q.    When you say "we," is that you and

19    your brother?

20         A.    No, I say "we" because I am referring

21    to Well Dunn as if it is a separate entity; it

22    is just a habit I have.

23         Q.    Is that how you market it, Well Dunn

24    as a separate entity?

25         A.    I don't market Well Dunn; I never

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM
NYSCEF DOC. NO. 958
INDEX NO. 61510/2017
RECEIVED NYSCEF: 07/26/2018

18-0901 Case-18-00423 Filed 02/17/18 Entered 02/17/18 11:57:22 Exhibit B Pg
47 of 170

A-349

1          SEAN DUNN

2     They cut me a check for what was in there, and,

3     again, they wanted me to open a new account, but

4     because of how they did it, it put a bad taste

5     in my mouth, so I switched banks.

6          Q.     Was there ever a time where you had

7     subaccounts within either Chase or PCSB to

8     separate business from personal?

9          A.     No.

10         Q.     So the whole time, personal money and

11    business money and business expenses and

12    personal expenses were all commingled?

13         A.     Yes.

14         Q.     Throughout the whole time, right?

15         A.     Since I started my business, yes.

16         Q.     I'm sorry, you may have answered this.

17    I apologize if I asked it already.  Do you

18    maintain workers' compensation insurance now?

19         A.     Currently, no.

20         Q.     What was the last time you maintained

21    workers' compensation insurance?

22         A.     It was before my accident.  I don't

23    know the exact dates.

24         Q.     Do you believe that you maintained

25    workers' compensation insurance in 2016?

A-350

Page 79

1                    SEAN DUNN

2          A.    I don't recall.

3          Q.    How about 2015?

4          A.    Yes.

5          Q.    2014?

6          A.    I believe so, yes.

7          Q.    2017?

8          A.    I don't know, I'd have to check.

9          Q.    Did you ever charge sales tax to any

10    of your customers?

11         A.    No.

12         Q.    Any particular reason why not?

13         A.    All the work that we do is a -- I'm

14    not allowed to charge sales tax.  It is exempt.

15    There is a term for it.

16         Q.    Well, how about for the supply of

17    materials when you are not doing the

18    installation work?

19         A.    For the supply of materials?

20         Q.    Yes, for the supply of materials?

21         A.    If we are supplying materials, we are

22    always installing it, so I don't think that

23    scenario would come up.

24         Q.    So all of what you do would always

25    involve some amount of labor?

Page 87

1                    SEAN DUNN

2      A.    First name.

3      Q.    And the last name?

4      A.    Osychenko.

5      Q.    During what period of time did Ms. --

6  what is her first name?

7      A.    Vika.

8      Q.    Is it okay if I call her Vika?

9      A.    Yes.

10     Q.    No disrespect but --

11     A.    Of course the last name is difficult.

12     Q.    So during what period of time did Vika

13 have a debit card for this bank account roughly?

14     A.    I'd say from when I opened it till a

15 year ago.

16     Q.    So roughly September 2016 to September

17 of 2017?

18     A.    Till July of '17.

19     Q.    And during that time, did she

20 regularly use the card?

21     A.    Yes.

22     Q.    And during that time that she was

23 using this card, you were putting Well Dunn

24 client money into that account, right?

25     A.    Yes, that's the only account I had.

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM INDEX NO. 61510/2017
NYSCEF DOC. NO. 928 RECEIVED NYSCEF: 07/26/2018

50 of 170

A-352

Page 120

SEAN DUNN

1

2     A.    No.

3     Q.    I want to go back to the topic of

4  licensure.  Do you remember when you first met

5  Ned and Leslie Kleinschmidt whether you said

6  that you were licensed as a contractor?

7     A.    Yes.

8     Q.    Did you tell them that you were

9  licensed as a contractor?

10    A.    Yes.  In Putnam County, yes.

11    Q.    Your Westchester County home

12 improvement contractor license was revoked, is

13 that right?

14    A.    To my knowledge, it expired.

15    Q.    Wasn't it revoked?

16    A.    Not to my knowledge.

17    MR. GORDON:  I am going to mark as

18    Plaintiff's 52 a one-page e-mail from

19    Westchester County pursuant to a FOIL

20    request that we made.  This is an e-mail

21    from someone named John McGlinchey, and the

22    e-mail is dated April 23, 2015.

23    (E-mail dated April 23, 2015 marked

24    Plaintiff's Exhibit 52 for identification,

25    as of this date.)

A-353

Page 125

SEAN DUNN

1

2          A.    Yes.

3          Q.    And you see that on March 2015, you

4     were ordered to appear on April 22 to answer

5     charges, do you see that?

6          A.    I'm reading it, yes.

7          Q.    You see that your failure to appear

8     resulted in penalties of $10,000?

9          A.    I see that.

10          Q.    Have you done any home improvement

11     contracting work in Westchester County after

12     May 2015?

13          A.    Yes.  I have.

14          Q.    So that work would have been in

15     violation of the order prohibiting you from

16     doing work in Westchester County, right?

17               MR. CARUSO:  Note my objection to the

18          form.  You can answer.

19          Q.    Right?

20               MR. CARUSO:  Go ahead and answer.  I

21          put an objection down, go ahead.

22          A.    Yes.

23          Q.    I want you to turn two pages in.  You

24     are looking at the right page.  It has a

25     photograph of you in the upper right-hand

A-354

Page 133

1                    SEAN DUNN

2        Q.   Do you sign off on that in some way

3    when he does that, do you approve it in some

4    way.

5        A.   I mean just verbally.  If he tells

6    me -- because it is always, you know, when I'm

7    short so I'll put something on my credit card.

8    He doesn't have my credit card, so if he is

9    going to buy something and there is no money in

10   the business account, he puts it on the Amex and

11   once there is money in the business account, he

12   pays you what he lent.

13       Q.   Why would there be no money in the

14   business account?

15       A.   Sometimes that's just the way it is.

16       Q.   So in other words, you are spending

17   more money that you have client receipts?

18       A.   No, sometimes, you know, clients are

19   late with payments and the jobs can't stop until

20   they pay, so you know, we have to just keep

21   going.

22       Q.   And what records would show which

23   customers are late?

24       A.   None.

25       Q.   So do you end up using client funds

## A-355

                                                    Page 134

1                        SEAN DUNN

2    from one customer to cover another project's

3    expense when that customer is late?

4         A.    It is all in one account.  It is all

5    one big pool.

6         Q.    So there could be times where let's

7    say you are working three jobs, Job A, the

8    client is on time, Job B, the client is on time,

9    Job C, the client is late.  You would end up

10   using the money from Client A and B to cover the

11   expenses on Project C, right?

12        A.    Inadvertently, yes.

13        Q.    And that would happen periodically?

14        A.    From time to time.

15        Q.    And do you keep any kind of record of

16   when that happens?

17        A.    No.

18        Q.    You also have a Barclay card; is that

19   a credit card?

20        A.    Yes.

21        Q.    And from time to time, you will pay

22   that out of your one account, the PCSB account?

23        A.    Yes.

24        Q.    I am looking in particular on page 6

25   of 12, November 25th?

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM
INDEX NO. 61510/2017
NYSCEF DOC. NO.
RECEIVED NYSCEF: 07/26/2018

54 of 170

A-356

Page 136

1                    SEAN DUNN

2      there is a NYSEG bill payment.  Is that for 8

3      Veschi Lane?

4          A.    Yes.

5          Q.    Underneath it, "MBFS.comwebpay," is

6      that Mercedes Benz Finance?

7          A.    Yes.

8          Q.    Is that for the lease of a Mercedes

9      Benz car in your name?

10         A.    No.

11         Q.    Who is that for?

12         A.    My ex-fiancee.

13         Q.    Who is the lessee on that vehicle?

14         A.    She is.

15         Q.    There are a number -- I will represent

16     to you that there are a number of months in

17     which the business was paying for, I guess her

18     Mercedes Benz, is that right?

19         A.    Yes, she had lost her job, so I was

20     paying her lease for her.

21         Q.    And this money to cover her Mercedes

22     Benz lease was coming out of your PCSB account?

23         A.    Correct.

24         Q.    Most, if not all of the money that

25     went into the PCSB account, came from your

A-357

Page 146

1          SEAN DUNN

2    your name to the Kleinschmidts?

3          A.    Yes.

4          Q.    And LAK ultimately hired you to be the

5    general contractor?

6          A.    Yes.

7          Q.    When you were first hired, did you

8    explain that there was no company LAK3,

9    that's -- I mean Well Dunn, that's just you?

10         A.    I don't think it ever came up.

11         Q.    Who else from Mr. Piccarillo's office

12   did you meet in connection with this project?

13         A.    Vlad, V-l-a-d.

14         Q.    Anybody else?

15         A.    No, I think it was just the two of

16   them.

17         Q.    When you first bid the job, did you

18   get a copy of the drawings?

19         A.    Yes.

20         Q.    And did you bid on those drawings?

21         A.    Yes.

22         Q.    That was in May of 2016, something

23   like that?

24         A.    Possibly, yeah.

25         Q.    And then the drawings were revised?

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM    INDEX NO. 61510/2017
NYSCEF DOC. NO. 038    RECEIVED NYSCEF: 07/26/2018

56 of 170

A-358

Page 149

1                    SEAN DUNN
2    $820,000 by LAK3, right?
3         A.   I don't remember, but it sounds about
4    right.
5         Q.   $840,828.22, that's what you were
6    paid, right?
7         A.   That sounds about right, I don't
8    recall.  I will tell you by recollection that
9    almost 50 percent of that was change orders.
10        Q.   I am going to show you what we
11   previously marked as Plaintiff's Exhibits 26, 27
12   and 28.  So Exhibit 26 is a document called a
13   Notice to Admit, and Exhibit 27 is an exhibit to
14   that document.
15        A.   Okay.
16        Q.   And Exhibit 28 is Defendants'
17   responses to those requests.  I am going to
18   direct you to the last page of Exhibit 28.  Is
19   that your signature?
20        A.   That?
21        Q.   Yes.
22        A.   No.
23        Q.   Can I see that for a moment?
24             MR. CARUSO:  We have to get -- that's
25             something I just realized we have to get --

Page 165

1                      SEAN DUNN

2          Q.    How about exterior finish?

3          A.    No.

4          Q.    Was that installed?

5          A.    No.

6          Q.    Was that bid?

7          A.    Yes.

8          Q.    How about roofing, was the roofing

9    substantially complete?

10         A.    It was ready for shingles.

11         Q.    Was it substantially complete?

12         A.    No.

13         Q.    Was the mechanical work substantially

14   complete?

15         A.    No.

16         Q.    Was the electrical work substantially

17   complete?

18         A.    No.

19         Q.    Had you done any electrical roughing?

20         A.    Just the service.

21         Q.    You mean bringing the electricity to

22   the house?

23         A.    From the meter to the basement, the

24   underground pipework, temporary power, all of

25   that was done.

Page 166

1               SEAN DUNN

2       Q.    Did you bid on that?

3       A.    Did I bid on what?

4       Q.    Electrical?

5       A.    Yes.

6       Q.    Did you bid on mechanical?

7       A.    Yes.

8       Q.    Did you bid on the roof?

9       A.    Yes.

10      Q.    And were the prices for all of that

11  work included in the price that you charged to

12  LAK3?

13      A.    Partially because there was a lot of

14  unknowns.  So they got electric to code, but

15  there were no details so, for instance, Leslie

16  wanted to add a bunch of items that, you know,

17  would not have been part of the bid.

18      Q.    Well, aside from the finished

19  electrical, I'm talking about the electrical

20  roughing, the main conduits, the main electrical

21  wiring, the main, the home run, plus all else.

22  Had you been paid for that work at the time that

23  you left?

24      A.    We took a small electrical deposit

25  because there was quite a bit of removal because

A-361

Page 167

SEAN DUNN

1
2       there was a complex pump system for the septic

3       so all those components had to be delicately

4       removed and stored to be reinstalled so that

5       they had completed.  So we had taken a small

6       deposit for electrical work, yes.

7           Q.    So your testimony is that when you

8       left the project in June 2017, your work was

9       substantially complete?

10          A.    More than 50 percent, yes.

11          Q.    So your definition would be more than

12      50 percent?

13          A.    Well, I would consider substantial

14      more than 50 percent.  So I'm just trying to be

15      crystal clear.

16          Q.    Okay, got it.  When you left the

17      project in June of 2017, was the house suitable

18      for human occupancy?

19          A.    No.

20          Q.    For any number of reasons, right, a

21      lot of reasons?

22          A.    Several.  But again, keep in mind that

23      the total amount that they had paid out so far,

24      a large majority of that was change orders, so

25      that doesn't even apply to the bid dollar

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM    INDEX NO. 61510/2017
NYSCEF DOC. NO. 938    RECEIVED NYSCEF: 07/26/2018

60 of 170

A-362

Page 170

1                           SEAN DUNN
2           Q.    Did you ever obtain from the
3    Kleinschmidts their signature on a written
4    agreement?
5           A.    No.
6           Q.    So that's why you have admitted in
7    your responses that there is no written
8    agreement between you and the Kleinschmidts,
9    right, or you and LAK3?
10          A.    Right.  We were arguing about the
11   drawings.  I said that I would sign a contract
12   once there was a set of drawings and they were
13   never produced.  Because again, I can't bid
14   made-up stuff.
15          Q.    So I want to make sure I have this
16   right.  You did discuss a written contract with
17   the Kleinschmidts, right?
18          A.    Yes.
19          Q.    You prepared a written contract for
20   them, right?
21          A.    They prepared it.
22          Q.    They prepared it?
23          A.    And they gave it to me, I signed it,
24   gave it back, and then they never signed it to
25   give it back to me.

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM  INDEX NO. 61510/2017
NYSCEF DOC. NO. 138  RECEIVED NYSCEF: 07/26/2018

61 of 170

**A-363**

<div align="right">

**Page 195**

</div>

1

2   SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF WESTCHESTER

3   _____x

4   LAK3, LLC,

5                              Plaintiff,

6           -against-

7   SEAN DUNN, GERALD DUNN,

and WELL DUNN MAINTENANCE

8   & CONTRACTING,

9                              Defendants.

_____x

10

11

12                      May 7, 2018

9:11 a.m.

13

14

15

16        Continued deposition of SEAN DUNN,

17   taken by Plaintiff, pursuant to Adjournment,

18   at the offices of Gordon Law, LLP, 51 Bedford

19   Road, Katonah, New York, before Nancy R. Sullivan,

20   a Shorthand Reporter and Notary Public within

21   and for the State of New York.

22

23

24

25

**A-364**

Page 201

```
 1                      SEAN DUNN
 2          A.    No.
 3          Q.    Thank you.  Did you do anything
 4   between April 26, 2018 when you were last here
 5   and today to prepare for today's deposition?
 6          A.    I don't really understand the
 7   question.
 8          Q.    Well, remember on April 26, 2018, you
 9   began your deposition?
10          A.    Yes.
11          Q.    And did you prepare for that
12   deposition in any way?
13          A.    Just speaking with my attorney.
14          Q.    Okay.  And you knew you were going to
15   come back today May 7, 2018 to continue, right?
16          A.    Yes.
17          Q.    So between April 26, 2018 and today,
18   did you do anything to prepare for today's
19   deposition?
20          A.    No.
21          Q.    When was the last time you spoke to
22   Mr. Caruso -- just don't tell me what you
23   discussed -- if anything?
24          A.    When was the last time?
25          Q.    Yes.
```

**Page 209**

<pre>
 1                    SEAN DUNN
 2   you paid to your brother, Jerry?
 3        A.   I don't recall.
 4        Q.   Do you --
 5        A.   I believe so because he was on the
 6   books and we were using a company -- a payroll
 7   company, so I would imagine, yes, but they -- I
 8   think part of my package was they filed it
 9   because they sent me 1099's, W-2's, so I would
10   say yes.
11        Q.   Do you remember whether you filed a
12   1099 or a W-2?
13        A.   For myself?
14        Q.   No, no, for your brother.
15        A.   Jerry at the time would have been -- I
16   mean he was an employee, so that's a W-2, no?
17        Q.   Is that what you recall?
18        A.   Yeah, I recall that when we were using
19   the payroll company, he was an employee, so it
20   would have been a W-2.
21        Q.   And that was in the 2013 time period?
22        A.   I don't remember when it was.
23        Q.   But during the time that you and your
24   brother were working on the LAK3 house, 41
25   Averill, you were off the books, right?
</pre>

A-366

Page 210

                        SEAN DUNN

1                            SEAN DUNN

2          A.    I believe so, yes.

3          Q.    During that time period, you did not

4     report any wages to the IRS or the State of New

5     York, right?

6          A.    I don't think so.

7          MR. GORDON:    So let's mark as

8          Plaintiff's 55 a one-page document bearing

9          production number 1420.    It appears to be a

10         letter dated April 14, 2013 by Mr. Sean

11         Dunn to whom it may concern.

12              (Letter dated April 14, 2013, Bates

13         stamped 1420 marked Plaintiff's Exhibit 55

14         for identification, as of this date.)

15         Q.    You recognize what we marked as

16    Plaintiff's Exhibit 55, right?

17         A.    Yes.

18         Q.    That is a letter that you wrote in or

19    about April of 2013, right?

20         A.    Yes.

21         Q.    And at the time did you believe that

22    the contents of what you wrote were truthful?

23         A.    Yes.

24         Q.    And do you know why you wrote this

25    letter?

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM
INDEX NO. 61510/2017
NYSCEF DOC. NO. 938
RECEIVED NYSCEF: 07/26/2018

65 of 170

A-367

Page 211

1        SEAN DUNN

2        A.    I believe he was trying to get a

3    mortgage on his home because he was off the

4    books, he was having a hard time getting

5    approved because he couldn't prove income, so

6    his mortgage broker, I believe, was the one that

7    asked me to write this.

8        Q.    And I'm sorry, but I think you've

9    answered this last time but, again, what does it

10   mean to you to be off the books?

11       A.    Jerry was paid cash.

12       Q.    And that cash was not reported in any

13   way, right, that's what off the books means to

14   you?

15       A.    No, off the books to me means Jerry

16   was paid cash.  He didn't get a paycheck.

17       Q.    Were any taxes withheld?

18       A.    No.

19       Q.    Was he an employee when you paid him

20   off the books?

21           MR. CARUSO:  Just note my objection.

22       You can answer.

23       A.    Yes, he got paid for working.

24       Q.    So was there a period of time that you

25   were paying your brother for work that he did

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM

INDEX NO. 61510/2017

NYSCEF DOC. NO. 938

RECEIVED NYSCEF: 07/26/2018

66 of 170

A-368

Page 284

1               SEAN DUNN

2        Q.    Do you recognize that number?

3        A.    That's my Social Security number.

4        Q.    This account was opened at PCSB on or

5   about September 28, 2016, right?

6        A.    Yes.

7        Q.    And you were an authorized signer,

8   right?

9        A.    Yes.

10       Q.    That's your signature on this page?

11       A.    Yes.

12       Q.    And your brother, Gerald, was also an

13  authorized signer?

14       A.    Yes.

15       Q.    And at some point, Victoria Osychenko

16  was also a signer?

17       A.    Yes.

18       Q.    So if you go to the next page, you

19  will see in handwriting, it says "Removed

20  Victoria Osychenko as signer"?

21       A.    Yes.

22       Q.    Do you know or do you remember when

23  she was removed as a signer approximately?

24       A.    It probably would have been July,

25  August, September, somewhere around there.

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM INDEX NO. 61510/2017

NYSCEF DOC. NO. 38 18-09028-cgm Doc 4-23 Filed 12/07/18 Entered 12/07/18 11:57:35 Exhibit Pg RECEIVED NYSCEF: 07/26/2018

Page 285

```
 1                    SEAN DUNN
 2        Q.   Of what year?
 3        A.   Of '17.
 4        Q.   So would it be fair to say that she
 5   was an authorized signer between the time the
 6   account was opened on or about September 28,
 7   2016 until June, July or August of 2017?
 8        A.   Yes.
 9        Q.   Did you ever meet with anyone from
10   Sierra Pacific Windows Company?
11        A.   Yes.
12        Q.   Regarding this project?
13        A.   Yes.
14        Q.   Was it a manufacturer's rep you met
15   with?
16        A.   It was a sales rep.
17        Q.   Do you remember how many times you met
18   with the sales rep?
19        A.   Quite a few.
20        Q.   And you met concerning the
21   installation of windows at 41 Averill?
22        A.   Concerning the installation?
23        Q.   Of windows?
24        A.   Yes.
25        Q.   Did you ever take any notes of any
```

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM    INDEX NO. 61510/2017
NYSCEF DOC. NO. 38    RECEIVED NYSCEF: 07/26/2018

WORKING COPY

**Gordon Aff. Exhibit 3**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

LAK3, LLC,

       Plaintiff,

      -against-

SEAN DUNN, GERALD DUNN, AND WELL
DUNN MAINTENANCE & CONTRACTING

      Defendants.

INDEX NO.

IAS PART

JUSTICE

**PLAINTIFF'S FIRST NOTICE TO
ADMIT TO DEFENDANTS**

      **PLEASE TAKE NOTICE** that, pursuant to CPLR 3123(a), Plaintiff LAK3, LLC

("Plaintiff"), by its undersigned attorneys, hereby demands that Defendant Sean Dunn ("Sean")

admit the truth of the following matters:

      1.    That there is no written agreement between Plaintiff and Sean, signed by Plaintiff

and Sean, concerning the construction of a single-family residential dwelling place at 41 Averill

Drive, Mahopac, New York (the "Project").

      2.    That there is no written agreement between Plaintiff and Defendant Gerald Dunn

("Gerald"), signed by Plaintiff and Gerald, concerning the construction of a single-family

residence at 41 Averill Drive, Mahopac, New York (the "Project").

      3.    That there is no written agreement between Plaintiff and Defendant Well Dunn

Maintenance & Contracting ("WD"), signed by someone on behalf of WD, concerning the

FILED: WESTCHESTER COUNTY CLERK 01/17/2018 01:21 PM

NYSCEF DOC. NO. 38                                     RECEIVED NYSCEF: 01/17/2018

**A-372**

construction of a single-family residence at 41 Averill Drive, Mahopac, New York (the "Project").

4.      That no written agreement has ever existed between Plaintiff and Sean, signed by Plaintiff and Sean, concerning the Project.

5.      That no written agreement has ever existed between Plaintiff and Gerald, signed by Plaintiff and Gerald, concerning the Project.

6.      That no written agreement has ever existed between Plaintiff and WD, signed by Plaintiff and someone on behalf of WD, concerning the Project.

7.      That WD is a pseudonym or trade name under which Sean has done business.

8.      That WD is a pseudonym or trade name under which Gerald has done business.

9.      That Sean furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

10.     That Gerald furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

11.     That Sean furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project using the name "Well Dunn Maintenance & Contracting".

12.     That Gerald furnished work, labor, services, and/or materials for the Project using the name "Well Dunn Maintenance & Contracting".

13.     That WD is not a corporation, limited liability company or limited liability partnership.

14.     That WD was not a corporation, limited liability company, or limited liability partnership at any time during which Sean, Gerald and/or WD furnished work, labor, services, and/or materials to or Plaintiff for the benefit of the Project.

2

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM INDEX NO. 61510/2017
NYSCEF DOC. NO. 38 RECEIVED NYSCEF: 01/17/2018

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 01:21 PM
NYSCEF DOC. NO. 38

A-373

15. That Sean knew that WD was not a corporation, limited liability company, or limited liability partnership at any time during which Sean, Gerald and/or WD furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

16. That Gerald knew that That WD was not a corporation, limited liability company, or limited liability partnership at any time during which Sean, Gerald and/or WD furnished work, labor, services, and/or materials to Plaintiff or for the benefit of the Project.

17. That Sean did not have a valid Putnam County contractor's license during the time that he furnished work, labor, services, and/or materials to Plaintiff or for the benefit of the Project.

18. That Gerald did not have a valid Putnam County contractor's license during the time that he furnished work, labor, services, and/or materials to Plaintiff or for the benefit of the Project.

19. That WD did not have a valid Putnam County contractor's license during the time that Sean, Gerald, and/or WD furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

20. That Sean was not registered as a home improvement contractor with the County of Putnam, State of New York, at the time he furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

21. That Gerald was not registered as a home improvement contractor with the County of Putnam, State of New York, at the time he furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

3

A-374

22. That WD was not registered as a home improvement contractor with the County of Putnam, State of New York, at the time it, Sean, and Gerald furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

23. That Sean engaged in a home improvement business within the County of Putnam at a time when he was not licensed to do so and was not registered with the County of Putnam, State of New York as a home improvement contractor.

24. That Gerald engaged in a home improvement business within the County of Putnam at a time when he was not licensed to do so and was not registered with the County of Putnam, State of New York as a home improvement contractor.

25. That WD engaged in a home improvement business within the County of Putnam at a time when he was not licensed to do so and was not registered with the County of Putnam, State of New York as a home improvement contractor.

26. That Sean held himself out to Plaintiff as a licensed home improvement contractor throughout the time he furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

27. That Gerald held himself to Plaintiff out as a licensed home improvement contractor throughout the time he furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

28. That WD, by Sean and/or Gerald, held itself out as a licensed home improvement contractor throughout the time he furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

4

FILED: WESTCHESTER COUNTY CLERK 05/17/2018 01:21 PM

A-375

29.     That Sean held himself out to Plaintiff as a being registered as a home
Improvement contractor with the County of Putnam, State of New York throughout the time he
furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

30.     That Gerald held himself out to Plaintiff out as being registered as a home
improvement contractor with the County of Putnam, State of New York throughout the time he
furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

31.     That WD, by Sean and/or Gerald, held itself out as being registered as a home
improvement contractor with the County of Putnam, State of New York throughout the time it
furnished work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

32.     That between June 27, 2016 and March 11, 2017, Plaintiff paid WD the sum of
$840,828.22 for work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

33.     That the document annexed as Exhibit 1 hereto ("Exh. 1") is a true and accurate
copy of the original of this document.

34.     That Sean, Gerald, and/or or someone under the direction and control of one or
both of them prepared Exh. 1.

35.     That Sean knew that Exh. 1 was being delivered to one or more of Plaintiff's
representatives.

36.     That Gerald knew that Exh. 1 was being delivered to one or more of Plaintiff's
representatives.

37.     That Sean intended for Plaintiff to rely on the contents of Exh. 1 at the time it was
delivered to one or more of Plaintiff's representatives.

38.     That Gerald intended for Plaintiff to rely on the contents of Exh. 1 at the time it
was delivered to one or more of Plaintiff's representatives.

FILED: WESTCHESTER COUNTY CLERK 04/17/2018 01:21 PM

A-376

39. That Sean did not maintain workers compensation insurance during the time that he rendered work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

40. That Gerald did not maintain workers compensation insurance during the time that he rendered work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

41. That WD did not maintain workers compensation insurance during the time that it rendered work, labor, services, and/or materials to Plaintiff for the benefit of the Project.

42. That Sean represented to one or more employees of the County of Putnam, State of New York, in connection with the Project, that WD maintained workers compensation insurance.

43. That Gerald represented to one or more employees of the County of Putnam, State of New York, in connection with the Project, that WD maintained workers compensation insurance.

44. That Sean knew at the time that he and/or Gerald represented to one or more employees of the County of Putnam, State of New York, in connection with the Project, that WD maintained workers compensation insurance, that this representation was false.

45. That Gerald knew at the time that he and/or Sean represented to one or more employees of the County of Putnam, State of New York, in connection with the Project, that WD maintained workers compensation insurance, that this representation was false.

46. That, in connection with obtaining one or more building permits for the Project, Sean represented to the Building Department of Putnam County, State of New York (the "Building Department"), that WD had a valid home improvement contractor's license and/or was registered with Putnam County, State of New York, as a home improvement contractor.

6

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM INDEX NO. 61510/2017

NYSCEF DOC. NO. 38 RECEIVED NYSCEF: 01/17/2018

FILED: WESTCHESTER COUNTY CLERK 01/17/2018 01:21 PM

47.   That, in connection with obtaining one or more building permits for the Project, Gerald represented to the Building Department of Putnam County, State of New York (the "Building Department"), that WD had a valid home improvement contractor's license and/or was registered with Putnam County, State of New York, as a home improvement contractor.

48.   That WD obtained one or more building permits from the Building Department in connection with the Project based upon the representation by Sean and/or Gerald to the Building Department of Putnam County, State of New York, that WD had a valid home improvement contractor's license or was registered with Putnam County, State of New York, as a home improvement contractor.

49.   That Sean knew the building permit that he and/or Gerald obtained from the Building Department for the Project was based on the false representation that WD had a valid home improvement contractor's license and/or was registered with Putnam County, State of New York, as a home improvement contractor.

50.   That Gerald knew the building permit that he and/or Sean obtained from the Building Department for the Project was based on the false representation that WD had a valid home improvement contractor's license and/or was registered with Putnam County, State of New York, as a home improvement contractor.

7

FILED: WESTCHESTER COUNTY CLERK 01/17/2018 01:21 PM
NYSCEF DOC. NO. 38                                    RECEIVED NYSCEF: 01/17/2018

A-378

Dated: Katonah, New York
October 25, 2017

GordonLaw LLP

By: _____
Michael R. Gordon

Attorneys for Plaintiff LAK3, LLC
51 Bedford Road, Suite 10
Katonah, New York 10536
Telephone    914.232.9500
Fax          914.992.6634
Email        mgordon@gordonlawllp.com

FILED: WESTCHESTER COUNTY CLERK 01/17/2018 01:21 PM
NYSCEF DOC. NO. 38                                                    RECEIVED NYSCEF: 01/17/2018

A-379

# EXHIBIT 1

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM
NYSCEF DOC. NO. 55
FILED: WESTCHESTER COUNTY CLERK 01/16/2018 01:33 PM
NYSCEF DOC. NO. 38

KLEINSCHMIDT APPLICATION AND CERTIFICATE FOR PAYMENT
Owner: Ned & Lesley Kleinschmidt
Project: 41 Averill Drive, Mahopac NY 10541

**A-380**

Application No. 1
Application Date:
Period To: 5/4/17
Project No. 5/4/17

| A | B | C | D | E | F | G | H | I | J | K |
|---|---|---|---|---|---|---|---|---|---|---|
| ITEM NO. | DESCRIPTION | SCHEDULED VALUE | WORK COMPLETED | | MATERIALS PRESENTLY STORED (NOT IN G OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G/C) | BALANCE TO FINISH (C-G) | RETAINAGE | COMMENTS THIS PERIOD |
| | | | FROM PREVIOUS APPLICATIONS (D+E) | THIS PERIOD | | | | | | |
| 1 | General Conditions (with supervision) | 50,000 | 30,000 | | | 30,000 | 60% | 20,000 | | |
| | GL & WC Insurance | | | | | 0 | | 0 | | |
| 2 | Sitework | 40,000 | 40,000 | | | 40,000 | 100% | 0 | | |
| 3 | Demolition | 60,000 | 60,000 | | | 60,000 | 100% | 0 | | |
| 4 | Concrete/Masonry | 150,000 | 130,000 | | | 130,000 | 87% | 20,000 | | |
| 5 | Steel | 10,000 | 62,000 | | | 62,000 | 620% | -52,000 | | |
| 6 | Wood Framing Material | 90,000 | 90,000 | | | 90,000 | 100% | 0 | | |
| 7 | Wood Framing Labor | 40,000 | 40,000 | | | 40,000 | 100% | 0 | | |
| 8 | Roofing | 80,000 | 30,000 | | | 30,000 | 38% | 50,000 | | |
| | Stucco and Trim | 50,000 | 22,712 | | | 22,712 | 45% | 27,288 | | |
| 9 | Gutters & Leaders | 16,000 | 4,000 | | | 4,000 | 25% | 12,000 | | |
| 10 | Insulation | 25,000 | | | | 0 | 0% | 25,000 | | |
| 11 | Drywall | 35,000 | | | | 0 | 0% | 35,000 | | |
| 12 | Windows & Exterior Doors | 150,000 | 140,738 | | | 140,738 | 94% | 9,263 | | |
| 13 | Interior Doors and hardware | 30,000 | | | | 0 | 0% | 30,000 | | |
| 14 | Finish Carpentry Materials (w/Stairs & Railings) | 60,000 | 20,000 | | | 20,000 | 33% | 40,000 | | |
| 15 | Finish Carpentry Labor (w/stairs & railings) | 35,000 | 10,000 | | | 10,000 | 29% | 25,000 | | |
| 16 | Paint | 32,000 | | | | 0 | 0% | 32,000 | | |
| 17 | Wood Floors (Labor & Materials) | 30,000 | | | | 0 | 0% | 30,000 | | |
| 18 | Ceramic Tile Installation | 30,000 | | | | 0 | 0% | 30,000 | | |
| 19 | Specialties | 11,378 | 11,378 | | | 11,378 | 100% | -1 | | |
| 20 | HVAC | 105,000 | 80,000 | | | 80,000 | 76% | 25,000 | | |
| 21 | Plumbing | 60,000 | 50,000 | | | 50,000 | 83% | 10,000 | | |
| 22 | Electric | 75,000 | 20,000 | | | 20,000 | 27% | 55,000 | | |
| 23 | Change Order for basement slab | 13,750 | 13,750 | | | | | | | |
| | TOTAL PAGE 1 | 1,278,128 | 840,828 | 0 | 0.00 | 840,828 | 66% | 423,550 | #REF! | #REF! |

A-381

WORKING COPY

# Gordon Aff. Exhibit 4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

LAK3, LLC,

                                        Plaintiff,        Index No. 61510/2017

        -against-

                                                 **DEFENDANTS' RESPONSES
SEAN DUNN, GERALD DUNN, and WELL DUNN            TO PLAINTIFF'S REQUEST FOR
MAINTENANCE & CONTRACTING,                      ADDRESSES OF DEFENDANTS**

                                        Defendants.

Defendants respond to plaintiff's Request for the Addresses of Defendants, dated October 25, 2017 (the "Request"), as follows:

1.      Defendant Sean Dunn:  (a) P.O. Box 1161, Yorktown Heights, New York 10598 (post office address); and (b) 8 Veschi Lane, Mahopac, New York 10541 (residence address)

2.      Defendant Well Dunn Maintenance & Contracting, P.O. Box 1161, Yorktown Heights, New York 10598 (post office address).

