**No. 1:20-cv-00193-CM**
**No. 1:20-cv-01420-CM**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | On appeal from the United States Bankruptcy Court for the Southern District of New York |
| SEAN M. DUNN, | |
| Debtor. | Chapter 7 |
| LAK3, LLC, | |
| Appellant, | Case No. 4:18-bk-36566-CGM |
| - against - | Adv. Pro. No. 4:18-ap-09038-CGM |
| SEAN M. DUNN, | **APPELLANT'S REPLY BRIEF** |
| Appellee. | |

Dated: June 3, 2020

Avery Samet
John W. Brewer
AMINI LLC
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
asamet@aminillc.com
jbrewer@aminillc.com
*Attorneys for Appellant LAK3, LLC*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..............................................................................1

REPLY TO DEBTOR'S FACTUAL ASSERTIONS OF DELAY ........................3

ARGUMENT ......................................................................................................5

I.    THE COURT BELOW DID NOT APPLY THE CORRECT LEGAL
      STANDARD .................................................................................................5

II.   EVEN IF THE COURT BELOW HAD APPLIED THE CORRECT
      STANDARD, DISMISSAL WAS NOT WARRANTED ............................6

      A.    The Bankruptcy Court Did Not Give LAK3 Notice of Dismissal or an
            Opportunity to Be Heard ....................................................................7

      B.    LAK3 Caused No Delay In the Prosecution of This Action.................9

      C.    Debtor Suffered No Prejudice .............................................................14

      D.    The Bankruptcy Court Did Not Balance Plaintiff's Right to a Day In
            Court Against Any Docket Congestion Concerns ..............................15

      E.    The Bankruptcy Court Failed to Consider Lesser Sanctions Short of
            Dismissal ............................................................................................16

III.  IN THE ALTERNATIVE, THE BANKRUPTCY COURT SHOULD
      HAVE GRANTED THE MOTION FOR RECONSIDERATION .............19

CONCLUSION ......................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>                                                                                                           **Page(s)**

*Antonios A. Alevizopoulos and Associates, Inc. v. Comcast International Holdings, Inc.*,
   2000 WL 1677984 (S.D.N.Y 2000)......................................................................... 9

*AT & T Corp. v. Syniverse Techs., Inc.*,
   2014 WL 4412392 (S.D.N.Y. Sept. 8, 2014) ........................................................ 5

*Baptiste v. Sommers*,
   768 F.3d 212 (2d. Cir. 2014) ......................................................................... 5, 18

*Catzin v. Thank You & Good Luck Corp.*,
   899 F.3d 77 (2d Cir. 2018) ................................................................................. 7

*Cobos v. Adelphi University*,
   179 F.R.D 381 (E.D.N.Y 1998)......................................................................... 18

*Dodson v. Runyon*,
   86 F.3d 37 (2d Cir. 1996) ................................................................................. 18

*Johnson v. New York City*,
   2015 WL 12999661 (E.D.N.Y. 2015) ................................................................. 9

*LeSane v. Hall's Sec. Analyst, Inc.*,
   239 F.3d 206 (2d Cir. 2001) ........................................................................ 6, 16

*Lewis v. New York*,
   547 F.2d 4 (2d Cir. 1976) ............................................................................... 7, 8

*Lewis v. Rawson*,
   564 F.3d 569 (2d Cir. 2009) ............................................................................... 6

*Lopez v. Catholic Charities of Archdiocese of New York*,
   2001 WL 50896 (S.D.N.Y, 2001)................................................................... 9, 13

*Mitchell v. Lyons Prof'l Servs., Inc.*,

708 F.3d 463 (2d Cir. 2013) ...................................................................... 17, 18

*O'Rourke v. Nirvana*,
2020 WL 1198326 (S.D.N.Y 2020) ..................................................................... 7

*Rubin v. Abbott Laboratories,*
319 F.R.D 118 (S.D.N.Y 2016) .......................................................... 14, 16, 17

*Ruzsa v. Rubenstein & Sendy Attys at Law*,
520 F.3d 176 (2d Cir. 2008) ......................................................................... 8, 17

*Shrader v. CSX Transportation, Inc*.,
70 F.3d 255 (2d Cir. 1995) ............................................................................... 19

*United States ex rel Drake v. Norden Systems, Inc.*,
375 F.3d 248 (2d Cir. 2004) ......................................................................... 6, 17

*Yang v. Greyhound Lines, Inc.*,
2008 WL 3126188 (S.D.N.Y. July 14, 2008) ................................................ 7, 8

