UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: SEAN M. DUNN, <br><br>         Debtor. | Chapter 7 <br> No. 18-36566-CGM <br> (Jointly Administered) |
| LAK3, LLC, <br><br>        Appellant, <br><br>  -against- <br><br> SEAN M. DUNN <br><br>        Appellee. | Bankruptcy Appeals <br> No. 20 Civ. 00193 (CM) <br> No. 20 Civ. 01420 (CM) <br> (Jointly Administered) <br><br> Adv. Proc. No. 18-09038 <br> (RDD) |

### DECISION AND ORDER

McMahon, C.J.:

   The pending appeal arises from two orders of the Bankruptcy Court terminating the adversary proceeding *LAK3, LLC v. Dunn*, No. 18-09038 (the "Adversary Proceeding"). The Hon. Cecelia G. Morris, U.S.B.J., dismissed the Adversary Proceeding in the bankruptcy of Debtor Sean Dunn *sua sponte* for failure to prosecute after the plaintiff-Appellant, LAK3, LLC ("LAK3"), failed to appear at a November 19, 2019 status conference to provide an update on a related state court case (the "State Court Action"). (*See* Adv. Dkt. No. 21; the "Dismissal Order," A506[1].) Judge Morris later denied the Appellant's motion to vacate the Dismissal Order. (Adv. Dkt. No. 34; the "Reconsideration Order," A584.)

---

[1]  References to the record on appeal are denoted "A_" when referring to the Appendix submitted by the Appellant (Dkt. Nos. 14-7, 14-8), and "SA_" when referring to the Supplemental Appendix submitted by the Appellee (Dkt. No. 17-1).

LAK3 now asks this Court to reverse both orders, pursuant to 28 U.S.C. § 158(a)(1), on the following grounds: (i) the Bankruptcy Court did not apply the correct legal standard for *sua sponte* dismissal orders; (ii) LAK3 should not be permanently prejudiced for its failure to appear at the status conference, since it had advanced the State Court Action to the eve of trial by the time of the Dismissal Order, and thus was not failing to prosecute its claims against the Debtor; (iii) the court failed to consider lesser sanctions that would have properly penalized LAK3's counsel for missing the status conference; and (iv) once LAK3 informed the court of the status of the state court action, Judge Morris had no basis to deny the motion to vacate.

For the reasons set forth below, the judgment of the Bankruptcy Court is VACATED and the case is REMANDED to the Bankruptcy Court for consideration of a more appropriate sanction than dismissal.

## BACKGROUND

LAK3 is a limited liability company organized under the laws of the State of New York, whose members Ned and Lesley Kleinschmidt formed the company in order to make improvements to a piece of land they own in Mahopac, New York. (A267-68.)  In March of 2016, LAK3 accepted a bid from the Debtor and his brother to build a single-family house on the Mahopac property. (A26.) To land the job, the Dunns represented to the Kleinschmidts that they were licensed general contractors and could complete the project for $1,150,000. (A268.)

The Mahopac project did not go as the Kleinschmidts had hoped.  Although LAK3 paid the Dunns more than $840,000 between June of 2016 and March of 2017, the Kleinschmidts eventually decided to fire the contractors for cause. (A276.) On August 4, 2017, LAK3 brought the State Court Action against the Dunns in the Westchester County Supreme Court for breach of contract, unjust enrichment, breach of fiduciary duty, and violations of Article 3 of the New

York Lien Law, *see* N.Y. Lien Law §§ 70.  (A26; *LAK3, LLC v. Dunn et al.*, Index. No. 61510/2017.)  LAK3 alleged that the Dunns had engaged in "intentional fraud, deception, defalcation and larceny" by diverting project funds, preparing false financial statements, and failing to pay subcontractors.  (A27-28.)

Sean Dunn filed for Chapter 7 bankruptcy on September 17, 2018. (A1; *In re Dunn*, No. 18-36566 (Bankr. S.D.N.Y.).)

On November 21, 2018, LAK3 initiated the Adversary Proceeding, alerting the Bankruptcy Court that it was pursuing claims in the State Court Action that could not be discharged by the Bankruptcy Court, since a debtor may not be excused from any debt "obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).  In February of 2019, LAK3 sought a lift of the Section 362 automatic stay as to the State Court Action on the basis of the Section 523 exception.  On March 22, 2019, Judge Morris partially lifted the stay, so that LAK3 could "continue to prosecute [the State Court Action] through completion by final judgment, strictly limited hereby to issues of liability." (A257.)