3.      Defendant Gerald Dunn:  2719 Strang Boulevard, Yorktown Heights, New York 10598 (residence and post office address).

Defendants specifically reserve the right to supplement, amend, and/or modify all of the foregoing responses.

Dated: Carmel, New York
        February 9, 2018


                        **WILLIAM A. SHILLING, JR., P.C.**

                        By: _____
                                Michael V. Caruso
                        122 Old Route 6
                        Carmel, New York 10512
                        (845) 225-7500

                        *Attorneys for defendants*



A-383

<u>VERIFICATION</u>

STATE OF NEW YORK )
                      ) ss.:

COUNTY OF PUTNAM )

        SEAN DUNN, being duly sworn deposes and says:

        I am a defendant in this action. I have read Defendants' Response to Plaintiff's Request

for Addresses of Defendants and my response to the request. I am familiar with the contents of

both. Based on my personal knowledge, Defendants' Response to Plaintiff's Request for

Addresses of Defendants are true and correct insofar as I have provided partial, or complete,

responses thereto.

                                                SEAN DUNN

Sworn to before me on this
9th day of February, 2018

Notary Public
Michael V. Caruso
Reg. No. 02CA6365126
Qualified in Putnam Co.
Commission Expires 9/25/21

2

A-384

## VERIFICATION

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF PUTNAM     )

GERALD DUNN, being duly sworn deposes and says:

I am a defendant in this action. I have read Defendants' Response to Plaintiff's Request for Addresses of Defendants and my response to the request. I am familiar with the contents of both. Based on my personal knowledge, Defendants' Response to Plaintiff's Request for Addresses of Defendants are true and correct insofar as I have provided partial, or complete, responses thereto.

_____
GERALD DUNN

Sworn to before me on this
9th day of February, 2018

_____
Notary Public
Michael V. Caruso
Reg. No. 02CA6365720
Qualified in Putnam C.
Commission Expires 9/25/21

3

**A-385**

**WORKING COPY**

# Gordon Aff. Exhibit 4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

LAK3, LLC,

                                  **Plaintiff,**

-against-

SEAN DUNN, GERALD DUNN, and WELL DUNN
MAINTENANCE & CONTRACTING,

                                  **Defendants.**

Index No. 61510/2017

**DEFENDANTS' RESPONSES
TO PLAINTIFF'S REQUEST FOR
ADDRESSES OF DEFENDANTS**

Defendants respond to plaintiff's Request for the Addresses of Defendants, dated October 25, 2017 (the "Request"), as follows:

    1.    Defendant Sean Dunn:  (a) P.O. Box 1161, Yorktown Heights, New York 10598 (post office address); and (b) 8 Veschi Lane, Mahopac, New York 10541 (residence address)

    2.    Defendant Well Dunn Maintenance & Contracting, P.O. Box 1161, Yorktown Heights, New York 10598 (post office address).

    3.    Defendant Gerald Dunn:  2719 Strang Boulevard, Yorktown Heights, New York 10598 (residence and post office address).

Defendants specifically reserve the right to supplement, amend, and/or modify all of the foregoing responses.

Dated: Carmel, New York
        February 9, 2018

                        **WILLIAM A. SHILLING, JR., P.C.**

                        By: _____

                              Michael V. Caruso
                        122 Old Route 6
                        Carmel, New York 10512
                        (845) 225-7500

                        *Attorneys for defendants*



A-387

<u>VERIFICATION</u>

STATE OF NEW YORK )
                    ) ss.:
COUNTY OF PUTNAM )

SEAN DUNN, being duly sworn deposes and says:

I am a defendant in this action. I have read Defendants' Response to Plaintiff's Request for Addresses of Defendants and my response to the request. I am familiar with the contents of both. Based on my personal knowledge, Defendants' Response to Plaintiff's Request for Addresses of Defendants are true and correct insofar as I have provided partial, or complete, responses thereto.

_____
SEAN DUNN

Sworn to before me on this
9th day of February, 2018

_____
Notary Public
Michael V. Caruso
Reg. No. 02CA6365128
Qualified in Putnam Co.
Commission Expires 9/25/21

2

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM INDEX NO. 61510/2017
NYSCEF DOC. NO. 1149 RECEIVED NYSCEF: 07/26/2018

18-09058-cgm Doc 04-23 Filed 12/07/18 Entered 12/07/18 11:57:33 Exhibit B Pg
86 of 170

A-388

## VERIFICATION

STATE OF NEW YORK )
                     ) ss.:

COUNTY OF PUTNAM )

    GERALD DUNN, being duly sworn deposes and says:

    I am a defendant in this action. I have read Defendants' Response to Plaintiff's Request for Addresses of Defendants and my response to the request. I am familiar with the contents of both. Based on my personal knowledge, Defendants' Response to Plaintiff's Request for Addresses of Defendants are true and correct insofar as I have provided partial, or complete, responses thereto.

                                     _____
                                         GERALD DUNN

Sworn to before me on this
9th day of February, 2018

_____
Notary Public
Michael V. Caruso
Reg. No. 02CA6365120
Qualified in Putnam C.
Commission Expires 9/25/21

3

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM
INDEX NO. 61510/2017
NYSCEF DOC. NO. 681
Case 7:10-cv-04923-CM Document 14 Entered 12/17/2018 11:57:35 Exhibit B Pg
87 of 170
RECEIVED NYSCEF: 07/26/2018

A-389

WORKING COPY

# Gordon Aff. Exhibit 5

**A-390**

From: Ned Kleinschmidt <nkleinschmidt@rpaadvisors.com>
To: Sean Dunn <welldunnone@aol.com>
Cc: michael gordon <mgordon@gordonlawllp.com>
Subject: Averill
Date: Mon, Jun 19, 2017 2:36 pm
Attachments: Well Dunn Termination 061917.pdf (3224K), ATT00001.htm (182)

Please see attached.


Ned Kleinschmidt



**A-391**

LAK3, LLC
41 Averill Drive
Mahopac, New York 10541

June 19, 2017

**BY EMAIL AND CERTIFIED MAIL,
RETURN RECEIPT REQUESTED**

Mr. Sean Dunn
Well-Dunn Maintenance
P.O Box 1161
Yorktown Heights, New York 10598

Re:    NOTICE OF TERMINATION

Dear Sean:

This is to inform you that we have elected to terminate the role of Well-Dunn Maintenance and Contracting ("you" or "Well-Dunn") on the construction of our single-family residence at 41 Averill Drive, Mahopac, New York (the "Project") in respect of which you have been acting as General Contractor. This termination is effective immediately.

As more fully explained below in Section A, this termination is for cause.

As more fully explained below in Section B, because you have taken monies from us that you represented to us were intended for subcontractors and suppliers who or that furnished work, labor, services, and materials to and for the benefit of the Project, you are subject to the provisions of the New York Lien Law, including without limitation Article 3-A thereof, which concerns Lien Law Trust Funds. Section B below contains certain demands based upon the New York Lien Law.

Finally, Section C contains a demand that, if you have not already done so, you immediately take all steps to preserve and not destroy or delete all documents and things, whether paper, electronic, or otherwise, having any relevance or possible relevance to the Project.

**A.    Notice of Termination**

You are being terminated because, despite repeated warnings, notices, and opportunities by us for you to cure

- You repeatedly failed to furnish the services, work, labor, supervision, and materials for which we have paid you over $800,000, resulting in substantial delays in Project completion and additional and unnecessary Project costs;

000647

**A-392**

- You abandoned the Project without notice;

- The work, labor, supervision and materials you furnished to and for the benefit of the Project have been (a) materially deficient, (b) not in compliance with the Project design that you bid on and agreed to comply with, (c) not in compliance with good construction standards and practices, (d) violative of manufacturer specifications, and in some cases (e) hazardous;

- Based upon the government records we have reviewed, you appear to be in material violation of State and Putnam County registration requirements (it also appears that Well Dunn is not recognized by the State of New York as an existing entity with the capacity to enter into a contract);

- You have diverted Lien Law Trust funds; and

- You materially deceived us as to your qualifications, ability, and capacity to serve as General Contractor for the Project and your compliance with State and Putnam County registration requirements.

As a consequence of this termination:

1. You are forbidden to return to the Project site without our written consent for any reason. If you desire to return to the project site as it relates to the subject of Point A.3 below, concerning off-site stored materials and the retrieval by you and/or your subcontractors of tools and materials not purchased with Project monies, you must provide at least 48 hours' notice to us of the date and time you wish to return and it must be an acceptable time to us or our representatives who will meet you on site. If you do return to the Project site for any reason without our written consent, you will be trespassing;

2. On or before June 21, 2017, you must identify to us, by name, address, telephone number, and emails address, all subcontractors and suppliers of all tiers that have furnished or have been contracted to furnish any work, labor, services, and/or materials to or for the benefit of the Project;

3. On or before June 21, 2017, you must (a) identify to us all off-site stored materials that you have purchased or contracted to purchase using Project monies you have received from us, including the location of such off-site stored materials, (b) arrange for the inspection of such materials (by us or our representatives) off site to determine if they are to be accepted, delivery of such materials to the Project site no later than June 26, 2017, between the hours of 8am and 3pm, and (c) arrange for the retrieval of all tools and other materials not purchased with Project monies by you and/or your subcontractors. You must provide at least 48 hours' notice to us of the date and an approximate time of such delivery of off-site stored materials and retrieval of tools and materials not

2

000043

**A-393**

purchased with Project monies so that our representatives can consent, meet you on site and can re-inspect and keep safe any returned items we accept; and

4. After we have received the information demanded by this letter and after we have concluded the investigation we have begun into the circumstances of how you have handled the Project, we will (a) furnish you with a statement of account stating the overpayment you have received from us and demanding the return of such overpayment; and (b) advise you of any other actions you must take and payments you must make to undo, to the extent possible, the damage you have caused to us.

**B.    Lien Law Requirements**

As discussed above, you are bound by the requirements of the New York Lien Law and, pursuant to Article 3-A thereof, are a trustee of monies that we have paid to you for the benefit of subcontractors and suppliers who and that furnished work, labor, services and/or materials to and for the benefit of the Project. Pursuant to Lien Law §§ 75-77, we hereby demand that, on or before July 5, 2017, you provide us with (a) an opportunity to inspect, at a location within Putnam County, New York State, the books and records you have maintained, if any, relating to the New York Lien Law trust that exists as a matter of law with respect to the Project (the "Trust") and (b) copies of all Trust-related books and records.

**C.    Document preservation**

Given that this Notice of Termination stems from events that have given rise to claims by us against you, and given the likelihood that this Notice of Termination will lead to litigation, we hereby demand that you immediately preserve all documents, tangible things and electronically stored information relevant and potentially relevant to the Project. This demand pertains to Well-Dunn and Sean Dunn individually and any other individual who owns or operates or is employed, contracts or subcontracts by or for Well Dunn Maintenance and Contracting. This obligation to preserve covers all information related to the Project whether in paper, electronic or any other tangible form and includes, by way of example, computerized and electronically stored accounting records, plans, drawings, specifications, purchase orders, invoices, emails, text messages, correspondence, Project notes and logs, photographs, and videos. To the extent anyone who is bound by this preservation demand has or uses an automatic deletion device or function, that device or function should be disabled immediately.

*                    *                    *

We expect your complete and timely compliance with the foregoing. Should you wish to discuss any aspect of the foregoing, you or, if you have retained counsel, your counsel, should contact our attorney, Michael R. Gordon, at GordonLaw LLP, at 914.232.9500. Mr. Gordon's email address is mgordon@gordonlawllp.com.

3

**A-394**

This Notice of Termination is without prejudice to any other rights we have as a matter of law.

Very truly yours,

LAK3, LLC

By: _____
Ned Kleinschmidt,
As Member

4

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM
NYSCEF DOC. NO. 632

INDEX NO. 61510/2017

RECEIVED NYSCEF: 07/26/2018

93 of 170

A-395

WORKING COPY

# Gordon Aff. Exhibit 6

A-396

# NYS Department of State

# Division of Corporations

## Entity Information

The information contained in this database is current through February 16, 2018.

Selected Entity Name: WELL DUNN MAINTENANCE & CONTRACTING CORP.
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | WELL DUNN MAINTENANCE & CONTRACTING CORP. |
| **DOS ID #:** | 3998427 |
| **Initial DOS Filing Date:** | SEPTEMBER 22, 2010 |
| **County:** | WESTCHESTER |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC BUSINESS CORPORATION |
| **Current Entity Status:** | INACTIVE - Dissolution by Proclamation / Annulment of Authority (Aug 31, 2016) |

Information to reinstate a corporation that has been dissolved by proclamation or annulment of authority by proclamation is available on the New York State Department of Taxation and Finance website at www.tax.ny.gov keyword TR-194.1 or by telephone at (518) 485-6027

Selected Entity Address Information
**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
SEAN DUNN
P.O. BOX 1161
YORKTOWN HEIGHTS, NEW YORK, 10598

**Registered Agent**

NONE



This office does not record information regarding the names and addresses of officers, shareholders or directors of nonprofessional corporations except the chief executive officer, if provided, which would be listed above. Professional corporations must include the name(s) and address(es) of the initial officers, directors,

and shareholders in the initial certificate of
incorporation, however this information is not recorded
and only available by <u>viewing the certificate.</u>

### *Stock Information

**# of Shares Type of Stock $ Value per Share**

200          No Par Value

*Stock information is applicable to domestic business corporations.

### Name History

**Filing Date   Name Type                     Entity Name**

SEP 22, 2010 Actual          WELL DUNN MAINTENANCE & CONTRACTING CORP.

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

<u>Search Results</u>   <u>New Search</u>

<u>Services/Programs</u>  |  <u>Privacy Policy</u>  |  <u>Accessibility Policy</u>  |  <u>Disclaimer</u>  |  <u>Return to DOS Homepage</u>  |  <u>Contact Us</u>

A-398

WORKING COPY

# Gordon Aff. Exhibit 9

**A-399**

## PARTIAL RELEASE AND WAIVER OF LIEN RIGHTS

THE STATE OF New York}    KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF Putnam}

---

OWNER:   Lesley & Ned Kleinschmidt & Well Dunn Maintenance & Contracting
PROJECT: Kleinschmidt Residence, 41 Averill Drive, Mahopac NY 10541

---

The undersigned acknowledges receipt of the sum of **$820,828.22** representing full payment due and payable for all labor performed and/or materials provided, less any retainage, through the period **5/4/2017** on the above Project. Description of services and/or materials provided including but not limited to the following: **masonry, framing, plumbing, excavation, windows and HVAC.**

In consideration of such payment, the undersigned hereby forever waives, relinquishes and releases all claims of every kind against the Property or the Owner, its agents, successors, assigns, construction lender and sureties, including but not limited to all liens and claims of liens, which the undersigned has or may have, as a result of or in connection with the performance or furnishing of labor or materials through the date hereof.

The undersigned does hereby represent and warrant that all persons or entities who have furnished labor or materials to the undersigned in connection with the Work performed through the date hereof have been paid all amounts to which they have become entitled, excepting agreed retainage not yet payable and due.

The undersigned hereby agrees to unconditionally indemnify and hold harmless the Owner, the Owner's construction lender, and their successors, assigns and sureties, against all loss, cost, damage, or expense by reason of any and all manner of liens, claims, or demands which anyone may have for labor performed, or for material or equipment furnished to the Project by, through or under the undersigned through the date hereof.

The person signing this document represents that he or she is duly authorized to do so on behalf of the undersigned.

EXECUTED this _4th_ day of _May_ _____, 201_7_.

COMPANY NAME: _Well Dunn Maintenance & Contracting_

By: _____
Name: _Sean Dunn_
Title: _Owner / Operator_

SUBSCRIBED AND SWORN TO BEFORE ME on this _____ day of _____, 201___ to certify which witness my hand and official seal of office.

_____
Notary Public, State of_____

_____
Printed Name of Notary
My Commission Expires: _____



A-400

WORKING COPY

# Gordon Aff. Exhibit 10

**A-401**

Front 🔍 **Enlarge/Reduce Check Image**



**Need help printing or saving this check?**

Back 🔍 **Enlarge/Reduce Check Image**

**Need help printing or saving this check?**



PLAINTIFF'S
EXHIBIT
56
5/7/18   NS

1



**Need help printing or saving this check?**



Back 🔍 **Enlarge/Reduce Check Image**

**A-403**  1016

LAK 3 LLC
1943 BEEKMAN CT
YORKTOWN HEIGHTS, NY 10598-6287

DATE 10/6/2016

PAY TO THE ORDER OF  Well Dunn Construction

$ 90,000.00

Ninty thousand dollars

DOLLARS

CHASE O
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR _____

S.A.Kleinschmidt

⑆000⑆ ⑆021000021⑆ 738108096

**Need help printing or saving this check?**

Back 🔍 **Enlarge/Reduce Check Image**

MAHOPAC
126
97-10/06/16

01:29 PM
90,000.00

#126 OCT 08 2016

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE

101 8461730

3



A-404

1018
LAK 3 LLC
1943 BEEKMAN CT
YORKTOWN HEIGHTS, NY 10598-6267
DATE 11/4/2016
PAY TO THE ORDER OF Well Dunn Construction $ 130,000.00
one hundred & thirty thousand DOLLARS
CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com
FOR
⑈001018⑈ ⑆021000021⑆ 738108096⑈

Need help printing or saving this check?

Back Enlarge/Reduce Check Image

ENDORSE HERE
DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE
130,000.00
11:11 AM
120 11611/05/16
HARDPAC
FEDERAL RESERVE BOARD OF GOVERNORS REG. CC

Need help printing or saving this check?



A-405

1019

LAK 3 LLC
1943 BEEKMAN CT
YORKTOWN HEIGHTS, NY 10598-6267

DATE 11/17/2016

PAY TO THE ORDER OF Well Dunn Construction $ 90,000.00

Ninety thousand dollars DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR

⑈001019⑈ ⑆021000021⑆ 738108096⑈

Need help printing or saving this check?

Back Enlarge/Reduce Check Image

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

MAHOPAC
121 43 11/17/16 50 C003:18 PM
90,000.00

FEDERAL RESERVE BOARD OF GOVERNORS REG. CC



Need help printing or saving this check?

Back    Enlarge/Reduce Check image



Need help printing or saving this check?

Back  Enlarge/Reduce Check Image



Need help printing or saving this check?

Back   Enlarge/Reduce Check Image



Need help printing or saving this check?

8



A-409

1026

LAK 3 LLC
1343 BEEKMAN CT
YORKTOWN HEIGHTS, NY 10598-0267

DATE 1/17/2017

PAY TO THE ORDER OF Well Drain Contracting $ 30,700 00/xx

Thirty thousand seven hundred ——— DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR

⑈001026⑈ ⑆021000021⑆ 738106096⑈

**Need help printing or saving this check?**

Back **Enlarge/Reduce Check Image**

ENDORSE HERE

8011417730

-Inst=PCSB BANK-RtNum=>221970980<-TlrlD=126Br=1
-TranDt=01/24/17-ItemNum=544016411615

-Inst=PCSB BANK-RtNum=>221970980<-TranDt=01/24/17-TlrID=126
-TlrID=126 SlotTm=3:25.59 PM
-ItemNum=5440164115615

#126 JAN 24 2017

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE

FEDERAL RESERVE BOARD OF GOVERNORS REG. CC

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM
INDEX NO. 61510/2017
NYSCEF DOC. NO. 198
RECEIVED NYSCEF: 07/26/2018

18-09038-cgm Doc 4-23 Filed 12/07/18 Entered 12/07/18 01:57:35 Exhibit

108 of 170



**Need help printing or saving this check?**

Back — **Enlarge/Reduce Check Image**



Need help printing or saving this check?

Back | Enlarge/Reduce Check Image



**Need help printing or saving this check?**



Back — Enlarge/Reduce Check Image

A-413

WORKING COPY

# Gordon Aff. Exhibit 11

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM    INDEX NO. 61510/2017
NYSCEF DOC. NO. 18-09038-cr a0-0 0004-23-File D 2/17/a st 1 Entered 12/17/2018 1:57:33 ... Pg 07/26/2018

112 of 170

**A-414**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

LAK3, LLC,

Plaintiff,

-against-

SEAN DUNN, GERALD DUNN, and WELL DUNN
MAINTENANCE & CONTRACTING,

Defendants.

Index No. 61510/2017

**DEFENDANTS' ANSWERS
TO PLAINTIFF'S FIRST
SET OF INTERROGATORIES**

Defendants answer and object to plaintiff's First Set of Interrogatories to Defendants, dated

October 25, 2017, as follows:

## GENERAL OBJECTIONS

1. Defendants objects to Plaintiff's interrogatories to the extent said interrogatory

responses can be are derived or ascertained from public records, as the burden of deriving or

ascertaining the response is substantially the same for Plaintiffs and Plaintiffs have a reasonable

opportunity to examine and inspect such public records and make copies of the same.

2. Defendants object to each and every interrogatory to the extent that said interrogatory

calls for consultation with and disclosure of documents from persons or entities other than

Defendants.

3. Defendants object to each and every interrogatory to the extent that said interrogatory

seeks disclosure of information and documentation that is not material to the allegations of Plaintiff's

complaint and any and all other pleadings had herein.

4. Defendants object to each and every interrogatory to the extent that said interrogatory

seeks information and documentation already known to Plaintiff and in its possession custody and

control.

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM INDEX NO. 61510/2017
NYSCEF DOC. NO. 938 RECEIVED NYSCEF: 07/26/2018

113 of 170

A-415

5.     Defendants object to the interrogatories as unreasonably cumulative and duplicative and to the extent that said interrogatories seek information that is obtainable from other sources more convenient and less burdensome than requiring Defendants to provide a response herein.

6.     Defendants object to the interrogatories to the extent that they seek any information or documentation that is the subject of attorney-client privilege.

7.     Defendants object to the interrogatories to the extent that they seek any information or documentation comprising attorney work product.

8.     These General Objections will be deemed to be continuing throughout the responses that follow whether or not referred to therein. The stating of additional or other specific objections below shall not constitute a waiver of these General Objections.

9.     Defendants reserve the right to alter, amend, or supplement these responses as may be appropriate or necessary.

## SPECIFIC OBJECTIONS AND ANSWERS

Without waiving any of the foregoing objections, Plaintiff answers as follows:

1.     Identify the person(s) who provided information use in the preparation of the Defendants' answers to these interrogatories, indicating for which interrogatories each such person supplied information.

<u>Answer to Interrogatory No. 1</u>:     Sean Dunn.

2.     Identify all natural persons who have knowledge of the facts alleged in the verified answer with counterclaims filed in this action.

<u>Answer to Interrogatory No. 2</u>:     Ned Kleinschmidt, Lesley Kleinschmidt, Michael Piccirillo, and Vladimir Levin. Town of Carmel Building Department staff including, but not limited to Michael G. Carnazza. Phil Spagnoli. Mark A. Day, P.E.

3. Identify all representatives of WD that had any communications with plaintiff or Ned Kleinschmidt or Lesley Kleinschmidt regarding the construction of the single-family residential dwelling at 41 Averell Drive, Mahopac, New York 10541 (the "Project").

<u>Answer to Interrogatory No. 3:</u>     Sean Dunn.

4. Identify all witnesses from whom you intend to or will adduce testimony in this action.

<u>Answer to Interrogatory No. 4:</u>     Sean Dunn, Gerald Dunn, Phil Spagnoli, Rado Goga, Mark A. Day, P.E., Slim Zouaoui, and Mary Zouaoui.

5. Identify all natural persons and businesses who or that furnished work, labor, services, and/or materials to or for the benefit of the Project.

<u>Answer to Interrogatory No. 5:</u>     Well Dunn Maintenance & Construction, Sean Dunn, Gerald Dunn, Michael Piccirillo, Vladimir Levin, Phil Spagnoli, M&S Iron Works, Gady Contracting, First Class Plumbing & Heating, Vival Construction Co. Inc., Weed & Duryea, Architectural Building Components, Brothers Construction Services 1 Corp., Rado Goga, C.A. Cosentino, Hauptman Enterprises, Ed Kuck Enterprises, Ed Kuck, Mass Construction NY Corp., MPCA, L.L.C., and Weigold Electric.

6. Identify all natural persons and businesses who or that submitted request for payment to any of Defendants for work, labor, services, and/or materials furnished to or for the benefit of the Project.

<u>Answer to Interrogatory No. 6:</u>     M&S Iron Works, Gady Contracting, First Class Plumbing & Heating, Vival Construction Co. Inc., Weed & Duryea, Architectural Building Components, Brothers Construction Services, 1 Corp., C.A. Cosentino, Hauptman Enterprises, Ed Kuck Enterprises, Mass Construction NY Corp., MPCA, L.L.C., and Weigold Electric.

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM INDEX NO. 61510/2017
NYSCEF DOC. NO. 18-0938-cr-A0-Doc04-23-File D12/07/18 t1 Entered 12/07/28 01:57:23 Exhibit B 07/26/2018

115 of 170

A-417

7.      State the amount of payments that each natural person or business identified in answer to interrogatory No. 6 requested payment.

<u>Answer to Interrogatory No. 7</u>:      M&S Iron Works, Gady Contracting ($10,900), First Class Plumbing & Heating ($12,500), Vival Construction Co. Inc. ($5,000), Weed & Duryea ($ 26,192.75), Architectural Building Components ($119,115.75), Brothers Construction Services 1 Corp. ($ 4,000), C.A. Cosentino ($45,000), Hauptman Enterprises ($28,500), Ed Kuck Enterprises ($69,585), Mass Construction NY Corp. ($55,000), MPCA, L.L.C. ($46,000), and Weigold Electric ($8,000).

8.      Identify all natural persons and businesses to whom or that any of Defendants made payments for work, labor, services, and/or materials that such natural persons or businesses furnished to or for the benefit of the Project.

<u>Answer to Interrogatory No. 8</u>:      M&S Iron Works, Gady Contracting, First Class Plumbing & Heating, Vival Construction Co. Inc., Weed & Duryea, Architectural Building Components, Brothers Construction Services 1 Corp., C.A. Cosentino, Hauptman Enterprises, Ed Kuck Enterprises, Mass Construction NY Corp., MPCA, L.L.C., and Weigold Electric.

9.      State the amounts of the payments identified in answer to Interrogatory No. 8.

<u>Answer to Interrogatory No. 9</u>:      Please refer to Answers to Interrogatory No. 7, above.

10.      Identify and describe by category and location all documents that Defendants intend to rely upon to support its claims and defenses in this case.

<u>Answer to Interrogatory No. 10</u>:      Communications reflected in emails and attachments including, but not limited to invoices, statements, plans, and specifications relating to the Project are located and stored in Sean Dunn's AOL account identified as "WellDunnOne."

**A-418**

Communications including, but not limited to text messages, SMS data, and mobile phone correspondence relating to the Project stored on Sean Dunn's Apple iPhone 6 plus. Plans, drawings, and specifications generated by Michael Piccirillo Architecture, PLLC, which has an office located at 345 Kear St, Yorktown Heights, New York 10598. Invoices, statements, billing records, and delivery receipts maintained by Well Dunn Maintenance & Contracting located its office in 8 Veschi Lane, Mahopac, New York 10541. Accounting and payroll records contained in Quickbooks files and data stored on a desktop computer maintained by Well Dunn Maintenance & Contracting located its office in 8 Veschi Lane, Mahopac, New York 10541.

11. State all steps that Defendants took to locate documents responsive to Plaintiff's First Request for Production of Documents.

<u>Answer to Interrogatory No. 11</u>: Defendants searched all Well Dunn Maintenance & Contracting offices, files, file storage systems (physical and electronic), and electronic devices including, but not limited to computers and mobile phones. Defendants also searched internet-based email platforms used and maintained by Well Dunn Maintenance & Contracting and Sean Dunn including, but not limited to AOL.

12. State the last day any of Defendants, or any of their representatives, were inside the house being constructed at 41 Averell Drive, Mahopac, New York 10541.

<u>Answer to Interrogatory No. 12</u>: Approximately early to mid-March, 2017.

13. State whether any of Defendants removed any building materials, tools, and/or equipment from the side of the Project after June 1, 2017 and, if so, list the items removed and the date such items were removed.

**A-419**

Answer to Interrogatory No. 13:    Septic system controls were removed from the Project

site, but Well Dunn Maintenance & Contracting restored said property to the Project site

shortly after Plaintiff's request for the same.

14.    State whether any natural person or business who or that furnished work, labor,

services, and/or materials to or for the benefit of the Project removed any building materials, tools,

and/or equipment from the side of the Project after June 1, 2017 and, if so, (a) list the items removed

the date such items were removed, and (b) state whether any of Defendants directed or instructed such

natural person(s) or business(es) to remove such materials, tools, and/or equipment.

Answer to Interrogatory No. 14:    None.

15.    Describe in detail all efforts undertaken by you to preserve, collect, search, and

produce all electronically stored information response to defendant's request for the production of

documents in this action (the "Requests"). Specifically provide: (a) the name of each and every

person who is or was a custodian of electronically stored information responsive to the requests; (b)

name of each and every person who is a was responsible for the preservation of electronically stored

information; (c) a detailed description of all email and text messaging software presently and

previously used by each such custodian and the dates of use, including but not limited to the name of

the software, or pieces of hardware which such software was used (for example, cell phones, laptops,

desktops), in the version number in use during the relevant time period of this litigation; (d) a detailed

description of all efforts undertaken by you to ensure the preservation of relevant electronically stored

information, including the issuance of any litigation hold notice; (e) a detailed description of any

parameters or limitations applied to the collection of electronically stored information for review and

production this litigation, including without limitation the application of search terms, the limitation

of searches to certain mailbox file folders, and imposition of time limitations on electronic collection.

6

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM INDEX NO. 61510/2017

NYSCEF DOC. NO. 938 Case 7:20-cv-04023-CM Document 114 Entered 12/07/2021 17:35:16 Exhibit B RECEIVED NYSCEF: 07/26/2018

118 of 170

## A-420

<u>Answer to Interrogatory No. 15</u>:     (a) and (b):  Sean Dunn and Gerald Dunn; (c) Short

Message Service (SMS), Multimedia Messaging Service (MMS), and Apple iOS; (d)

defendants have retained in their custody all electronic devices containing such electronically

stored information referred to herein; and (e) Defendants are unaware of such parameters or

limitations that would apply to this litigation.

16.     Identify all purported experts whose testimony Defendants seek to present to the trier

of fact in this matter and for each, provide: (a) all education, experience, credentials, and any other

background of my qualify such individual to proffer opinion testimony; (b) eight list of all cases in

which such individual has testified under oath, whether by written submission, deposition, trial

testimony, or otherwise; (c) detailed description of the opinion they will present their testimony; and

(d) the basis for said opinion, including a list of all documents, methods, articles and other materials

in which they relied.

<u>Answer to Interrogatory No. 16</u>:     (a) Mark A. Day, P.E. of M.A. Day Engineering, P.C.,

3 Van Wyck Lane, Suite 2, Wappingers Falls, New York 12590; and (b)-(d) Defendants have

preliminarily consulted with Mark A. Day, P.E. and will supplement and amend this Answer

and its accompanying document production upon receipt of responsive information and

documents.

17.     Identify any non-testifying or consulting expert retained by any of Defendants in this

action.

<u>Answer to Interrogatory No. 17</u>:     Defendants have not yet consulted with or retained a

non-testifying expert in this action, but specifically reserve the right to do so and supplement

this Answer accordingly.

18.     Identify the damages sought by the Counterclaim this action.

A-421

Answer to Interrogatory No. 18:    Defendants object to this interrogatory as irrelevant

and moot because Defendants withdrew the Counterclaim with prejudice.

Defendants specifically reserve the right to supplement, amend, and/or modify all of the

foregoing answers.

Dated: Carmel, New York
February 9, 2018

WILLIAM A. SHILLING, JR., P.C.

By:

Michael V. Caruso
122 Old Route 6
Carmel, New York 10512
(845) 225-7500

*Attorneys for Defendants*

To:    Michael R. Gordon, Esq.
GordonLaw LLP
51 Bedford Road, Suite 10
Katonah, New York 10536

*Attorneys for plaintiff*

A-422

## VERIFICATION

STATE OF NEW YORK )
) ss.:
COUNTY OF PUTNAM )

SEAN DUNN, being duly sworn deposes and says:

I am a defendant in this action. I have read the annexed answers to plaintiff's first set of interrogatories propounded to Defendants, know the contents thereof, and the same are true to my knowledge, except those matters that are stated to be alleged upon information and belief, and as to those matters, I believe them to be true upon my own investigation and knowledge

_____
SEAN DUNN

Sworn to before me on this
9th day of February, 2018

_____
Notary Public
Michael V. Curuso
Reg. No. 02CA6365120
Qualified in Putnam Co
Commission Expires 9/25/21

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM INDEX NO. 61510/2017

NYSCEF DOC. NO. 938

18-09038-cgm Doc 04-23 Filed 12/07/18 Entered 12/07/18 21:57:35 Exhibit B Pg 121 of 170

RECEIVED NYSCEF: 07/26/2018

WORKING COPY

A-423

# Gordon Aff. Exhibit 12

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM   INDEX NO. 61510/2017
NYSCEF DOC. NO. 1138   RECEIVED NYSCEF: 07/26/2018

122 of 170

A-424



**"For a job well dunn..."**

PO Box 1161
Yorktown Heights, NY 10598
ph: (631) 903-0329
welldunnone@aol.com

- Home
- Photo Gallery
- Testimonials
- Contact Us
- FAQ



*Q- Is Well Dunn licensed in my area?*
A- We are licensed contractors in all of Westchester County, Yonkers, Putnam, and all of Connecticut.

*Q- Do you give free estimates?*
A- Yes we do.
Whether you have a big project or small job, we always give free estimates.

*Q- I want to renovate my kitchen and bath, but I have no idea what I want or where to start! Can you help?*
A- We have no problem guiding you through the entire process, offering advice, and giving you ideas.
However, we have several clients that need more than a helping hand. If this is you, we strongly recommend you
use a designer. We are affiliated with an excellent designer whom for a small fee will do all the work for you.
Regardless of your involvement or input, we are there with you every step of the way.

*Q- Where are you located?*
A- We are based out of Yorktown Heights, in Westchester County New York.

*Q- Do you have references?*
A- We have plenty of clients and customers that would love the opportunity to share their experiences with you.
Hopefully you and your family will become one of our references!