*Yannitelli v. Navieras De Puerto Rico*,
106 F.R.D. 42 (S.D.N.Y 1985) ................................................................... 8, 13

## <u>Rules</u>

Fed. R. Civ. P. 16(f) ............................................................................................ 8

Fed. R. Civ. P. 60(b)(1) .................................................................................... 18

Plaintiff-appellant LAK3 respectfully submits this Reply Brief in further support of its consolidated appeals from the Dismissal Order and the Reconsideration Order.[1]

## PRELIMINARY STATEMENT

On our Opening Brief, we argued that the Bankruptcy Court failed to apply the five-factor test mandated by the Second Circuit before dismissing this action for failure to prosecute. Dunn's 37-page opposition brief does not address how the Dismissal Order could be said to meet this test. For that reason alone, the Court should grant LAK3's appeal.

In addition, Dunn does not address the unfair windfall afforded to him by the Bankruptcy Court's sua sponte dismissal of this action. LAK3 paid Dunn $840,828, funds which Dunn was required to segregate, exercise fiduciary control over and expend solely on LAK3's construction project. The documentation alone demonstrates that he commingled the funds and used them on purely personal expenses, such as hotels and airfare, casinos, wine and liquor and lease payments for fancy cars. If LAK3 prevails at trial, its claim against Dunn will, pursuant to the

---

[1] Defined terms are used herein with the same meanings given to them in LAK3's opening merits brief in these consolidated appeals (Doc. No. 14 in 20-cv-193, the "Opening Br."). References to documents filed under both dockets in these consolidated appeals will use the number given the document on the docket of 20-cv-193.

relevant provisions of the Bankruptcy Code, not be dischargeable in Dunn's Chapter 7 bankruptcy case.  Opening Br. at 8, 20-21.

Nor does Dunn's brief address the actual procedural posture of this case pre-dismissal: in March 2019, the Bankruptcy Court had ordered the automatic stay to be lifted so as to allow LAK3 to litigate the factual issues underlying this action in the State Court Action.  That is why the Bankruptcy Court had sought an update on the status of the State Court Action at the November 19, 2019 status conference. Unfortunately, LAK3's prior counsel did not properly appear to inform the Bankruptcy Court that the State Court Action was *trial-ready*.  As a result of that failure to appear, and after Dunn's then-counsel misrepresented the status of the State Court Action, the Bankruptcy Court dismissed the Adversary Proceeding. (A-506.) ("The Court having held a hearing on November 19, 2019 and Plaintiff having failed to appear")

Instead of defending *that* record, Dunn attempts to distract this Court by focusing on irrelevant issues.  Dunn claims that LAK3's counsel failed to appear at two additional status conferences. Not true. Dunn claims that LAK3's counsel's failed to submit a scheduling order. Neither party submitted a scheduling order because they were litigating the merits in the State Court Action.  Dunn claims that LAK3 sought to delay the case and the Debtor's discharge.  Again, not true:  from the start, Dunn repeatedly sought to delay the State Court Action:  even going so far

as, in late 2019, to move the Second Department (unsuccessfully) to stay the proceedings.  In any event, none of these reasons formed the basis of the Dismissal Order (A-506), and none justifies the extreme sanction of dismissing LAK3's trial-ready case.  The Court should reverse the Dismissal Order and allow this dispute to be tried on its merits.

<u>**REPLY TO DEBTOR'S FACTUAL ASSERTIONS OF DELAY**</u>

Dunn complains that "LAK3 has caused a significant delay in the prosecution of this Adversary Proceeding of at least four months."  (Debtor Br. at 15.)  Even though a delay of such short duration would not have been sufficient to dismiss this action, the statement is not true.

LAK3 commenced the State Court Action in August 2017, one year prior to the Dunn bankruptcy filing in September 2018. (A-527.) In November 2018, LAK3 commenced this action objecting to Dunn's discharge on the same factual grounds as those asserted in the State Court Action. (A-258.) In January 2019, Dunn answered the complaint. (A-492.) In February 2019, LAK3 filed a motion seeking an order lifting the automatic stay over the State Court Action for the purpose of resolving the factual issues underlying the discharge objection. (A-10-21.) LAK3 explained:

- "Relief from the automatic stay to conclude the State Court Action will result in a complete resolution of the issues, as it would enable the State Court, familiar with the facts of the case as well as the applicable state law, to resolve the dispute as to all State Court Defendants, including the third-