The March 22 order also made clear that the automatic stay remained in effect to the extent necessary "to enjoin LAK3 from taking any steps to enforce any judgment it may obtain against the Debtor in the State Court Action." (*Id.*) In other words, the Bankruptcy Court bifurcated LAK3's case against Mr. Dunn.  While LAK3 could obtain a finding of liability against the Debtor in Westchester County, any damages award based on that finding would have to issue from Judge Morris.  Accordingly, she requested periodic updates on the State Court Action following the lift of the stay at in-person pretrial conferences.

The parties adjourned the first pretrial conference, which was to occur on April 30, 2019, and agreed to reconvene on June 4. (Adv. Dkt. No. 12.) When June 4 arrived, LAK3's counsel

failed to appear, admitting that they had "neglected to further adjourn [the conference," (SA001);

Judge Morris did it herself, rescheduling the conference for June 18, 2019. (*Id.*; Adv. Dkt. No.

13.)  The court adjourned the conference twice more after that, eventually holding it – without

LAK3's counsel's being physically present – on September 17, 2019. (Adv. Dkt. No.

20.)  LAK3's counsel dialed into the September conference in listen-only mode, and did not

provide any update on the State Court Action.  Judge Morris noted that she still required a

scheduling order for the Adversary Proceeding, but understood that the parties were "waiting for

the outcome in state court." (A577.)  She scheduled the next conference for November 19,

2019.

Unbeknownst to the Bankruptcy Court, LAK3 had been making headway in the State

Court Action.  In October 2019, with discovery completed and LAK3's motion for partial

summary judgment denied, the state court declared the matter ready for trial. (A546.)

LAK3's counsel neither appeared at the November hearing nor used other means to

inform Judge Morris of the developments in state court. (A581.) He did attempt to dial in by

contacting the court's communications technicians, but he did not give them the three-days'

notice required to ensure his participation under Judge Morris' Chambers Rules. (A516; *see*

"Judge Morris' Chambers Rules," *available at* http://www.nysb.uscourts.gov/content/judge-

morris-chambers-rules (last visited Aug. 20, 2020).)

At the November hearing, one of the Debtor's lawyers informed the Bankruptcy Court

that the parties were still waiting for an outcome in the State Court Action, and that he had not

"heard a decision." (A582.) It is not clear whether the Debtor's counsel was saying that he was

not aware of the state court's proclamation that the State Court Action was trial-ready, or, rather,

that the state court had yet to reach a conclusion as to Dunn's liability. While the Appellant

insists that the former was the case, and that the Bankruptcy Court was thus materially misled, that interpretation finds no support in the November hearing transcript, which lacks any reference to intermediate developments in the course of the State Court Action.

What is beyond dispute is that LAK3's counsel did not show up in Judge Morris's courtroom, even by telephone, to clarify the situation. In light of his absence, Judge Morris encouraged the Debtor's counsel to make a motion to dismiss the Adversary Proceeding for failure to prosecute. (A582-83.)

On December 10, the Bankruptcy Court entered an order dismissing the case *sua sponte* for failure to prosecute, noting that LAK3 had failed to appear, and citing Local Bankruptcy Court Rule 9020-1, which provides:

> "Failure of a party or counsel for a party to appear before the Court at a conference, complete the necessary preparations, or be prepared to proceed at the time set for trial or hearing may be considered an abandonment of the adversary proceeding or contested matter or a failure to prosecute or defend diligently, and an appropriate order of the Court may be entered against the defaulting party with respect to either a specific issue or the entire adversary proceeding or contested matter."

(A506.)

Ten days later, LAK3 moved to vacate the Dismissal Order, providing proof that the State Court Action was trial ready, and documentation of its request to participate telephonically in the November conference. (A509.)[2] At the hearing on the motion to vacate, held on January 28, 2020, LAK3's counsel explained his absence was due to his (and his client's) desire to "avoid time and expense to the client of our coming here with respect to a status conference."

---

[2] LAK3 has furnished this Court with several other filings from the State Court Action that were not submitted to Judge Morris prior to her rulings.  Because LAK3 failed to include these documents in its Appendix, which comprises the record on appeal, this Court has not considered those materials. *See, e.g.*, *Shangold v. Walt Disney Co.*, 275 Fed. App'x 72, 73 (2d Cir. 2008) (summary order); *Loria v. Gorman*, 306 F.3d 1271, 1280 n.2 (2d Cir. 2002).