*Q- Why should I use Well Dunn?*
*What separates you from the rest?*
A- We are a family owned and operated business.
Now I know what your thinking....so are several other companies.
What makes us unique is every one of our customers deals with either Jerry Dunn or Sean Dunn. No salesman,
no third party representatives, just us.
It's the only way to give you and your family a job *Well Dunn!!*

**A-425**

Copyright 2011 Well Dunn. All rights reserved.

Web Hosting by Yahoo!

PO Box 1161
Yorktown Heights, NY 10598
ph: (631) 903-0329
welldunnone@aol.com

close

- 
- 
-

A-426

WORKING COPY

# Gordon Aff. Exhibit 13

McGlinchey, John                     A-427

| | |
|---|---|
| **From:** | McGlinchey, John |
| **Sent:** | Thursday, April 23, 2015 9:51 AM |
| **To:** | |
| **Subject:** | RE: Westchester County Consumer Protection |

Sean Dunn did not show for his scheduled hearing on 4/22/2015. As a result, a $10,000 penalty has been assessed and his Home Improvement license will be revoked. As we are not a court, this agency does not have the authority to make findings of fact or order a vendor to resolve a complaint. Instead, our role is limited to mediation. Although we are successful in settling many cases through mediation, not all disputes can be resolved in this manner. Please let me know if I can be of further assistance.

Respectfully,

John D. McGlinchey
Inspector
Westchester County Consumer Protection
148 Martine Avenue, Room 407
White Plains, NY 10601
914-995-2163 (office)
914-995-5259 (fax)
jmmd@westchestergov.com

**From:**
**Sent:** Tuesday, April 21, 2015 9:55 AM
**To:** McGlinchey, John
**Subject:** Re: Westchester County Consumer Protection

Hi John -

Just writing to check in and see if there is anything else you need from me in advance of Sean Dunn's scheduled hearing, or whether you have most of what you need for now. Thanks very much - I am of course very interested to hear how it goes!

On Tue, Mar 31, 2015 at 3:21 PM,                                                  wrote:
Hi John -

Thank you. What does that mean for us?



1

A-428

## APPEARANCE TICKET

### B 018409

COUNTY OF WESTCHESTER

DEPARTMENT OF WEIGHTS- MEASURES
CONSUMER PROTECTION
148 MARTINE AVENUE - ROOM 407
WHITE PLAINS, NEW YORK 10601

TO: **WELL DUNN MAINTENANCE & CONTRACTING**
**PO BOX 1161**
**YORKTOWN HEIGHTS, NY 10598**
**C/O SEAM M. DUNN**

NOTICE: Upon your failure to appear as directed herein a finding may be entered against you on the stated charge on default and further appropriate legal action may be commenced against you.

YOU ARE HEREBY NOTIFIED TO APPEAR PERSONALLY IN THE OFFICE OF THE DIRECTOR OF WEIGHTS-MEASURES,
CONSUMER PROTECTION, 148 MARTINE AVENUE - ROOM 407, WHITE PLAINS, NEW YORK 10601
ON     **AUGUST 22nd, 2013**     at     **01:00PM**
TO ANSWER A CHARGE OF   **OPERATING A HOME IMPROVEMENT BUSINESS WITHOUT A LICENSE**

COMMITTED IN THE     **VILLAGE**   OF     **LARCHMONT**            COUNTY OF WESTCHESTER,
STATE OF NEW YORK, ON THE **22nd** DAY OF     **MAY, 2013**     at     **12:00PM**
IN VIOLATION OF ARTICLE   **XVI**     SECTION     **863.313**     SUBDIVISION
OF THE LAWS OF WESTCHESTER COUNTY.
ISSUED THIS **6th**  DAY OF     **AUGUST, 2013**     AT WHITE PLAINS, NEW YORK.

_____
Officer's Signature

PLAINTIFF'S
EXHIBIT
5 3
4/26/18   NS
PENGAD 800-631-6989

**A-429**



Robert P. Astorino
County Executive

**Department of Consumer Protection**

John P. Gaccione
Acting Director
and County Sealer

May 11, 2015

Dear Municipal Building Official:

Please be advised that the following contractors have had their application for a Westchester
County Home Improvement License denied, revoked or suspended:

A.N.C. Contracting Co. Inc., St. Albans, NY- Marcus Lester, Applicant
C&M Paving, West Nyack, NY- Mark (Markeen) Cousar, Applicant
Croton Point Construction LLC, Croton on Hudson, NY- Edward Walther, Applicant
Dream Team Construction LLC, Passaic, NJ- Kenneth Chalmers, Applicant
Essence of Life, Yonkers, NY- Glenn Smith, Applicant
JAG Contracting Services Corp., Bronx, NY- Michael Palumbo, Applicant
JDR Windows and Doors Inc., Bronx, NY-Brunilda Memaj, Applicant
Jim's Lawn Service, North Salem, NY- James Buccelato, Applicant
Landmark Construction of Yonkers, Inc., Yonkers, NY- John Saraiva, Applicant
Leidlynch LLC, Scarsdale, NY- James Lynch, Applicant
Lowden, Charles, Mahopac, NY- Charles Lowden, Applicant
Molina Landscaping, Port Chester, NY- Jose Bonilla, Applicant
MSR Construction Corp., Dumont, NJ- Mohammad Sarwar, Applicant
N & O Lawn Care, Dobbs Ferry, NY- Noe Orellana, Applicant
Rolling Hills Once Landscaping LLC, Port Chester, NY- Genaro Partida, Applicant
Well Dunn Maintenance & Contracting, Yorktown, NY- Sean Dunn, Applicant

As a result of these actions, these contractors are no longer allowed to operate a home
improvement business in Westchester County.

The following contractor(s) have had their Westchester County Home Improvement License issued
or reinstated:

Sheetmetal Services LLC, Norwalk, CT- Jonathan Teed, Applicant

(OVER)



PLAINTIFF'S
EXHIBIT
54
4/26/18   NS



**A-430**

In addition, you may check on-line to see if a particular contractor holds a current Westchester County Home Improvement License. This information can be obtained by going to the Westchester County web site at **www.westchestergov.com/consumer.**

Should you have any questions in this matter, I can be reached Monday through Friday, 9:00 a.m. to 4:00 p.m., at (914) 995-2215.

Very truly yours,

Thomas G, Kramer
Deputy County Sealer

TGK/gg

**A-431**



Robert P. Astorino
County Executive

Department of Consumer Protection

John P. Gaccione
Acting Director
and County Sealer

May 6, 2015

Sean Dunn
Well Dunn Maintenance & Contracting
PO Box 1161
Yorktown, NY 10598

Dear Mr. Dunn;

This is in reference to your license (License # WC-26450-H13) to engage in the home
Improvement business in Westchester County, New York, pursuant to Article XVI of the
Westchester County Consumer Protection Code, a copy of which is enclosed.

Based upon your failure to appear to answer charges of violations of the Westchester County
Consumer Protection Code and your failure to pay the outstanding $10,000.00 in penalties
assessed on March 27, 2015, the Sealer has determined it is not in the best interests of the
citizens of Westchester County to allow Well Dunn Maintenance & Contracting to operate as a
home improvement contractor in Westchester. Therefore, based on Article XVI, Sections 863.317
and Section 863.316(1b & a), your license has been revoked.

Section 863.316 (1a); "is not financially responsible;"
Section 863.316 (1b); "is unqualified to engage in the home improvement business;"

In addition, as per Article XVI, you are here-by ordered to supply to the Sealer, in writing, a list of
home improvement contracts in existence and/or jobs currently being performed as of this date.
Attached is a form to be completed and returned to the Sealer within 5 business days.

Respectfully,

John P. Gaccione
Acting Director and
County Sealer

JPG/tgk
Enclosures

Cc:



148 Martine Avenue, Room 407
White Plains, New York 10601-3311   Telephone: (914) 995-2155   Fax: (914) 995-3115   Website: westchestergov.com

A-432

**CURRENT CONTRACTS/ JOBS**

Contractor:   Sean Dunn
Well Dunn Maintenance & Contracting
PO Box 1161
Yorktown, NY 10598

| <u>Consumer</u> | <u>Address</u> | <u>Contract date</u> | <u>Contract amount</u> | <u>Balance owed</u> |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Signed_____          Date_____
Sean Dunn, Applicant

A-433

**Westchester County**
**Department of Consumer Protection/Weights and Measures**
--------------------------------------------------------------------------------
In the Matter of a Proceeding to Revoke the Home Improvement
Contractor License of Sean Dunn d/b/a Well Dunn Maintenance &
Contracting
--------------------------------------------------------------------------------

## NOTICE OF COMMENCEMENT OF
## REVOCATION PROCEEDING
## AND
## CHARGES

To:    Sean Dunn
       d/b/a Well Dunn Maintenance & Contracting
       PO Box 1161
       Yorktown, NY 10598

PLEASE TAKE NOTICE that pursuant to Westchester County Administrative Code
§ 863.317 a proceeding is hereby commenced against you to revoke your
Westchester County Home Improvement License upon the following Charge:

### Charge One

That on March 27, 2015 you were ordered to appear on April 22, 2015 to answer
charges against your company. You failed to appear as ordered and the
previously assessed penalties in the amount of $10,000.00 upheld. Additionally,
failed to carry Workers' Compensation Insurance for the company. Based upon
the violations, your failure to appear and your failure to maintain insurance, the
Sealer has determined you are "unqualified to engage in a home improvement
business."

PLEASE TAKE FURTHER NOTICE that pursuant to Westchester County
Administrative Code § 863.317 you are required to answer the above Charge in
writing within ten (10) days.

PLEASE TAKE FURTHER NOTICE that pursuant to Westchester County
Administrative Code § 863.317 a hearing will be held on the above Charge at
9:15 A.M. on May 6, 2015 before John P. Gaccione, Deputy Director/ Sealer of
Weights & Measures, or his designee at the Offices of the Department of
Consumer Protection/Weights and Measures, Room 407, 148 Martine Avenue,
White Plains, New York 10601.

**A-434**

PLEASE TAKE FURTHER NOTICE that pursuant to Westchester County Administrative Code § 863.317 that at said hearing you may be represented by counsel and may offer evidence on your own behalf.

WITNESS, THOMAS G. KRAMER, Deputy County Sealer, at White Plains, New York on the 22nd day of April, 2015.

THOMAS G. KRAMER
DEPUTY COUNTY SEALER
(914) 995-2215

# Westchester
## gov.com



Robert P. Astorino, Westchester County Executive

## DEPARTMENT OF CONSUMER PROTECTION
148 Martine Avenue, Room 407
White Plains, N.Y. 10601
Tel. # (914) 995-2211
www.westchestergov.com/consumer

## APPLICATION FOR A HOME IMPROVEMENT LICENSE

**ALL INFORMATION MUST BE ACCURATE AND COMPLETE**
**Please Type or Print All Requested Information**
**Please use Black or Blue Ink**

Please read the enclosed instruction sheet before completing this application

) Type of Ownership: (X) Individual ( ) Partnership ( ) LLC ( ) Corporation

:) Name of Company: _Well Dunn Maintenance & Contracting_

i) D/B/A, Trade, or Display Name: (if same as #2, enter N/A) - _N/A_

l) Business Address: _P.O Box 1161_ Phone #: (631) _903-0329_

City _Yorktown_ State: _NY_ Zip Code: _10598_ Fax #: ( ) _____

5) Name of Applicant: (President or Owner) - _Sean Dunn_

Date of Birth: ▓▓▓▓ Driver License Number: ▓▓▓▓▓ Title: _Owner_

Home Street Address: ▓▓▓▓▓ Home Phone #: ( ▓▓▓▓

City ▓▓▓ State: ▓▓ Zip Code: ▓▓▓ Cell Phone #: ▓▓▓▓

Email Address: _Well Dunn One @ AOL. Com_

6) List **EACH ADDITIONAL** responsible individual involved with the company. Include Owners, Officers, Partners, Managers, and Salespersons: (**Any** individual authorized to estimate, negotiate, and/or finalize contracts).

| Name | Full Home Address | Title | Phone # | Date of Birth |
|------|-------------------|-------|---------|---------------|
| | | | | |
| | | | | |
| | | | | |

(7) This company engages in the following work: (Check **ALL** that apply)

Carpentry (X) Chimney Work ( ) Kitchen/Bath (X) HVAC ( ) Landscaping ( ) Masonry ( ) Painting (X)

Tree Removal ( ) Paving ( ) Pools ( ) Roofing ( ) Siding ( ) Tile (X) Windows ( ) ~~General Contractor~~ (X)

Alternative Energy ( ) Other ( ) Please Specify: _____

RECEIVED
WESTCHESTER COUNTY

**FOR OFFICE USE ONLY**

DEC 1 1 2013

DEPARTMENT OF
CONSUMER PROTECTION

Date Received: _____ Amount Paid: $_300.00_ Check #: _5529_ License Number _26450_

8) Is this company licensed in any other jurisdiction? ............................................ (X) Yes   ( ) No
   If Yes, list jurisdiction(s) AND license number(s):

Yonkers #5116, Putnam County PC6282  A-436

9) Does the company or any affiliate arrange or facilitate the financing of home improvement contracts? ... ( ) Yes   (X) No

0) Has the applicant or any principal in the company ever been convicted of a crime? ........................... ( ) Yes   (X) No
   If Yes, list the individual(s), crime(s), jurisdiction(s), year(s) and disposition(s):

1) Has this company, any other current or previously owned company or any principals had a
   Trade License Denied, Revoked or Suspended? ........................................................ ( ) Yes   (X) No
   If Yes, list the company name(s), individual(s), type of license(s), jurisdiction(s), and reason(s):

2) Is/Are there any outstanding unsatisfied business related Judgment(s) against the business
   listed on this application or its principals? ........................................................ ( ) Yes   (X) No
   If Yes, list the business name, individual(s) and date and location of the filing(s):

3) Is/Are there any outstanding unsatisfied business related Judgment(s) against any other
   current or previously business(es) or corporation(s)? ............................................... ( ) Yes   (X) No
   If Yes, list the business/corporation name(s) and date and location of the filing(s):

4) Has there ever been a bankruptcy filing by this company, any other current or previously
   owned company or its principals? ................................................................... ( ) Yes   (X) No
   If Yes, list the company name(s), individual(s) and provide the date, index number and location of the filing(s):

5) Please supply copies of the Vehicle Registration(s). Must indicate the number of decals needed.... # ( 1 )

6) Does your business involve landscaping, gardening, tree care or other similar work? ........................ ( ) Yes   (X) No
   If Yes: I hereby affirm that I am aware of the requirements of §863.327 (1) of the Westchester County
   Consumer Protection Code (Leaf Blower Law), and am in compliance with its provisions.

7) Does this company engage in the application of pesticides? .................................................. ( ) Yes   (X) No

   If Yes, list the NYS D.E.C. certification number(s) _____ AND provide a copy of certification.

**Affidavit/Verification by the applicant for the company. This application must be signed in the presence of a Notary Public.**

I hereby acknowledge that false statements made in this document are punishable as a Class A Misdemeanor pursuant to §210.45 of the NYS Penal Law.

**Under the penalty of perjury, I hereby swear that all of the information on this form and any attachment(s) is/are true and accurate.**

18) _____     Sean M Dunn          Owner
      Authorized Signature            Print Name          Print Company Title

19) Subscribed and Sworn to before me, this _11_ Day of _July_ , 20_13_ in the

County of _Westchester_

CHERLYN ARENA
Notary Public - State of New York
NO. 01AR6239109
Qualified in Putnam County
My Commission Expires 5/11/2015

_____
   Signature of Notary Public

5/21/13

A-437



Gilda Strudwick,

   I am writing this letter acknowledging the fact that I have an outstanding bill with New York State for old employee taxes. I am working to come up with the money as quickly as possible. Please understand that work is very slow, and the weather has made it even more difficult to accomplish work. I anticipate being able to pay the bill for roughly $1,600.00 within the next 6 weeks. Thank you for your patience and understanding.

                                        Sincerely,

                                        Sean Dunn

                                        Owner/Operator



Well Dunn Maintenance & Contracting
(631)903-0329
WellDunnOne@aol.com
WellDunnContracting.com
PO Box 1161
Yorktown Heights, NY 10598

**A-438**



Robert P. Astorino
County Executive

Department of Consumer Protection

John P. Gaccione
Acting Director
and County Sealer

December 30, 2013

Sean Dunn
Well Dunn Maintenance & Contracting
PO Box 1161
Yorktown, NY 10598

Dear Contractor:

Enclosed is a copy of a letter that was previously mailed to you. To date, we have not had a response from you concerning this matter. **Please forward the requested documents to my attention within 10 days.** Failure to do so may result in the revocation or denial of your Westchester County Home Improvement License. Please attach a copy of this letter to the document (s).

Should you have any questions concerning this matter, I can be reached Monday through Friday, 9:00 a.m. to 3:00 p.m., at (914) 995-2176.

Very truly yours,

*Gilda Strudwick*

Senior Inspector
Encl.



A-439



Robert P. Astorino
County Executive

Department of Consumer Protection

John P. Gaccione
Acting Director
and County Sealer

December 17, 2013

Sean Dunn
Well Dunn Maintenance & Contracting
PO Box 1161
Yorktown, NY 10598

Dear Contractor:

A background investigation being conducted before the issuance of your home improvement
license reveals the following judgment(s) as unsatisfied:

See Attached

Please respond in writing as to the **current** status of the above judgment(s). If any of the judgment(s) are
satisfied, please provide proof of satisfaction. Please attach a copy of this letter to the document (s).

Respectfully,

*Gilda Strudwick*

Senior Inspector
(1)



# A-440

## Judgment Details

| | |
|---|---|
| Index Number | 839-12 View Filings |
| | |
| Defendant | DUNN SEAN M DBA |
| Defendant Address | 1646 CENTRAL ST<br>YORKTOWN H NY 10598 |
| Defendant | WELL DUNN MAINTENANCE & CONTRACTING |
| Defendant Address | 1646 CENTRAL ST<br>YORKTOWN H NY 10598 |
| Plaintiff | NEW YORK STATE DEPARTMENT OF LABOR |
| Plaintiff Address | STATE OFFICE BLDG<br>ALBANY NY 12240 |
| | |
| Judgment Amount | $1662.91 |
| | PRO SE |
| Attorneys | XXX<br>XXX NY 0 |
| | |
| Docketed | 2012/12/04 04:56 PM |
| When perfected | 2012/12/04 04:56 PM |
| Where perfected | WESTCHESTER SUPREME |
| Transcript filed in | |
| | |
| Date/time filed | 2012/12/04 04:56 PM |

## A-441

| **Appearance Ticket** |
| Department of Consumer Protection |

Change necessary information and click the "Submit" button at the bottom of this form.

| File #: | 18409 |
| --- | --- |
| Violation Type: | B - WESTCHESTER COUNTY |
| Issuance Date: | 8/5/2013 |
| Issuance City: | LARCHMONT | Munic: V |
| Inspector Name: | JOHN MCGLINCHEY |

### Issued To:

| Name: | WELL DUNN MAINTENANCE & CONTRACTING |
| --- | --- |
| Add'l Name: | |
| Street Address: | PO BOX 1161 |
| Add'l Address: | C/O SEAM M. DUNN |
| City: | YORKTOWN HEIGHTS |
| State: | NY  Zip Code: 10598 |

### Violation:

| Violation Date: | 5/22/2013 | Violation Time: 12:00PM |
| --- | --- | --- |
| Violation: | OPERATING A HOME IMPROV. BUSINESS WITHOUT A LICENSE |
| Full Violation: | OPERATING A HOME IMPROVEMENT BUSINESS WITHOUT A LICENSE |
| | Update Full Violation, Article and Section using the Violation field?: No |
| Article: | XVI |
| Section: | 863.313 |
| Sub-Division: | |
| Comments: | |

### Appearance:

| Appearance Num: | 1 |
| --- | --- |
| Appearance Date: | 8/22/2013 | Appearance Time: 01:00PM |

### Company:

| Company Rep #1: | ABSENTIA |
| --- | --- |
| Title: | |

## A-442

| Company Rep #2: | |
|---|---|
| Title: | |
| Company Rep #3: | |
| Title: | |
| Company Rep #4: | |
| Title: | |
| Company Rep #5: | |
| Title: | |
| Company Rep #6: | |
| Title: | |
| Company Rep #7: | |
| Title: | |
| Company Rep #8: | |
| Title: | |
| Company Rep #9: | |
| Title: | |
| Company Rep #10: | |
| Title: | |

**Department:**

| Dept. Rep #1: | JOHN MCGLINCHEY-INSPECTOR |
|---|---|
| Dept. Rep #2: | |
| Dept. Rep #3: | |
| Dept. Rep #4: | |
| Dept. Rep #5: | |

**Hearing:**

| Hearing Open Date: | 8/22/2013 | Open Time: | 01:30PM | Closed Time: | 01:35PM |
|---|---|---|---|---|---|
| Hearing Officer Name: | THOMAS KRAMER | | | | |
| Title: | DEPUTY COUNTY SEALER | | | | |
| Hearing Location: | IN PERSON | | | | |
| Hearing Disposition: | $1000 | | | | |

## A-443

**Penalty:**

| Penalty: | 1000.00 | Balance Owed: | 0 |
|---|---|---|---|

Submit Changes    Reset

Add an Appearance for this Violation

View/Modify Existing Appearance(s) for this Violation

Make a Payment on this Violation

View/Modify Existing Payment(s) on this Violation

Print a Ticket

Print a **Conference Report**

Print a **Subpoena**

Return to Home

A-444



Robert P. Astorino
County Executive

Department of Consumer Protection

John P. Gaccione
Acting Director
and County Sealer

July 19, 2013(July 12, 2013)
(July 2, 2013)(June 28, 2013)

Sean Dunn
Well Dunn Maintenance & Contracting
Po Box 1161
Yorktown Heights, NY  10598

**PRINT YOUR APPLICATION PACKET AT:**
http://consumer.westchestergov.com/images/stories/pdfs/HI app 052113.pdf

Dear Applicant;

| Applicant Name | Drivers License # | Exam Date | Time | Location |
|---|---|---|---|---|
| Sean Dunn | | 08/02/2013 | 9:30am | 148 Martine Ave  Rm 400A |
| | | | | White Plains, NY 10601 |

You must check in 15 minutes prior to the exam time. If you cannot keep this test date, you must contact this
office at least 24 hours in advance of your test date at 914-995-2211 in order to reschedule.
*Your failure to do so may cause a delay in rescheduling!*
Please keep in mind that due to the high demand for this exam, rescheduling and/or failing to show on the
above date may result in your **next exam date to be in excess of 30 days.**

**NOTE:**   **YOU MUST ATTEND THIS EXAM ALONE.   There will be no exceptions.**

**ANY** company that engages in *Landscaping/Gardening and/or Lawn/Tree Services MUST* take and
complete the *"Approved Turf Management Course"*. The course will be given on the day of the exam.

NOTE: Once you pass the exam, the results are valid for "180 days" from the date of the exam.
You may submit a completed license application at any time within that period.

**Please be advised that advertising, soliciting work for, or performing home improvement services in
Westchester County prior to this office accepting your completed application for a Home Improvement
license is a class A misdemeanor. You may be subject to financial penalties, arrest, and or seizure of
your vehicle(s) and tools.**

Westchester County Department Of
Consumer Protection

CERTIFIED COPY

Respectfully,

*Nick DePaoli*

Inspector/ Exam Coordinator
914-995-2155
Exam Grade
Exam Supervisor

By _____ Date 8-2-13.

Pass ( ✓ )   Fail (  )   Exam# 1

REDUCE
REUSE
RECYCLE

148 Martine Avenue, Room 407
White Plains, New York 10601-3311  Telephone: (914) 995-2155  Fax: (914) 995-3115  Website: www.westchestergov.com/consumer

**NOTE:**
You MUST print out and bring THIS LETTER,
your Driver's license and a pencil to the exam.
Applicants arriving after their scheduled exam

Sean M. Dunn
Yorktown Heights, N.Y 10598
631-903-0329
WellDunnOne@aol.com

A-445

## EMPLOYMENT HISTORY

**Owner, Operator**                                                              2008-current
*Well Dunn Maintenance & Contracting,* Long Island & Westchester, NY

- Owner operator of my own company- licensed and insured for all residential and commercial maintenance and construction
- General Contracting experience in all phases of commercial and residential construction; completed the erecting of two luxurious residential homes in the last 8 months from the ground up
- Ran all job sites personally; overseeing all trades and inspections; negotiated all contracts with all tradesman; completed both homes ahead of schedule to the customers complete satisfaction

**District Maintenance Supervisor**                                              2005-2008
*Abercrombie & Fitch,* Long Island & Manhattan, NY

- Responsible for all maintenance and construction of 13 stores, 5 different brands, within my region- completed scheduled daily walkthroughs to identify any issues, safety hazards, violations, or general needs
- Responded to anywhere from 75-100 email work order requests per day, 7 days a week; responsible for filtering these emails and prioritizing work order requests- delegating them to sub contractors or my in house crew consisting of 6 employees
- Responsible for distributing my budget properly within my region, prioritizing money going to stores, negotiating contracts and bids, and completing work as I saw fit
- Was in charge of the flawless construction and grand opening of new brand " Gilly Hicks" launched in Long Island; then flown to 4 other major cities to ensure the same

**Resident Manager/ Superintendent**                                            2000-2005
*Fairfield Properties Inc ,*Long Island, NY

- Personally in charge of 3 luxury properties consisting of over 300 townhouse style units including the company's flagship location "The Gables"
- Responsible for general maintenance and upkeep of all properties, getting vacated units ready for rentals, completing maintenance and repairs on occupied units all while maintaining a level of service and quality beyond the tenants expectations
- Responsible for taking all maintenance requests from tenants, prioritizing them, and distributing the work orders to my employees, myself, and sub contractors for completion
- Winner of the companies "Superintendent of the Year" award for 2001,2002,2003, and 2004 which is based on overall condition and upkeep of properties, customer (tenant) satisfaction, and budget control.

**Job Foreman/ Site Supervisor**                                                1996-2000
*P.A.M Construction Inc,* Long Island NY

- Started out as laborer, worked my way up to Job Foreman in 2 years running my own crew of 6 to 10 men twice my age.
- Company purchased homes and renovated them for purpose of rental or sale. Personally oversaw renovation and upkeep of over 40 homes ranging from Section 8 rentals to multimillion dollar homes in the Hamptons.
- Personally responsible for maintenance on all rental homes in the Hamptons. All high priority tenants had my cell phone number for direct contact and immediate response 24/7

7/12/13

**A-446**



000425731

Westchester County Clerk
*Timothy C Idoni*

253101

## BUSINESS CERTIFICATE REGISTRATION



I HEREBY CERTIFY that I am conducting or transacting business in Westchester County, pursuant to Section 130 of the New York State General Business Law, under the name or designation and at the address of *(Please Print or Type)*

Business Name: Well Ann Maintenance & Contracting

Business Address: P O Box 1161
Yorktown, NY 10598

**FILED**

My full name and place of residence is

Name: Sean M Ann
Address: ████████████████

JAN 29 2010

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

I FURTHER CERTIFY that I am successor in interest to _____
*(Name of former owner of business, if applicable)*

I FURTHER CERTIFY that I am 31 years of age (if under 18)

Please designate the type of business

- ☐ Consultant Services
- ☑ Educational Services
- ☐ Entertainment-Recreation
- ☐ Finance-Insurance Services
- ☑ Home Improvement Services
- ☐ Medical – Home Care Services
- ☐ Professional – Technical Services
- ☐ Real Estate Services
- ☐ Retail Trade
- ☐ Wholesale Trade

☐ Other _____

IN WITNESS WHEREOF, I hereby sign this certificate the 29th day of January 20 10

ACKNOWLEDGEMENT IN NEW YORK STATE (RPL 309-a)

State of New York
County of Westchester } ss

On January 29th, 2010 before me, the undersigned, personally appeared Sean M Ann

THE BACK COPY TRANSFER _____

1-29-10 _____

12-11-13 _____

**JOSEPH SAM MAZZA**
Notary Public, State of New York
No. 01MA6045640
Qualified in Westchester County
Commission Expires July 31, 2010

CLERK OF THE COUNTY COURTS, WESTCHESTER COUNTY

**A-447**

FILED

JAN 2? 2010

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

**FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM** INDEX NO. 61510/2017

NYSCEF DOC. NO. 38 18-09038-cgm Doc 4-23 Filed 02/07/18 Entered 02/07/18 21:57:33 Exhibit B Pg RECEIVED NYSCEF: 07/26/2018

146 of 170

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
05/20/2013

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Joy Arzaga |
|---|---|
| Albert Palancia Agency, Inc. PO Box 26 Mamaroneck, NY 10543 | PHONE (A/C, No. Ext): (914)698-1373 FAX (A/C, No): (914)698-0126 E-MAIL ADDRESS: joy@palanciainsurance.com |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED WELL DUNN MAINTENANCE & CONTRACTING SEAN DUNN 1646 CENTRAL ST YORKTOWN HEIGHTS, NY 10598-4704 | INSURER A: ARCH SPECIALTY INSURANCE COMPANY | |
| | INSURER B: UTICA NATIONAL INSURANCE GROUP | |
| | INSURER C: | |
| | INSURER D: | |
| | INSURER E: | |
| | INSURER F: | |

## COVERAGES CERTIFICATE NUMBER: 00006244-0 REVISION NUMBER: 12

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY | | | AGL000759-00 | 05/14/2013 | 05/14/2014 | EACH OCCURRENCE | $ 1,000,000 |
| | X COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | CLAIMS-MADE X OCCUR | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | X POLICY PRO-JECT LOC | | | | | | | $ |
| B | AUTOMOBILE LIABILITY | | | 4533035 | 05/14/2013 | 05/14/2014 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS X SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X HIRED AUTOS X NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | WC STATU-TORY LIMITS OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
RENOVATION CONTRACTOR
EXCLUDING ROOFING

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| WESTCHESTER COUNTY DEPARTMENT OF CONSUMER PROTECTION 148 MARTINE AVENUE, ROOM 407 WHITE PLAINS, NY 10601 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE Joseph J. Palin (MJA) |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05) The ACORD name and logo are registered marks of ACORD

Printed by MJA on May 20, 2013 at 11:58AM



Certificate of Attestation of Exemption
A-449
From New York State Workers' Compensation
and/or Disability Benefits Insurance Coverage

**This form cannot be used to waive the workers' compensation rights or obligations of any party.**

The applicant may use this Certificate of Attestation of Exemption **ONLY** to show a government entity that New York State specific workers' compensation and/or disability benefits insurance is not required. The applicant may **NOT** use this form to show another business or that business's insurance carrier that such insurance is not required.

**Please provide this form to the government entity from which you are requesting a permit, license or contract. This Certificate will not be accepted by government officials one year after the date printed on the form.**

| In the Application of (Legal Entity Name and Address): | Business Applying For: Contractors License |
|---|---|
| SEAN M. DUNN DBA: WELL DUNN MAINTENANCE & CONTRACTING PO BOX 1161 YORKTOWN, NY 10598 PHONE: 631-903-0329   FEIN: XXXXX7074 | From: WESTCHESTER COUNTY DEPARTMENT OF CONSUMER PROTECTION |

**Workers' Compensation Exemption Statement:**

The above named business is certifying that it is **NOT REQUIRED TO OBTAIN NEW YORK STATE SPECIFIC WORKERS' COMPENSATION INSURANCE COVERAGE** for the following reason:

The business is owned by one individual and is not a corporation. Other than the owner, there are no employees, day labor, leased employees, borrowed employees, part-time employees, unpaid volunteers (including family members) or subcontractors.

**Disability Benefits Exemption Statement:**

The above named business is certifying that it is **NOT REQUIRED TO OBTAIN NEW YORK STATE STATUTORY DISABILITY BENEFITS INSURANCE COVERAGE** for the following reason:

The business MUST be either: 1) owned by one individual; OR 2) is a partnership (including LLC, LLP, PLLP, RLLP, or LP) under the laws of New York State and is not a corporation; OR 3) is a one or two person owned corporation, with those individuals owning all of the stock and holding all offices of the corporation (in a two person owned corporation each individual must be an officer and own at least one share of stock); OR 4) is a business with no NYS location. In addition, the business does not require disability benefits coverage at this time since it has not employed one or more individuals on at least 30 days in any calendar year in New York State. (Independent contractors are not considered to be employees under the Disability Benefits Law.)

I, SEAN M. DUNN, am the Sole Proprietor with the above-named legal entity. I affirm that due to my position with the above-named business I have the knowledge, information and authority to make this Certificate of Attestation of Exemption. I hereby affirm that the statements made herein are true, that I have not made any materially false statements and I make this Certificate of Attestation of Exemption under the penalties of perjury. I further affirm that I understand that any false statement, representation or concealment will subject me to felony criminal prosecution, including jail and civil liability in accordance with the Workers' Compensation Law and all other New York State laws. By submitting this Certificate of Attestation of Exemption to the government entity listed above I also hereby affirm that if circumstances change so that workers' compensation insurance and/or disability benefits coverage is required, the above-named legal entity will immediately acquire appropriate New York State specific workers' compensation insurance and/or disability benefits coverage and also immediately furnish proof of that coverage on forms approved by the Chair of the Workers' Compensation Board to the government entity listed above.

| SIGN HERE | Signature: | Date: 5/23/13 |
|---|---|---|

Exemption Certificate Number
**2013-031437**

Received
**May 23, 2013**
NYS Workers' Compensation Board

CE-200 12/2008

# Child Support Certification

Westchester County Office of Child Support Enforcement

The Licensing Agency: **Department of Consumer Protection**

R-450

---

### LICENSE BEING APPLIED FOR – **HOME IMPROVEMENT LICENSE**

#### THIS FORM MUST BE FULLY COMPLETED BY APPLICANT FOR APPLICATION TO BE VALID

LAST NAME: *Dunn*     FIRST NAME: *Sean*

SOCIAL SECURITY NO: ▮▮▮▮▮▮▮     DATE OF BIRTH: ▮▮▮▮ M M  D D  Y Y

HOME ADDRESS: ▮▮▮▮▮▮▮▮

CITY/STATE/ZIP: ▮▮▮▮▮▮▮

*Sean Dunn* , being duly sworn, make the following statement:

(Choose 1 or 2, and put an "X" in the box in front of whichever is appropriate)

☐ 1. I am **not** under a court or administrative order to pay child support.  **OR**

☒ 2. I am under an obligation to pay child support.  My child support account number is (if applicable) ▮▮▮▮▮

(If you chose #2, put an "X" in front of the applicable statement)

☒ A. I do **not** owe arrears equal to 4 months or more of child support payments.