3

party defendants in an expeditious fashion.  Otherwise, requiring the Movant to liquidate its claim against the Debtor in this Court would result in duplicate litigation and the potential for inconsistent results." (A-15 ¶ 19);

- LAK3 "is only seeking to liquidate (but not enforce its claim) and obtain findings of fact and conclusions of law that will provide the jurisprudential underpinning for this Court to determine nondischargeability and denial of discharge in the adversary proceeding[.]" (A-16 ¶ 20);

- "[R]esolution of the claims herein can most expeditiously be carried out by the State Court, which has been exposed to extensive pre-trial discovery and is best able to address the claims of all parties in a single uniform proceeding." (A-18 ¶ 26);

- "[A]bsent stay relief, [LAK3] will be required to proceed in piecemeal fashion, prosecuting the Amended Complaint against the Debtor in this Court while also prosecuting the State Court Action against the non-Debtor defendants in the State Court, contending with a multiplicity of proceedings on the same issues, all while risking inconsistent results." (A-20 ¶ 31.)

On March 22, 2019, the Bankruptcy Court granted the motion over the Debtor's objection and the case proceeded in State Court.  (A-256.)

On September 26, 2019, the State Court dismissed the third-party complaint brought by the defendants, and denied LAK3's motion for partial summary judgment.  Opening Br. Exh. 2.  On October 18, 2019, LAK3 filed the Note of Issue. Opening Br. Exh. 3.  On October 21, the State Court endorsed the recommendation that the case was trial ready.  (A-546.)  On November 6, 2019, Dunn filed a motion asking the Second Department to stay all proceedings while his appeal from the dismissal of his third-party claims was pending.  After an initial attempt to secure an interim stay from a single justice was rejected (A-523 ¶ 6), the Second Department

denied the full stay motion.  *See LAK3 v. Dunn*, 2020 WL 421922 (2d Dep't Jan. 27, 2020).   Nevertheless, on the record of the November 19, 2019 transcript, the Bankruptcy Court dismissed the action after prior counsel for the Debtor falsely informed (whether knowingly or recklessly) the Bankruptcy Court that LAK3 had done nothing in the State Court Action, and that he had heard nothing from the State Court.  (A-582.)

## ARGUMENT

## I.   THE COURT BELOW DID NOT APPLY THE CORRECT LEGAL STANDARD

On our Opening Brief, we explained that a lower court's failure to consider and apply the five-factor test mandated by the Second Circuit for the extreme sanction of dismissals for failure to prosecute warrants reversal.  (Opening Br. at 15, relying on *Baptiste v. Sommers*, 768 F.3d 212, 217-19 (2d. Cir. 2014)).  The Debtor does not address that argument, nor rebut the force of *Baptiste*.[2]

Nevertheless, the Debtor agrees that the five-factor test governs dismissal for failure to prosecute. (Debtor Br. at 23.)  He also concedes that a lower court's failure to apply the correct legal principle constitutes an abuse of discretion.  (Debtor Br. at

---

[2] The Debtor has thus conceded the point.  *See, e.g.*, *AT & T Corp. v. Syniverse Techs., Inc.*, No. 12-cv-1812, 2014 WL 4412392, at *7 (S.D.N.Y. Sept. 8, 2014) (citations omitted) ("AT & T did not even discuss [the issue] in its opposition brief. AT & T's silence concedes the point.")

2 (quoting *Lewis v. Rawson,* 564 F.3d 569, 575 (2d Cir. 2009).)[3]   The Debtor

nonetheless argues that this Court should apply a more deferential standard of review

to the Bankruptcy Court's "factual findings."  Debtor Br. at 2.  But the Bankruptcy

Court made no factual findings other than that LAK3's prior counsel failed to attend

the November 19, 2020 status conference.  (A-506.)  Because the Bankruptcy Court

failed to apply the correct standard for dismissal under Rule 41(b), this Court should

reverse.

## II.   EVEN IF THE COURT BELOW HAD APPLIED THE CORRECT STANDARD, DISMISSAL WAS NOT WARRANTED

Even if the Bankruptcy Court had applied the correct legal standard, none of

the applicable five factors would have supported dismissal.  *See*, *e.g*., *United States*

*ex rel Drake v. Norden Sys., Inc.,* 375 F.3d 248, 255 (2d Cir. 2004), relied upon by

Debtor Br. at 14, 15 and 23.  There, the Second Circuit reversed, in part, a dismissal

for failure to prosecute where the lower court had improperly weighed the five

factors.  (In other words, even though, the lower court had correctly stated the five

factor test and had made factual findings, the Second Circuit still reversed because

the factors were not weighed appropriately).