(A596.) Judge Morris was not moved by that excuse, noting that the Debtor's counsel and the Court had taken the time to show up in person. (A597.)

The Bankruptcy Court also noted that the parties had yet to agree upon a scheduling order to govern the Adversary Proceeding, which would have eliminated the need for further conferences.  (A599.) In response, LAK3's counsel said that no scheduling order was needed, because as long as the State Court Action was ongoing and the Adversary Proceeding stood in abeyance, there was "no litigation before this Court." (*Id.*)  But Judge Morris was not convinced that the continued progress of the State Court Action – about which she had not known at the time of the November conference – justified the lack of a scheduling order in the Adversary Proceeding. In her view, as the Adversary Proceeding plaintiff, LAK3 had a duty to provide an update to the Bankruptcy Court on the State Court Action, and it had failed to do so. (A599.)  Accordingly, Judge Morris denied the motion to vacate. (A584; the "Reconsideration Order".)

LAK3 took appeals of the Dismissal Order (*LAK3, LLC v. Dunn*, No. 20-cv-193 (Bankr. S.D.N.Y. Jan. 9, 2020)) and the Reconsideration Order (*LAK3, LLC v. Dunn*, No. 20-cv-1420 (Bankr. S.D.N.Y. Feb. 19, 2020)).  They were consolidated on February 20 of this year.  (Dkt. No. 13.)

## DISCUSSION

### I.    Legal Standards

Bankruptcy Code Rule 7016 incorporates Federal Rule of Civil Procedure 16, which permits a court to issue appropriate sanctions "if a party or its attorney . . . fails to appear at a scheduling or other pretrial conference." Fed. R. Civ. P. 16(f)(1)(A).  Such sanctions may include "dismissing the action in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v).  The federal

rules also provide that a court may dismiss a case with prejudice where the "plaintiff fails to prosecute or comply with [the Federal Rules] or a court order." Fed. R. Civ. P. 41(b).

Dismissal of an action for failure to prosecute is reviewed for abuse of discretion, which may arise from "an error of law or a clearly erroneous finding of fact." *United States ex rel. Drake v. Norden Sys.,* 375 F.3d 248, 254 (2d Cir. 2004) (citation omitted). Dismissal for failure to prosecute is a "harsh remedy" that "should be utilized only in extreme situations." *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004).  Accordingly, Second Circuit precedent requires courts to balance five factors when deciding whether dismissal is appropriate:

> "(1) the duration of the plaintiff's failures; (2) whether the plaintiff had notice that further delays would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay; (4) a balancing of the need to alleviate court calendar congestion with a party's right to due process; and (5) the efficacy of lesser sanctions."

*Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996).  No one factor is dispositive.

The Appellant claims that the Bankruptcy Court's orders are not entitled to review under the abuse of discretion standard, because Judge Morris failed to analyze the five factors used to assess Rule 41 dismissals. (Dkt. No. 14, at 15 (citing *Baptiste*, 768 F.3d at 217-19).)  However, that argument ignores the fact that the dismissal was entered pursuant to the court's authority to levy sanctions against noncompliant parties under Rules 16 and 37.  And the parties agree that a court may sanction a party with dismissal if the circumstances so require without making individualized findings as to each Rule 41 factor, as they both favorably cite such a decision: *Johnson v. New York City*, No. 14-cv-4278, 2015 WL 12999661, at *2 (E.D.N.Y. Jan. 12, 2015).  It is only where, as here, such a decision is challenged on appeal that district courts must apply the Second Circuit's standards to determine whether such a dismissal was proper.

II.     **Dismissal of the Adversary Proceeding was an Abuse of Discretion.**

    **a.** <u>Delay</u>

The first factor is the duration of delay caused by the plaintiff's failure to prosecute. Here, LAK3's failure to appear at the pretrial conferences did not delay the progress of the Adversary Proceeding.  As Judge Morris noted at the November 19 conference, the parties were "waiting for the state court" to adjudicate liability before litigating the magnitude of LAK3's claim against Mr. Dunn's estate.  (A582.) So, even if LAK3's counsel had appeared at the November conference, and informed the court that the State Court Action was awaiting trial, and had submitted a scheduling order, the Adversary Proceeding would have remained in abeyance. As the record before the Bankruptcy Court in connection with the motion to vacate shows, this is not an instance where the plaintiff showed "complete neglect to pursue his claim." *Deptola v. Doe*, No. 04-cv-1379, 2005 WL 2483341, at *2 (E.D.N.Y. Oct. 7, 2005). Rather, LAK3 was diligently litigating the liability question in the State Court Action, as contemplated in the Bankruptcy Court's March 22, 2019 order. (A257.)