☐ B. I have arrears equal to 4 months or more of child support payments, and one of the following statements applies to me
    **(check the appropriate boxes):**
    ☐ I am making payments by income execution or by court agreed payment/re-payment plan or by a plan agreed to by the parties.
    ☐ My child support obligation is the subject of a pending court proceeding.
    ☐ I am currently in receipt of Public Assistance or Supplemental Security Income.  My case number is _____

☐ C. I have arrears equal to 4 months or more of child support payments and none of the above statements in "B" apply
    to me.

I hereby do solemnly swear that the information provided by me in this certificate is true and accurate to the best of
my knowledge.  I acknowledge that this statement is under oath.

Sworn before me this _11th_ day

of _December_ 2013

Notary Public,

State of _New York_

X _____
SIGNATURE

_12 - 11 - 13_
DATE

**GILDA STRUDWICK**
Notary Public, State of New York
No. 01ST6209310
Qualified in Westchester County
Commission Expires July 27, 2017

THE INTENTIONAL SUBMISSION OF FALSE WRITTEN STATEMENTS FOR THE PURPOSE OF FRUSTRATING OR DEFEATING PAYMENT OF
SUPPORT IS PUNISHABLE PURSUANT TO SECTION 175.35 OF THE PENAL LAW.  PERSONS WHO ARE FOUR MONTHS OR MORE IN ARREARS IN
CHILD SUPPORT MAY BE SUBJECT TO SUSPENSION OF THEIR BUSINESS, PROFESSIONAL AND/OR DRIVERS LICENSE.

---

### DO NOT WRITE BELOW THIS LINE – FOR OFFICIAL USE ONLY

☐ Information verified, or status of case unknown to OCSE.     ☐ Information is at variance with OCSE records.

Verifying Section & Supervisor: _____     Date: _____ - _____ - _____

A-451



**Robert P. Astorino**
**County Executive**

**Department of Consumer Protection**

John P. Gaccione
Acting Director
and County Sealer



Date:

The Westchester County Consumer Protection Code Article XVI, §863.324 (3) provides that an Applicant for a Home Improvement License "may commence such business upon filing a license application in accordance with Section 863.314 of this Article".

On the above date the application of _Well Dunn Maintenance & Contracting_ was accepted for filing by the Westchester County Department of Consumer Protection.

Section 863.316 of the Consumer Protection Code allows the Department 90 days to grant or deny the license. Until such time a determination is made, the license application is considered pending. A license number is not issued until a license is granted.

Acceptance of this application by the Department does not guarantee issuance of a license.

Upon review of the application, supporting documentation and background check **the Department specifically reserves the right to deny this application for any of the reasons set forth in Article XVI of the Westchester County Consumer Protection Code.**

*Carmela Fusco*
Department Representative



148 Martine Avenue, Room 407
White Plains, New York 10601     Telephone: (914) 995-2155     Fax: (914) 995-5259     Website: www.westchestergov.com/consumer

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM
INDEX NO. 61510/2017
NYSCEF DOC. NO. 69
18-09038-cgm Doc 64-23 Filed 12/07/18 Entered 12/07/18 21:57:27 Exhibit B Pg
150 of 170
RECEIVED NYSCEF: 07/26/2018

A-452



Office of the County Executive
Robert P. Astorino

Westchester
gov.com

# Department of Consumer Protection
## Home Improvement License

WELL DUNN MAINTENANCE & CONTRACTING

P.O. BOX 1161

YORKTOWN NY 10598

This license is issued in accordance with Article XV of the Westchester County
Consumer Protection Code and is valid only upon presence of the official department seal.

License Number

WC-26450-H13

Date of Expiration

12/11/2015

**A-453**

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM

NYSCEF DOC. NO. 69

INDEX NO. 61510/2017

RECEIVED NYSCEF: 07/26/2018

18-09038-cgm Doc 04-23 Filed 12/07/18 Entered 12/07/18 21:57:37 Exhibit B Pg
152 of 170

A-454

Westchester
gov.com

**Westchester County Department of Consumer Protection**
148 Martine Avenue, Room 407
White Plains, NY 10601-3311

RECEIVED
WESTCHESTER COUNTY

JUN 2 5 2015

DEPARTMENT OF
CONSUMER PROTECTION

not
5-12-15

UNITED STATES POSTAGE
PITNEY BOWES

$ 06.90⁰

02 1M
0004247253   MAY 11  2015
MAILED FROM ZIP CODE 10601

CERTIFIED MAIL

7013 2250 0001 1178 0198

Sean Dunn
Well Dunn Maintenance & Contracting
PO Box 1161
Yorktown, NY 10598

FIRST NOTICE

SECOND NOTICE
6-6

RETURN
6-15

A-455

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X                                           ☐ Agent
                                            ☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

1. Article Addressed to:

SEAN DUNN
WELL DUNN MAINTENANCE +
CONTRACTING
PO BOX 1861
YORKTOWN, NY 10598

TK

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*         ☐ Yes

2. Article Number
   *(Transfer from service label)*    7013 2250 0001 1178 0158

PS Form 3811, February 2004         Domestic Return Receipt         102595-02-M-1540

A-456

WORKING COPY

# Gordon Aff. Exhibit 14

A-457

# Does Employer Have Coverage?

**If you cannot find an employer or suspect an employer of operating without workers' compensation insurance, please select one of the following links to electronically send Employer Whistleblower Form or, mail a paper copy Employer Whistleblower Form (PDF).**

## Coverage History

**IMPORTANT NOTE TO GOVERNMENT AGENCIES:** The coverage information contained on this web site is **NOT** a substitute for government agencies requiring certificates of workers' compensation and disability benefits insurance from applicants pursuant to Workers' Compensation Law Sections 57 and 220. Government entities should only use the coverage information contained on this web site to verify certificates of insurance that have already been received pursuant to WCL Sections 57 and 220.

**New Search**                                            **Back to Search Results**

## Employer

| WCB Emp Num | Name | Address |
|---|---|---|
| 2911362 | WELL DUNN MAINTENANCE & CONTRACTING CORP | YORKTOWN HTS, NY |

**No Workers' Compensation Coverage Exists for this Employer**

**No Disability Benefits / Paid Family Leave (PFL) Coverage Exists for this Employer**





PLAINTIFF'S EXHIBIT
62
5/7/18  NS

A-458

# Does Employer Have Coverage?

## Coverage Locations

**New Search**                                                    **Back to Coverage History**

### Employer

| WCB Emp Num | Name | Address |
|---|---|---|
| 2678832 | WELL DUNN MAINTENANCE & CONTRACTING | MAHOPAC, NY |

### Workers' Compensation Coverage Locations

| Name | City | State | Eff Date | End Date | End Reason |
|---|---|---|---|---|---|
| DUNN SEAN | MAHOPAC | NY | 01/05/2015 | 01/05/2016 | Policy Non Renewal |
| DUNN SEAN | YORKTOWN HEIGHT | NY | 01/05/2015 | 01/05/2016 | Policy Non Renewal |
| WELL DUNN MAINTENANCE & CONTRACTING TA | YORKTOWN HEIGHT | NY | 01/05/2015 | 01/05/2016 | Policy Non Renewal |
| WELL DUNN MAINTENANCE & CONTRACTING TA | MAHOPAC | NY | 01/05/2015 | 01/05/2016 | Policy Non Renewal |



FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM
INDEX NO. 61510/2017
NYSCEF DOC. NO. 198
RECEIVED NYSCEF: 07/26/2018

18-09038-cgm Doc 04-23-Filed 12/07/18 Entered 12/07/18 01:57:33 Exhibit B Pg
157 of 170

A-459

# Does Employer Have Coverage?

If you cannot find an employer or suspect an employer of operating without workers' compensation insurance, please select one of the following links to **electronically send Employer Whistleblower Form** or, mail a **paper copy Employer Whistleblower Form** (PDF).

## Coverage History

**IMPORTANT NOTE TO GOVERNMENT AGENCIES:** The coverage information contained on this web site is **NOT** a substitute for government agencies requiring certificates of workers' compensation and disability benefits insurance from applicants pursuant to Workers' Compensation Law Sections 57 and 220. Government entities should only use the coverage information contained on this web site to verify certificates of insurance that have already been received pursuant to WCL Sections 57 and 220.

**New Search**                                    **Back to Search Results**

## Employer

| WCB Emp Num | Name | Address |
|---|---|---|
| 2678832 | WELL DUNN MAINTENANCE & CONTRACTING | MAHOPAC, NY |

## Workers' Compensation Coverage

| Insurer | Policy Number | Effective Date | End Date | End Reason | Wrap Up |
|---|---|---|---|---|---|
| NORGUARD INSURANCE COMPANY | **SEWC598930** | 01/05/2015 | 01/05/2016 | Non-Renewal | N |

No Disability Benefits / Paid Family Leave (PFL) Coverage Exists for this Employer



**A-460**

A-461

## NEW YORK STATE WORKERS' COMPENSATION BOARD
## Employer Coverage Search

If you cannot find an employer or suspect an employer of operating without workers' compensation insurance, please select one of the following links to electronically send Employer Whistleblower Form or, mail a paper copy Employer Whistleblower Form (PDF).

## Coverage History

IMPORTANT NOTE TO GOVERNMENT AGENCIES: The coverage information contained on this web site is NOT a substitute for government agencies requiring certificates of workers' compensation and disability benefits insurance from applicants pursuant to Workers' Compensation Law Sections 57 and 220. Government entities should only use the coverage information contained on this web site to verify certificates of insurance that have already been received pursuant to WCL Sections 57 and 220.

New Search                                                                    Back to Search Results

### Employer

| WCB Emp Num | Name | Address |
|---|---|---|
| | SEAN DUNN D/B/A WELL DUNN MAINTENANCE & C | YORKTOWN HEIGHT, NY |

### Workers' Compensation Coverage

| Insurer | Policy Number | Effective Date | End Date | End Reason | Wrap Up |
|---|---|---|---|---|---|
| STATE INSURANCE FUND | 21003520 | 05/06/2011 | 03/13/2012 | Policy Cancellation | N |
| STATE INSURANCE FUND | 21003520 | 05/06/2010 | 05/06/2011 | Renewal | N |

### Disability Benefits Coverage

| Insurer | Policy Number | Effective Date | End Date | End Reason |
|---|---|---|---|---|
| ZURICH AMERICAN INSURANCE | 6474267001 | 05/06/2010 | 03/21/2013 | Non-Payment of Premium |



Norton
SECURED

powered by Symantec

A-462

## Employer Coverage Search

**NEW YORK STATE WORKERS' COMPENSATION BOARD**

If you cannot find an employer or suspect an employer of operating without workers' compensation insurance, please select one of the following links to electronically send Employer Whistleblower Form or, mail a paper copy Employer Whistleblower Form (PDF).

### Coverage History

IMPORTANT NOTE TO GOVERNMENT AGENCIES: The coverage information contained on this web site is NOT a substitute for government agencies requiring certificates of workers' compensation and disability benefits insurance from applicants pursuant to Workers' Compensation Law Sections 57 and 220. Government entities should only use the coverage information contained on this web site to verify certificates of insurance that have already been received pursuant to WCL Sections 57 and 220.

New Search                                        Back to Search Results

### Employer

| WCB Emp Num | Name | Address |
|---|---|---|
|  | SEAN DUNN |  |

No Workers' Compensation Coverage Exists for this Employer

### Disability Benefits Coverage

| Insurer | Policy Number | Effective Date | End Date | End Reason |
|---|---|---|---|---|
| ZURICH AMERICAN INSURANCE | 6474267001 | 05/06/2010 | 03/21/2013 | Non-Payment of Premium |



Norton SECURED
powered by Symantec

A-463

NEW YORK STATE
WORKERS' COMPENSATION BOARD

# Employer Coverage Search

If you cannot find an employer or suspect an employer of operating without workers' compensation insurance, please select one of the following links to electronically send Employer Whistleblower Form or, mail a paper copy Employer Whistleblower Form (PDF).

## Coverage History

IMPORTANT NOTE TO GOVERNMENT AGENCIES: The coverage information contained on this web site is NOT a substitute for government agencies requiring certificates of workers' compensation and disability benefits insurance from applicants pursuant to Workers' Compensation Law Sections 57 and 220. Government entities should only use the coverage information contained on this web site to verify certificates of insurance that have already been received pursuant to WCL Sections 57 and 220.

New Search                                                                 Back to Search Results

### Employer

| WCB Emp Num | Name | Address |
|---|---|---|
|  | SEAN DUNN |  |

No Workers' Compensation Coverage Exists for this Employer

### Disability Benefits Coverage

| Insurer | Policy Number | Effective Date | End Date | End Reason |
|---|---|---|---|---|
| HARTFORD LIFE AND ACCIDENT | LNY434660001 | 01/05/2015 |  |  |



Norton
SECURED
powered by Symantec

FILED: WESTCHESTER COUNTY CLERK 07/26/2018 05:10 PM INDEX NO. 61510/2017

NYSCEF DOC. NO. 928

RECEIVED NYSCEF: 07/26/2018

162 of 170

A-464

WORKING COPY

# Gordon Aff. Exhibit 17

## A-465

### PLAINTIFF'S EXHIBIT 17

### EXAMPLES OF PERSONAL EXPENSES PAID FROM LIEN LAW TRUST FUNDS[1]

**Summary of Selected Examples:**

| Expense description | Total Amount |
|---|---|
| Mercedes Benz car payments | $4,189.32 |
| Harley Davidson motorcycle payments | $6,115.58 |
| Bars and Restaurants (various) | $7,227.77 |
| Hotels & Airfare (various) | $11,575.22 |
| Retail stores (not construction related) | $12,882.71 |
| Wine and liquor stores | $1,261.13 |
| Total | $43,251.73 |

**Sources of examples**

**February 2016 (Exh. 29)**

| | | |
|---|---|---|
| 2/4/16 | Harley Davidson | $406.85 |
| 2/5/16 | BJs | $207.23 |
| 2/5/16 | Stop & Shop | $59.01 |
| 2/5/16 | Netflix | $16.57 (recurring) |
| 2/8/16 | DeCicco Market | $45.21 |
| 2/8/16 | Stop & Shop | $53.75 |
| 2/8/16 | ACME | $18.37 |
| 2/11/16 | KeyFood | $49.89 |
| 2/16/16 | CVS | $35.89 |
| 2/16/15 | NY Sports Club Mem. | $84.99 (recurring) |
| 2/16/16 | NY Sports Club Mem. | $84.99 (recurring) |
| 2/22/16 | Top Hibachi | $97.60 |
| 2/22/16 | AT&T | $479.45 (recurring) |
| 2/24/16 | Haiku Asian Bistro | $126.10 |
| 2/26/16 | Bucci Brother's Deli | $60.00 |

**June 2016 (Exh. 30)**

---

[1] This summary is not and is not intended to be exhaustive; rather, it provides a sampling of personal expenses that Defendants paid with the Lien Law Trust Funds that Plaintiff paid to Defendants and that Defendants deposited into their personal bank accounts. The full extent of Defendants' misappropriation and diversion of Lien Law Trust Funds deposited into the personal bank accounts that Defendants maintained is apparent from Exhibits 29-42, 46, 49-51, true and accurate copies of the relevant bank accounts.

## A-466

| | | |
|---|---|---|
| 6/3/16 | Putnam Wine & Liquor | $67.17 |
| 6/6/16 | BJs | $60.30 |
| 6/6/16 | BJs | $216.15 |
| 6/6/16 | Party City | $41.81 |
| 6/6/16 | Theory Clothing | $536.46 |
| 6/7/16 | Stop & Shop | $138.76 |
| 6/7/16 | Netflix | $16.57(recurring) |
| 6/8/16 | Hotel Palomar | $753.67 |
| 6/8/16 | Bucci Brother's Deli | $66.92 |
| 6/8/16 | Spotted Horse Tavern | $101.14 |
| 6/13/16 | Putnam Wine & Liquor | $114.86 |
| 6/13/16 | Theory Clothing | $68.65 |
| 6/13/16 | Mall Parking | $3.00 |
| 6/13/16 | Paloma Grill | $199.53 |
| 6/13/16 | Remo's Restaurant | $102.74 |
| 6/14/16 | K-Mart | $32.50 |
| 6/14/16 | AT&T | $460.83(recurring) |
| 6/15/16 | Sirius Radio | $344.98(recurring) |
| 6/20/16 | NH Liquor | $110.94 |

### July 2016 (Exh. 31)

| | | |
|---|---|---|
| 7/5/16 | Sunset Grille | $48.00 |
| 7/5/16 | Sunset Grille | $78.00 |
| 7/5/16 | Laz Parking | $10.50 |
| 7/5/16 | Maritime Aquarium | $86.75 |
| 7/5/16 | Maritime Aquarium | $80.73 |
| 7/5/16 | Laz Parking | $4.00 |
| 7/5/16 | Harley Davidson | $406.85(recurring) |
| 7/5/16 | Bliss Dairy Bar | $66.87 |
| 7/5/16 | Abercrombie & Fitch | $115.84 |
| 7/5/16 | Harley Davidson | $574.83 |
| 7/5/16 | American Eagle | $65.14 |
| 7/5/16 | GUCCI | $1,029.56 |
| 7/5/16 | Under Armour | $66.50 |
| 7/5/16 | Timberland | $184.24 |
| 7/5/16 | Apple Store | $215.67 |
| 7/5/16 | Expedia | $30.00 |
| 7/5/16 | American Airlines (x3) | $944.01 |
| 7/5/16 | Jet Blue (x3) | $779.52 |
| 7/5/16 | AT&T | $461.98(recurring) |
| 7/6/16 | Town Sports | $50.58 |
| 7/6/16 | Blue Ribbon Sushi | $146.44 |
| 7/6/16 | Hotel Tonight SoHo | $204.00(recurring) |
| 7/7/16 | Aire Ancient Baths | $395.45 |

## A-467

| | | |
|---|---|---|
| 7/7/16 | Nomo SoHo | $76.94 |
| 7/7/16 | JcPenney | $132.83 |
| 7/7/16 | Netflix | $16.57(recurring) |
| 7/8/16 | Gemma Ristorante | $52.47 |
| 7/8/16 | Putnam Wine & Liquor | $56.33 |
| 7/8/16 | CVS | $46.88 |
| 7/11/16 | Mahopac Flowers | $83.45 |
| 7/11/16 | Stop & Shop | $123.16 |
| 7/12/16 | Marine Boat Ins. | $353.00(recurring) |
| 7/12/16 | Apple iTunes | $44.99 |
| 7/12/16 | The Mooring Bar | $197.14 |
| 7/12/16 | Hotel Tonight | $902.00 |
| 7/13/16 | Six Flags | $209.99 |
| 7/13/16 | Sayers Wharf | $20.00 |
| 7/13/16 | Famous Footwear | $97.98 |
| 7/13/16 | TJ Maxx | $88.92 |
| 7/13/16 | Tibet | $10.70 |
| 7/13/16 | Castle Hill | $119.36 |
| 7/13/16 | Space & Tea Exchange | $19.07 |
| 7/13/16 | The New Store | $78.47 |
| 7/14/16 | Forty 1 North | $246.24 |
| 7/14/16 | Arianna Cosmetics | $96.29 |
| 7/14/16 | Starbucks | $7.88 |
| 7/14/16 | Stop & Shop | $165.03 |
| 7/15/16 | Forty 1 North | $130.00 |
| 7/15/16 | Newport Jerky Comp. | $54.96 |
| 7/18/16 | American Airlines | $413.47 |
| 7/18/16 | Jet Blue | $208.84 |
| 7/18/16 | Grand Prix | $92.48 |
| 7/18/16 | Journeys Store | $124.03 |
| 7/18/16 | Apple Store | $217.70 |
| 7/18/16 | Standard Highline | $49.00 |
| 7/19/16 | Whole Foods | $266.30 |
| 7/20/16 | K-Mart | $39.15 |
| 7/20/16 | Putnam Wine & Liquor | $68.23 |
| 7/20/16 | Turcos | $99.27 |
| 7/21/16 | Best Buy | $150.31 |
| 7/21/16 | 230 Fifth Ave | $44.00 |
| 7/21/16 | CGM GH LLC (Rest.) | $498.08 |
| 7/21/16 | Bucci Brother's Deli | $36.59 |
| 7/25/16 | TOA Downtown | $49.20 |
| 7/25/16 | TOA Downtown | $308.78 |
| 7/25/16 | 111 8th Ave Parking | $62.00 |
| 7/25/16 | Hollister | $50.59 |

## A-468

| | | |
|---|---|---|
| 7/25/16 | Journeys | $124.03 |
| 7/25/16 | AT&T | $53.69 |
| 7/25/16 | Stop & Shop | $26.09 |
| 7/25/16 | Stop & Shop | $79.71 |
| 7/25/16 | HomeGoods | $53.37 |
| 7/25/16 | Il Laghetto | $146.11 |
| 7/27/16 | ACME | $125.64 |
| 7/27/16 | Mulligan's Liquor | $171.08 |
| 7/27/16 | ACME | $93.80 |
| 7/29/16 | Cap't Jacks | $50.88 |
| 7/29/16 | ULTA | $37.83 |

### August 2016 (Exh. 32)

| | | |
|---|---|---|
| 8/1/16 | Morey's Piers | $90.00 |
| 8/1/16 | LA Cavas Pizza | $45.50 |
| 8/1/16 | Stop & Shop | $21.55 |
| 8/1/16 | Elby's Variety Store | $23.77 |
| 8/1/16 | Abercrombie | $85.84 |
| 8/1/16 | Fortina | $158.68 |
| 8/1/16 | CHOPT | $40.08 |
| 8/1/16 | Stop & Shop | $70.41 |
| 8/1/16 | AT&T | $462.13 (recurring) |
| 8/1/16 | BJ Membership | $53.69 (recurring) |
| 8/3/16 | Club Fit | $152.16 (recurring) |
| 8/4/16 | The Borgata | $112.86 |
| 8/8/16 | TOA Downtown | $237.06 |
| 8/8/16 | Starbucks | $18.99 |
| 8/8/16 | Hot Topic | $265.34 |
| 8/8/16 | Netflix | $18.57 (recurring) |
| 8/12/16 | Vandal NY | $362.21 |
| 8/12/16 | Mahopac Flower Shop | $65.03 |
| 8/15/16 | Blu Pointe | $166.24 |
| 8/15/16 | Putnam Wine & Liquor | $75.85 |
| 8/15/16 | The Box NY | $106.00 |
| 8/15/16 | BEBE | $219.88 |
| 8/15/16 | Exit 4 Food Hall | $86.95 |
| 8/15/16 | The Borgata | $2,185.02 |
| 8/16/16 | Market Place Eatery AC | $210.25 |
| 8/17/16 | Steve Madden | $174.49 |
| 8/17/16 | The Borgata | $60.00 |
| 8/17/16 | Starbucks | $20.98 |
| 8/18/16 | Target | $160.73 |
| 8/18/16 | Teavana | $30.26 |
| 8/18/16 | Zagg | $74.43 |

**A-469**

| | | |
|---|---|---|
| 8/19/16 | Immerson Spa | $200.00 |
| 8/19/16 | Hot Topic | $23.92 |
| 8/19/16 | Harley Davidson | $439.40 |
| 8/22/16 | Rossy's Nail Bar | $45.00 |
| 8/22/16 | Rick's Seafood | $85.60 |
| 8/22/16 | Stop & Shop | $49.04 |
| 8/22/16 | KeyFood | $36.84 |
| 8/22/16 | Concept Nails | $62.00 |
| 8/22/16 | ALDO Shoes | $12.74 |
| 8/22/16 | Sephora | $68.06 |
| 8/22/16 | Macy's | $105.80 |
| 8/22/16 | Dick's Sporting Goods | $100.39 |
| 8/23/16 | Jet Blue | $78.00 |
| 8/30/16 | American Airlines | $78.00 |
| 8/31/16 | Turcos | $172.38 |

**October 2016 (Exh. 33)**

| | | |
|---|---|---|
| 10/6/16 | Mercedes Benz | $465.48 |
| 10/17/17 | Harley Davidson | $270.59 |
| 10/17/17 | Harley Davidson | $1,285.65 |
| 10/18/17 | The Hartford Club | $1,981.00 |
| 10/26/17 | Hot Topic | $22.80 |
| 10/31/17 | Uncorked Wine | $32.19 |
| 10/31/16 | Dicks Sporting Goods | $32.20 |

**November 2016 (Exh. 34)**

| | | |
|---|---|---|
| 11/1/16 | Brotherhood Winery | $103.08 |
| 11/4/16 | Mercedes Benz | $465.48 |
| 11/7/16 | NYU Admissions | $27.22 |
| 11/7/16 | Laguna Grocery | $37.40 |
| 11/7/16 | Stop & Shop | $42.05 |
| 11/7/16 | Amore Ristorant | $80.49 |
| 11/7/16 | ULTA | $100.00 |
| 11/7/16 | NYU Admissions | $102.34 |
| 11/7/16 | GameStop | $148.15 |
| 11/25/16 | Harley Davidson | $406.85 |
| 11/25/16 | Harley Davidson | $562.83 |

**December 2016 (Exh. 35)**

| | | |
|---|---|---|
| 12/5/16 | Mercedes Benz | $465.48 |
| 12/22/16 | Forever 21 | $2.85 |
| 12/22/16 | Charlotte Russe | $46.52 |
| 12/22/16 | Forever 21 | $47.72 |
| 12/22/16 | Marshall's | $113.71 |

**A-470**

### January 2017 (Exh. 36)

| | | |
|---|---|---|
| 1/3/17 | Best Buy | $533.17 |
| 1/5/17 | Mercedes Benz | $465.48 |
| 1/6/17 | Toys R Us | $121.28 |
| 1/9/17 | Putnam Wine & Liquor | $82.31 |
| 1/9/17 | Harley Davidson | $270.59 |
| 1/26/17 | Whole Foods | $165.98 |
| 1/26/17 | Trader Joe's | $173.01 |
| 1/27/17 | Harley Davidson | $270.59 |
| 1/27/17 | Harley Davidson | $406.85 |

### February 2017 (Exh. 37)

| | | |
|---|---|---|
| 2/6/17 | Mercedes Benz | $465.48 |
| 2/27/17 | Laguna Grocery | $21.17 |
| 2/27/17 | Stop & Shop | $112.59 |
| 2/27/17 | Putnam Wine & Liquor | $124.54 |
| 2/28/17 | 8th Ave Parking | $62.00 |
| 2/28/17 | Splash Car Wash | $67.72 |

### March 2017 (Exh. 38)

| | | |
|---|---|---|
| 3/1/17 | TOA Downtown | $291.16 |
| 3/2/17 | Bodega Negra | $40.00 |
| 3/3/17 | BEBE | $417.77 |
| 3/6/17 | ULTA | $4.28 |
| 3/6/17 | Steve Madden | $104.32 |
| 3/6/17 | Mercedes Benz | $465.48 |
| 3/9/17 | Rick's Seafood | $11.24 |
| 3/13/17 | Marty's Formal Wear | $40.27 |
| 3/13/17 | Express | $43.35 |
| 3/13/17 | DSW | $72.05 |
| 3/13/17 | Kobu Asian Bistro | $97.77 |
| 3/13/17 | Stop & Shop | $203.08 |
| 3/13/17 | Joshua Tree Bar | $262.00 |
| 3/14/17 | Walmart | $92.67 |
| 3/16/17 | One Price Cleaners | $8.50 |
| 3/16/17 | Wayback Burgers | $11.99 |
| 3/20/17 | Stop & Shop | $175.73 |
| 3/22/17 | Stop & Shop | $19.18 |
| 3/24/17 | Mrs. Greens | $103.15 |
| 3/24/17 | BJs | $184.85 |

## A-471

| 3/29/17 | Placita Market | $6.13 |
| 3/30/17 | Placita Market | $29.25 |

### April 2017 (Exh. 39)

| 4/4/17 | Mercedes Benz | $465.48 |
| 4/14/17 | Brodie's Pub | $205.87 |
| 4/17/17 | Metro-North | $38.25 |
| 4/17/17 | Ameritania Hotel | $46.81 |
| 4/17/17 | Ameritania Hotel | $266.27 |
| 4/17/17 | TOA Downtown | $523.33 |
| 4/18/17 | Stop & Shop | $79.60 |
| 4/25/17 | KeyFood | $53.77 |
| 4/26/17 | K-Mart | $19.90 |
| 4/27/17 | Aroma Osteria | $242.84 |
| 4/28/17 | Darcy's Acad. of Dance | $125.00 |

### May 2017 (Exh. 40)

| 5/1/17 | Rooftop Red's | $50.20 |
| 5/1/17 | Splash Car Wash | $61.50 |
| 5/1/17 | Taco Dumbo | $69.44 |
| 5/2/17 | Water Club Hotel | $11.65 |
| 5/2/17 | Water Club Hotel | $326.32 |
| 5/2/17 | Borgata Restaurant | $536.23 |
| 5/3/17 | Turco's | $69.81 |
| 5/4/17 | Turco's | $86.99 |
| 5/4/17 | Mercedes Benz | $465.48 |
| 5/10/17 | Harley Davidson | $406.85 |
| 5/11/17 | Asia Barong | $387.81 |
| 5/17/17 | Dunkin Donuts | $19.90 |
| 5/18/17 | Dunkin Donuts | $10.05 |
| 5/18/17 | American Cancer Soc. | $500.00 |
| 5/19/17 | Bucci's Brothers Deli | $59.20 |
| 5/22/17 | Auntie Anne's | $3.32 |
| 5/22/17 | Rick's Seafood | $8.69 |
| 5/22/17 | Great American Cookie | $26.99 |
| 5/22/17 | Stop & Shop | $28.05 |
| 5/22/17 | Placita Market | $36.93 |
| 5/22/17 | Amy's Hallmark | $42.69 |
| 5/22/17 | GameStop | $200.00 |
| 5/23/17 | Placita Market | $7.10 |
| 5/24/17 | Stop & Shop | $117.65 |
| 5/24/17 | Il Laghetto | $141.91 |
| 5/30/17 | Amy's Hallmark | $7.49 |
| 5/30/17 | Bamboo Village | $39.12 |

**A-472**

| | | |
|---|---|---|
| 5/30/17 | Shoe Depot | $41.34 |
| 5/30/17 | H&M | $75.38 |
| 5/30/17 | Hollister | $95.00 |
| 5/30/17 | Haiku Asian Bistro | $146.38 |
| 5/30/17 | NYC Parking Ticket | $125.00 |
| 5/30/17 | Harley Davidson | $406.85 |

**June 2017 (Exh. 41)**

| | | |
|---|---|---|
| 6/2/17 | Bucci Brother's Deli | $67.09 |
| 6/5/17 | Mercedes Benz | $465.48 |
| 6/5/17 | Bamboo Village | $52.45 |
| 6/5/17 | Gem Saloon | $54.00 |
| 6/6/17 | Bungalow Beach Bar | $79.85 |
| 6/7/17 | Bamboo Village | $25.20 |
| 6/8/17 | McDonald's | $43.24 |
| 6/9/17 | Bamboo Village | $57.49 |
| 6/12/17 | Sterling Cellars Wine | $357.63 |
| 6/19/17 | NY Sky Room | $38.00 |
| 6/19/17 | NY 39th Parking | $58.00 |
| 6/19/17 | NY Refinery Rooftop | $145.41 |
| 6/22/17 | CVS | $110.55 |
| 6/22/17 | SeatGeek Ticketing | $449.00 |
| 6/23/17 | Exit 4 Food Hall | $36.51 |
| 6/23/17 | TLF Flowers | $150.00 |
| 6/23/17 | Hotels.com | $313.32 |
| 6/26/17 | Zach's Pizzeria | $30.00 |

**February 2018 (Exh. 42)**

| | | |
|---|---|---|
| 2/12/18 | Traditions Restaurant | $138.50 |
| 2/13/18 | Nespresso Boutique | $93.00 |
| 2/14/18 | Gaetano's Pizzeria | $21.40 |
| 2/16/18 | Bamboo Village | $23.25 |
| 2/20/18 | iTunes | $13.95 |
| 2/26/18 | PetSmart | $37.86 |
| 2/26/18 | Bar Russo | $86.42 |
| 2/26/18 | The ChopHouse Grill | $158.23 |
| 2/27/18 | Nespresso Boutique | $58.79 |
| 2/27/18 | Nespresso Boutique | $75.00 |

# EXHIBIT C

**Thornton Tomasetti**

A-474

# Field Report

| | | | |
|---|---|---|---|
| PROJECT NO | N17262.00 | DATE | March 12, 2018 |
| PROJECT NAME | Klienschmidt Residence | FROM | Claudine Williams, AIA |
| PROJECT LOCATION | 41 Averill Drive, Mahopac, NY | TITLE | Associate |

*The following comments and observations are based upon a cursory review of the work only, and are not intended to be all inclusive.*

## Observations:

As requested by Mr. Michael Gordon, Esq. from Gordon Law., Richard Vivenzio, AIA and Claudine Williams, AIA from Thornton Tomasetti (TT) visited the Klienschmidt residence located at 41 Averill Drive, Mahopac, NY on June 28, 2017 to perform a visual observation of the Addition Alteration project. The purpose of this observation was to ascertain the level of completion of the in-situ construction.