---

[3] As explained in our Opening Brief, the abuse-of-discretion standard in this area is much less deferential than usual because the controlling Second Circuit law "significantly cabin[s] a [lower] court's discretion."  *LeSane v. Hall's Sec. Analyst, Inc.,* 239 F.3d 206, 209 (2d Cir. 2001).

### A.     The Bankruptcy Court Did Not Give LAK3 Notice of Dismissal or an Opportunity to Be Heard

For good reason, sua sponte dismissal of an action without giving plaintiff notice and an opportunity to be heard before such an extreme decision is made is per se grounds for reversal.  *See* Opening Br. at 17-18, citing *Lewis v. New York*, 547 F.2d 4, 6 n.4 (2d Cir. 1976), and *Catzin v. Thank You & Good Luck Corp.,* 899 F.3d 77 (2d Cir. 2018).  The Debtor cannot and does not address this law and neither cites, discusses, nor seeks to distinguish, either *Lewis* or *Catzin*.

Instead, Debtor cites (Debtor Br. at 22) *O'Rourke v. Nirvana*, 2020 WL 1198326 *1 (S.D.N.Y 2020) for the uncontroversial proposition that sua sponte dismissal is permissible.  But in *O'Rourke*, the court had ordered the plaintiff to make a specified filing by a specified date and explicitly warned that failure to do so could lead to dismissal for failure to prosecute.  Despite the Court's warning, the plaintiff failed to comply with the order, and the Court then, several months later, issued an order to show cause why the action should not be dismissed, only dismissing after the plaintiff failed to respond to that order to show cause, which was already a second explicit warning.

Debtor also mistakenly invokes this Court's decision in *Yang v. Greyhound Lines, Inc.,* 2008 WL 3126188 (S.D.N.Y. July 14, 2008) for the proposition (Debtor Br. at 23, emphasis added) that "*a court* is not required to notify a plaintiff that its action will be dismissed." Debtor Br. at 30.  But in *Yang* the *defendant* had moved

to dismiss the action due to the plaintiff's failure to prosecute, thus providing the plaintiff with notice and an opportunity to be heard.  The plaintiff then failed to file any opposition to that motion, and even then, this Court waited several months after the missed deadline before dismissing the action in order to see if the plaintiff had belated any explanation to offer.

The Debtor cites no case affirming on appeal a sua sponte dismissal without any advance notice.[4]  Indeed, the cases he cites consistently show one form of notice or the other, as indicated above.  *See also, e.g., Ruzsa v. Rubenstein & Sendy Attys at Law,* 520 F.3d 176 (2d Cir. 2008) (six months after plaintiff failed to meet deadline to file amended pleading, with no other action having been taken in interim, court issued notice giving plaintiff 20 days to explain why the action should not be dismissed for failure to prosecute; plaintiff filed nothing in response to that notice); *Yannitelli v. Navieras De Puerto Rico,* 106 F.R.D. 42 (S.D.N.Y 1985) (plaintiff failed to respond to "one last chance" order from court); *Antonios A. Alevizopoulos and Assocs., Inc. v. Comcast International Holdings, Inc.,* 2000 WL 1677984

---

[4] Debtor claims (Debtor Br. at 30, emphasis added) that Fed. R. Civ. P. 16(f) and Local Bankruptcy Rule 9020-1(a) "provided sufficient notice" of the possibility that unexcused failure of its counsel to attend a conference "*could* result in the dismissal of the Adversary Proceeding."  But the court rules providing for dismissal as a *possible* consequence do not replace the necessity of affording a party of notice and an opportunity to be heard before the Court acts.  *Lewis v. New York*, 547 F.2d 4 at 6 n.4 ("Failure to afford [plaintiff] an opportunity to address the court's sua sponte motion to dismiss is, by itself, grounds for reversal.").

(S.D.N.Y 2000) (plaintiff failed to respond to defense motion to dismiss for failure to prosecute); *Johnson v. New York City,* 2015 WL 12999661 (E.D.N.Y. 2015) (plaintiff had been explicitly warned by court after missing prior conference that failure to appear at next conference would result in dismissal); *Lopez v. Catholic Charities of Archdiocese of New York,* 2001 WL 50896 (S.D.N.Y. 2001) (granting defendant's motion to dismiss for failure to prosecute).