The Appellant's failure to keep the Bankruptcy Court apprised of those efforts was not a failure to prosecute the Adversary Proceeding, which would not have been advanced more quickly by LAK3's attendance at the pretrial conferences; instead it was a failure to communicate.  It is true that, on December 10, when Judge Morris issued the Dismissal Order, she did not know what was occurring in state court, because LAK3 failed to keep her informed. However, the record available on the motion to vacate clarified that the continued progress of the State Court Action meant that LAK3's absences from the conferences were not responsible for delaying the Adversary Proceeding. In fact, the reason that the Adversary Proceeding was stalled at the time of the Dismissal Order was that the March 22 order barred LAK3 from seeking

monetary damages from the Debtor arising from the State Court Action until that action was concluded.  The Adversary Proceeding could not be delayed before then, because LAK3 could not pursue the damages it sought in the Adversary Proceeding unless and until it prevailed in state court.

Therefore, because there was no factual basis to conclude that LAK3 delayed the Adversary Proceeding, the Bankruptcy Court's Reconsideration Order was grounded in clear error.  The duration of delay factor favors the Appellant.

b.  Notice

Second, there is nothing in the record to suggest that LAK3 received adequate notice of the fact that its failure to appear at the November conference would result in dismissal. Although the Bankruptcy Court's local rules technically permitted the court to enter any and all sanctions set forth in Federal rule 37 against LAK3 for its failure to appear, the Debtor cites no case upholding a Rule 41(b) dismissal based on such boilerplate notice.  Contrary to Dunn's claim that Judge Morris "transmitted to the plaintiff that failure to prosecute would result in dismissal" (Dkt. No. 17, at 24), November 19 was the first time the Bankruptcy Court mentioned a potential dismissal for failure to prosecute, and the Dismissal Order was the first docket entry to even reference that outcome.  The present case is thus distinguishable from *O'Rourke v. Nirvana*, No. 19-cv-4711, 2020 WL 1198326 (S.D.N.Y. Mar. 12, 2020), cited by the Debtor, where the court dismissed the plaintiff's case for failure to prosecute after he ignored specific regarding that potential outcome, as well as instructions from the court to respond to an order to show cause. *Id.* at *2. Here, LAK3's counsel did not fail to respond to any pending deadline.  Indeed, the record

shows that LAK3's counsel tried to attend the conferences by phone; he contacted the information technology team at the court.

Furthermore, as of November 19, LAK3 was substantially complying with the court's March 22 order. It was advancing the case for Dunn's liability towards a judgment in state court.  Judge Morris expected to receive a scheduling order, and  LAK3's lack of transparency as to the progress of the State Court Action was poor lawyering at the very least.  However, there is nothing to indicate that LAK3 knew, or should have known, that a failure to submit a scheduling order or to appear at a status conference at an action held in abeyance could result in dismissal.

Therefore, I cannot affirm the implication of Dismissal and Reconsiderations Orders that LAK3 received adequate notice of potential for dismissal for failure to prosecute.  This factor favors the Appellant.

c.  Prejudice

The Bankruptcy Court did not make any findings of fact establishing that the Debtor would be prejudiced by LAK3's failure to either appear at the November conference or its delay in filing a scheduling order in the Adversary Proceeding.  While prejudice to the defendant "may be presumed as a matter of law in certain cases . . . [i]n cases where 'delay is more moderate or excusable, the need to show actual prejudice is proportionally greater.'" *Drake*, 375 F.3d at 256 (citing and quoting *Lyell Theatre Corp. v. Loews Corp.*, 682 F.3d 37, 42-43 (2d Cir. 1982)). In light of the fact that the State Court Action was ongoing and did not cause an actual delay of the Adversary Proceeding, I will proceed from the premise that the delay, if any, was moderate.