TT reviewed design drawings prepared by Michael Piccirillo Architecture (MAP) dated December 12, 2016. According to MAP's drawings, the alteration project was an addition to the original one story 2,663 sqft residence. The design drawings for the new Klienschmidt residence indicate a two-story wood framed structure with a finished basement and unfinished attic which according to our calculation totals approximately 6,400 sqft. The design is essentially a new home that utilized part of the existing foundation of the existing structure located on the property. The design program called for the following spaces:

Basement:
- Theatre
- Playroom
- Exercise room with built-in sauna, spa and steam room
- Kitchenette
- Laundry
- 1 1/2 Bathrooms
- Mechanical room

1st Floor:
- Great room
- Family room
- Office
- Dining room
- Kitchen with a separate pantry
- Powder room
- 2 Car garage and attached Mud room

2nd Floor:
- Master suite containing the master bedroom, master bathroom and two walk-in closets
- 3 Bedrooms with attached bathrooms
- Laundry room

**Thornton Tomasetti**

TT Project: N17262.00
Klienschmidt Residence
March 12, 2018, Page 2

**A-475**

**Field Report**

Site:
- Dock
- Rear deck and Front porch

TT's assessment was limited to visual observation of readily accessible areas of the building's interior and exterior spaces. TT was tasked with determining the approximate level of completion of work at the time of the observation. The table below represents TT's estimation of the approximate level of completion for each area of work based on TT's site observations and as related to the MAP design drawings. Building components are categorized per descriptions listed in RS Means Residential Costs, 36th Edition. See attached Appendix A for cost analysis of observed level of construction progress based on comparative residential models provided in RS Means.

| Category | Area of work description and building components | Percentage Completed |
|---|---|---|
| **1** Site work | Site preparation for foundation completed | 100% |
| **2** Foundation | Extension of foundation wall to accommodate increased building footprint completed | 100% |
| **3** Framing | Wall studs and sub-flooring mostly completed. | 80% |
| **4** Exterior walls | Framing, sheating and building paper installation complete. Stone veneer and stucco finishes not yet installed. Exterior doors and window at basement and roof cupolas not yet installed | 50% |
| **5** Roofing | Framing, sheating and building paper installation complete. Slate roof shingles, gutters and downspouts not installed | 15% |
| **6** Interiors | Interior wall, floor and ceiling finishes not installed | 0% |
| **7** Specialties | Kitchen cabinets, sinks    Photo 3 | 0% |
| **8** Mechanical | Some ductwork in the basement and PVC piping were installed. Plumbing fixtures and heating system not yet installed | 10% |
| **9** Electrical | No electrical equipment including light fixtures, wiring, receptacle and switches were installed | 0% |

Other than small pipe fittings and duct sections, no other building materials or equipment were observed on site. TT has not verified or observed any off site materials or components. Receipts and/or orders forms were not provided that could indicate purchases of additional items.

Site work, as defined by R.S. Means in the above estimate only reflects the level of work necessary to complete the foundation within the footprint of the building. TT has not reviewed grading or landscape plans to ascertain the cost to complete the remaining site work such as driveway, walkways, fill, grading, plantings, etc. Therefore those costs are not reflected in the estimate.

**Thornton Tomasetti**

TT Project: N17262.00
*Klienschmidt Residence*
March 12, 2018, Page 3

**A-476**

Field Report

**Discussion of in-situ construction observed**

At the time of the observation the home was still in the rough frame stage, meaning no interior walls were clad in any finish material such as wall board. The exterior of the house was sheathed. No roofing was installed. Most of the windows were in place. Very limited plumbing was observed. The mechanical was limited to some duct work observed in the cellar.

As previously stated, the purpose of the observation was specifically limited to determining the value of the construction in place. However, it must be stated that much of the construction observed was inadequate, meaning, that in order to properly complete this house, some of the in-place construction would require significant repairs in order to meet codes and standard and to pass municipal inspection. As examples, we observed steel girders improperly supported on conventional wood plates seriously exceeding the bearing capacity of those plates; steel columns insufficiently supported on undersized concrete footings with improper anchor bolt edge distances; steel columns with improper nailed connection to wood beams; improper installation of windows; steel girders left exposed at exterior wall; dissimilar metals in contact that will ultimately deteriorate due to galvanic action, just to name a few.

While it was not the scope of our work to analyze all of the in-place construction deficiencies, as architects, we have an obligation to bring these deficiencies to the client's attention. The Owner should anticipate significant costs to remedy these deficiencies. For this office to determine the magnitude of the insufficient in-place construction it would have required more time than the one day we were on site. The estimated costs in the provided square foot estimate (attached) do not account for the remedial work necessary for this house to be brought up to standards and pass inspections. Those costs could only be accurately determined by contractors doing the remedial work. Once accurate remedial construction costs are captured, those cost should be deducted from the estimate provided by this office

Representative photos follow:

**Thornton Tomasetti**

TT Project: N17262.00
Klienschmidt Residence
March 12, 2018, Page 4

**A-477**

Field Report



Photo 1: Basement- Mechanical Room. Wood framework



Photo 2: Mechanical Room – Basement – Concrete block above existing foundation

**Thornton Tomasetti**

TT Project: N17262.00
Klienschmidt Residence
March 12, 2018, Page 5

**A-478**

Field Report



Photo 3: Basement- Mechanical Room pipe penetration through exterior wall



Photo 4: Basement- Exercise Room

**Thornton Tomasetti**

TT Project: N17262.00
Klienschmidt Residence
March 12, 2018, Page 6

**A-479**

Field Report



Photo 5: Basement- Kitchenette



Photo 6: Basement- Exercise Room

## Thornton Tomasetti

TT Project: N17262.00
Klienschmidt Residence
March 12, 2018, Page 7

**A-480**

# Field Report



Photo 7: 1st Floor- Entry Foyer



Photo 8: 1st Floor – Great Room

**Thornton Tomasetti**

TT Project: N17262.00
Klienschmidt Residence
March 12, 2018, Page 8

**A-481**

Field Report



STEEL GIRDER
BEARING ON
WOOD PLATE

Photo 9: 1st Floor- Steel column connection



WINDOW NOT
SECURELY ANCHORED
TO WALL FRAMING.
TEMPORARY BRACE
INSTALLED FOR
STABILITY

Photo 10: 1st Floor Kitchen- Improper window installation

**Thornton Tomasetti**

TT Project: N17262.00
Klienschmidt Residence
March 12, 2018, Page 9

**A-482**

Field Report



Photo 11: 1st Floor- Office



Photo 12: 1st Floor- Mud room



Photo 13: 1st Floor- Garage

**Thornton Tomasetti**

TT Project: N17262.00
Klienschmidt Residence
March 12, 2018, Page 10

**A-483**

Field Report



UNDERSIZED CONCRETE FOOTING AND IMPROPER BOLTING

Photo 14: 1st Floor- Garage



CENTERLINE OF ROOF TRUSS

OFF CENTER STEEL SUPPORT

Photo 15: 2nd Floor – Cathedral space discontinuous load path

**Thornton Tomasetti**

**A-484**

Field Report



Photo 16: 2nd Floor cathedral space - Steel column connection



Photo 17: 2nd Floor – Steel column connection

**Thornton Tomasetti**

TT Project: N17262.00
Klienschmidt Residence
March 12, 2018, Page 12

**A-485**

Field Report



Photo 18: 2nd Floor – Master bathroom



Photo 19: Attic- Improper window installation

**Thornton Tomasetti**

TT Project: N17262.00
Klienschmidt Residence
March 12, 2018, Page 13

**A-486**

Field Report



FRAMED OPENING
FOR STAIR

Photo 20: Attic- Unfinished space



MISSING WINDOWS
AT COPULA

Photo 21: Attic- Unfinished space

**Thornton Tomasetti**

TT Project: N17262.00
Klienschmidt Residence
March 12, 2018, Page 14

**A-487**

Field Report



Photo 22: Exterior- Rear facade



Photo 23: Exterior– Front facade .

**Thornton Tomasetti**

TT Project: N17262.00
Klienschmidt Residence
March 12, 2018, Page 15

**A-488**

Field Report



MISSING
WINDOWS
AT COPULAS

MISSING
GARAGE
DOORS

MISSING
WINDOW

Photo 24: Exterior- Side view          Photo 25: Exterior- Side view



COPPER FLASHING IN CONTACT
WITH ALUMINIM FRAME
EXPOSED STEEL GIRDER

Photo 26: Exterior- Dissimilar metals in contact at exterior window sill

**Thornton Tomasetti**

A-489

# APPENDIX A

28-Jul-17

**Kleinschmidt Residence - Cost Analysis**

**RS Means 2017 Edition: 2 Story Luxury Single Family Residence**

### Living Area Base Cost per SF Calculation

| | Item and Description | Mat cost | Install | Cost/SF |
|---|---|---|---|---|
| 1 | Site Work | | 1.03 | 1.03 |
| 2 | Foundation- deduct 10% for existing to remain | 4.13 | 4.70 | 8.83 |
| 3 | Framing- 30% upcharge for steel framing | 9.84 | 13.12 | 22.96 |
| 4 | Exterior Walls | 13.61 | 4.62 | 18.23 |
| 5 | Roofing | 2.61 | 2.17 | 4.78 |
| 6 | Interior finishes | 16.74 | 17.25 | 33.99 |
| 7 | Specialties | 8.57 | 1.60 | 10.17 |
| 8 | Mechanical | 6.44 | 3.73 | 10.17 |
| 9 | Electrical | 3.51 | 2.79 | 6.30 |
| 10 | O & P | 15.26 | 11.64 | 26.90 |
| | **Total Base Cost per SF** | | | **143.36** |

**Items included in Base Cost:**

o  Forced hot air heat/air conditioning

o  Gypsum wallboard interior finishes

o  Toungue and groove vertical Wood siding

o  1 kitchen with Luxury grade cabinets and sink

o  1 full bath & 1 half bath

o  Red Cedar roof shingles

### Base Cost for Living Area (1st & 2nd Floor only)

| Living area | Base Cost/SF | SF | Total Base Cost |
|---|---|---|---|
| 1st & 2nd Flr | 143.36 | 6,380.00 | 914,636.80 |

### Project Specific Modifications

| | Location | Cost/SF | SF | Total Cost |
|---|---|---|---|---|
| 11 | Finished Basement | 32.40 | 2,460.00 | 79,704.00 |
| 12 | Unfinished Attic | 0.00 | 1,100.00 | 0.00 |
| 13 | Slate Roof | 2.15 | 4,030.00 | 8,664.50 |
| 14 | Rear Deck | 61.77 | 375.00 | 23,163.75 |
| 15 | Front Porch | 93.92 | 150.00 | 14,088.00 |
| 16 | Exterior Stone Veneer | 21.51 | 2,000.00 | 43,020.00 |
| 17 | Exterior Stucco (deduct) | -2.80 | 3,500.00 | -9,800.00 |
| | **Total Cost- Modifications** | | | **158,840.25** |

### Item Cost per RS Means % Breakdown

| | Total | % of Total | Total Cost per Item |
|---|---|---|---|
| 1 | 1,427,247.96 | 0.70% | 9,990.74 |
| 2 | 1,427,247.96 | 7.10% | 101,334.61 |
| 3 | 1,427,247.96 | 12.90% | 184,114.99 |
| 4 | 1,427,247.96 | 13.10% | 186,969.48 |
| 5 | 1,427,247.96 | 3.40% | 48,526.43 |
| 6 | 1,427,247.96 | 24.40% | 348,248.50 |
| 7 | 1,427,247.96 | 7.30% | 104,189.10 |
| 8 | 1,427,247.96 | 7.30% | 104,189.10 |
| 9 | 1,427,247.96 | 4.50% | 64,226.16 |

### Adjustments/Add-ons

| | Location | Unit | Cost/unit | Total Cost |
|---|---|---|---|---|
| 18 | Kitchen | 1 | 30,167.00 | 30,167.00 |
| 19 | Bathroom | 3 | 11,597.00 | 34,791.00 |
| 20 | 1/2 Bath | 3 | 6,993.00 | 20,979.00 |
| 21 | Fireplace | 1 | 11,420.00 | 11,420.00 |
| 22 | Attached Garage | 1 | 33,436.00 | 33,436.00 |
| 23 | Sauna (6'x9') | 1 | 8,700.00 | 8,700.00 |
| 24 | Steam Room (6'x6' sauna) | 1 | 6,900.00 | 6,900.00 |
| | **Total Cost- Adjustments** | | | **146,393.00** |

### Actual Cost Per TT's Field Observations

### Estimated % of Work Completed

| | Cost per Item | % Complete | Actual Cost per Item |
|---|---|---|---|
| 1 | 9,990.74 | 100% | 9,990.74 |
| 2 | 101,334.61 | 100% | 101,334.61 |
| 3 | 184,114.99 | 80% | 147,291.99 |
| 4 | 186,969.48 | 50% | 93,484.74 |
| 5 | 48,526.43 | 15% | 7,278.96 |
| 6 | 348,248.50 | 0% | 0.00 |
| 7 | 104,189.10 | 0% | 0.00 |
| 8 | 104,189.10 | 10% | 10,418.91 |
| 9 | 64,226.16 | 0% | 0.00 |

| | | |
|---|---|---|
| Sub-Total | | 1,219,870.05 |
| | Location Factor: Poughkeepsie | 1.17 |

| **Total Designed Construction Cost** | **1,427,247.96** |
|---|---|

| Total Building Area | 7,835.00 |
|---|---|
| *( Includes 1st floor, 2nd floor, 1/2 Basement & 1/2 Garage) | |
| **Total Cost per SF** | **182.16** |

| **Total for Work Completed** | **369,799.95** |
|---|---|

A-490

# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK  2 of 2
COUNTY OF WESTCHESTER - COMPLIANCE PART  A-491
-----------------------------------------------------------------------x

Lak 3, LLC

               Plaintiff(s),

       -against-

Dunn

               Defendant(s).

COMPLIANCE CONFERENCE
REFEREE REPORT & ORDER

Index No.: 61510/17

-----------------------------------------------------------------------x

MILLNER, C.A.R.

In accordance with CPLR 3104 and the DCM Rules of this Court, and pursuant to the Compliance Conference held before me on _____8/27/18_____, I recommend that the Court confirm the following Report:

Appearances:
Plaintiff(s)  Lak 3 LLC by Michael Gordon GLLLP  Defendant(s) Def. S. Dunn Michael K Cross, of counsel to W J Shilling
Defendant(s)  ~~Third Party~~
          Def. g. Dunn  Michael Cross  ~~FC~~

IT IS DIRECTED that disclosure shall proceed and be completed on or before the dates set forth as follows:

( )    Discovery & Inspection demands shall be served on or before _____.
( )    Discovery & Inspection responses to demands of _____ dated
                  shall be served on or before _____.
( )    Authorizations shall be served on or before _____ with respect to the following
                                                              .

( )    Depositions shall be completed on or before _____.
( )    Physical examinations shall be completed on or before _____.
( )    Medical reports shall be served on or before _____
(X)   Quickbooks + Texts inspection shall be completed on or before _____9/4/18 and/r. 9/5/18
(X)   Construction drawings shall be served on or before _____8/31/18

Any failure to comply strictly with the terms hereof shall be grounds for the striking of pleadings or other relief pursuant to CPLR 3126.

Any parties failing to appear at the Compliance Conference shall be bound by the terms hereof.

Any disclosure demands not raised at the Compliance Conference are deemed waived.

The parties shall appear for a Compliance Conference on _____9/17/18_____ at 9:30 a.m. in the Compliance Part, Room 800. The foregoing constitutes the Report of the Court Attorney-Referee:

Dated: White Plains, NY
_____August 27_____, 2018

                              Jeannette M. Millner, Court Attorney-Referee

                              SO ORDERED:

Dated: White Plains, NY
_____8/28_____, 2018

                              Hon. Joan B. Lefkowitz, JSC

Any inquiries regarding this matter should be directed to the Compliance Part Clerk or Jeannette M. Millner, Court Attorney Referee by email to ComplianceWestchester@nycourts.gov. Please do not contact Judge's chambers.

**A-492**

Law Office of Francis J. O'Reilly, Esq.
Attorneys for Sean M. Dunn
1961 Route 6
Carmel, NY 10512
(845) 225-5800

<div align="center">

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

</div>

| | |
|---|---|
| In re:<br><br>Sean M. Dunn,<br><br>        Debtor. | Chapter 7<br>Case No.: 18-36566(cgm) |
| LAK3, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>Sean M. Dunn,<br><br>        Defendant. | Adv. Proc. No.: 18-09038(cgm) |

<div align="center">

**ANSWER TO AMENDED COMPLAINT OF LAK3, LLC SEEKING
DETERMINATION OF (I) DISCHARGEABILITY OF DEBT PURSUANT
TO 11 U.S.C. §§ 523(a)(2), (4) and (6); and (II) DENIAL OF DEBTOR'S
DISCHARGE PURSUANT TO 11 U.S.C. §§ 727(A)(2), (3) AND (4)**

</div>

Defendant, Sean M. Dunn, answering the Amended Complaint of Plaintiff, LAK3, LLC,

by his attorney, Francis J. O'Reilly, Esq., states the following:

**JURISDICTION, STATUTORY PREDICATE AND VENUE**

1.    Defendant admits the allegations contained in paragraph "1" of plaintiff's

Complaint.

<div align="center">

1

</div>

**A-493**

2.      Defendant admits the allegations contained in paragraph "2" of plaintiff's Complaint.

3.      Defendant admits the allegations contained in paragraph "3" of plaintiff's Complaint.

4.      Defendant admits the allegations contained in paragraph "4" of plaintiff's Complaint.

## PROCEDURAL HISTORY AND GENERAL ALLEGATIONS

5.      Defendant admits the allegations contained in paragraph "5" of plaintiff's Complaint.

6.      Defendant admits the allegations contained in paragraph "6" of plaintiff's Complaint.

7.      Defendant denies the allegations contained in paragraph "7" of plaintiff's Complaint.

8.      Defendant denies the allegations contained in paragraph "8" of plaintiff's Complaint.

9.      Defendant denies the allegations contained in paragraph "9" of plaintiff's Complaint.

10.     Defendant denies the allegations contained in paragraph "10" of plaintiff's Complaint.

11.     Defendant admits the allegations contained in paragraph "11" of plaintiff's Complaint.

**A-494**

12.     Defendant admits the allegations contained in paragraph "12" of plaintiff's Complaint.

13.     Defendant admits the allegations contained in paragraph "13" of plaintiff's Complaint.

14.     Defendant admits the allegations contained in paragraph "14" of plaintiff's Complaint.

15.     Defendant admits the allegations contained in paragraph "15" of plaintiff's Complaint.

16.     Defendant admits the allegations contained in paragraph "16" of plaintiff's Complaint.

17.     Defendant admits the allegations contained in paragraph "17" of plaintiff's Complaint.

## THE PARTIES

18.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "18" of plaintiff's Complaint.

19.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "19" of plaintiff's Complaint.

20.     Defendant admits the allegations contained in paragraph "20" of plaintiff's Complaint.

## COUNT I – OBJECTION TO DISCHARGE UNDER 11 U.S.C. §523(a)(2) FOR FALSE PRETENSES, REPRESENTATIONS OR ACTUAL FRAUD

21.     Defendant repeats, reiterates and realleges each and every response contained in paragraphs "1" through "20" with the same force and effect as if more fully set forth herein.

3

**A-495**

22.    Defendant admits the allegations contained in paragraph "22" of plaintiff's Complaint.

23.    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "23" of plaintiff's Complaint.

24.    Defendant admits the allegations contained in paragraph "24" of plaintiff's Complaint.

25.    Defendant admits the allegations contained in paragraph "25" of plaintiff's Complaint.

26.    Defendant admits the allegations contained in paragraph "26" of plaintiff's Complaint.

27.    Defendant denies the allegations contained in paragraph "27" of plaintiff's Complaint.

28.    Defendant denies the allegations contained in paragraph "28" of plaintiff's Complaint.

29.    Defendant denies the allegations contained in paragraph "29" of plaintiff's Complaint.

30.    Defendant denies the allegations contained in paragraph "30" of plaintiff's Complaint.

31.    Defendant denies the allegations contained in paragraph "31" of plaintiff's Complaint.

32.    Defendant denies the allegations contained in paragraph "32" of plaintiff's Complaint.

## A-496

33.     Defendant denies the allegations contained in paragraph "33" of plaintiff's Complaint.

34.     Defendant admits the allegations contained in paragraph "34" of plaintiff's Complaint.

35.     Defendant denies the allegations contained in paragraph "35" of plaintiff's Complaint.

36.     Defendant denies the allegations contained in paragraph "36" of plaintiff's Complaint.

37.     Defendant admits the allegations contained in paragraph "37" of plaintiff's Complaint.

38.     Defendant admits the allegations contained in paragraph "38" of plaintiff's Complaint.

39.     Defendant admits the allegations contained in paragraph "39" of plaintiff's Complaint.

40.     Defendant denies the allegations contained in paragraph "40" of plaintiff's Complaint.

41.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "41" of plaintiff's Complaint.

42.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "42" of plaintiff's Complaint.

43.     Defendant admits the allegations contained in paragraph "43" of plaintiff's Complaint.

**A-497**

44.     Defendant admits the allegations contained in paragraph "44" of plaintiff's Complaint.

45.     Defendant denies the allegations contained in paragraph "45" of plaintiff's Complaint.

46.     Defendant admits the allegations contained in paragraph "46" of plaintiff's Complaint.

47.     Defendant denies the allegations contained in paragraph "47" of plaintiff's Complaint.

48.     Defendant denies the allegations contained in paragraph "48" of plaintiff's Complaint.

49.     Defendant admits the allegations contained in paragraph "49" of plaintiff's Complaint.

50.     Defendant admits the allegations contained in paragraph "50" of plaintiff's Complaint.

51.     Defendant admits the allegations contained in paragraph "51" of plaintiff's Complaint.

52.     Defendant denies the allegations contained in paragraph "52" of plaintiff's Complaint.

53.     Defendant denies the allegations contained in paragraph "53" of plaintiff's Complaint.

54.     Defendant denies the allegations contained in paragraph "54" of plaintiff's Complaint.

A-498

55.      Defendant admits the allegations contained in paragraph "55" of plaintiff's Complaint.

56.      Defendant denies the allegations contained in paragraph "56" of plaintiff's Complaint.

## COUNT II-OBJECTION TO DISCHARGE UNDER
## 11 U.S.C. §523(a)(4) FOR DEFALCATION BY A FIDUCIARY

57.      Defendant repeats, reiterates and realleges each and every response contained in paragraphs "1" through "56" with the same force and effect as if more fully set forth herein.

58.       Defendant admits the allegations contained in paragraph "58" of plaintiff's Complaint.

59.      Defendant admits the allegations contained in paragraph "59" of plaintiff's Complaint.

60.      Defendant admits the allegations contained in paragraph "60" of plaintiff's Complaint.

61.      Defendant admits the allegations contained in paragraph "61" of plaintiff's Complaint.

62.      Defendant denies the allegations contained in paragraph "62" of plaintiff's Complaint.

63.      Defendant admits the allegations contained in paragraph "63" of plaintiff's Complaint.

64.      Defendant admits the allegations contained in paragraph "64" of plaintiff's Complaint.

**A-499**

65. Defendant denies the allegations contained in paragraph "65" of plaintiff's Complaint.

66. Defendant admits the allegations contained in paragraph "66" of plaintiff's Complaint.

67. Defendant admits the allegations contained in paragraph "67" of plaintiff's Complaint.

68. Defendant admits the allegations contained in paragraph "68" of plaintiff's Complaint.

69. Defendant admits the allegations contained in paragraph "69" of plaintiff's Complaint.

70. Defendant admits the allegations contained in paragraph "70" of plaintiff's Complaint.

71. Defendant denies the allegations contained in paragraph "71" of plaintiff's Complaint.

72. Defendant denies the allegations contained in paragraph "72" of plaintiff's Complaint.

73. Defendant denies the allegations contained in paragraph "73" of plaintiff's Complaint.

74. Defendant denies the allegations contained in paragraph "74" of plaintiff's Complaint.

**A-500**

## COUNT III-OBJECTION TO DISCHARGE UNDER
## 11 U.S.C. §523(a)(4) FOR EMBEZZLEMENT

75.     Defendant repeats, reiterates and realleges each and every response contained in paragraphs "1" through "74" with the same force and effect as if more fully set forth herein.

76.     Defendant admits the allegations contained in paragraph "76" of plaintiff's Complaint.

77.     Defendant admits the allegations contained in paragraph "77" of plaintiff's Complaint.

78.     Defendant denies the allegations contained in paragraph "78" of plaintiff's Complaint.

79.     Defendant admits the allegations contained in paragraph "79" of plaintiff's Complaint.

80.     Defendant admits the allegations contained in paragraph "80" of plaintiff's Complaint.

81.     Defendant denies the allegations contained in paragraph "81" of plaintiff's Complaint.

82.     Defendant denies the allegations contained in paragraph "82" of plaintiff's Complaint.

83.     Defendant denies the allegations contained in paragraph "83" of plaintiff's Complaint.

84.     Defendant denies the allegations contained in paragraph "84" of plaintiff's Complaint.

## A-501

85.    Defendant denies the allegations contained in paragraph "85" of plaintiff's Complaint.

**COUNT IV-OBJECTION TO DISCHARGE UNDER
11 U.S.C. §523(a)(6) FOR WILLFUL AND MALICIOUS INJURY**

86.    Defendant repeats, reiterates and realleges each and every response contained in paragraphs "1" through "85" with the same force and effect as if more fully set forth herein.

87.    Defendant admits the allegations contained in paragraph "87" of plaintiff's Complaint.

88.    Defendant denies the allegations contained in paragraph "88" of plaintiff's Complaint.

89.    Defendant denies the allegations contained in paragraph "89" of plaintiff's Complaint.

90.    Defendant denies the allegations contained in paragraph "90" of plaintiff's Complaint.

91.    Defendant denies the allegations contained in paragraph "91" of plaintiff's Complaint.

92.    Defendant denies the allegations contained in paragraph "92" of plaintiff's Complaint.

**COUNT V-DENIAL OF DISCHARGE UNDER 11 U.S.C. §727(a)(2)
FOR FRAUDULENT PRE-PETITION TRANSFERS**

93.    Defendant repeats, reiterates and realleges each and every response contained in paragraphs "1" through "92" with the same force and effect as if more fully set forth herein.

## A-502

94.     Defendant denies the allegations contained in paragraph "94" of plaintiff's Complaint.

95.     Defendant denies the allegations contained in paragraph "95" of plaintiff's Complaint.

96.     Defendant denies the allegations contained in paragraph "96" of plaintiff's Complaint.

97.     Defendant denies the allegations contained in paragraph "97" of plaintiff's Complaint.

98.     Defendant denies the allegations contained in paragraph "98" of plaintiff's Complaint.

## COUNT VI-DENIAL OF DISCHARGE UNDER
## 11 U.S.C. §727(a)(3) FOR FAILURE TO KEEP RECORDS

99.     Defendant repeats, reiterates and realleges each and every response contained in paragraphs "1" through "98" with the same force and effect as if more fully set forth herein.

100.    Defendant admits the allegations contained in paragraph "100" of plaintiff's Complaint.

101.    Defendant admits the allegations contained in paragraph "101" of plaintiff's Complaint.

102.    Defendant admits the allegations contained in paragraph "102" of plaintiff's Complaint.

103.    Defendant admits the allegations contained in paragraph "103" of plaintiff's Complaint.

## A-503

104. Defendant admits the allegations contained in paragraph "104" of plaintiff's Complaint.

105. Defendant admits the allegations contained in paragraph "105" of plaintiff's Complaint.

106. Defendant denies the allegations contained in paragraph "106" of plaintiff's Complaint.

107. Defendant admits the allegations contained in paragraph "107" of plaintiff's Complaint.

108. Defendant denies the allegations contained in paragraph "108" of plaintiff's Complaint.

109. Defendant denies the allegations contained in paragraph "109" of plaintiff's Complaint.

110. Defendant denies the allegations contained in paragraph "110" of plaintiff's Complaint.

**COUNT VII-DENIAL OF DISCHARGE UNDER 11 U.S.C. §727(a)(4)**
**FOR FALSE OATH IN CONNECTION WITH THE BANKRUPTCY CASE**

111. Defendant repeats, reiterates and realleges each and every response contained in paragraphs "1" through "110" with the same force and effect as if more fully set forth herein.

112. Defendant admits the allegations contained in paragraph "112" of plaintiff's Complaint.

113. Defendant admits the allegations contained in paragraph "113" of plaintiff's Complaint.

## A-504

114.    Defendant admits the allegations contained in paragraph "114" of plaintiff's Complaint.

115.    Defendant admits the allegations contained in paragraph "115" of plaintiff's Complaint.

116.    Defendant denies the allegations contained in paragraph "116" of plaintiff's Complaint.

117.    Defendant denies the allegations contained in paragraph "117" of plaintiff's Complaint.

118.    Defendant denies the allegations contained in paragraph "118" of plaintiff's Complaint.

119.    Defendant denies the allegations contained in paragraph "119" of plaintiff's Complaint.

120.    Defendant denies the allegations contained in paragraph "120" of plaintiff's Complaint.

121.    Defendant denies the allegations contained in paragraph "121" of plaintiff's Complaint.

WHEREFORE, defendant, Sean M. Dunn, demands judgment dismissing the Amended Complaint of the plaintiff, together with the costs and disbursements of this action.

Dated: Carmel, New York
         January 3, 2019

**A-505**

Law Office of Francis J. O'Reilly, Esq.

By:    /s/ Francis J. O'Reilly, Esq. (fo0473)
Attorney for Sean M. Dunn
1961 Route 6
Carmel, NY 10512
(845) 225-5800 – Telephone
(845) 225-5906 – Facsimile
foreilly@verizon.net

To:    Rosen & Associates, P.C.
Attorneys for LAK3, LLC
747 Third Avenue
New York, NY  10017-2803

**A-506**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In re:                                            Chapter 7

Sean M. Dunn,
                                                  Case No. 18-36566 (cgm)

                          Debtor.
--------------------------------------------------------X

**LAK3, LLC**                                     **Adv No. 18-09038**

**v.**

**Sean M. Dunn**
--------------------------------------------------------X

### ORDER DISMISSING CASE FOR FAILURE TO PROSECUTE

The Court having held a hearing on November 19, 2019 and Plaintiff having failed to

appear; and considering Local Rule 9020-1, which states: " Failure of a party or counsel for a party

to appear before the Court at a conference, complete the necessary preparations, or be prepared to

proceed at the time set for trial or hearing may be considered an abandonment of the adversary

proceeding or contested matter or a failure to prosecute or defend diligently, and an appropriate

order of the Court may be entered against the defaulting party with respect to either a specific issue

or the entire adversary proceeding or contested matter;" it is hereby

**ORDERED** that the adversary proceeding is dismissed for failure to prosecute.



Dated: **December 10, 2019**
          **Poughkeepsie, New York**

/s/ **Cecelia G. Morris**
_____
**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**

# A-507

<div align="right">
*Hearing Date: January 28, 2020*
*Time: 9:30 a.m.*
</div>

**ROSEN & ASSOCIATES, P.C.**
*Counsel to LAK3, LLC*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Paris Gyparakis

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEAN M. DUNN,<br><br>　　　　　　　　　Debtor. | Chapter 7<br><br>Case No. 18-36566 (CGM) |
| LAK3, LLC,<br><br>　　　　　　　　　Plaintiff,<br>v.<br><br>SEAN M. DUNN,<br><br>　　　　　　　　　Defendant. | Adv. Proc. No. 18-09038 (CGM) |

## NOTICE OF MOTION OF LAK3, LLC TO VACATE ORDER
## DISMISSING CASE FOR FAILURE TO PROSECUTE

**PLEASE TAKE NOTICE** that upon the annexed motion dated December 20, 2019 (the "**Motion**") of LAK3, LLC ("**LAK3**"), a creditor of Sean M. Dunn, the above-captioned debtor (the **"Debtor"**), the undersigned will move at a hearing before the Honorable Cecelia G. Morris, Chief United States Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of New York, 355 Main Street, Poughkeepsie, New York, New York 12601, on **January 28, 2020 at 9:30 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel can be heard, for entry of an order vacating the *Order Dismissing Case For Failure to Prosecute* entered December 10, 2019 [Adv. Proc. Doc. No. 21].

**A-508**

**PLEASE TAKE FURTHER NOTICE** that responses or objections, if any, to the

Motion shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy

Rules for the Southern District of New York, shall set forth the grounds for such response or

objection with specificity, and shall be filed with this Court electronically in accordance with

General Order M-399 (General Order M-399 and the Procedures for Filing, Signing and

Verification of Documents by Electronic Means can be found at http://www.nysb.uscourts.gov,

the official website for the Bankruptcy Court), by registered users of this Court's filing system,

and by all other parties in interest on a CD-ROM or other electronic media, preferably in PDF or

any Windows-based word processing format, with a hard copy delivered directly to Judge Morris'

chambers, and served in accordance with General Order M-399 upon (i) Rosen & Associates,

P.C., counsel to LAK3, 747 Third Avenue, New York, NY 10017, Attn.: Sanford P. Rosen, Esq.;

(ii) Carlos J. Cuevas, Esq., counsel to the Debtor, 1250 Central Park Avenue, Yonkers, NY 10704;

(iii) Fred Stevens, the chapter 7 trustee, 200 West 41st Street, 17th Fl., New York, NY 10036; and

(iv) all parties who or which have requested notice pursuant to Bankruptcy Rule 2002, **so as to**

**be received not later than 5:00 pm on January 21, 2020.**

Dated: New York, New York
      December 20, 2019

                                          **ROSEN & ASSOCIATES, P.C.**
                                          *Counsel to LAK3, LLC*

                                          By:  /s/ Sanford P. Rosen
                                                Sanford P. Rosen

                                          747 Third Avenue
                                          New York, NY 10017 2803
                                          (212) 223-1100

**A-509**

*Hearing Date: January 28, 2020*
*Time: 9:30 a.m.*

**ROSEN & ASSOCIATES, P.C.**
*Counsel to LAK3, LLC*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Paris Gyparakis

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEAN M. DUNN,<br><br>                Debtor. | Chapter 7<br><br>Case No. 18-36566 (CGM) |
| LAK3, LLC,<br><br>                Plaintiff,<br>v.<br><br>SEAN M. DUNN,<br><br>                Defendant. | Adv. Proc. No. 18-09038 (CGM) |

**MOTION OF LAK3, LLC TO VACATE ORDER**
**DISMISSING CASE FOR FAILURE TO PROSECUTE**

LAK3, LLC ("**LAK3**"), a creditor of Sean M. Dunn, the above-captioned debtor (the "**Debtor**"), through its undersigned counsel, Rosen & Associates, P.C., hereby moves (the "**Motion**") this Court for the entry of an order, pursuant to Rule 60 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), made applicable to this proceeding through Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), vacating the *Order Dismissing Case For Failure to Prosecute* entered December 10, 2019 [Adv. Proc. Doc. No. 21] (the "**Dismissal Order**"), and respectfully represents as follows:

**A-510**

## JURISDICTION, VENUE AND STATUTORY PREDICATE

1. This Court has jurisdiction to consider this Motion as a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these proceedings is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is 11 U.S.C. § 105(a), as supplemented by Bankruptcy Rule 9024.