### B.    LAK3 Caused No Delay In the Prosecution of This Action

Between March 2019, when the Bankruptcy Court granted LAK3's motion to litigate the merits of this dispute in the State Court Action and November 2019, when the Bankruptcy Court dismissed this proceeding sua sponte, LAK3 diligently prosecuted this action in the State Court.  Indeed, by October 2019, the State Court Action was trial ready.  Supra at 4; Opening Br. at 11-12.  The Debtor does not dispute these facts (although he has filed a motion to prevent this Court from reviewing some of the publicly filed judicial records from the State Court Action). On November 19, 2020, the Bankruptcy Court sua sponte dismissed this action after (a) prior counsel for LAK3 failed to appear at a status conference to advise the Bankruptcy Court as to the status of the State Court Action; and (b) prior counsel for the Debtor affirmatively misled the Bankruptcy Court as to the status of that proceeding. (A-582.)

The Bankruptcy Court did not dismiss the action because of any delay, and the Debtor does not point to any such finding.  Instead, as it is apparent from the Dismissal Order itself, the Bankruptcy Court dismissed the action because LAK3's counsel failed to attend the November 19, 2019 status conference. (A-506 ("The Court having held a hearing on November 19, 2019 and Plaintiff having failed to appear").) To overcome these facts, the Debtor has combed the record for any perceived earlier mistake by LAK'3 counsel to create a different basis for the Dismissal Order not considered by the Bankruptcy Court.[5]  None of these new grounds have any merit:

- Status Letters.  Debtor claims (Debtor Br. at 7, 8, 14, 33) that LAK3's prior counsel Mr. Rosen failed to send "status letters" to the Bankruptcy Court advising it of the status of the State Court action.  However, the Bankruptcy Court never directed such letters, and when counsel raised the possibility of sending a status letter at an earlier conference, the Bankruptcy Court indicated that no such letter would be necessary.  (A-577 ("And you don't have to write me a letter.").)

- A Scheduling Order.   Debtor claims a dozen times (Debtor. Br. at 8, 11, 12, 13, 15, 16, 17, 18, 28, 32, 33, 36) that Mr. Rosen never submitted a proposed scheduling order.  Neither *the Debtor* nor LAK3 submitted a proposed scheduling order because, pursuant to the Lift Stay Order, they were litigating the action in the State Court Action. The Bankruptcy Court had the same opinion at an earlier conference and did not order the submission of a scheduling order: "We still need a scheduling order.  But are you still waiting for the outcome in state court?"  (A577.)  Having been accurately informed by Debtor's counsel that the parties were still awaiting a decision on the various then-

---

[5] And to make these perceived failings seem more egregious, the Debtor repeats each of them multiple times.

pending motions (Opening Br. at 10), the Bankruptcy Court did not direct that a scheduling order be filed before the next conference.

- <u>Conference Adjournments</u>. Debtor claims (Debtor Br. at 8, 13, 16, 28, 32) that there were "ten months" of delay because the pretrial conference in the Adversary Proceeding was consensually adjourned multiple times. But there were not ten months of delay, because the parties were litigating the merits of the dispute in the State Court Action. Nor did the Bankruptcy Court (or, for that matter, the Debtor) raise any concerns with the consensual conference adjournments.

- <u>Other 'missed' conferences</u>. Finally, even though the Dismissal Order on its face (A-506) bases dismissal solely on Mr. Rosen's failure to appear at the November 19, 2019 conference, Debtor asserts well over a dozen times that Mr. Rosen missed two additional status conferences in June and September. Debtor Br. at 8, 12, 13, 14, 15, 16, 17, 18, 19, 21, 28, 30, 31, 32, 33. This is simply false. Mr. Rosen appeared telephonically at the September 17, 2019 conference (A-577) and successfully if belatedly asked the Bankruptcy Court to adjourn the June conference.[6] The Dismissal Order referenced no missed conferences other than the November 19, 2019 conference.[7]

Debtor does not dispute that LAK3 diligently prosecuted the State Court Action and that it was already trial-ready before the November 19, 2019 conference at which

---

[6] Debtor now asserts in hindsight (Debtor Br. at 6, 7) that Mr. Rosen's telephonic appearance at that conference, in listen-only mode, did not comply with the Bankruptcy Court's rules. But the transcript (A-577) shows no criticism of Mr. Rosen on that score by the Bankruptcy Court.