The Debtor has not presented the proof of prejudice needed to obtain dismissal based on a moderate delay.  In his opposition brief, Dunn correctly points out an unreasonable delay which causes the "decay of evidence" may cause prejudice to the defendant.  *Drake*, 682 F.3d at

256. However, the risk of decay is significantly less where, as here, the defendant is "on notice of the charges against them" and is "therefore in a good position to preserve evidence." *Id.* at 257. Accordingly, the risk of prejudice to Dunn was minimal: not only was he on notice of the claims against him, he had already either produced or received the evidence that LAK3 intended to rely upon to litigate the State Court Action, which involved the same issues underlying the Adversary Proceeding.

Because there was no evidence in the record to suggest that a further delay in the Adversary Proceeding would have caused actual prejudice to Dunn, this factor also favors the Appellant.

      d.  <u>Court Congestion</u>

"There must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court." *Lucas v. Miles*, 84 F.3d 532, 535–36 (2d Cir. 1996). Nonetheless, even without evidence of an "extreme effect," courts in this district have held that "calendar congestion outweighed a plaintiff's opportunity to be heard when the plaintiff has rebuffed opportunities to be heard." *Rubin v. Abbott Labs*, 319 F.R.D. 118, 121 (S.D.N.Y. 2016) (citing *Caussade v. United States*, 293 F.R.D. 625, 631 (S.D.N.Y. 2013)).

The Bankruptcy Court issued the Dismissal Order after the Appellant failed to appear for a conference on three separate occasions. On its own, that might be enough to conclude that LAK3 rebuffed opportunities to advance its case.  However, the procedural posture of those conferences reveals that LAK3 could not have moved the process along by showing up: both the parties and the court were, as Judge Morris noted at the September conference, "waiting for the outcome in state court." (A577.) They would have continued waiting regardless. So while the Appellant's lack of diligence and professional courtesy certainly contributed to the Court wasting

its time (and the time of the Debtor's counsel), I am not convinced that this shortcoming is enough to warrant the Bankruptcy Court's dismissal of the Adversary Proceeding.

If this factor favors affirming the Dismissal and Reconsideration Orders, it only does so narrowly.

> e.  <u>Lesser Sanctions</u>

The last question this Court must answer is whether there were any lesser sanctions available to the Bankruptcy Court that would have adequately remedied the potential prejudice to the Debtor.  Again, the alleged prejudice to the Debtor caused by the potential decay of evidence caused by LAK3's failure to appear at the conferences – the only prejudice of which the Debtor complains – is minimal, if not illusory.  Dunn still had to defend himself in the State Court Action even after the Bankruptcy Court's dismissal, and to argue his case based on the same evidence.

But even if that were not the case and Dunn face real prejudice from LAK3's failure to appear, the Bankruptcy Court still could have considered lesser sanctions.  Courts have generally only resorted to a full dismissal for failure to prosecute when they have no way of making the plaintiff aware of lesser sanctions. *See Rubin*, 319 F.R.D. at 122 (collecting cases). That was plainly not the case here. At the time the Bankruptcy Court entered the Reconsideration Order, it knew that LAK3's counsel had attempted to attend the November conference by phone, and immediately objected to the Dismissal Order as soon as he learned of it.  At a minimum, those efforts show that LAK3 could be made aware of lesser sanctions and made to correct its conduct going forward. *See Caussade v. U.S.*, 293 F.R.D. 625, 631 (S.D.N.Y. 2013) (dismissal

appropriate where plaintiff "ha[d] effectively disappeared [and] [could] not be given notice of any sanction less than dismissal").

Accordingly, because the factual record before the Bankruptcy Court at the time of Reconsideration Order supported the efficacy of lesser sanctions, the court erred by finding this factor favored dismissal.

\* \* \*

In sum, while LAK3's failures to attend scheduled conferences in person and to offer a scheduling order governing the Adversary Proceeding were no doubt frustrating to the Bankruptcy Court and the Debtor, the Appellant's conduct did not warrant dismissal of the Adversary Proceeding.  Therefore, the orders dismissing the Adversary Proceeding are vacated.

This is not to say that no sanction is warranted for counsel's rather cavalier attitude toward his responsibilities. The Bankruptcy Court remains perfectly free to impose one more appropriate to the offense.

## CONCLUSION

The orders of the Bankruptcy Court at Adversary Proceeding Docket Numbers 21 and 34 are vacated and the case is remanded for further proceedings consistent to this opinion.

The Clerk of the Court is respectfully asked to close this matter on the Court's docket.  This shall constitute the written opinion of the Court. .

Dated:  August 20,  2020
New York, New York

_____

Chief Judge

BY ECF TO ALL PARTIES