## RELEVANT FACTUAL & PROCEDURAL BACKGROUND

2. On August 4, 2017, LAK3 filed suit against the Debtor, his brother, Gerald Dunn, and Well Dunn Maintenance & Contracting, in the Supreme Court of the State of New York, County of Westchester in an action styled, *LAK3, LLC v. Sean Dunn, Gerald Dunn, and Well Dunn Maintenance & Contracting*, Index No. 61510/2017 (the **"State Action"**).

3. On September 17, 2018 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York.

4. On November 26, 2018, LAK3 timely filed a proof of claim in this Court for two million dollars ($2,000,000), based upon the Debtor's fraud, as alleged in the State Action. *See Amended Proof of Claim* [Claim No. 1-2].

5. On November 21, 2018, LAK3 timely filed a *Complaint Seeking Determination of (i) Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2), (4) and (6); and (ii) Denial of Debtor's Discharge Pursuant to 11 U.S.C. § 727(a)(3)* [Adv. Proc. Doc. No. 1], commencing this adversary proceeding, based on the identical set of facts which gave rise to the State Action.

2

## A-511

6.     On January 29, 2019, this Court convened a pretrial conference at which LAK3 requested and obtained this Court's permission to move for summary judgment on certain causes of action in this adversary proceeding based upon the Debtor's pre-Petition Date admissions.

7.     However, LAK3 subsequently concluded that its resources, as well as those of this Court, would be best preserved and more efficiently deployed if LAK3 prosecuted the State Action to judgement and then sought to rely upon that judgment to adjudicate the claims asserted in this adversary proceeding. Accordingly, on February 14, 2019, LAK3 moved for limited relief from the automatic stay to conclude the State Action (the "**Stay Motion**"). *See* STAY MOT. [Doc. No. 34].

8.     On March 22, 2019, the Court entered an *Order Granting Limited Relief from the Automatic Stay to Conclude the State Court Litigation* [Doc. No. 45] (the "**Stay Order**"), granting LAK3 relief from the automatic stay in order to continue to prosecute the State Action "through completion by final judgment, [but] strictly limited … to issues of liability."  *See* STAY ORDER [Doc. No. 45].

9.     Since the Court entered the Stay Order, the pretrial conference in this adversary proceeding has been convened and adjourned on several occasions pending the disposition of the State Action. *See* Adv. Proc. Doc. Nos. 8-13, 16, and 18-20.

10.     On November 16, 2019, counsel to LAK3 requested permission to participate telephonically in the pretrial conference scheduled for November 19, 2019 (the "**Hearing**"), by submitting a request with CourtSolutions in accordance with Chambers' Rules. *See Exhibit A*.

3

**A-512**

11.     On November 19, 2019, counsel received an email from CourtSolutions confirming that its request had been approved and providing instructions for how to dial-in and be heard. *See Exhibit B*.

12.     Only after dialing in to the conference did counsel learn that it was not authorized to speak and be heard, but that its participation had been approved in "listen only mode." Counsel participated in the Hearing accordingly. *See Exhibit C*.

13.     Subsequent to the Hearing, counsel learned that the Court had entered the Dismissal Order, apparently based upon the Court's mistaken belief that LAK3 had failed to attend the Hearing and was no longer prosecuting this adversary proceeding.

14.     Because LAK3, has, in fact, aggressively prosecuted this adversary proceeding as well as the State Action, LAK3 respectfully submits that the Court erred in entering the Dismissal Order and requests that the Court vacate the Dismissal Order. *See declaration of Michael R. Gordon*, trial counsel to LAK3, for a detailed description of the progress in the State Action, annexed hereto as *Exhibit D*.

## DISCUSSION

15.     Under Federal Rule 60(b), "upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceedings for ... mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1).

16.     Federal Rule 60(b) seeks to balance the interest in the stability of judgments and orders, with the interest in seeing they do not become instruments of oppression and fraud. *See* Alan N. Resnick and Henry J. Sommer, 10 COLLIER ON BANKRUPTCY ¶ 9024.03 (16th ed. 2013). Hence, a motion to vacate an order "may be granted to correct a clear error, prevent manifest injustice" or "if a court has acted in a manner inconsistent with due process of law." *See Jorge*

## A-513

*Rivera Surillo & Co. v. Falconer Glass Indus., Inc.,* 37 F.3d 25, 29 (1st Cir. 1994); *Beller & Keller v. Tyler*, 120 F.3d 21, 23 (2d Cir. 1997); *see also Compton v. Alton Steamship Co.*, 608 F.2d 96, 101-02 (4th Cir. 1979) (holding that Rule 60(b) "invest[s] federal courts with the power in certain restricted circumstances to vacate judgments whenever such action is appropriate to accomplish justice.").

       17.    In *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership,* the Supreme Court held that for purposes of granting relief under Federal Rule 60 a court should consider, among other factors: (i) whether the mistake was within the reasonable control of the movant; (ii) whether the movant acted in good faith; and (iii) whether granting the relief will prejudice the opposing party. *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 395 (1993). The Supreme Court concluded that "excusable neglect" in this context is a flexible concept that is not limited to circumstances beyond the control of the movant. *Id*. at 388.

       18.    Courts have held that dismissal of a case or proceeding for want of prosecution is appropriate in cases where the party engaged in "extreme conduct, such as knowing disobedience of a court order," "or when other less drastic sanctions have proven unavailing." *Rivera Diaz v. American Airlines, Inc.,* 433 F.3d 120, 123 (1st Cir.2005); *Dunphy v. McKee*, 134 F. 3d 1297, 1299-1300 (7th Cir. 1998). *See also Enlace Mercantil Internacional, Inc. v. Senior Industries, Inc.,* 848 F.2d 315, 317 (1st Cir.1988) (dismissal for want of prosecution is appropriate when the plaintiff's misconduct has been "extreme"); *Vazquez–Rijos v. Anhang,* 654 F.3d 122, 130 (1st Cir.2011) ("In the face of the repeated and flagrant abuses in this record, the court [is] well within its discretion in choosing to dismiss the case after ... years of patience and the failure of alternative approaches.").

**A-514**

19. Here, LAK3's conduct does not warrant the drastic sanction of dismissal of this adversary proceeding. The Court's Dismissal Order is premised upon the Court's mistaken belief that LAK3 did not appear at the Hearing. However, as discussed above, counsel to LAK3 intended to participate in the Hearing telephonically, properly sought and obtained permission to do so, but ultimately was only authorized to participate in "listen only mode," and thus, could not be heard.

20. LAK3 respectfully submits that under these circumstances, the Court erred in entering the Dismissal Order and it should be vacated.

<u>**NOTICE**</u>

21. LAK3 will give notice of this Motion by causing a copy to be served by first-class mail upon: (i) Carlos J. Cuevas, Esq., counsel to the Debtor, 1250 Central Park Avenue, Yonkers, NY 10704; (ii) Fred Stevens, the chapter 7 trustee, 200 West 41st Street, 17th Fl., New York, NY 10036; and (iii) all those who or which have requested service of papers in this case pursuant to Bankruptcy Rule 2002.

**WHEREFORE**, LAK3 respectfully requests that the Court vacate the Dismissal Order and grant it such other and further relief as the Court deems just and proper, for all of which no prior request has been made to this or any other court.

Dated: New York, New York
      December 20, 2019

**ROSEN & ASSOCIATES, P.C.**
*Counsel to LAK3, LLC*

By:   /s/ Sanford P. Rosen     
        Sanford P. Rosen

747 Third Avenue
New York, NY 10017 2803
(212) 223-1100

6

18-09038-cgm Doc 238-1 Filed 12/20/19 Entered 12/20/19 17:39:01 Exhibit A

**A-515**

## Exhibit A

**Paris Gyparakis**                              **A-516**

| | |
|---|---|
| **From:** | NoReply@Court-Solutions.com |
| **Sent:** | Saturday, November 16, 2019 6:20 PM |
| **To:** | Sanford Rosen |
| **Cc:** | Paris Gyparakis |
| **Subject:** | Case Registration Success |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |



Thank you. We have received your reservation request. We have notified the Judge. When the Judge either approves or denies your request, you will receive a notification email from us.

Your dial in information is always the same. Our main dial in number is +1.646.760.4600 (alternative numbers are listed in the approval email). Then, enter your your registered 10-digit phone number (usually your cell phone number) and your 6-digit PIN number. When the Judge approves your request, these numbers will work for that call. They will also be in the approval email.

If you are involved in a multi-day hearing, you will need to submit a reservation for each day of the hearing. If you have multiple hearings before the same judge on the same day, you only need to submit a single reservation.

For security reasons, you cannot unsubscribe from notification emails.



**COURTSOLUTIONS LLC**
P: 917 746 7476
www.court-solutions.com

1

# A-517

## **Exhibit B**

**Paris Gyparakis**                                    A-518

---

**From:**          NoReply@Court-Solutions.com
**Sent:**          Tuesday, November 19, 2019 8:00 AM
**To:**            Sanford Rosen
**Cc:**            Paris Gyparakis
**Subject:**       CourtSolutions Appearance Reminder



We want to remind you that you have scheduled a court appearance through CourtSolutions today.

To join your call, log into www.Court-Solutions.com no less than 5 minutes before your hearing. You will see a large orange button labeled "Open Hearing Dashboard". Press that and your permanent dial in information will appear. You can call in from any phone. Once you have dialed in, your screen will automatically refresh and you will see the Hearing Dashboard.

If you can't be in front of a computer or tablet, you can join the call by dialing +1.646.760.4600 (or any of the additional dial in numbers listed below) and entering the 10-digit phone number (usually your cell phone number) that you entered when you created your account and your secure PIN.

To make any changes to your participation, please visit us at www.Court-Solutions.com. If your hearing time changes (but the date does not), your reservation will work without making any changes to it.

Our additional dial in numbers, which work exactly the same as our main dial in number, are:

+1.646.757.8968
+1.917.444.7280
+1.609.831.8031
+1.305.912.9012
+1.703.552.8553

CourtSolutions LLC
info@Court-Solutions.com   If you have questions, please click here.
917.746.7476

**A-519**

**Exhibit C**

A-520

((🏛)) COURT
SOLUTIONS

**Phone:** (646) 760-4600

**Welcome Sanford Rosen!**

**Secure PIN:** ▉▉▉▉▉
Personal Identification Number

🏠
Home

👤
My Account

❓
Help

↪
Log Out

| Profile | Photo | Payment | History |

| Delegation |

List of reservations made during the last 6 months.



**Case:** 18-09038-cgm
LAK3, LLC v. Dunn
Tuesday, November 19, 2019 at 10:15:00 AM EST
**Judge:** Cecelia Morris
**Mode:** Listen Only



**Case:** 18-09038
LAK3, LLC v. SEAN M. DUNN
Tuesday, September 17, 2019 at 10:15:00 AM EST
**Judge:** Cecelia Morris
**Mode:** Live Participation



**A-521**

**Exhibit D**

## A-522

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION**

| |
|---|
| In re: |
| |
| SEAN M. DUNN, |
| |
| Debtor. |

Chapter 7

Case No. 18-36566 (CGM)

Michael R. Gordon hereby declares under penalty of perjury as follows:

     1.     I am lead counsel for LAK3, LLC ("LAK3") in an action that LAK3 commenced

on August 4, 2017 in the Supreme Court State of New York, Westchester County (the "State

Court Action") against Debtor Sean Dunn ("Debtor"), Gerald Dunn, and Well Dunn

Maintenance & Contracting (together, the "State Court Defendants"). The State Court Action is

identified by Westchester County Index No. 61510/2017. A true and accurate copy of the

Complaint in the State Court Action is annexed as Exhibit 1 hereto.

     2.     I submit this declaration, upon personal knowledge, as I understand that LAK3's

Adversary Proceeding against Debtor was dismissed based on what I respectfully submit was a

mistaken belief that LAK3 did not wish to pursue its case against Debtor.

     3.     LAK3 very much wishes to pursue that case, LAK3 is doing just that now in the

State Court Action, and LAK3 will continue to prosecute this case in this Court when this matter

returns to this Court after the rendering of a judgment in the State Court Action.

     4.     The Complaint in the State Court Action (Exh. 1) essentially alleges that the State

Court Defendants, which was engaged to render construction services to LAK3, breached their

fiduciary duties to LAK3, violated the New York State Lien Law, misappropriated hundreds of

thousands of dollars in construction funds, much of which was intended for trade contractors,

and caused millions of dollars of damage to LAK3.

**A-523**

5.　　I have personally been involved in every aspect of LAK3's prosecution of the State Court Action against the State Court Defendants.

6.　　In that regard, I pushed aggressively for and obtained discovery in the State Court Action, I demanded that Debtor and Gerald Dunn withdraw a frivolous counterclaim they had filed against LAK and was successful in obtaining the voluntary discontinuance with prejudice of that counterclaim, and I successfully resisted an attempt by Defendant Gerald Dunn in the State Court Action to stay the State Court Action pending a decision by a full bench of the Appellate Division, Second Department, on a motion by the State Court Defendants for a stay of the State Court Action pending an appeal to be filed by the State Court Defendants.

7.　　Along the same lines, whenever Defendants sought delays and what I believed would have been wasteful and improper discovery, I requested that the Court presiding over the State Court Action deny defendants' requests, and I was successful in those requests.

8.　　In short, I consistently sought to maintain and did maintain a rigorous pre-trial schedule.

9.　　The State Court Action was certified for trial on October 21, 2019. *See* Exh. 2 hereto, a true and accurate copy of the Trial Readiness Referee Report and Order.

10.　　As is the practice in Westchester Supreme, once the State Court Action was certified for trial, a pre-trial settlement conference was scheduled.

11.　　The pre-trial settlement conference was scheduled for November 26, 2019.

12.　　Although we were not optimistic about the prospects of a settlement, we were prepared to attend that conference and negotiate with counsel for the State Court Defendants in good faith. LAK3's representatives had planned to attend the settlement conference with me.

2

**A-524**

13.     However, on November 20, 2019, counsel for Gerald Dunn, Michael V. Caruso, requested an adjournment of the settlement conference due to a conflict he had with another professional obligation. *See* Exh. 3 hereto, a true and accurate of a print-out of a November 20, 2019 email from Mr. Caruso to the Settlement Conference Part at Westchester Supreme.

14.     As I have enjoyed a good working relationship with Defendants' counsel in the State Court Action, I agreed, as a professional courtesy, to the adjournment requested by Mr. Caruso.

15.     The settlement conference in the State Court Action has been rescheduled for January 8, 2020.

16.     Again, LAK3's representatives and I will attend the conference, we will be prepared to negotiate in good faith, but if we are not able to reach a settlement, we will request that the Court set down the State Court Action for a trial within the 60-day period that is the practice for that Court. We are confident the Court there will do so.

17.     Thus, I believe that the State Court Action will be resolved either amicably or by trial some time before the end of March 2020.

18.     Throughout the time that the State Court Action has been pending, I have worked hard to see that it was expeditiously advanced within the bounds of professional responsibility.

19.     At no time have I allowed tolerated any delays by any party, at no time have I allowed LAK3 to fail to comply timely with any of its pre-trial obligations, and at no time have I or any of LAK3's representatives said or done anything that could in any way be construed as expressing a desire not to prosecute the State Court action.

## A-525

20.    To the contrary, at every juncture, I have made clear to counsel for the State Court Defendants as well as the Court there that LAK3 intends to see this case through to conclusion, be that a settlement or a verdict, as speedily as possible.

21.    The only period of substantial delay occurred when, on September 17, 2018, Debtor filed his Bankrtucpy Court Petition.

22.    In that regard, six months or so later, on the same day this Court issued its Order Granting Limited Relief From the Automatic Stay to Conclude State Court Litigation, March 22, 2019 (the "March 22 Order," Doc. No. 45, Exh. 4 hereto), I forwarded the March 22 Order to Justice Wood in Westchester Supreme so that the State Court Action, which had been delayed due to the filing of Debtor's Petition, could promptly resume with all parties, including Debtor, involved.

23.    And it did.

24.    I am confident that if this case reaches trial, LAK3 will prevail on its claims, including its substantial claims for breach of fiduciary duty and other defalcations.

25.    It is my understanding that in the event we do obtain a final judgment as to liability against Debtor, the case will return to this Court for further proceedings pursuant to the March 22 Order.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:      Katonah, New York
            December 19, 2019

MICHAEL R. GORDON

4

**A-526**

# EXHIBIT 1

A-527

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

LAK3, LLC,

        Plaintiff,

        -against-

SEAN DUNN, GERALD DUNN, AND WELL
DUNN MAINTENANCE & CONTRACTING

        Defendants.

INDEX NO.

IAS PART

JUSTICE

COMPLAINT

Plaintiff LAK3, LLC ("Plaintiff"), by and through its counsel, GordonLaw LLP, as and for its Complaint in this action, hereby alleges as follows:

### NATURE OF THE ACTION

1.    Plaintiff owns the real property known as and located at 41 Averill Drive, Mahopac, New York (the "Property").

2.    In May 2016, Plaintiff engaged Defendants Sean Dunn ("Sean") and Gerald Dunn ("Gerald"), acting for themselves but using what Plaintiff now knows is a pseudonym, "Well Dunn Maintenance & Contracting" ("Well Dunn") to demolish an existing single-family residence at the Property and to build a new single-family residence there (the "Project").

3.    Plaintiff engaged Defendants based on the many representations that Sean and Gerald made as to their alleged competence, skill, experience, licensure, and organizational structure – all of which were important to Plaintiff and all of which turned out to be false.

A-528

4.      Upon information and belief, based upon public records of the State of New York and the Counties of Putnam and Westchester, Well Dunn is not a corporation, limited liability company, partnership, or any other business association, it is not registered as any such entity with the Secretary of State of the State of New York, it is not licensed or registered to do business in the State of New York or the Counties of Putnam or Westchester, and it does not maintain workers' compensation insurance.

5.      Upon information and belief, Well Dunn is a misleading pseudonym that Sean Dunn and Gerald Dunn have been using – and used to secure the position of general contractor for the Project – to create the false impression that they operate a residential home improvement construction company with the resources and organizational structure that a reasonable person would expect from a company so advertised.

6.      Upon information, neither Sean Dunn nor Gerald Dunn had or have anything close to the level of competence, skill, or experience they told Plaintiff's representatives they had when they persuaded Plaintiff to retain Defendants as the general contractor on the Project.

7.      As a direct and proximate result of (a) the gross incompetence of Defendants Sean, Gerald, and Well Dunn (together, the "Defendants"), and (b) the knowing and intentional fraud, deception, defalcation and larceny that Defendants perpetrated on Plaintiff, as set forth more fully below, Plaintiff has been damaged in amount to be proved at trial but believed to be at least $1 million, and the construction of the Project has been delayed by almost one year.

8.      As a further direct and proximate result of the gross incompetence of Defendants, and the knowing and intentional fraud, deception, defalcation and larceny that Defendants perpetrated on Plaintiff, (a) trust fund monies that Plaintiff had earmarked for the Project by Plaintiff and entrusted to Defendants were, upon information and belief, knowingly and

2

## A-529

intentionally diverted by Defendants for their own personal, non-Project related purposes, (b)

false financial statements, upon which Plaintiff relied to its detriment, were knowingly and

intentionally created by Defendants so as to conceal from Plaintiff Defendants' defalcations,

embezzlement, and larcenies, and  (c) subcontractors and suppliers, who, upon information and

belief, were entitled to trust fund dollars that Plaintiff paid to and put into the care and custody of

Defendants, were not paid by Defendants, even though Defendants falsely represented to

Plaintiff that all subcontractors and suppliers had been paid in full.

9.     Accordingly, Plaintiff brings this action because Defendants, in whom Plaintiff

placed its trust and confidence and in whom Plaintiff entrusted Project monies, knowingly,

intentionally, recklessly, wrongfully, and in bad faith embezzled from Plaintiff, deprived

Plaintiff of property that Defendants knew belonged to Plaintiff, defrauded Plaintiff, and failed

and refused to complete the Project properly and timely.

10.     More specifically, Plaintiff brings this action because Defendant, acting at all

relevant times as Plaintiff's fiduciaries, knowingly, intentionally, wrongfully, and in bad faith:

(a)     failed to complete the Project properly and on time,

(b)     deviated from the Project design,

(c)     failed to follow proper construction means and methods,

(d)     violated manufacturer installation guidelines,

(e)     violated applicable construction-related laws and building codes,

(f)     refused to enter into a written agreement with Plaintiff despite Plaintiff's repeated

demands for a written agreement,

(g)     failed to maintain licenses and registrations required by governmental regulation,

3

**A-530**

(h)  falsely represented to Plaintiff and the New York State Compensation Board that Well Dunn is a corporation, even though Defendants knew at the time of such submission that Well Dunn was not a corporation;

(i)  falsely represented to Plaintiff and state and local governmental agencies that Defendants had maintained all required licenses and registrations,

(j)  falsely represented to Plaintiff that Defendants maintained required Workers' Compensation Insurance,

(k)  failed to pay subcontractors and suppliers, causing, among other things, at least one Notice of Mechanic's Lien to be filed against the Property by a subcontractor,

(l)  diverted Lien Law trust fund monies in violation of the New York Lien Law, and

(m)  submitted to Plaintiff a so-called "Partial Release and Waiver of Lien Right" falsely stating, among other things, that "all persons or entities who have furnished labor or materials to [Defendants] in connection with the [Project] performed through the date hereof have been paid all amounts to which they have become entitled, excepting agree retainage not yet payable and due."

11.  As a direct and proximate result of the misconduct set forth above in Paragraph 4, the single-family residence that is the subject of the Project has not been constructed properly, the Project has been substantially and unreasonably delayed, Lien Law trust fund monies have been diverted from the Project and from Project subcontractors and suppliers, Project-related construction work must be re-done, and a swath of laws and regulations enacted and promulgated by New York State, Putnam County, Westchester County, and the Town of Carmel have been violated, to the detriment of Plaintiff and the public.

4

A-531

12.    Plaintiff seeks fair compensation for the damage Defendants have caused as well as the imposition of punitive damages, which will serve to dissuade Defendants from perpetrating such misdeeds in the future

### JURISDICTION AND VENUE

13.    This Court has jurisdiction over this matter and the parties because the events that give rise to this action occurred within the State of New York, and, upon information and belief, all parties are residents of the State of New York.

14.    Venue is proper in this Court because Plaintiff is a resident of Westchester County, New York, and, upon information and belief, Defendants are all residents of Westchester County, New York.

### THE PARTIES

15.    Plaintiff is a limited liability company that has its principal place of business in Yorktown Heights, New York, which is located in Westchester County, New York.

16.    Defendant Sean Dunn is an individual who, upon information and belief, resides in Yorktown Heights, New York, which is located in Westchester County, New York.

17.    Defendant Gerald Dunn is an individual who, upon information and belief, resides in Yorktown Heights, New York, which is located in Westchester County, New York.

18.    Upon information and belief, Defendant Well Dunn Maintenance & Contracting is a pseudonym or trade name under which Sean Dunn and/or Gerald Dunn, together and/or separately, do business.

19.    Alternatively, upon information and belief, Well Dunn is an unlicensed, unregulated, improperly formed, and improperly functioning business association with an office in Yorktown Heights, New York, which is located in Westchester County, New York.

5

A-532

## THE FACTUAL BACKGROUND

**A.    The Background Facts regarding the Project**

20.    Plaintiff purchased the Property in or about August 2015.

21.    On or about January 13, 2016, Ned Kleinschmidt and Lesley Kleinschmidt (together, the "Kleinschmidts"), on behalf of Plaintiff, met with Defendants at the offices of Michael A. Piccirillo in Yorktown Heights, Westchester County, to discuss the Project.[1]

22.    Before meeting with Sean and Gerald, the Kleinschmidts read the contents of the Well Dunn website.

23.    The Kleinschmidts saw on the Well Dunn web site that, among other things, Well Dunn touted itself as experienced home improvement contract, that it was located in Yorktown Heights, where the Kleinschmidts resided, that it was experienced in all types of home improvement projects and had many clients that would give it positive reviews, and that it was licensed in Westchester County, Putnam County, the City of Yonkers and "all of Connecticut."

24.    The Kleinschmidts relied on what they had read on the Well Dunn web site and had no reason to doubt any of the information set forth on that web site.

25.    Indeed, upon information and belief, Defendants knowingly and intentionally submitted a false Putnam County contractor's license number when they applied for a building permit for the Project.

26.    When the Kleinschmidts met with Defendants, Defendants repeated and expanded upon what the Kleinschmidts had read on the Well Dunn web site; that is, Defendants touted

---

[1] At all relevant times, Ned Kleinschmidt has been the Managing Member of Plaintiff, and Lesley Kleinschmidt has been an agent of Plaintiff, and the Kleinschmidt have been authorized to act on Plaintiff's behalf.

6

A-533

themselves as experienced home improvement contractors who were licensed in Putnam County and who knew how to build the house that Plaintiff wanted to build.

27.    The Kleinschmidts had no reason to doubt, and did not doubt, anything that Defendants said at the January 13, 2016 meeting; in fact, the Kleinschmidts relied upon what Defendants had said at the January 13, 2016 meeting and concluded, based upon what Defendants had said, that Defendants were qualified in all respects to serve as Project General Contractor.

28.    Based upon the representations that Defendants made to the Kleinschmidts and therefore Plaintiff at the January 13, 2016 meeting, the statements that the Kleinschmidts saw on the Well Dunn web site, the Kleinschmidts agreed to accept a bid from Defendants for the Project.

29.    After a meeting among the Kleinschmidts and Defendants that took place on March 9, 2016, Defendants submitted a bid to Plaintiff for the Project in the amount of $1,150,000 plus approved changed orders.

30.    The bid that Defendants submitted on March 16, 2016 was based on construction plans and specifications that were prepared for the Project by Michael A. Picicirillo, AIA (the "Plans and Specifications"), which were delivered to Defendants.

31.    Defendants reviewed the Plans and Specifications before submitting their bid on the Project and agreed to construct the Project according to the Plans and Specifications.

32.    On or about March 18, 2016, Plaintiff awarded the role of Project General Contractor to Defendants.

7

A-534

33. On or about March 18, 2016, Defendants accepted the role of Project General Contractor, knowing that in so doing it would be entering into a position of trust and confidence with Plaintiff.

34. Despite repeated demands from Plaintiff throughout the Project for a written agreement to document the terms of the contract between Plaintiff and Defendants, Defendants knowingly, intentionally, and wrongfully refused to prepare such a written agreement for the Project.

35. The laws of the State of New York and Putnam County require that for construction projects such as the Project, the general contractor must prepare a written contract between the general contractor and owner.

36. The laws of the State of New York and Putnam County require that for construction projects such as the Project, a general contractor must be registered and licensed to do business as a general contractor.

37. Upon information and belief, Defendants violated the laws described in Paragraphs 35 and 36.

38. In or about June 2016. Defendants requested an initial payment of $165,000.00 for what Defendants represented would be applied to the cost of construction work, labor, services, and materials.

39. On or about June 27, 2016, Plaintiff, at the request of Defendants, as aforesaid, made an initial payment of $ 165,000.00 for Project construction work, labor, services and materials.

40. On or about June 26, 2016, the Project began.

8

## A-535

41.      Between June 27, 2016 and March 11, 2017, Plaintiff paid Defendants, in total, the sum of $840,828.22 for what Defendants told Plaintiff was being applied to the cost of Project construction work, labor, services and materials.

42.      Upon information and belief, Defendants engaged a number of subcontractors and purchased materials from a number of suppliers for the Project.

43.      Upon information and belief, Defendants represented to the subcontractors and suppliers on the Project that they would be paid for the work, labor, services and materials they furnished to and for the benefit of the Project from funds specifically provided for the Project by Plaintiff, the owner of the Project.

44.      The monies that Plaintiff paid to Defendants for the Project were trust funds within the meaning of the Lien Law of the State of New York.

45.      Upon information and belief, Defendants knew at all relevant times that the monies that Plaintiff paid to Defendants for the Project were trust funds within the meaning of the Lien Law of the State of New York.

46.      During the course of construction, Defendants made repeated representations to Plaintiffs, orally and in writing, as to the value of work, labor, services, and materials that had been furnished to and for the benefit of the Project.

47.      Upon information and belief, all of Defendants' representations about the value of Project-related construction work, labor, services, and materials that Defendants supposedly furnished to and for the benefit of the Project were false; for example, on or about May 4, 2017, Defendants represented to Plaintiff that (a) Defendants had furnished $840,828.00 of work, labor, services, and materials in, at, and for the benefit of the Project and (b) all subcontractors and suppliers who were responsible for furnishing such work, labor, services and materials had

<div align="center">9</div>

A-536

been paid in full, even though Plaintiff has determined that not more than $370,000 in work, labor, services, and materials have been furnished in, at, and for the benefit of the Project and that not all subcontractors and suppliers have been paid in full.

48.     Upon information and belief, Defendants knew at the time they made their representations about the value of the Project-related construction work, labor, services, and materials that Defendants supposedly furnished to and for the benefit that those representations were false.

49.     Upon information and belief, Defendants intended for Plaintiff to rely upon the knowingly false representations that Defendants actively and deceptively made to Plaintiff about the value of the Project-related construction work, labor, services, and materials and the payment of subcontractors and suppliers so that Plaintiff would continue to provide funding to and for the benefit of the Project.

50.     Until approximately mid-March 2017, Plaintiff relied in good faith upon the representations that Defendants made about the value of the Project-related construction work, labor, services, and materials that Defendants supposedly furnished to and for the benefit of the Project.

51.     Upon information and belief, Defendants failed to pay at least two subcontractors, M&S Steel and Hauptman Enterprises, both of which have claimed to have furnished work, labor, services and materials to and for the benefit of the Project even though (a) Defendants requested that Plaintiff pay such amounts, (b) Defendants told Plaintiff that these two subcontractors were entitled to the payments requested, and (c) Plaintiff did pay such amounts at Defendants' request to Defendants.

10

## A-537

52. On or about July 17, 2017, M&S filed a Notice of Mechanic's Lien against the Property alleging that M&S furnished work, labor, services, and materials in the amount of $43,788 but was not paid any portion of that, even though Defendants represented in writing to Plaintiff that M&S, among other subcontractors and suppliers, had been paid in full.

53. Plaintiff has discovered that many aspects of the Project-related construction work, labor, services and materials that Defendants allegedly furnished to and for the benefit of the Project either were not furnished or were furnished improperly or not in compliance with the Plans and Specifications.

54. For example, Plaintiff has learned that all of the Sierra Pacific windows that Plaintiff purchased for the Project and that Defendants, directly or through a subcontractor, were tasked to install (and were paid to install) were installed by Defendants (directly or through a subcontractor) incorrectly, in violation of the manufacturer's installation instructions, and out of compliance with the Plans and Specifications, and will need to be removed and re-installed, at great financial and temporal expense.

55. Also by way of example, Defendants failed to install the ZIP sheathing system that serves to weatherize the house properly, causing that system to remain exposed to the elements longer than appropriate, in violation of the manufacturer's installation instructions and out of compliance with the Plans and Specifications.

56. Despite Plaintiffs' repeated demands to Defendants to cure the defective construction conditions that Defendants caused, Defendants refused to do so.

57. In light of the defective construction conditions caused by Defendants, and in light of Defendants' refusal to cure those defective conditions, Plaintiff terminated Defendants as Project General Contractor for cause on or about June 19, 2017.

11

A-538

58.     Defendants did not dispute that there were ample grounds for Plaintiff to
terminate Defendants for cause.

### AS AND FOR A FIRST CAUSE OF ACTION
(Breach of Contract)

59.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-58 above as
if fully set forth herein.

60.     A contract (the "Oral Contract") was formed between Plaintiff and Defendants
when Defendants agreed to serve as Project General Contractor pursuant to the Plans and
Specifications and Plaintiff agreed to pay Defendants $1,150,000 plus the amount of approved
change orders to serve in that capacity.

61.     Plaintiff upheld all of its obligations under the Oral Contract by making all
required payments, making the Project site available to Defendants, cooperating with
Defendants, and taking all steps that owners of residential construction projects ordinarily and
reasonably take on projects such as this.

62.     Under the Oral Contract, Defendants had a duty to, among other things, (a)
complete the Project properly and on time, (b) follow and adhere to the Plans and Specs, proper
construction means and methods, manufacturer installation guidelines, and applicable laws and
building codes, (c) and pay subcontractors and suppliers.

63.     Defendants failed to meet their obligations under the Oral Contract by failing to
complete the Project properly and on time, deviating materially from the Plans and Specs, not
following proper construction means and methods, violating manufacturer installation
guidelines, violating applicable laws and building codes by, among other things, failing and
refusing to enter into a written agreement with Plaintiff and not maintaining appropriate licenses
and registrations, failing to pay subcontractors and suppliers, causing at least one Notice of

12

A-539

Mechanic's Lien to be filed against the Property, and diverting Lien Law trust fund monies in

violation of the New York Lien Law.

64.   As a direct and proximate result of Defendants' breach of the Oral Contract, as

aforesaid, the single-family residence that is the subject of the Project has not been constructed

properly, the Project has been substantially and unreasonably delayed, Lien Law trust fund

monies have been diverted from the Project and from Project subcontractors and suppliers, and

Project-related construction work must be re-done.

65.   As a direct and proximate result of Defendants' breach of the Oral Contract, as

aforesaid, Plaintiff has been damaged in an amount to be proven at trial but believed to be in

excess of $1,000,000.00.

66.   As a direct and proximate result of Defendants breach of fiduciary duty, Plaintiff

has been damaged in an amount to be proven at trial but believed to be in excess of

$1,000,000.00.

67.   Defendants are estopped from raising the Statute of Frauds with respect to the

Oral Contract because despite Plaintiffs' repeated demands for a written contract, Defendants,

in violation of the law, knowingly, intentionally, wrongfully, and in an effort to further their

scheme to perpetrate defalcations, embezzlements, and larcenies against Plaintiff, refused to

enter into such a written agreement.

### AS AND FOR A SECOND CAUSE OF ACTION
#### (For *quantum meruit* and unjust enrichment)

68.   Plaintiff repeats and realleges the allegations set forth above in Paragraphs 1-67 as

if fully set forth herein.