[7] The argument that Mr. Rosen missed the June conference is raised by the Debtor for the first time on appeal, in reference to a mishap in which Mr. Rosen had failed to formally adjourn a conference, but wrote to the Court the same day apologizing for the mishap. *See* Doc. No. 17-1 (Debtor's Supplemental Appendix on Appeal). Indeed the Bankruptcy Court granted several further adjournments of the conference, as shown on the docket. (A-260.)

the Bankruptcy Court dismissed the Adversary Proceeding sua sponte.[8]  (A-522-25, A-546.)  Nor does Debtor dispute the showing that it was *he* who tried repeatedly to stall or slow down the State Court Action, by among other things:  opposing LAK3's motion to sever the third-party claims of the defendants in the State Court Action so LAK3's claim against the Debtor could proceed to trial. Opening Br. Exh. 2; adjourning the mandatory settlement conference that, after the State Court Action was determined to be trial-ready, was the last milestone that needed to be passed before obtaining an actual trial date (A-524); seeking a stay of the trial of the State Court Action pending his interlocutory appeal to the Second Department. Supra at 5.

All that needed to happen in the Adversary Proceeding in the Bankruptcy Court while the State Court Action was proceeding toward trial was keeping the Bankruptcy Court updated about the status of that action as might be required.  There is no dispute that Mr. Rosen's failure to appear at the November 19, 2019 conference impaired the Bankruptcy Court's legitimate interest in being updated.[9]  But it was

---

[8] The Debtor's groundless claim in his Motion to Strike (Doc. No. 20) that this Court is not permitted to look at the public records confirming this such as the docket sheet and decisions in the State Court Action (all of which are subject to judicial notice) was addressed in our Opposition to that motion (Doc. No. 21.)  But Debtor has ignored and made no attempt to rebut the showing on that issue based solely on the documents included in the Appendix at the pages cited above.

[9] The cases Debtor cites in which cases were dismissed after a plaintiff failed to appear at status conferences generally involved other failures by those plaintiffs as

*the Debtor* whose former counsel gave the Bankruptcy Court false information about the status of the State Court Action that appears to have influenced the dismissal.

LAK3 showed (Opening Br. at 12-13) that the Debtor's then-counsel Mr. O'Reilly misled (either intentionally or recklessly) the Bankruptcy Court about the status of the State Court Action at the November 19, 2019 conference.  Mr. O'Reilly falsely claimed (A-582) that LAK3 had done "[n]othing" when in fact the State Court Action had since the prior conference been designated trial-ready and LAK3 had filed its Note of Issue (Opening Br. Exh. 3) and was seeking the earliest available trial date.  (A-523-24.)  In addition, Mr. O'Reilly falsely reported that nothing had changed in the State Court Action since the prior conference in September, by claiming (A-582) "I haven't heard a decision yet" (which was knowingly false unless he had deliberately failed to inform himself), when in fact the State Court had issued a decision subsequent to the September conference resolving all outstanding motions and leading almost immediately to the determination that the State Court Action was trial-ready.  (Opening Br. Exhs. 2, 4; A-546.)  The Debtor acknowledges that the Bankruptcy Court dismissed the action based on Mr. O'Reilly's statement (Debtor

---

well.  *See, e.g. Yannitelli* 106 F.R.D. 42 (S.D.N.Y 1985) (failure of plaintiff to take any discovery and failure to appear for deposition noticed by defendants); *Lopez*, 2001 WL 50896 (S.D.N.Y. 2001) (plaintiff had also failed to comply with court-imposed deadlines for serving an amended complaint and providing discovery responses).

Br. at 8) but completely ignores the falsity of that statement.  The undisputed fact is that the State Court Action was trial-ready.

### C.    Debtor Suffered No Prejudice

Just as importantly, Debtor shows no prejudice whatsoever, regardless of how much or how little delay Mr. Rosen's failure to attend the November 19, 2019 conference may be thought to have caused.  Failure to timely update the Bankruptcy Court about the status of the State Court Action did not prejudice the *Debtor*, even if it affected a legitimate interest of the Bankruptcy Court in being kept updated.[10] Again, there is no dispute that LAK3 was timely prosecuting the State Court Action, and that (supra at 11) it was instead the Debtor who repeatedly sought to delay the trial in the State Court Action, thus predictably (to the extent his delay tactics succeeded) delaying the final resolution of the Adversary Proceeding.[11]  Debtor

---

[10] As a party, Dunn knew exactly what the status of the State Court Action was on November 19, 2020, his counsel just declined to inform the Bankruptcy Court. LAK3 has already acknowledged (Opening Br. at 22) that the Bankruptcy Court had the authority to impose *some* sanction for Mr. Rosen's failure to appear at the November 19, 2019 conference.  But no such sanction was considered, and the Debtor obtained a windfall in avoiding a scheduled trial on the merits of the fraud and defalcation claims against him.