69.   To the extent the Oral Contract is found to be invalid, violative of the Statute of

Frauds, or otherwise unenforceable, Defendants will have been unjustly enriched by its

13

## A-540

misconduct, as aforesaid, and Plaintiff will be entitled to pursue and recover all amounts sought

in the First Cause of Action in quasi-contract based on the principles of *quantum meruit* and

unjust enrichment.

      70.    By reason of the foregoing, Defendants have been unjustly enriched at the

expense of Plaintiff.

      71.    By reason of the foregoing, Defendants unjustly received valuable property and

were unjustly enriched at the expense of Plaintiff, as aforesaid.

      72.    The circumstances are such that equity and good conscience require Defendants

to make restitution or otherwise compensate Plaintiff for the unjust enrichment it has enjoyed at

the expense of Plaintiff, in an amount to be proven at trial but believed to be in excess of

$1,000,000.00.

### AS AND FOR A THIRD CAUSE OF ACTION
#### (For fraud)

      73.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-72 above as

if fully set forth herein.

      74.    Defendants made repeated representations about their competence, skill,

experience, licensure, and organizational structure to the Kleinschmidts, who at all relevant

times acted for and on behalf of Plaintiff, at a number of meetings that were attended by, among

others, Sean, Gerald, and the Kleinschmidts, as more fully and specifically described above.

      75.    The representations that Defendants to Plaintiff made were material to Plaintiffs'

decision to engage Defendants as Project General Contractor and to make payments to

Defendants during the Project.

      76.    Upon information and belief, the material representations that Defendants made

as to their competence, skill, experience, licensure, and organizational structure were false.

<div align="center">14</div>

**A-541**

77.     Upon information and belief, Defendants knew that material representations that Defendants made as to their competence, skill, experience, licensure, and organizational structure were false.

78.     Upon information and belief, Defendants intended for Plaintiff to rely upon the false, material representations that Defendants made as to their competence, skill, experience, licensure, and organizational structure.

79.     Plaintiff relied to its detriment upon the false, material representations that Defendants made as to their competence, skill, experience, licensure, and organizational structure were false.

80.     As a direct and proximate result of the knowingly false, material representations that Defendants made to Plaintiff, Plaintiff retained Defendants to serve as Project General Contractor.

81.     But for the false, material representations that Defendants made as to their competence, skill, experience, licensure, and organizational structure, Plaintiff would not have offered the job of Project General Contractor to Defendants and would not have retained Defendants as Project General Contractor.

82.     As a direct and proximate result of the knowingly false, material representations that Defendants made to Plaintiff, upon which Plaintiff relied to its detriment, as aforesaid, Plaintiff has been damaged in an amount to be proven at trial but believed to be in excess of $1,000,000.00.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (For breach of fiduciary duty)

83.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-82 above as if fully set forth herein.

15

A-542

84.    As Project General Contractor, Defendants owed a fiduciary duty to Plaintiff.

85.    When Defendants agreed to become, and became, Project General Contractor, they entered into a relationship of trust and confidence with Plaintiff.

86.    Based upon the knowing, intentional, and wrongful misconduct, as aforesaid, Defendants knowingly and intentionally and with a culpable state of mind breached their fiduciary duty to Plaintiff.

87.    Based upon the knowing, intentional, and wrongful misconduct, as aforesaid, Defendants knowingly and intentionally and with a culpable state of mind violated the relationship of trust and confidence with Plaintiff.

88.    As a direct and proximate result of Defendants' breach of fiduciary duty, as aforesaid, Plaintiff has been damaged in an amount to be proven at trial but believed to be in excess of $1,000,000.00.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (Lien Law Trust Fund Diversion)

89.    Plaintiff repeats and realleges Paragraphs 1-88 above as if fully set forth herein.

90.    During the Project, Plaintiff paid to Defendants a total of at least $840,828.22 for what Plaintiff reasonably believed was the cost of the work, labor, services, and materials that had been furnished to and for the benefit of the Project.

91.    Plaintiff made the payments described in Paragraph 90 above based upon Defendants' demand for same.

92.    Plaintiff made the payments described in Paragraph 90 above based upon Defendants' repeated representations that all payments that were due to subcontractors and suppliers on the Project had been made and no subcontractors or suppliers were due any money for work, labor, services or materials they had furnished to and for the benefit of the Project.

16

**A-543**

93.      Plaintiff reasonably relied upon the representations described in Paragraph 92 above.

94.      The representations by Defendants described in Paragraph 92 above were false.

95.      Upon information and belief, Defendants knew that the representations they had made, as described in Paragraph 92 above, were false, and Defendants intended to deceive Plaintiff by making such misrepresentations, all of which were material.

96.      The monies that Plaintiff paid to Defendants for the Project were and are trust funds within the meaning of the New York Lien Law.

97.      Upon information and belief, Defendants diverted a substantial portion of the aforesaid trust funds, the exact amount of which is unknown but which will be proved at trial, for personal, non-Project related purposes, in violation of the New York Lien Law.

98.      As a direct and proximate result of Defendants' diversion of Lien Law Trust funds, a Notice of Mechanic's Lien has been filed against the Property.

99.      As a direct and proximate result of Defendants' division of Lien Law Trust funds,

**WHEREFORE,** Plaintiff respectfully requests the following relief:

A.       On the First Cause of Action, judgment for damages in an amount to be proven at the time of trial, but believed to be in excess of $1,000,000.00, plus pre-judgment interest;

B.       On the Second Cause of Action, judgment for damages in an amount to be proven at the time of trial, but believed to be in excess of $1,000,000.00, plus pre-judgment interest;

C.       On the Third Cause of Action, judgment for damages in an amount to be proven at the time of trial, but believed to be in excess of $1,000,000.00, plus pre-judgment interest;

17

A-544

     D.    On the Fourth Cause of Action, judgment for damages in an amount to be proven

at the time of trial, but believed to be in excess of $1,000,000.00, plus pre-judgment interest;

     E.    On the Fifth Cause of Action, judgment requiring Defendants to disgorge all

diverted Lien Law Trust Funds, the amount of which will be proven at trial.

     F.    For such other and further relief as is just and proper, including without limitation

awarding Plaintiff its reasonable attorneys' fees and court costs.

Dated: Katonah, New York
       August 4, 2017

                   GORDONLAW LLP

                   By:    Michael R. Gordon
                   *Attorneys for Plaintiff LAK3, LLC*

                   51 Bedford Road, Suite 10
                   Katonah, New York 10536
                   914.232.9500
                   mgordon@gordonlawllp.com

18

**A-545**

# EXHIBIT 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER: COMPLIANCE PART
-------------------------------------------------------------X

*Lak 3, LLC*

                Plaintiff (s),

-against-

*Dunn*

                Defendant (s).

-------------------------------------------------------------X

**TRIAL READINESS
REFEREE REPORT & ORDER**

Index No.: *61510 17*
[NYSCEF case]

      The parties and/or counsel having appeared for a Compliance Conference on     Oct 16, 2019, Court Attorney-Referee Jeannette M. Millner submits this report and recommendation as follows:

      It appears that all discovery has been completed or waived and the matter is ready for trial in the above referenced action;

      (1) NOTE OF ISSUE: Plaintiff shall serve and file a Note of Issue and Certificate of Readiness via NYSCEF within twenty (20) days of entry of this Trial Readiness Order; and

      (2) NOTE OF ISSUE IF PARTY HAS OPTED OUT OF NYSCEF : Plaintiff shall also serve a copy of the Note of Issue and Certificate of Readiness within twenty (20) days of entry of this Trial Readiness Order upon any party who has opted out of NYSCEF, and shall file proof of service thereof via NYSCEF; and

      (3) SUMMARY JUDGMENT MOTIONS: Any motion and cross-motion for summary judgment by any party must be served via NYSCEF within 45 days following the filing of the Note of Issue; opposition papers must be served via NYSCEF within 30 days of service of motion papers; and reply papers, if any, must be served via NYSCEF within 10 days following service of any opposition papers.

      (4) SUMMARY JUDGMENT MOTIONS IF PARTY HAS OPTED OUT OF NYSCEF: If a party has opted out of NYSCEF, a copy of any motion for summary judgment, opposition papers, reply papers must be served upon that party by mail with the prescribed time periods and an affidavit of such service shall be uploaded to NYSCEF.

      The foregoing constitutes the Report of the Court Attorney-Referee:

Dated: White Plains, New York
      Oct 16, 2019

                Jeannette M. Millner, Court Attorney-Referee

SO ORDERED:

Dated: White Plains, New York
      *10-17* , 2019

      Hon. Joan B. Lefkowitz, JSC

A-547

# EXHIBIT 3

| **Michael Gordon** | A-548 |
|---|---|

| | |
|---|---|
| **From:** | Michael Caruso <mvcarusolaw@gmail.com> |
| **Sent:** | Wednesday, November 20, 2019 1:02 PM |
| **To:** | SettlementConferenceWestchester |
| **Cc:** | Michael Gordon; Mike Chuven; Christopher Maher; Christopher Maher |
| **Subject:** | LAK3, LLC v. Dunn (Index No. 61510/2017) |

Good Morning:

My firm represents defendant Gerald Dunn. A settlement conference is scheduled for Tuesday, November 26, 2019.

I have an irreconcilable scheduling conflict with the above date with no substitute counsel available. I would request a brief adjournment; however, Plaintiff's counsel has hearing and trial obligations running through December 17, 2019, and co-defendant's counsel has pre-scheduled travel out of the country with his return being on January 8, 2020.

In view of the above and on the consent of opposing counsel, I respectfully request that next Tuesday's conference be adjourned to a date beginning in the third week of January, 2020 at the Court's discretion.

Respectfully,

Mike Caruso

--
Michael V. Caruso, P.C.
Attorney and Counsellor at Law
3871 Danbury Road
Brewster, New York 10509
Tel: (845) 207-5452
Fax: (845) 251-0002
www.mvcarusolaw.com

This message originates from a Law Firm. The message and any file transmitted with it contain confidential information which may be subject to attorney-client privilege or otherwise protected against unauthorized use. The information contained in this message and any file transmitted with it is transmitted in this form based upon a reasonable expectation of privacy consistent with ABA Formal Opinion No. 99-413. Any disclosure, distribution, copying or use of the information by anyone other than the intended recipient, regardless of address or routing, is strictly prohibited. If you have received this message in error, please advise the sender by immediate reply and delete the original message.

*Please consider the environment before printing.*

1

A-549

# EXHIBIT 4

**A-550**

## GORDONLAW LLP

Michael R. Gordon
mgordon@gordonlawllp.com

March 22, 2019

**BY NYSCEF**

Hon. Charles D. Wood
Supreme Court of the State of New York
  County of Westchester
Westchester County Courthouse
111 Dr. Martin Luther King Jr. Blvd.
White Plains, New York 10601

> **Re:** *LAK3 LLC v. Sean Dunn, et al v. Michael Picccirillo Architecture PLLC, et al.*
> **Index No. 61510/2017**

Dear Justice Wood:

We are attorneys for Plaintiff LAK3, LLC ("Plaintiff"). Further to our March 20, 2019 letter to your Honor, we enclose an Order issued today by the United States Bankruptcy Court for the Southern District of New York granting Plaintiff's motion to lift the automatic stay with respect to Defendant Sean Dunn so that the Court can determine Sean Dunn's liability.

Respectfully yours,

Michael R. Gordon

Encl
cc:    Michael Caruso, Esq. (w/encl by NYSCEF and email)
       Michael Chuven, Esq. (w/encl by NYSCEF and email)
       William Schilling, Esq. (w/encl by NYSCEF, email, and regular mail)

GORDONLAW LLP
www.gordonlawllp.com

51 Bedford Road, Suite 10, Katonah, NY 10536
200 Park Avenue, Suite 1700, New York, NY 10166

D 914.232.9500
M 914.671.6873
F 914.992.6634

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK
## POUGHKEEPSIE DIVISION

In re:

SEAN M. DUNN,

               Debtor.

Chapter 7

Case No. 18-36566 (CGM)

## ORDER GRANTING LIMITED RELIEF FROM THE AUTOMATIC
## STAY TO CONCLUDE STATE COURT LITIGATION

Upon the motion dated February 14, 2019 (the "**Motion**") of LAK3, LLC ("**LAK3**"), a creditor of Sean M. Dunn, the above-captioned debtor (the "**Debtor**"), by its counsel, Rosen & Associates, P.C., for the entry of an order, pursuant to 11 U.S.C. §362(d) and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, granting LAK3 relief from the automatic stay to continue to prosecute through completion the State Court Action, as defined below; and the Court having jurisdiction to consider and determine the Motion as a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334; and venue of this proceeding being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court, by Notice of Motion dated February 14, 2019, having scheduled a hearing for March 12, 2019 at 11:00 a.m. (the "**Hearing**") to hear and determine the Motion; and due and proper notice of the Motion having been given; and it appearing that no other or further notice need be given; and the Debtor, by his counsel, having served and filed an objection to the Motion; and the Hearing having been held before the Court on March 12, 2019 at 11:00 a.m.; and upon the record of the Hearing; and the Court having considered the objection and determined that the legal and factual bases set forth in the Motion establish just and sufficient cause to grant the Motion ; and after due deliberation and sufficient cause appearing to me therefor, it is hereby

**ORDERED**, that notice of the Motion is and was good adequate, and timely, and no other or further notice of the Motion is necessary or required; and it is further

**ORDERED**, that the Motion be, and it hereby is, granted as set forth herein; and it is further

**ORDERED**, that, pursuant to 11 U.S.C. §362(d) and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, LAK3 be, and it hereby is, granted relief from the automatic stay extant pursuant to 11 U.S.C. §362(a), so that it may continue to prosecute through completion by final judgment, strictly limited hereby to issues of liability, its suit as plaintiff against (a) the Debtor, pending in the Supreme Court of the State of New York, County of Westchester (the "**State Court**"), styled, LAK3, LLC v. Sean Dunn, Gerald Dunn, and Well Dunn Maintenance & Contracting (the "**State Court Action**"); and it is further

**ORDERED**, that notwithstanding the foregoing, the automatic stay extant pursuant to 11 U.S.C. §362(a), shall remain in place only to the limited extent necessary to enjoin LAK3 from taking any steps to enforce any judgment it may obtain against the Debtor in the State Court Action.

/s/ Cecelia G. Morris

Dated: **March 22, 2019**
     **Poughkeepsie, New York**



**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**

2

A-553

**ROSEN & ASSOCIATES, P.C.**
*Counsel to LAK3, LLC*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Paris Gyparakis

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEAN M. DUNN,<br><br>                  Debtor. | Chapter 7<br><br>Case No. 18-36566 (CGM) |
| LAK3, LLC,<br><br>                Plaintiff,<br>v.<br><br>SEAN M. DUNN,<br><br>                Defendant. | Adv. Proc. No. 18-09038 (CGM) |

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

### Part 1: Identify the appellant(s)

1. Name(s) of appellant(s):

   LAK3, LLC

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

   For appeals in an adversary proceeding.
   ☒ Plaintiff
   ☐ Defendant
   ☐ Other (describe) _____

   For appeals in a bankruptcy case and not in an adversary proceeding.
   ☐ Debtor
   ☐ Creditor
   ☐ Trustee
   ☐ Other (describe) _____

**A-554**

## Part 2:  Identify the subject of this appeal

1. Describe the judgment, order, or decree appealed from:  Order Dismissing Case For Failure to
Prosecute [Adv. Proc. Doc. No. 21].

2. State the date on which the judgment, order, or decree was entered:  December 10, 2019

## Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses,
and telephone numbers of their attorneys (attach additional pages if necessary):

1. Plaintiff:                                          Represented by:

   LAK3, LLC                                          Rosen & Associates, P.C.
                                                       747 Third Avenue
                                                       New York, NY 10017
                                                       (212) 223-1100
                                                       Sanford P. Rosen, Esq.

2. Defendant:                                         Represented by:

   Sean M. Dunn                                       Carlos J. Cuevas, Esq.,
                                                       1250 Central Park Avenue
                                                       Yonkers, NY 10704
                                                       (914) 964-7060

# A-555

## **Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

❑ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

## **Part 5: Sign below**

**A-556**

_____

Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Name, address, and telephone number of attorney
(or appellant(s) if not represented by an attorney):

      Rosen & Associates, P.C.
      747 Third Avenue
      New York, NY 10017
      (212) 223-1100
      Paris Gyparakis

## A-557

Carlos J. Cuevas, Esq.       Hearing Date: 1/28/20 @ 9:30 AM
Attorney for Defendant
1250 Central Park Avenue
Yonkers, New York 10704
Tel. No. 914.964.7060
Carlos J. Cuevas

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re              Chapter 7

SEAN M. DUNN,        Case No. 18-36566(CGM)

      Debtor.

-------------------------------------------------------------X

LAK3, LLC,

      Plaintiff,

-against-          Adv. Pro. No. 18-09038(CGM)

SEAN M. DUNN,

      Defendant.

-------------------------------------------------------------X

**THE OBJECTION OF SEAN M. DUNN TO THE MOTION OF LAK3, LLC
TO VACATE ORDER DISMISSING ADVERSARY PROCEEDING FOR
FAILURE TO PROSECUTE**

   Sean M. Dunn by his attorney, Carlos J. Cuevas, Esq., for his Objection of Sean M. Dunn

to the Motion of LAK3, LLC to Vacate Order Dismissing Adversary Proceeding for Failure to

Prosecute (the "Motion to Vacate") respectfully represents:

1

18-09008-cgm 20-09193-cgm Doc 29-1 Filed 01/20/20 Document Entered 01/20/20 22:59 Main Document Filed 04/04/2022 Page 304 of 347

Pg 2 of 15

**A-558**

## INTRODUCTION

1.  On September 17, 2018, the Debtor filed for Chapter 7. (Dkt. No. 1).

2.  Fred Stevens, Esq. Is the Chapter 7 trustee in this Chapter 7 case.

3.  On November 21, 2018, the above-captioned adversary proceeding was filed. (Dkt. No. 1). Pursuant to Bankruptcy Code Sections 523(a)(2), (a)(4) and (a)(6), the Plaintiff sought to have its claim declared non-dischargeable. Moreover, pursuant to Bankruptcy Code Sections 727(a)(2), (a)(3) and (a)(4), the Plaintiff objected to the entry of Mr. Dunn's discharge.

4.  On December 10, 2019, pursuant to Local Bankruptcy Rule 9020-1, this Court dismissed the above-captioned adversary proceeding for failure to prosecute.(Adv. Pro. Dkt. No. 21)(Exhibit A).

5.  This Court should deny the Motion to Vacate. The Plaintiff has failed to sustain its burden entitling it to extraordinary relief. The Plaintiff failed to prosecute this adversary proceeding in a manner that was consistent with Federal Rule of Civil Procedure 16 and Local Bankruptcy Rule 9020-1 because it failed to appear by counsel in a manner in which it could actively participate in court scheduled pre-trial conferences.

6.  Instead of coming to court to attend the September 17, 2019, pre-trial conference, the Plaintiff elected to passively listen to the pre-trial conference via the telephone. (Exhibit B) On November 19, 2019, the Plaintiff was absent from the pre-trial conference. (Exhibit C).

7.  The Plaintiff was not in a position to address any questions from this Court or to advise

2

**A-559**

this Court as to the status of this adversary proceeding on either pre-trial conference conducted on September 17, 2019 or November 19, 2019. (Exhibits B & C).

8.  On November 19, 2019, this adversary proceeding was pending for almost year, 364 days, the Plaintiff was not in a position to discuss the status of this adversary proceeding.

9.  Mr. Dunn was being prejudiced by this delay because of the delay in the entry of his Chapter 7 discharge.

10. Under these circumstances, pursuant to Local Bankruptcy Rule 9020-1, this Court was justified in dismissing this adversary proceeding.

## STATEMENT OF FACTS

11. On September 17, 2019, this Court conducted a pre-trial conference in this adversary proceeding. (Exhibit B). The Plaintiff did not attend the September 17, 2019 pre-trial conference. (Exhibit B). Rather, the Plaintiff listened to the pre-trial conference via telephone. (Exhibit B).

12. On November 19, 2019, this Court conducted another pre-trial conference. (Exhibit C).

13. The Plaintiff did not appear at the November 19, 2019 pre-trial conference. (Exhibit C).

14. Although this adversary proceeding was pending for almost one year, the Plaintiff was not in a position to discuss with this Court the status of the litigation. (Exhibit C).

15. As of November 19, 2019, Mr. Dunn's discharge had not been entered because of this adversary proceeding. Mr. Dunn was being prejudiced by the delay in the conclusion of this adversary proceeding.

16. Based upon the Plaintiff's non-appearance at the November 19, 2019 pre-trial conference this Court dismissed this adversary proceeding. (Exhibit A).

3

**A-560**

**PURSUANT TO LOCAL BANKRUPTCY RULE 9020-1, THIS COURT WAS
AUTHORIZED TO DISMISS THIS ADVERSARY PROCEEDING BASED UPON
THE PLAINTIFF'S FAILURE TO PROSECUTE THIS ADVERSARY
PROCEEDING**

17.    Local Bankruptcy Rule 9020-1 states:

> Failure of a party or counsel for a party to appear before the Court at a
> conference, complete the necessary preparations, or be prepared to
> proceed at the time set for trial or hearing may be considered an
> abandonment of the adversary proceeding or contested matter or a failure
> to prosecute or defend diligently, and an appropriate order of the Court
> may be entered against the defaulting party with respect to either a
> specific issue or the entire adversary proceeding or contested matter.

L. Bankr. R. 9020-1.

18.    The transcript of the November 19, 2019 pre-trial conference reflects that counsel for the
Plaintiff was absent. (Exhibit C).

19.    As of November 19, 2019, this adversary proceeding had been pending for almost one
year, 364 days.

20.    The entry of Mr. Dunn's discharge was being delayed by this adversary proceeding.

21.    Plaintiff's counsel was not prepared to proceed at the pre-trial conference.

22.    The language of Local Bankruptcy Rule 9020-1 is clear: the failure of counsel to appear
at a court conference can result in the dismissal of an adversary proceeding.

23.    Under these circumstances, the absence of Plaintiff's counsel from the pre-trial
conference warranted the dismissal.

**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 16(f) DISMISSAL
WAS THE APPROPRIATE SANCTION FOR THE PLAINTIFF'S FAILURE TO
PROSECUTE THIS ADVERSARY PROCEEDING**

24.    Federal Rule of Bankruptcy Procedure 7016 makes Federal Rule of Civil Procedure 16

4

## A-561

applicable to adversary proceedings. Fed. R. Bankr. P. 7016.

25.    Federal Rule of Civil Procedure 16(a)(1) & (2) state that some of the purposes of a pre-

trial conference are the following:

> (a) Purposes of a Pretrial Conference. In any action, the court may order
> the attorneys and any unrepresented parties to appear for one or more
> pretrial conferences for such purposes as:
>
> (1) expediting disposition of the action;
>
> (2) establishing early and continuing control so that the case will not be
> protracted because of lack of management;

Fed. R. Civ. P. 16(a)(1)&(2).

26.    The Plaintiff's failure to attend and actively participate in the pre-trial conferences

thwarted this Court's ability to manage the progress of this litigation.  The Plaintiff was

not in a position to inform this Court as to the status of the adversary proceeding.  The

Plaintiff was not in a position to address questions from this Court.  The Plaintiff

impeded this Court's ability to manage its docket, which contrary to the express purpose

of a pre-trial conference.

27.    Federal Rule of Civil Procedure 16(f) provides for sanctions against a party. Fed. R. Civ.

P. 16(f).  Federal Rule of Civil Procedure 16(f) states:

> (f) Sanctions.
>
> (1) In General. On motion or on its own, the court may issue any just
> orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a
> party or its attorney:
>
> (A) fails to appear at a scheduling or other pretrial conference;
>
> (B) is substantially unprepared to participate—or does not participate in
> good faith—in the conference; or

5

## A-562

(C) fails to obey a scheduling or other pretrial order.

Fed. R. Civ. P. 16(f).

28. The following statements have been made concerning a court's authority to sanction under Federal Rule of Civil Procedure 16(f):

> The 1983 amendments to Rule 16 added a new subdivision (f) dealing with sanctions for failure to comply with the rule. Although courts had used their inherent power to impose sanctions under the original rule, the amended rule now contains explicit authority for doing so and thus "reinforces the rule's intention to encourage forceful judicial management." (Footnotes omitted).

6A Arthur R. Miller, Mary Kay Kane & A. Benjamin Spencer, *Fed. Prac. & Proc. Civ*. § 1531 (3d ed. 2020).

29. The decision to impose a sanction is discretionary with the court. 3 Wayne D. Brazil*, Moore's Federal Practice - Civil* § 16.91 (2020).

30. Dismissal of an action is a sanction authorized under Federal Rule of Civil Procedure 16(f). 3 Wayne D. Brazil*, Moore's Federal Practice - Civil* § 16.92[5][a] (2020).

31. In the case at bar, the Plaintiff has failed to prosecute this adversary proceeding. The Plaintiff failed to appear for the September 17, 2019 pre-trial conference. Instead, the Plaintiff elected solely to listen to the pre-trial conference via telephone. (Exhibit A). The Plaintiff was not in a position to discuss the status of the adversary proceeding with this Court. The Plaintiff was not in a position to address any questions that this Court had concerning the status of the adversary proceeding.

32. On November 19, 2019, the court transcript reflects that the Plaintiff was absent from the pre-trial conference. (Exhibit B).

## A-563

33.     The Plaintiff contends that it was listening to the court proceedings.  Assuming *arguendo*, that the Plaintiff was solely listening to the November 19, 2019 pre-trial conference the Plaintiff, again, was remiss in its duties under Federal Rule of Civil Procedure 16.

34.     On September 17, 2019 and November 19, 2019 the Plaintiff was not effectuating its duties as a litigate to prosecute this adversary proceeding.

35.     In reality the Plaintiff failed to appear at two scheduled Pre-Trial Conferences in this adversary proceeding.  Under these circumstances, this Court was justified in dismissing this adversary proceeding for the failure to prosecute. *E.g.*, *Garcia v. City of New York*, 2019 WL 4199855 (E.D.N.Y. 2019); *Savatxath v. City of Binghamton*, 2013 WL 4805767 (N.D.N.Y. 2013).

36.     In *Johnson v. New York City*, 2015 WL 12999661 (E.D.N.Y. 2015) the Magistrate Judge recommended dismissal of the civil action because the Plaintiff failed to timely appear at two court ordered pre-trial conferences. The court stated:

> Plaintiff has failed to timely appear at two Court-ordered conferences.
> When Plaintiff failed to appear on time for the December 10, 2014
> conference, the Court re-scheduled the conference and explicitly warned
> Plaintiff, both verbally and in writing, that I would recommend that her
> case should be dismissed if she failed to appear at the January 7, 2015
> conference. Despite the Court's explicit warning that her case would be
> dismissed if she failed to appear at the re-scheduled conference, Plaintiff
> failed to appear on January 7, 2015, and has not contacted the Court or
> Defendants' counsel. The Court does not excuse Plaintiff's failures to
> timely appear. Defendants have appeared for two conferences and waited
> for Plaintiff to appear. Plaintiff should not be afforded another
> opportunity to appear in this action as that would both prejudice
> Defendants and likely be futile. No lesser sanction than dismissal is
> appropriate under these circumstances.
> CONCLUSION Accordingly, it is respectfully recommended that
> Plaintiff's action should be dismissed pursuant to Rules 16(f) and
> 37(b)(2)(A)(v) of the Federal Rules of Civil Procedure.

A-564

*Id.* at *2.

37.     Similarly, in *Meyers v. New York Presbyterian Hospital*, 2011 WL 3924883 (E.D.N.Y.

2011) Magistrate Bloom recommended the dismissal of a civil action because the plaintiff

had failed to appear for two pre-trial conferences.

38.     Finally, in *The William G. Joiner Trust Dated 2/6/02 v. Magness (In re Magness)*, 2018

WL 3115768 (Bankr. C.D.Cal. 2018) the court struck the defendants' Answer because of

their failure to appear at two pre-trial conferences.

39.     The court stated:

> Based upon Defendants' repeated and material failure to comply with
> Federal Rule of Bankruptcy Procedure 7016 (incorporating by reference
> Federal Rule of Civil Procedure 16) at both the first and the second
> pretrial conference held in this adversary proceeding and their failure to
> appear at the second pretrial conference when the matter was called, and
> for other reasons hereinafter set forth, the Court strikes Defendants'
> answer and enters their default as a sanction for willfully and materially
> violating the aforementioned rules and ignoring numerous oral and
> written warnings given to them by this Court with respect to the
> necessity and importance of complying with such rules.

*Id.* at *1.

40.     In the case at bar, the Plaintiff has violated Federal Rule of Civil Procedure 16.  The

Plaintiff failed to appear at the November 19, 2019 pre-trial conference.  The Plaintiff

only was on a telephone line in listening mode for the September 17, 2019 pre-trial

conference.  The Plaintiff did not participate at either the September 17, 2019 pre-trial

conference or the November 19, 2019 pre-trial conference.  The Plaintiff could not advise

this Court as to the status of the adversary proceeding at either pre-trial conference.

41.     A Plaintiff cannot effectuate its duties under Federal Rule of Civil Procedure 16 by solely

8

## A-565

listening on a telephone call line.  Rather, the Plaintiff's conduct reflects that it failed to prosecute this adversary proceeding in a manner that is consistent with the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and the Local Bankruptcy Rules.

42.     Under these circumstances, dismissal of this adversary proceeding was appropriate.  *The William G. Joiner Trust Dated 2/6/02 v. Magness (In re Magness)*, 2018 WL 3115768 (Bankr. C.D.Cal. 2018); , *Garcia v. City of New York*, 2019 WL 4199855 (E.D.N.Y. 2019); *Meyers v. New York Presbyterian Hospital*, 2011 WL 3924883 (E.D.N.Y. 2011).

### THE PLAINTIFF HAS FAILED TO DEMONSTRATE THAT IT IS ENTITLED TO THE EXTRAORDINARY RELIEF OF VACATING THE DISMISSAL ORDER

43.     Federal Rule of Bankruptcy Procedure 9024 makes applicable Federal Rule of Civil Procedure 60 to cases under the Bankruptcy Code. Fed. R. Bankr. P. 9024.

44.     Federal Rule of Civil Procedure 60(b)(1) states:

   (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

   (1) mistake, inadvertence, surprise, or excusable neglect;

Fed. R. Civ. P. 60(b)(1).

45.     Federal Rule of Civil Procedure 60(b) is an extraordinary remedy. *Williams v. Artus*, 2008 WL 4516241 *2 (W.D.N.Y. 2008).

46.     Federal Rule of Civil Procedure 60(b) is invoked only upon a showing of exceptional circumstances. *Silver v. Dalessandro*, 2019 WL 5902645 *3 (E.D.N.Y. 2019).

## A-566

47.     A motion pursuant Federal Rule of Civil Procedure 60(b) is addressed to the sound discretion of the trial court. *Cobos v. Adelphi University*, 179 F.R.D. 381, 385 (E.D.N.Y. 1998).

48.      Courts in the Second Circuit have repeatedly refused to find excusable neglect where a petitioner's claim is based on his or her attorney's failure to file a document or meet a deadline based on that attorney's carelessness or negligence. *See*, *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248 (2nd Cir. 1997)(per curiam); *Cobos v. Adelphi University*, 179 F.R.D. 381 (E.D.N.Y. 1998).

49.     The Supreme Court has made the following statements concerning the dismissal of case because an attorney failed to attend a pre-trial conference:

> In other contexts, we have held that clients must be held accountable for the acts and omissions of their attorneys. In *Link v. Wabash R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), we held that a client may be made to suffer the consequence of dismissal of its lawsuit because of its attorney's failure to attend a scheduled pretrial conference. In so concluding, we found "no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client." Id., at 633, 82 S.Ct., at 1390. To the contrary, the Court wrote:

> "Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' " Id., at 633–634, 82 S.Ct., at 1390 (quoting *Smith v. Ayer*, 101 U.S. 320, 326, 25 L.Ed. 955 (1880)).

*Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 396-97 (1993).

## A-567

50.     In *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248 (2nd Cir. 1997)(per curiam) the Second Circuit affirmed the denial of a motion to vacate. There, the defendant made a motion for summary judgment.  The plaintiff failed to comply with the District Court's General Order concerning the submission of opposition papers in opposition to a motion for summary judgment.  The district court dismissed the complaint.  Thereafter, a Rule 60(b)(1) motion was filed. The attorney's excuse was that he was running for the New York State Assembly and that there had been an administrative oversight.  The District Court denied the motion to vacate.

51.     The Second Circuit affirmed the denial of the motion to vacate.  The court stated:

> But we do not believe that the possibility that a court may properly find excusable neglect on such grounds alters the principle that failure to follow the clear dictates of a court rule will generally not constitute such excusable neglect.

*Id.* at 250.

52.     Another pertinent case in which a court declined to grant a Rule 60(b)(1 )motion to vacate a dismissal of a complaint for failure to prosecute is *Cobos v. Adelphi University*, 179 F.R.D. 381 (E.D.N.Y. 1998).  There, the attorney for the plaintiffs failed to prosecute the complaint.  The attorney was subsequently suspended from practice.  The District Court denied the Motion to Vacate.  The court held that the attorney's conduct did not constitute excusable neglect.

53.     The court made the following observations concerning the *Pioneer* decision and excusable neglect:

> In *Pioneer*, the Supreme Court explained that the finding of "excusable neglect" was an equitable determination which could be reached only

## A-568

after an analysis of "all relevant factors including 'the danger of prejudice to the [non-movant] and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.' " *Pioneer,* 507 U.S. at 385, 113 S.Ct. 1489; *Weinstock v. Cleary, Gottlieb, Steen & Hamilton,* 16 F.3d 501, 503 (2d Cir.1994); *see Canfield,* 127 F.3d at 250; *United States v. Hooper,* 43 F.3d 26, 28 (2d Cir.1994). The *Pioneer* Court stated that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." 507 U.S. at 391, 113 S.Ct. 1489. The requirement that negligence be "excusable" acts as a limitation necessary to prevent abuse by the parties, *id.* at 392, 113 S.Ct. 1489, and for this reason, gross negligence cannot be labeled "excusable." *Cf. United States v. Cirami,* 563 F.2d 26, 30 (2d Cir.1977) (*Cirami II* ) (discussing gross negligence in the context of a Rule 60(b)(6) motion).