[11] Debtor notes (Debtor Br. at 23) that this Court's decision in *Rubin v. Abbott Laboratories,* 319 F.R.D 118, 121 (S.D.N.Y 2016), noted that the delay in that case caused prejudice to defendant because of the risk that key witnesses would become unavailable with the passage of time.  That rationale has no relevance here, where discovery in the State Court Action was already taken, no separate discovery in the Adversary Proceeding was contemplated, and it was Debtor rather than LAK3 who was seeking to delay trial in the State Court Action.

claims without citing any authority (Debtor Br. at 29) that an "adversary proceeding is suppose[d] to be litigated faster than a civil suit because of a pending bankruptcy case," and complains that delay in the resolution of the Adversary Proceeding delays him in obtaining his discharge.  But these arguments make no sense here, because they again fail to acknowledge that the necessary consequence of the lift-stay order was and is that the Adversary Proceeding (determining whether or not LAK3's claims against Debtor would or would not be within the scope of the discharge) would not be resolved until the State Court Action was resolved.

In any event, the legislative desire to give debtors a "fresh start" (Debtor Br. at 31) via discharge is balanced by the equally strong legislative policy also embodied by Congress in the Bankruptcy Code (Opening Br. at 4) to deny the benefits of a discharge to fraudsters.  Moreover, the Debtor's underlying Chapter 7 case is still ongoing and has other outstanding issues.  *See e.g.,* Doc. No. 78 in 18-bk-36566.   Indeed, on February 25, 2020, the Bankruptcy Court *denied* the Debtor's motion to vacate the lift stay order over the State Court Action, precisely because LAK3's appeal is still pending and the Bankruptcy Court recognized the chance that this Court will reinstate the case.  *See* Doc. No. 72 in 18-bk-36566 at page 5.

### D.   The Bankruptcy Court Did Not Balance Plaintiff's Right to a Day In Court Against Any Docket Congestion Concerns

Debtor claims that "[t]he fourth factor, the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a

day in court."  Debtor Br. at 31.  No citation is given for this assertion, and none could be, because the Bankruptcy Court did not apply the Second Circuit's five-factor test or otherwise purport to do any such balancing.  The Bankruptcy Court's previous decision to lift the stay to allow the State Court Action to proceed already minimized demands on the Bankruptcy Court's own resources by allowing the merits of the dispute to be adjudicated in the State Court.  It is undisputed that the State Court Action was trial-ready.  Debtor has no response to the showing (Opening Br. at 7; A-274 ¶¶ 64, 66 and testimony cited therein) that LAK3's allegations of fraud and diversion of statutory trust funds against him were serious and substantiated by considerable evidence.  For this factor to support dismissal for failure to prosecute, the Second Circuit has held that there "must be *compelling* evidence of an *extreme* effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court."  *LeSane*, 239 F.3d at 210 (emphasis added; citation and quotation omitted).  Not a shred of evidence of any such "extreme effect" can be found here.  LAK3 deserves its day in court.

### E.   The Bankruptcy Court Failed to Consider Lesser Sanctions Short of Dismissal

It is undisputed that the Bankruptcy Court did not "assess[] the efficacy of lesser sanctions" short of dismissal.  *U.S ex rel. Drake,* at 254.  In response, Debtor claims (Debtor Br. at 32) that the Bankruptcy Court "was not required to consider a lesser sanction," citing for that proposition this Court's decision in *Rubin v. Abbott*

*Laboratories,* 319 F.R.D 118 (S.D.N.Y 2016).  But what this Court said in *Rubin*

(319 F.R.D. at 122) was:

> Here, it would not even be possible to impose lesser
> sanctions; Rubin has been inaccessible for the past
> seventeen months. Courts have consistently found that
> dismissal is the only adequate remedy for failure to
> prosecute where a plaintiff cannot be contacted, because
> the plaintiff would be unaware of any lesser sanction that
> could be imposed.  . . .  Because Rubin has effectively
> disappeared, she cannot be given notice of any sanction
> less than dismissal.