*Id.* at 386.

54.     The court further stated that courts in the Second Circuit have been reluctant to relieve a

client of a dismissal because of his or her counsel's negligence:

> Within the Second Circuit, a "client is not generally excused from the consequences of his attorney's negligence absent extraordinary circumstances." *Klein,* 144 F.R.D. at 18 (citing *Chira v. Lockheed Aircraft,* 634 F.2d 664, 666 (2d Cir.1980)); *see Nemaizer v. Baker,* 793 F.2d 58, 62 (2d Cir.1986). Indeed, the Second Circuit has "rather consistently refused to relieve a client of ... a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or of the rules of the court, or his inability to efficiently manage his caseload." *United States v. Cirami,* 535 F.2d 736, 741 (2d Cir.1976) ("*Cirami I* "); *Nemaizer,* 793 F.2d at 62. "[T]his is because a person who selects counsel cannot thereafter avoid the consequences of the agent's acts or omissions." *Link,* 370 U.S. at 633–34, 82 S.Ct. 1386; *Nemaizer,* 793 F.2d at 62. Further, the Second Circuit has interpreted *Pioneer* to stand for the proposition that where the order from which relief is sought is the result of "[c]ounsel's failure to read and obey an unambiguous court rule," counsel's omission is not excusable. *Canfield,* 127 F.3d at 251.

*Id.* at 386-87.

12

**A-569**

55.    Another case in which a court denied a motion to vacate a final adverse judgment because of an attorney's negligence is *Alvarado v. Manhattan Worker Career Center*, 2003 WL 22462032 (S.D.N.Y. 2003).  There, the plaintiff alleged that his lawyer had been grossly negligent in failing to respond to a summary judgment motion.  The plaintiff, pursuant to Rule 60(b)(1), sought to vacate the judgment dismissing his case.

56.    The court denied the motion to vacate because there was not excusable neglect. The court stated:

> In order for a court to grant relief from a final judgment under Rule 60(b)(1), the court must first determine whether the order from which relief is sought resulted from "excusable neglect." Fed.R.Civ.P. 60(b)(1); *Pioneer Inv. Servs., Inc. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 381, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In the Second Circuit, gross negligence is not an excusable form of neglect. *Cobos v. Adelphi University,* 179 F.R.D. at 387. As such, an attorney's mistake or omission based on ignorance of the law, failure to follow rules and deadlines, inability to handle caseload and complete and total disregard for client rights or professional ethics are not bases for relieving a party from a final judgment. *See Canfield v. Van Atta Buick/GMC Truck, Inc.,* 127 F.3d 248, 250 (2d Cir.1997); *Dominguez v. United States,* 583 F.2d 615, 616 (2d Cir.1978) (per curiam); *Nemaizer,* 793 F.2d at 62; *United States v. Cirami,* 535 F.2d 736, 741 (2d Cir.1976) ("Cirami I"); *Cobos v. Adelphi University,* 179 F.R.D. 381 (E.D.N.Y.1998). The reason behind this seemingly harsh rule is that generally, "the conduct of an attorney is imputed to his client, for allowing a party to evade the consequences of the acts or omissions of his freely selected agent would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent." *Aalmuhammed v. Kesten,* 2003 WL 118512 (S.D.N.Y. Jan.14, 2003) (citing cases). *See also SEC v. McNulty*, 137 F.3d at 739, *citing  Link v. Wabash R.R. Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).
>
>  Plaintiff's claim essentially boils down to one of gross negligence and malfeasance on the part of his attorney. Because these errors and omissions, while no doubt objectionable, are inexcusable error under the Rule, the court cannot grant him relief from judgment under Rule 60(b)(1).

**A-570**

*Id.* at \*\*2-3.

57.    In the case at bar, the Debtor filed this Chapter 7 case on September 17, 2018. (Dkt. No.

1). On November 20, 2018, this adversary proceeding was filed. (Dkt. 16). The plaintiff

objected to the dischargeability of its debt and to the Debtor's discharge. The delay in the

resolution of adversary proceeding prejudiced the Debtor because the entry of the

Debtor's discharge has been delayed.

58.    As the transcript reflects, Plaintiff's counsel was not present at the November 19, 2019

pre-trial conference. (Exhibit C).

59.    As the transcript reflects, Plaintiff's counsel was not present at the September 17, 2019

pre-trial conference. (Exhibit B). Rather, Plaintiff's counsel had elected to listen to the

September 17, 2019 pre-trial conference via telephone connection. (Exhibit B).

60.    At both the September 17, 2019 and November 19, 2019 Plaintiff's counsel was not in a

position to engage with this Court concerning the advancement of this adversary

proceeding.

61.    It is contrary to Federal Rule of Civil Procedure 16 and Local Bankruptcy Rule 9020-1

for a plaintiff's counsel to not to be in a position to report at a pre-trial conference to the

Bankruptcy Court as to the status of an adversary proceeding. Under these circumstances,

a plaintiff's absence from a pre-trial conference negates the purpose of a pre-trial

conference, and thwarts a court's ability to manage its docket.

62.    It is respectfully represented that the Motion to Vacate should be denied because it has

failed to establish any of the grounds for relief under Federal Rule of Civil Procedure

60(b)(1).

**A-571**

## CONCLUSION

63.     For all the reasons set forth herein, the Plaintiff's Motion to Vacate should be denied.

Dated: Yonkers, New York
     January 20, 2020

                                CARLOS J. CUEVAS, ESQ.
                                Attorney for Defendant
                                SEAN M. DUNN

                                By: /s/ *Carlos J. Cuevas*
                                   Carlos J. Cuevas
                                   1250 Central Park Avenue
                                   Yonkers, New York 10704
                                   Tel. No. 914.964.7060

**A-572**

# EXHIBIT A

## A-573

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:

Chapter 7

Sean M. Dunn,

Case No. 18-36566 (cgm)

                      Debtor.
-----------------------------------------------------------X

**LAK3, LLC**                                      **Adv No. 18-09038**

**v.**

**Sean M. Dunn**
-----------------------------------------------------------X

### ORDER DISMISSING CASE FOR FAILURE TO PROSECUTE

       The Court having held a hearing on November 19, 2019 and Plaintiff having failed to

appear; and considering Local Rule 9020-1, which states: " Failure of a party or counsel for a party

to appear before the Court at a conference, complete the necessary preparations, or be prepared to

proceed at the time set for trial or hearing may be considered an abandonment of the adversary

proceeding or contested matter or a failure to prosecute or defend diligently, and an appropriate

order of the Court may be entered against the defaulting party with respect to either a specific issue

or the entire adversary proceeding or contested matter;" it is hereby

       **ORDERED** that the adversary proceeding is dismissed for failure to prosecute.

**Dated: December 10, 2019**
     **Poughkeepsie, New York**



/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**

A-574

# 09/17/2019 Hearing Transcript

## [Page 1-3]

# EXHIBIT B

## A-576

```
                    UNITED STATES BANKRUPTCY COURT
  1                 SOUTHERN DISTRICT OF NEW YORK

  2   ┌----------------------------------┐   Lead Case: 18-36566-cgm
      │ In re:                           │   Poughkeepsie, New York
  3   │         SEAN M. DUNN,            │   September 17, 2019
      │                        Debtor.   │   10:54:15 a.m. - 10:55:05 a.m.
  4   └----------------------------------┘

  5                        - TRANSCRIPT -

  6         18-36566-CGM - SEAN M. DUNN - CHAPTER 7

  7     ADVERSARY PROCEEDING: 18-09038-CGM LAK3, LLC V. DUNN

        DOC #19 NOTICE OF ADJOURNMENT OF HEARING RE PRETRIAL
  8     CONFERENCE; HEARING NOT HELD AND ADJOURNED TO 9/17/2019
        AT 10:15 AM AT POUGHKEEPSIE COURTHOUSE (DUBOIS, LINDA)
  9          BEFORE THE HONORABLE CECELIA G. MORRIS
                 UNITED STATES BANKRUPTCY JUDGE
 10

 11
      A P P E A R A N C E S :
 12
      For the Debtor:              CARLOS CUEVAS, ESQ.
 13                                Of Counsel
                                   Law Office of Francis J. O'Reilly
 14                                1961 Route 6
                                   Carmel, New York 10512-2323
 15                                (845) 225-5800

 16
      For LAK3, LLC:               SANFORD P. ROSEN, ESQ.
 17   (via phone - Listen only)    Rosen & Associates, P.C.
                                   747 Third Avenue
 18                                New York, New York 10017-2803
                                   (212) 223-1100
 19

 20   Transcriber:                 AA EXPRESS TRANSCRIPTS
                                   195 Willoughby Avenue, Suite 1514
 21                                Brooklyn, New York 11205
                                   (888) 456-9716
 22                                aaexpress@court-transcripts.net

 23

 24       (Proceedings recorded by electronic sound recording)

 25
```

**A-577**

In re Sean M. Dunn, LAK3 v. Dunn - 9/17/19     2

1      THE COURT: 18-09038, LAK3, LLC vs. Dunn. State your
2 name.
3      MR. CUEVAS: Good morning, Your Honor, Carlos Cuevas,
4 for the Debtor, of Counsel to the O'Reilly Law Firm.
5      THE COURT: And Mr. Rosen is on listen only. We still
6 need a scheduling order. But are you waiting for the outcome in
7 state court?
8      MR. CUEVAS: That's my understanding, Your Honor.
9      THE COURT: Do you have any idea when you might get a
10 response?
11      MR. CUEVAS: I do not, Your Honor.
12      THE COURT: Well then, why don't you come back and see
13 me on 10/29, and just let me know what's going on.
14      MR. CUEVAS: Your Honor, could we write a letter?
15      THE COURT: Sure. And if you write a letter, you can
16 come back and see me on 11/19.
17      MR. CUEVAS: Thank you very much.
18      THE COURT: Why don't we just put it back on, on
19 11/19?
20      MR. CUEVAS: Thank you very much, Your Honor.
21      THE COURT: Thank you. And you don't have to write me
22 a letter.
23                  - o0o -
24
25

**A-578**

3

1                              CERTIFICATION

2

3          I, Rochelle V. Grant, certify that the foregoing is a

4  correct transcript from the official electronic sound recording

5  of the proceedings in the above-entitled matter.

6  Dated:   January 13, 2020

7

8                              _____

9                              Signature of Approved Transcriber

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

A-579

# 11/19/2019 Hearing Transcript

## [Page 1-3]

# EXHIBIT C

**A-581**

```
                  UNITED STATES BANKRUPTCY COURT
 1                SOUTHERN DISTRICT OF NEW YORK

 2   ┌──────────────────────────┬──────────────────────────────
     │ In re:                   │ Lead Case: 18-36566-cgm
 3   │                          │ Poughkeepsie, New York
     │       SEAN M. DUNN,      │ November 19, 2019
     │                 Debtor.  │ 11:34:07 a.m. - 11:35:02 a.m.
 4   └──────────────────────────┴──────────────────────────────

 5                      - TRANSCRIPT -

 6        18-36566-CGM - SEAN M. DUNN - CHAPTER 7

 7     ADVERSARY PROCEEDING: 18-09038-CGM LAK3, LLC V. DUNN

       DOC #19 NOTICE OF ADJOURNMENT OF HEARING RE PRETRIAL
 8     CONFERENCE; HEARING HELD AND ADJOURNED TO 11/19/2019
              AT 10:15 AM AT POUGHKEEPSIE COURTHOUSE
 9          BEFORE THE HONORABLE CECELIA G. MORRIS
               UNITED STATES BANKRUPTCY JUDGE
10

11
     A P P E A R A N C E S :
12
      For the Debtor:           FRANCIS J. O'REILLY, ESQ.
13                              1961 Route 6
                                Carmel, New York 10512-2323
14                              (845) 225-5800

15
     Transcriber:               AA EXPRESS TRANSCRIPTS
16                              195 Willoughby Avenue, Suite 1514
                                Brooklyn, New York 11205
17                              (888) 456-9716
                                aaexpress@court-transcripts.net
18

19       (Proceedings recorded by electronic sound recording)

20

21

22

23

24

25
```

## A-582

In re Sean M. Dunn, LAK3 v. Dunn – 11/19/19          2

1      THE COURT:  18-09038, LAK3, LLC vs. Dunn.

2      MR. O'REILLY:  Francis O'Reilly, for Sean Dunn, Your

3  Honor.

4      THE COURT:  LAK?  Who represents them?  Oh, this is

5  the state court thing that's going on, and on, and on.

6      MR. O'REILLY:  We're waiting, Your Honor.  I'm here.

7      THE COURT:  I know, but this is --

8      MR. O'REILLY:  Move to dismiss.

9      THE COURT:  No.  Well, failure to prosecute, but why

10  not?  What have they done?

11      MR. O'REILLY:  Nothing.

12      THE COURT:  Presumably, you were waiting for the state

13  court.  What's going on there?

14      MR. O'REILLY:  I haven't heard a decision yet, Judge.

15      THE COURT:  Okay.  Then I'm dismissing it for failure

16  to prosecute.

17      MR. O'REILLY:  Thank you.

18      THE COURT:  Submit an order.

19      MR. O'REILLY:  I'll submit an order.

20      THE COURT:  If I were you, I'd call them first.

21      MR. O'REILLY:  I will.

22      THE COURT:  Just to save yourself some money.

23      MR. O'REILLY:  To Sandy Rosen?

24      THE COURT:  Yeah.

25                    - o0o -

**A-583**

3

CERTIFICATION

I, Rochelle V. Grant, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Dated:    January 13, 2020

_Rochelle V. Grant_

Signature of Approved Transcriber

**A-584**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

In re                                                                          Chapter 7

SEAN M. DUNN,                                                   Case No. 18-36566(CGM)

                             Debtor.

---------------------------------------------------------X

LAK3, LLC,

                             Plaintiff,

-against-                                                             Adv. Pro. No. 18-9038(CGM)

SEAN M. DUNN,

                             Defendant.

---------------------------------------------------------X

## ORDER DENYING LAK3, LLC'S MOTION TO VACATE
## ORDER DISMISSING CASE FOR FAILURE TO PROSECUTE

Upon the Notice of Motion of LAK3, LLC to Vacate Order Dismissing Case for Failure

to Prosecute dated December 20, 2019; the Motion of LAK3, LLC to Vacate Order Dismissing

Case for Failure to Prosecute dated December 20, 2019 (the "Motion"); the Objection of Sean M.

Dunn to the Motion of LAK3, LLC to Vacate Order Dismissing Case for Failure to Prosecute

dated January 20, 2020; the Reply of LAK3, LLC to Debtor's Objection to Motion to Vacate

Order Dismissing Case for Failure to Prosecute dated January 27, 2020; the hearing conducted

on January 28, 2020; after hearing Sanford P. Rosen, Esq. and Paris Gyparkis, Esq. in support of

the Motion; after hearing Carlos J. Cuevas, Esq. in opposition to the Motion; there being good

and sufficient service of the Motion; after due deliberation; there being sufficient cause; and

upon all the proceedings had herein, it is

**A-585**

ORDERED, that the Motion is denied, it is further

ORDERED, that the Order Dismissing Case for Failure to Prosecute dated December 10, 2019 is in full force and effect.



/s/ Cecelia G. Morris

_____

**Dated: January 29, 2020**
  **Poughkeepsie, New York**

**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**

**A-586**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEAN M. DUNN,<br><br>                  Debtor.<br>LAK3, LLC,<br>               Plaintiff,<br><br>    - against -<br><br>SEAN M. DUNN,<br>              Defendant. | Chapter 7<br><br>Case No. 18-36566-CGM<br><br>Adv. Proc. No. 18-09038-CGM<br><br><u>**NOTICE OF APPEAL**</u> |

Plaintiff LAK3, LLC hereby appeals to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C § 158(a)(1) and Fed. R. Bankr. P. 8002 and 8003, from the *Order Denying LAK3, LLC's Motion to Vacate Order Dismissing Case for Failure to Prosecute*, entered January 29, 2020 in the above-captioned adversary proceeding, a copy of which is annexed hereto as Exhibit 1.  The parties to this appeal and their respective attorneys are:

<u>Plaintiff</u>:
LAK3, LLC

<u>Attorneys for Plaintiff</u>:
Avery Samet
Amini LLC
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
asamet@aminillc.com

<u>Defendant</u>:
Sean M. Dunn

<u>Attorneys for Defendant</u>:
Carlos J. Cuevas
1250 Central Park Avenue
Yonkers, New York 10704
(914) 964-7060
ccuevas576@aol.com

Dated:  February 4, 2020

Respectfully submitted,

<u>/s/ Avery Samet</u>
Amini LLC
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
asamet@aminillc.com
*Attorneys for LAK3, LLC*

**A-587**

# 01/28/2020 Hearing Transcript

## [Page 1-14]

**A-588**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

1

2   *In re:*                           Lead Case: 18-36566-cgm
                                     Poughkeepsie, New York
3        SEAN M. DUNN,                 January 28, 2020
                          *Debtor.*   10:23:26 a.m. - 10:36:28 a.m.
4

5

6                    - TRANSCRIPT -

7        18-36566-CGM - SEAN M. DUNN - CHAPTER 7

     ADVERSARY PROCEEDING: 18-09038-CGM LAK3, LLC V. DUNN
8
   DOC #32 REPLY TO MOTION/REPLY OF LAK3, LLC TO DEBTOR'S
9     OBJECTION TO MOTION TO VACATE ORDER DISMISSING CASE
      FOR FAILURE TO PROSECUTE (RELATED DOC #23) FILED BY
10        SANFORD PHILIP ROSEN ON BEHALF OF LAK3, LLC;

11
      DOC #23 MOTION TO VACATE ORDER DISMISSING CASE FOR
12   FAILURE TO PROSECUTE (RELATED DOC #21) FILED BY SANFORD
     PHILIP ROSEN ON BEHALF OF LAK3, LLC; RESPONSES DUE BY
13    1/21/2020; ATTACHMENTS: #1 EXHIBIT A, #2 EXHIBIT B,
14              #3 EXHIBIT C, #4 EXHIBIT D)

15
     DOC #26 MOTION TO STRIKE ITEMS 10 AND 11 FROM APPELLANTS
16   DESIGNATION OF THE RECORD ON APPEAL AND STATEMENT OF THE
     ISSUE PRESENTED ON APPEAL FILED BY CARLOS J. CUEVAS ON
17     BEHALF OF SEAN M. DUNN; RESPONSES DUE BY 1/21/20;
        (ATTACHMENTS: #1 EXHIBIT A, #2 NOTICE OF MOTION,
18       #3 PROPOSED ORDER, #4 CERTIFICATE OF SERVICE)

19
      DOC #29 OBJECTION TO MOTION (RELATED DOC #23) FILED
20      BY CARLOS J. CUEVAS ON BEHALF OF SEAN M. DUNN
           (ATTACHMENTS: #1 EXHIBIT A-DISMISSAL ORDER,
21    #2 EXHIBIT B-TRANSCRIPT, #3 EXHIBIT C-TRANSCRIPT,
22              #4 CERTIFICATE OF SERVICE)

23
        BEFORE THE HONORABLE CECELIA G. MORRIS
24          UNITED STATES BANKRUPTCY JUDGE

25

**A-589**

1   A P P E A R A N C E S :

2   *For the Debtor:*          CARLOS CUEVAS, ESQ.
                                Of Counsel
3                              Law Office of Francis J. O'Reilly
                                1961 Route 6
4                              Carmel, New York 10512-2323
                                (845) 225-5800
5

6   *For LAK3, LLC:*           SANFORD P. ROSEN, ESQ.
                                PARIS GYPARAKIS, ESQ.
7                              Rosen & Associates, P.C.
                                747 Third Avenue
8                              New York, New York 10017-2803
                                (212) 223-1100
9

10

11  *Transcriber:*             AA EXPRESS TRANSCRIPTS
                                195 Willoughby Avenue, Suite 1514
                                Brooklyn, New York 11205
12                             (888) 456-9716
                                aaexpress@court-transcripts.net
13

14         *(Proceedings recorded by electronic sound recording)*

15

16

17

18

19

20

21

22

23

24

25

In re Sean M. Dunn, LAK3 v. Dunn - 1/28/20                    3

1          THE COURT:  18-36566 Sean Dunn.  State your name and

2    affiliation.

3          MR. ROSEN:  Good morning, Your Honor, Sandford Rosen,

4    Rosen & Associates, P.C.  We're counsel for LAK3.

5          MR. CUEVAS:  Good morning, Your Honor, Carlos Cuevas,

6    for the Debtor, Sean Dunn.  And Mr. Dunn is with me in court

7    today.

8          THE COURT:  And who's?

9          MR. GYPARAKIS:  Good morning, Your Honor, Paris

10   Gyparakis, Rosen & Associates, counsel to LAK3.

11         MR. ROSEN:  And on his right, if I may, Your Honor, is

12   Nick Consumet (ph).  He is the principal behind LAK3.  He and

13   his wife are actually the principals.

14         THE COURT:  Okay.

15         MR. ROSEN:  May I, Your Honor?

16         THE COURT:  Yes, you may.

17         MR. ROSEN:  Thank you.

18         THE COURT:  I want you to answer first for me --

19         MR. ROSEN:  Sure.

20         THE COURT:  -- what kind of hours do you think this

21   Court keeps?

22         MR. ROSEN:  Are you referring to the reply that was

23   filed late last night?  I know it was late.

24         THE COURT:  And a request on Saturday.

25         MR. ROSEN:  Saturday?

In re Sean M. Dunn, LAK3 v. Dunn - 1/28/20                    4

1          THE COURT:  Yep.  I had a request for a telephonic

2   hearing on a Saturday.

3          MR. ROSEN:  Not from me.

4          THE COURT:  Yes, you did.

5          MR. ROSEN:  What Saturday?

6          THE COURT:  November, the 16th.

7          MR. ROSEN:  You're talking about the request for the

8   telephonic pretrial conference that is at issue here?

9          THE COURT:  Mm-hm.  Well, it's the issue from

10  everything.  Because that was part of it.

11         MR. ROSEN:  Okay.

12         THE COURT:  Because you said you didn't get to talk,

13  and the deal was you didn't make a telephonic request timely.

14  You made it on a Saturday afternoon.  There are times that it

15  has to be done.  I'll give you -- Parties who wish to make a

16  telephonic appearance in order to speak or make argument are

17  required to receive permission from chambers --

18         MR. ROSEN:  Right.

19         THE COURT:  -- prior to registering.  Such live

20  telephonic appearances are normally discouraged when counsel

21  intends to make a substantive argument.  I got a request on a

22  Saturday.  That's not three days before a filing.

23         MR. ROSEN:  Well, we apologize for that, of course,

24  Your Honor.  The request --

25         THE COURT:  Well, let's just stop a minute more, Mr.

1   Rosen.

2         MR. ROSEN:  Okay.

3         THE COURT:  We adjourned pre-trials.  We haven't had

4   people in this courtroom telling us what's going on.  On

5   September 17, there was listen only, even though the other side

6   was in this courtroom.  The Court at that time was curious as to

7   when the schedule order was going to be entered.  Then we

8   adjourned it to November, the 19th.  That's when we got the

9   telephone appearance, and that's what you're basing your motion

10  on.

11        MR. ROSEN:  Yes.

12        THE COURT:  That it was a "listen only," and counsel

13  expressed that they did not hear an update regarding the state

14  court action.  I haven't had anything from you to know what's

15  going on and then I haven't been following the rules, the local

16  rules or the rules of civil procedure.

17        Listen only you can do anytime.  To speak, you've got

18  to have chambers' permission.  Now, you may speak.  As you can

19  see, I was aggravated in November; I'm aggravated today.

20        MR. ROSEN:  Well, I can see that very clearly, Your

21  Honor, and again, I apologize that that request was made on a

22  Saturday.  A couple of things --

23        THE COURT:  Well, there was something last night at

24  7:20.

25        MR. ROSEN:  We filed the reply papers.

**A-593**

In re Sean M. Dunn, LAK3 v. Dunn - 1/28/20                    6

1      THE COURT:  At 7:20 last night.

2      MR. ROSEN:  Yes, Your Honor.  Yes.

3      THE COURT:  7:20.

4      MR. ROSEN:  Yes, I now what time we filed them.

5      THE COURT:  Excuse me, would you like to see our

6  calendar?  And I've already thrown half of this one away.  What

7  do you think we do?  Now then, you may speak.

8      MR. ROSEN:  Your Honor, with respect to the September

9  conference, that was listen only.  Your Honor was aware that it

10  was listen only.  The transcript of that pretrial conference

11  reflects that Your Honor was aware that we were participating by

12  phone.  With respect to the November conference, aside from the

13  fact that the request presumably was made on a Saturday, the

14  request was in fact made to participate fully on that pretrial

15  conference, not listen only.

16      THE COURT:  You cannot do that unless you get

17  permission.  And you didn't have permission and you didn't show

18  up.  So --

19      MR. ROSEN:  No, no.

20      THE COURT:  -- end of story.

21      MR. ROSEN:  Well --

22      THE COURT:  You don't make a request on a Saturday

23  afternoon or Saturday for something to happen on Tuesday.

24  You've got to make it three business days ahead of time, and

25  then you've got to have permission to come.  Do you have the

In re Sean M. Dunn, LAK3 v. Dunn - 1/28/20                7

1  email that said I could let you speak?  Show it to me.

2          MR. ROSEN:  I have a confirmation from Court Solutions

3  firm that we had made the request --

4          THE COURT:  That is not chambers.

5          MR. ROSEN:  Okay.  So, we were listen only, but the

6  bottom line is, did not intend to be on listen-only mode.  And

7  when we appeared at the conference by telephone, we were not

8  aware that we were listen only.  We were not aware that the

9  Court could not hear us and didn't learn that until the

10  telephonic at the pretrial conference itself.  And the bottom

11  line here, Your Honor, is that one --

12          THE COURT:  The confirmation from Court Solution

13  actually says, listen, not speak.

14          MR. ROSEN:  No, the --

15          THE COURT:  Trust me, I see these records.

16          MR. ROSEN:  No, I --

17          THE COURT:  I see the records, Mr. Rosen.

18          MR. ROSEN:  I'm not disputing -- you're not --

19          THE COURT:  Don't come in here and say that.  Why

20  weren't you keeping me informed about what was going on with

21  state court?  Why were you doing listen only forever?  Why

22  weren't you showing up in this court and telling me what's

23  happening?  What is happening, by the way?

24          MR. ROSEN:  What is happening is that LAK3 has been

25  litigating diligently before the state court.  As Your Honor

In re Sean M. Dunn, LAK3 v. Dunn - 1/28/20                8

1   will recall, LAK3 had brought an action against the Debtor in

2   state court prior to the commencement of the bankruptcy case,

3   and in that case, made allegations of fraud and

4   misrepresentation.

5            THE COURT:  I know that!  I granted the lift-stay

6   motion!

7            MR. ROSEN:  Okay.  And you granted --

8            THE COURT:  You're the plaintiff in this case.  Why

9   haven't you been int his courtroom?  My aggravation is just

10  getting worse by what you're saying.  So, get to the point here.

11  What's going on in state court that you think this shouldn't be

12  dismissed?

13           MR. ROSEN:  What going on at state court is that the

14  state court has scheduled a trial in this trial for March, the

15  20th.  I learned this morning from litigation counsel to LAK3

16  that this morning or late yesterday, the appellate division

17  denied Mr. Dunn's request to enjoin the state court trial

18  pending his appeal of the state court's dismissal of a third

19  party claim against the architect that worked on my client's

20  home for the work that was the subject of the state court

21  complaint, and the work that is the subject to the adversary

22  proceeding that was brought here seeking to deny him a discharge

23  based upon fraud, defalcation and breach of fiduciary duty.

24           Mr. Dunn, this is a second filing he's had.  His

25  actions, I understand, are also the subject of an ongoing

In re Sean M. Dunn, LAK3 v. Dunn - 1/28/20                    9

1   investigation by the Attorney General's Office of the State of

2   New York.  We have done everything we could, as diligently as we

3   could, to litigate the merits of the case in the state --

4        THE COURT:  No, you haven't.  You haven't showed up in

5   this court.  And I've showed up every time.

6        MR. ROSEN:  Your Honor, I don't want to argue with the

7   Court.  I'm saying that we did everything we could to litigate

8   as diligently as we could before the state court.  I apologize

9   for having appeared by listen only mode.  The only reason why we

10  did it that way is because we wanted to avoid the time and

11  expense to the client of our coming here with respect to a

12  status conference, where the Court, we presume, was --

13       THE COURT:  Excuse me.  You cannot do that.

14  Particularly, when the other side is showing up every single

15  time.

16       MR. ROSEN:  Okay.  That I was unaware of, quite

17  frankly.

18       THE COURT:  No, you weren't.  If you were listen only

19  you would have known that they put themselves on the record

20  every single time.

21       MR. ROSEN:  That what?

22       THE COURT:  If you were listening, like you said you

23  were, you would have known that there was an attorney in this

24  courtroom every single time it was called for the defendant.

25       MR. ROSEN:  Yes, I'm aware of that.

In re Sean M. Dunn, LAK3 v. Dunn - 1/28/20          10

1          THE COURT:  Okay.  So, you are concerned about your

2    expense and time, but you're not concerned about their expense

3    and time.  You're not concerned about the Court's expense and

4    time.

5          MR. ROSEN:  Of course we are, Your Honor.  That's

6    really not fair.

7          THE COURT:  Yes, it is.  Because you've shown that you

8    don't pay attention to this case in this court.  Take me up on

9    appeal.  You've got the appeal filed, go for it.

10         MR. ROSEN:  Your Honor, the appeal was just filed

11   because the motion we made to vacate this order doesn't state

12   the time period for appealing.  I have no interest in appealing.

13         THE COURT:  Yes, sir?

14         MR. GYPARAKIS:  May I?

15         THE COURT:  Yeah, sure.  Let's hear you.

16         MR. GYPARAKIS:  Good morning, Your Honor, Paris

17   Gyparakis, counsel to LAK3, LLC.  If I may just reiterate Mr.

18   Rosen's point that although the Court did deny our request for

19   telephonic participation, we sincerely did not think we were on

20   listen-only mode.  We had every intention to inform the Court --

21         THE COURT:  There's a train that works; you could have

22   been on it.

23         MR. GYPARAKIS:  And if we had any idea, we would have

24   been here.

25         THE COURT:  Then you should have read the rules.

In re Sean M. Dunn, LAK3 v. Dunn - 1/28/20          11

 1   There are chambers' rules.

 2           MR. GYPARAKIS:  Yes.

 3           THE COURT:  And they are there.  And if you turn

 4   around and look at this audience, I hold them to it.

 5           MR. GYPARAKIS:  I understand.  But we believe that it

 6   was an honest mistake, and we believe respectfully request time

 7   to rectify that for the Court, instead of going through the

 8   appeals process.  We acknowledge our mistake.

 9           THE COURT:  Thank you for that acknowledgement.  It's

10   dismissed.  Yes, sir?  You don't need to say anything.  I

11   haven't heard anything that gives me forgiveness of this.  There

12   are chambers' rules that weren't read.  There are local rules

13   that weren't abided by.  I have called this case repeatedly, and

14   I cannot tell you how many times I've said, where's the law firm

15   on this case?

16           MR. ROSEN:  Your Honor, with all due respect, that's

17   not true.  We have --

18           THE COURT:  Yes, it is, sir.

19           MR. ROSEN:  Your Honor, I have the transcript.

20           THE COURT:  You're calling me a liar in my own

21   courtroom, Mr. Rosen?

22           MR. ROSEN:  Your Honor, I'm not calling you a liar.

23   We have transcripts of the pretrial conferences.  You knew we

24   were on the phone in September.  I'm not lying to you.  You

25   said, I understand Mr. Rosen's firm is on the phone.

In re Sean M. Dunn, LAK3 v. Dunn - 1/28/20          12

1      THE COURT:  But at that time I was curious about a

2  scheduling order.  Did we get one?

3      MR. ROSEN:  No, it wasn't submitted.

4      THE COURT:  You're the plaintiff in this case.

5      MR. ROSEN:  Your Honor, a scheduling order to do what?

6  There's no litigation before this Court.  We're in abeyance

7  pending the disposition of the state court action case.

8      THE COURT:  I have a case.  I don't have an update on

9  that case, and every single time I've asked the defendant,

10  what's going on in state court.  It's not for the defendant to

11  tell me; it's for the plaintiff to tell me.

12      MR. ROSEN:  Your Honor, I apologize.  I really think

13  this is a very drastic punishment under the circumstances.  I'm

14  not arguing with the Court; I don't want to fight with the

15  Court.

16      THE COURT:  I think the district court will decide

17  that.

18      MR. ROSEN:  Your Honor, please?  Please?  I mean --

19  you know --

20      THE COURT:  You know, Mr. Rosen, to me it is a lot of

21  disrespect for this courtroom.  And the fact that you told me it

22  wasn't true means it's even more disrespect for this Court.

23      MR. ROSEN:  What wasn't true?

24      THE COURT:  Well, you just told me, it wasn't true.

25      MR. ROSEN:  Your Honor, all I'm trying to say is, we

**A-600**

In re Sean M. Dunn, LAK3 v. Dunn - 1/28/20                    13

1  participated at the September pretrial conference and the

2  November pretrial conference was a hiccup.  But we assumed -- I

3  can't argue with you.  I mean everything you're saying, I agree

4  with.  And it was a mistake.  It was a simple mistake that we

5  were not able to participate fully on the November call.  We

6  certainly intended to do that.  And I apologize to the Court; I

7  apologize to everyone in back of me and in your chambers for

8  that error, but it certainly wasn't intended.  We certainly

9  haven't manifested any notion of disrespecting the Court or

10  denying the Court the ability to manage its own docket.

11          THE COURT:  It's not called managing its docket; it's

12  called disrespect, and not knowing the local rules, and not

13  knowing the rules of procedure for the particular courtroom.  I

14  have heard you.

15          MR. CUEVAS:  Thank you, Your Honor.

16          THE COURT:  Put in a motion denying the request.

17          MR. CUEVAS:  I shall, Your Honor.

18                          - o0o -

19

20

21

22

23

24

25

**A-601**

14

CERTIFICATION

I, Rochelle V. Grant, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Dated:  February 6, 2020

_____
Signature of Approved Transcriber