Thus, contrary to Debtor's misreading, this Court *did* consider in *Rubin* whether a

lesser sanction would be efficacious before determining based on the specific

circumstances that it would not be.  The rationale of *Rubin* has no application here,

where LAK3 has not disappeared or been consistently inaccessible.[12]   LAK3

previously (Opening Br. at 22) cited *Mitchell v. Lyons Prof. Servs., Inc.,* 708 F.3d

463, 468-69 (2d Cir. 2013), where the Second Circuit reversed a dismissal for failure

to prosecute even though (unlike here) all four of the other factors supported

dismissal because "alternative sanctions not involving the serious harm [of

dismissal] to counsel's clients were [not] adequately considered."  As with so many

other controlling Second Circuit precedents cited by LAK3 and adverse to Debtor's

---

[12] *See also Ruzsa*, 520 F.3d at 178 ("while it is unclear from the record whether the
District Court considered sanctions short of dismissal, in light of Ruzsa's failure to
respond to the notice threatening dismissal, it is equally unclear that a 'lesser
sanction' would have proved effective in this case").

position, Debtor's brief completely ignores *Mitchell* and makes no attempt to distinguish it, and likewise neither cites nor attempts to distinguish *Dodson v. Runyon,* 86 F.3d 37 (2d Cir. 1996) and *Baptiste v. Summers,* 768 F.3d 212 (2d Cir. 2014), also cited by LAK3 (Opening Br. at 22), in which the Second Circuit expressed the same concern that dismissal of a client's case as a result of lawyer misconduct was often an inappropriately "drastic" or "harsh" result for the lawyer's clients.[13]  A wide range of potentially appropriate lesser sanctions were available to the Bankruptcy Court to deal with Mr. Rosen's non-appearance at the November 19, 2019 conference, and the Bankruptcy Court's failure to consider and pursue such an appropriate lesser sanction was reversible error.

---

[13] In the different context of arguing (irrelevantly) about what constitutes "excusable neglect" for purposes of Fed. R. Civ. P. 60(b)(1), Debtor argues (Debtor Br. at 34) that clients are generally bound by the acts and omissions of their counsel. Cases like *Mitchell*, *Dodson*, and *Baptiste*, however, do not dispute that but focus instead on a different issue, namely what the appropriate and just consequence to the client of the lawyer's mistake ought to be, and uniformly hold that sanctions for lawyer misconduct less harmful to the client than dismissal of the client's claims without an adjudication of their merits are to be preferred when appropriate.

In *Cobos v. Adelphi Univ.,* 179 F.R.D 381 (E.D.N.Y 1998), the attorney (i) failed to respond to a court order requiring a status update and specifying that the case might be dismissed if no response was received; (ii) apparently failed to respond to a letter from defense counsel suggesting the case should be dismissed and failed to attend a conference held to discuss that specific subject; and then (iii) after the case was dismissed for failure to prosecute failed to respond to an invitation in the order to move for reconsideration within ten days.

## III.   IN THE ALTERNATIVE, THE BANKRUPTCY COURT SHOULD HAVE GRANTED THE MOTION FOR RECONSIDERATION

Debtor devotes his argument in defense of the Reconsideration Decision (Debtor Br. at 34) almost entirely to the alleged lack of "excusable neglect" by Mr. Rosen.  But "excusable neglect" is not the sole basis for reconsidering an earlier decision, and is not the one relied on by LAK3 here.  Opening Br. at 23-24.  Rather, reconsideration should have been granted because the Dismissal Decision was based, at least in part, on knowingly or recklessly false information about the status of the State Court Action given to the Bankruptcy Court by the Debtor's then-counsel, as the Debtor has conceded by failing to contest the point on appeal (supra at 11, 12), and the accurate information about the status of the State Court Action provided by LAK3 in its reconsideration papers "might reasonably be expected to alter the [prior] conclusion reached by the court." *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  LAK3 cited *Shrader* (Opening Br. at 23), but Debtor has once again failed to cite or distinguish a relevant and controlling Second Circuit decision cited by LAK3, again conceding that it has no contrary arguments to offer.

## <u>CONCLUSION</u>

For the foregoing reasons, as well as those set forth in LAK3's opening brief on appeal, the Dismissal Order or, in the alternative, the Reconsideration Order, should be reversed and the case remanded with directions to allow the adversary proceeding to proceed to final adjudication on its merits.

Dated:  June 3, 2020                    Respectfully submitted,

_/s/ Avery Samet_                
Avery Samet
John W. Brewer
AMINI LLC
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
asamet@aminillc.com
jbrewer@aminillc.com
_Attorneys for Appellant LAK3, LLC_

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit in Rule 8015(a)(7)(B)(i) because it contains 5,270 words, excluding the parts of the document exempted by Rule 8015(a)(7)(B)(iii).

This brief also complies with the typeface and typestyle requirements of Rule 8015(a)(5)-(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  June 3, 2020

/s/ *Avery Samet*